David Sanford (DC Bar No. 457933, *Pro Hac Vice to be filed*)
dsanford@sanfordheisler.com
SANFORD HEISLER, LLP
1666 Connecticut Ave, NW, Suite 300
Washington, DC 20009
San Francisco, CA 94104
Telephone: (202) 499-5200
Facsimile: (202) 499-5199

Felicia Medina (CA SBN 255804)
fmedina@sanfordheisler.com
Xinying Valerian (CA SBN 254890)
xvalerian@sanfordheisler.com
Danielle Fuschetti (CA SBN 294064)
dfuschetti@sanfordheisler.com
SANFORD HEISLER, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Ed Chapin (CA SBN 53287)
echapin@sanfordheisler.com
Jill Sanford (CA SBN 185757)
jsanford@sanfordheisler.com
SANFORD HEISLER, LLP
501 West Broadway, Suite 515
San Diego, CA 92101
Telephone: (619) 577-4253
Facsimile: (619) 577-4250

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated,<br><br>                                 Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED & QUALCOMM TECHNOLOGIES, INC.<br>                                 Defendants. | '16CV1885 JLS  DHB<br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson ("Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated, allege as follows:

## I.   <u>INTRODUCTION</u>

1.     Defendant Qualcomm Incorporated. is a semiconductor company that designs and sells wireless telecommunications products and services in the United States and internationally.   Defendant Qualcomm Technologies, Inc., is a wholly-owned subsidiary of Qualcomm Incorporated that operates, along with Qualcomm Incorporated's subsidiaries, substantially all of Qualcomm's engineering, research and development functions, and substantially all of its products and services businesses (collectively, "Qualcomm," "Defendants," or the "Company").

2.     Across Defendants' United States operations, women in science, technology, engineering, and math ("STEM") and related roles face discrimination in pay and promotions.   Upper-level management positions are almost exclusively reserved for men. According to the Company's EEO-1 Reports, women hold less than 15% of what the Company defines as "senior leadership positions."   In QCT, Qualcomm's largest U.S. sub-unit, women hold less than 10% of Director or Senior Director level positions. Throughout Qualcomm's U.S. operations, women in STEM and related positions earn less than their male colleagues performing equal or substantially similar work.   This pay and promotion discrimination is exacerbated for women with caregiving responsibilities.

3.     Plaintiffs are seven current or former, long-time female STEM and related employees of Qualcomm.   They bring this action on a class and collective basis alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Equal Pay Act, 29 U.S.C. §§ 206 *et seq.* ("EPA"), the California Fair Employment and Housing Act, Cal. Lab. Code § 12940 *et seq.* ("FEHA"), the California Equal Pay Act, Cal. Lab. Code § 1197.5 ("CEPA"), California Business and Professions Code § 17200, the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* ("PAGA"), and related statutes, seeking redress and programmatic change

for female employees who have worked or will work for Qualcomm.

## II.   THE PARTIES

**Plaintiff Dandan Pan**

4.    Plaintiff Dandan Pan is a woman who lives in San Diego, California.  She is a citizen of the United States.

5.    Ms. Pan was employed by Qualcomm from approximately December 1992 to November 20, 2015.

**Plaintiff Carrie Haluza**

6.    Plaintiff Carrie Haluza is a woman who lives in Poway, California.  She is a citizen of the United States.

7.    Ms. Haluza has been employed by Qualcomm since approximately July 1998 and is a current employee.

**Plaintiff Carolina Dealy**

8.    Plaintiff Carolina Dealy is a woman who lives in San Diego, California.  She is a citizen of the United States.

9.    Ms. Dealy was employed by Qualcomm from approximately May 1997 to January 2015.

**Plaintiff Laura Paquin**

10.    Plaintiff Laura Paquin is a woman who lives in Louisville, Colorado.  She is a citizen of the United States.

11.    Ms. Paquin was employed by Qualcomm from approximately November 1997 to November 20, 2015.

**Plaintiff Wei Shi**

12.    Plaintiff Wei Shi is a woman who lives in San Diego, California.  She is a citizen of the United States.

13.    Ms. Shi was employed by Qualcomm from approximately November 2001 to November 20, 2015.

\\

**Plaintiff Blanche Matulich**

14.     Plaintiff Blanche Matulich is a woman who lives in La Jolla, California.  She is a citizen of the United States.

15.     Ms. Matulich was employed by Qualcomm from approximately March 2005 to November 20, 2015.

**Plaintiff Connie Jacobson**

16.     Plaintiff Connie Jacobson is a woman who lives in Escondido, California. She is a citizen of the United States.

17.     Ms. Jacobson was employed by Qualcomm from approximately July 2011 to November 20, 2015.

**Defendants**

18.     Defendant Qualcomm Incorporatedis a corporation formed under the laws of the State of Delaware with its corporate headquarters within the city of San Diego, San Diego County, at 5775 Morehouse Drive, San Diego, California 92121.

19.     Substantially all of Qualcomm, Incorporated's products and services businesses, including QCT, its largest U.S. business unit, and substantially all of Qualcomm, Incorporated's engineering, research and development functions, are operated by Qualcomm Technologies, Incorporated  (QTI), a wholly-owned subsidiary of Qualcomm Incorporated., and QTI's subsidiaries.  QTI is headquartered in San Diego, California.  QCT is a leading developer and supplier of integrated circuits and system software for use in voice and data communications, networking, application processing, multimedia and global positioning system products.

20.     Upon information and belief, Qualcomm's headquarters in the State of California maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

21.     Qualcomm Incorporated, Qualcomm Technologies, Inc., and their subsidiaries, are referred to herein as "Defendants," "Qualcomm," or the "Company."

22.     During all relevant times, Qualcomm was Plaintiffs' employer within the

meaning of all applicable statutes.

23.     Qualcomm employs approximately 15,000 people in the United States.

### III.   JURISDICTION AND VENUE

24.     The Southern District of California has personal jurisdiction over Defendants because they maintain offices in this District, they do business in California and in this district, and many of the acts complained of and giving rise to the claims alleged herein occurred in California, in this district.

25.     This Court has original subject matter jurisdiction over the claims for violations of Title VII, and the EPA pursuant to 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).  These claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

26.     This Court has supplemental jurisdiction over Plaintiffs' state law claims, including claims under the FEHA, the CEPA, California Business and Professions Code §17200 *et seq*., and the PAGA, pursuant to 28 U.S.C. Section 1367.   These claims constitute the same case and controversy raised in the claims under federal law.

27.     Venue is proper pursuant to 28 U.S.C. Section 1391(b) and 42 U.S.C. Section 2000e-5(f)(3).  Defendants conduct substantial business in San Diego, which is also the base of their U.S. headquarters, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, the majority of the unlawful employment practices were committed here, and the employment records relevant to those practices are maintained and administered here.

28.     Plaintiffs have standing to bring this suit and have exhausted their administrative remedies and complied with all statutory prerequisites to maintain Title VII and FEHA claims.  Plaintiff Dandan Pan filed a charge of gender discrimination individually and on behalf of all similarly situated female employees employed by Qualcomm with the Equal Employment Opportunity Commission ("EEOC") and the Department of Fair Employment and Housing ("DFEH") and received a Notice of Right to Sue from the DFEH on October 22, 2015.  On June 29, 2016, the EEOC issued a

Notice of Right to Sue.

29.     This Complaint is made within ninety days of the issuance of the EEOC's Notice of Right to Sue.  The Parties have also entered into a separate tolling agreement.

## IV.   FACTUAL ALLEGATIONS

**Qualcomm's Corporate Structure**

30.     QTI is subdivided into internal organizations including Qualcomm CDMA Technologies ("QCT"), Qualcomm Corporate Services ("QCS"), and Qualcomm Wireless Services ("QWS").

31.     QCT develops and supplies hardware, software, and other technologies. QCS provides services including licensing, finance, legal, human resources, and information technology.  QWS is responsible for emerging businesses that are acquired, grown, sold, and/or shut down.

32.     At present, approximately 63.4% of Qualcomm Incorporated's U.S. workforce is employed in QCT, 26.3% is employed in QCS, and 9.7% is employed in QWS.

**Levels / Hierarchy**

33.     Below the level of Vice President, Qualcomm's management hierarchy consists of five levels.  They are, in ascending order, (1) Supervisor, (2) Manager, (3) Senior Manager, (4) Director, and (5) Senior Director.

34.     Qualcomm's engineering hierarchy is comprised of six levels.  They are, in ascending order, (1) Associate Engineer, (2) Engineer, (3) Senior Engineer, (4) Staff Engineer, (5) Senior Staff Engineer, and (6) Principal Engineer.

35.     In general, women constitute progressively smaller proportions of each successive level of the hierarchy.

36.     For example, as of spring 2015, women held only 4.3% of the Director and Senior Director positions in QCT's software engineering job family.  In the same year, women made up 4.8% of Principal Engineers and Principal/Manager Engineers, 8.5% of Senior Staff Engineers and Staff Engineers/Managers, 13.1% of Staff Engineers and Staff

Engineers/Managers, 16.9% of Senior Engineers, and 18.2% of Engineers in this job family.

**Common Pay and Promotion Policies**

37.    Qualcomm maintains uniform policies and practices with respect to pay and promotions. Qualcomm also cultivates and promotes a common, male-dominated corporate culture. These polices, practices and culture originate in Qualcomm's headquarters in San Diego and are disseminated throughout its branches using common media and methods.

38.    Qualcomm discriminates against Plaintiffs and members of the classes and/or collective with respect to promotions and pay.  Qualcomm also engages in caregiver discrimination against employees affected by pregnancy, and the infringement upon protected leave under California law through the use of these policies and its common discriminatory culture.

39.    **Qualcomm's Common Levelling System**: Qualcomm uses three categories to describe an employee's role: job families, job codes, and rewards groups.  Employees within each rewards group perform equal or substantially similar work to one another.

a)    **Job families** correspond to the discipline and subject matter area on which an employee works.  Some examples of job families are Engineering Operations and Engineer-Sys (short for "systems").

b)    Qualcomm's compensation team assigns every position at Qualcomm to a unique 4-digit **job code** based on the position's role, responsibilities, and scope. Every job title within every job family has its own unique job code.  Employees in other job families may have similar titles, such as "Engineer" and similar qualifications and experience, and perform similar functions requiring the same or equal levels of skill, effort, and responsibility, but their corresponding job codes differ.

c)    **Rewards groups** are Qualcomm's levelling system that reaches across job families.  A rewards group contains groupings of job codes pertaining to positions that entail equal work, involving equal levels of skill, effort and responsibility

and substantially similar work when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions. For example, employees without substantial management responsibilities who hold the title "Engineer, Senior" in many job families, including Hardware, Software, and ASICS, are in rewards group R30, Professional, Senior, Level 3. It is also common for women assigned to lower-paying rewards groups to perform equal work to that performed by men in higher ranking rewards groups.

40. **Qualcomm's Common Promotion Policies:** Qualcomm's promotions system discriminates against women through the use of common policies and procedures including:

a) Qualcomm makes promotion decisions at the end of each Total Rewards Review cycle, which occurs semi-annually or annually.

b) Promotions are not based on the availability of open positions, but rather are granted in recognition of the individuals' subjectively perceived accomplishments and capacity to assume the higher role. As a general rule, Qualcomm does not post open positions eligible to be filled via promotions from the types of roles held by Plaintiffs, Class Members, and Collective Action Plaintiffs.

c) Rather promotions are based on a sponsorship model, whereby managers must select the subordinates they wish to promote. There is no system whereby an employee may self-nominate for a promotion, with the exception of lobbying her manager. The overwhelming majority of managers making promotion decisions are male.

d) Managerial sponsorship is also necessary for gaining access to a number of career enhancing opportunities that help employees qualify for promotions. For instance, many technical trainings and networking opportunities require managerial approval. Managers often withhold approval from female employees, thus depriving them of these critical opportunities for professional development.

e) This system discriminates against and disparately impacts women by

denying them promotions and promoting them less often and more slowly than less or equally qualified men.  This impact is apparent in the dwindling proportion of women at each successive level of Qualcomm's corporate hierarchy.

41.  **Qualcomm's Common Ratings Systems**: Qualcomm maintains a rating system that disparately impacts and promotes a pattern and practice of discrimination against women in ratings.

a)  Qualcomm uses a series of numerical ratings systems to determine the amount of an employee's stock and/or bonus awards.  Based on these policies, employees receive a performance rating, a bonus rating, and a stock rating at the end of each review cycle ("TRR cycle").

b)  Under this system, managers assign employees a rating ranging from 1 through 7 or from 1 through 5, with 1 being the lowest rating.  Managers are instructed to base ratings upon a rubric that matches criteria such as skills and performance with numerical scores.  There are separate rubrics for performance, bonus, and stock ratings. The rubrics base scores overwhelmingly on qualitative, rather than quantitative measures of success in each category.

c)  Upon information and belief, this system encourages the use of force-stacked rankings to determine ratings, reliance upon subjective factors to determine ratings, and reliance upon factors other than employee performance in assessing stock and bonus ratings.

d)  As a result, Class Members and Collective Action Plaintiffs receive lower performance, stock, and bonus scores than their male colleagues performing equally or worse.

42.  **Qualcomm's Common Compensation System**:   Qualcomm's Compensation system discriminates against women through the use of common policies and procedures including:

a)  Qualcomm pays class members through a combination of salary and incentive compensation, comprising predominantly stock and bonuses.

b)      Qualcomm's system of setting base salaries discriminates against women.  Salaries are set by job code, with an eye to the market rate and internal assessments for that position.  This salary rate is permitted to vary person-to-person.  Qualcomm also relies on managers' and HR's subjective judgment in setting salaries and titles.  Upon information and belief, women in the same rewards groups and job codes start with lower average salaries than their male counterparts in the same job codes and rewards groups.

c)      Qualcomm's system of setting stock and bonuses replicates discrimination in the ratings system, base salary, and promotions system.  Bonus and stock awards are directly determined by an employee's stock and bonus ratings and position.  Because women consistently receive lower ratings than men, they receive lower stock and bonus awards than men and/or lower incentive compensation within predetermined ranges.

d)      This compensation system discriminates against and disparately impacts women by basing compensation upon the tainted ratings and promotions systems; relying upon specious distinctions between employees performing substantially similar or equal work; basing pay upon discriminatory factors, including discrimination against women in the marketplace of jobs; and exacerbating the impact of gender-based differences in pay and position.

43.      **Qualcomm's Common Policies Affecting Caregivers:**  Qualcomm maintains common policies with respect to caregivers and protected leave to care for a newborn, child, adopted child, or foster child.

a)      Qualcomm maintains a policy that encourages managers to prohibit, impede, and interfere with protected leave under California law and protected part-time schedules and flexible workweeks.  This includes an unwritten policy of 24-7 availability, whereby employees are expected to be responsive and able to work at all times.

b)      Qualcomm requires proration of pay for employees on part-time or flex-time schedules.  This policy applies without consideration of the quality of quantity

of the work the employee produces.  As a result, employees on flex-time schedules are paid less than equally performing full-time employees.

      c)    Qualcomm maintains an unwritten policy of prorating the performance, stock, and bonus ratings of employees on flex-time schedules related to the care of children.

      d)    Qualcomm maintains an unwritten policy of disparately rewarding employees who work late into the night over employees who choose to arrive early and leave at the end of a normal work-day.  This policy disparately impacts and causes the Company to undervalue caregivers of school-aged children.

      e)    These common policies stigmatize employees with caregiving responsibilities and disproportionately penalize women.

## V.   PLAINTIFFS

44.   **Plaintiff Dandan Pan** ("Ms. Pan")

      a)    Ms. Pan graduated in 1992 from Zhejiang University in China.  In 1993 she enrolled in a Masters of Arts Program at the University of Michigan, Ann Arbor, and in 1996 she received her Master of Science in Consumer Economics from Cornell University.

      b)    After joining Qualcomm as a Market Analyst in 1993, Ms. Pan worked her way up Qualcomm's ranks.  She was promoted to Program Director in 2003 while working in China, where she led a major international collaborative initiative that was largely responsible for opening the Chinese market to Qualcomm.  She was promoted to Director of Project Management in 2003, making her a key leader for the QCT software program management team.

      c)    Ms. Pan went on to lead several major projects and to continue earning high ratings in her semi-annual performance reviews.  From 2012 to 2014, Ms. Pan worked as Director of Project Management in QCT's Project Manager (PRJMGR) job family and was in the M50 rewards group.  In 2015, she worked as Director of Engineering Operations in QCT's Engineering Operations (ENGOPS) job family, also in

the M50 rewards group.  Ms. Pan was laid off in November of 2015.

d)     Through her accomplishments and leadership at Qualcomm, Ms. Pan established herself as a role model and mentor for women working in the Company and in STEM at large.

e)     Despite Ms. Pan's exemplary performance, Qualcomm discriminated against Ms. Pan based on her gender and caregiving responsibilities.

f)     Qualcomm paid Ms. Pan less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility. She received one raise in October of 2011 of approximately 6 percent, and after that she received the minimum 1 to 1.8 percent raise every year.  Upon information and belief, Ms. Pan's lower performing male peers received higher compensation for performing equal work.

g)     Qualcomm promoted Ms. Pan less frequently than her substantially less qualified male peers.  Despite leading several major projects, earning stellar ratings in her semi-annual performance evaluations, and repeatedly expressing interest in being promoted, Ms. Pan's last promotion was in 2003.  In the elapsed time, she saw numerous less qualified male peers receive promotions.

h)     As a working mother, Ms. Pan was also subjected to adverse and disparate terms and conditions of employment, and deprived of her rights to take protected leave to care for children.

45.  **Plaintiff Carrie Haluza** ("Ms. Haluza")

a)     Ms. Haluza graduated from the University of New Mexico in 1988 with a Bachelor's of Science degree in Electrical Engineering.  She then graduated with a Master's of Engineering Degree in Electrical Engineering in 1990 from Cornell University.

b)     Since joining Qualcomm in 1998 as a Senior Engineer, Ms. Haluza has consistently demonstrated her extraordinary work ethic.  She was promoted to Senior

Engineer in February 1999, Staff Engineer in October 2000, Senior Staff in October 2002, and Director of Engineering in October 2007.

c)      Since 2012, Ms. Haluza has worked in QCT's Software Tester (SWTST) job family and in the T70 rewards group.  Today, Ms. Haluza continues to work at Qualcomm as a Director of Engineering, leading a large team of engineers on a number of complex projects.

d)      As the sole income earner and provider for her family, Ms. Haluza has tirelessly worked her way to a Director level position at Qualcomm.  Throughout her ascent through Qualcomm's ranks, Ms. Haluza made an effort to mentor young women throughout all levels of the Company while directing complex projects and taking care of her family.

e)      Despite her success, Qualcomm discriminated against Ms. Haluza based on her gender and caregiving responsibilities.

f)      Qualcomm paid Ms. Haluza less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility.

g)      Qualcomm promoted Ms. Haluza less frequently than her substantially less qualified male peers.  Despite numerous accolades and stellar performance, the last promotion she received was to Director in 2007.  Since then, many of her male counterparts have been promoted over her.  As Director she hoped to be tapped on the shoulder for a promotion, but was discouraged from actively seeking a promotion.

h)      As a working mother, Ms. Haluza was also subjected to adverse and disparate terms and conditions of employment.

46.     **Plaintiff Carolina Dealy** ("Ms. Dealy")

a)      Ms. Dealy graduated from the University of Liverpool in 1986 with a Bachelor's of Science in Mathematics.  She graduated with a Master's in Mathematics

from the University of California, San Diego in 1988.

b)     Since joining Qualcomm in 1997, Ms. Dealy has risen through the ranks.  She was hired as an engineer in the Global Star Systems Organization, and was promoted to Senior Engineer during the fall of the same year.  In 1998, she was promoted to Staff Engineer, and in the spring of 1999, she was transferred to QCT where she worked in software development.  In 2007, she was promoted to Senior Staff Engineer, and in 2013, she was promoted to her final position as Principal Engineer.

c)     From 2012 to 2015, Ms. Dealy worked in QCT in the Software Engineer (SW) job family and in both the R60 and R50 rewards groups.

d)     Ms. Dealy's employment ended in January 2015, when she left the company as a result of the discrimination she experienced.

e)     Throughout her time at Qualcomm, she spent years balancing her schedules as a high level engineer and a full time mother.  Ms. Dealy quickly rose through the ranks, beginning as a lower level engineer and ending as a high level Principal Engineer with a large team of direct reports.

f)     Despite her qualifications, Qualcomm discriminated against Ms. Dealy based on her gender and caregiving responsibilities.

g)     Qualcomm paid Ms. Dealy less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility.  Qualcomm prorated Ms. Dealy's pay after reducing her hours to accommodate her caregiver needs, resulting in an overall reduction in her pay.  Despite the part-time schedule, Ms. Dealy was as productive as many full-time employees.  Moreover, Ms. Dealy began receiving unjustified low ratings, which adversely impacted her already prorated stock, bonus awards, and career growth.

h)     Qualcomm promoted Ms. Dealy less frequently than her substantially less qualified male peers.

i)     As a working mother, Ms. Dealy was also subjected to adverse and

disparate terms and conditions of employment.  Ms. Dealy's performance ratings dropped after she requested to change her schedule to a 30-hour work week, in part so that she could take care of her three school aged children.   She was denied numerous opportunities for promotion as a result of this discrimination.

47.   **Plaintiff Laura Paquin** ("Ms. Paquin")

a)   In 1983, Ms. Paquin graduated from the University of Colorado at Boulder with a degree in Chemical Engineering.  In 1992, she received a Masters of Engineering in Engineering Management from the University of Colorado at Boulder.

b)   In 1997, Ms. Paquin joined the Qualcomm office in Boulder as a Senior Program Manager, bringing with her over a decade of engineering and leadership experience in the telecommunications and computer industries.   Ms. Paquin was successful from the very beginning and received consistently high ratings in her evaluations.  After her promotion to Program Director in 2000, Ms. Paquin oversaw the Boulder office's performance as it grew from approximately 100 employees in 2000, to over 500 in 2013.  She also led and managed numerous high visibility projects.

c)   From 2012 to 2015, Ms. Paquin was a Director of Program Management in QCT's Program Manager (PRGMMGR) job family and was in the M50 rewards group.

d)   Despite Ms. Paquin's important contributions to the Company, Qualcomm discriminated against her based on her gender and caregiving responsibilities.

e)   Qualcomm paid Ms. Paquin less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility.

f)   Qualcomm promoted Ms. Paquin less frequently than her substantially less qualified male peers.  Though Ms. Paquin joined Qualcomm with over a decade of relevant experience, she was promoted only once during her 18 years there.

g)   As a working mother, Ms. Paquin was also subjected to adverse and

disparate terms and conditions of employment.

48. **Plaintiff Wei Shi** ("Ms. Shi")

a) Ms. Shi graduated from Huazhong Science and Technology University in 1984 with a Bachelor's of Science degree in Automatic Control Engineering. In 2001 she received a Ph.D. in Electrical Engineering Communications from the University of California, Los Angeles.

b) In 2001 Ms. Shi was hired as Senior Engineer in Qualcomm's General Research and Development department. In 2006, she was promoted to Staff Engineer in Qualcomm's General Research and Development department. Ms. Shi's peers recognized her skills and abilities and sought her advice, but her male supervisors often criticized her more harshly than her male colleagues and held her work to a higher standard.

c) From 2012 to 2015, Ms. Shi worked as a Staff Engineer in QCS's Systems Engineer (SYS) job family, and was in the R40 rewards group.

d) Ms. Shi was laid off in November 2015.

e) Qualcomm discriminated against Ms. Shi based on her gender and caregiving responsibilities.

f) Qualcomm paid Ms. Shi less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility. From May 2011 through the end of her employment, Ms. Shi's ratings were so low that she did not receive any stock awards.

g) Qualcomm promoted Ms. Shi less frequently than her substantially less qualified male peers. She was promoted only once during her 14 years of working at Qualcomm.

h) As a working mother, Ms. Shi was also subjected to adverse and disparate terms and conditions of employment.

\\

CLASS ACTION COMPLAINT                16

49.    **Plaintiff Blanche Matulich** ("Ms. Matulich")

a)    Ms. Matulich received a Bachelor of Arts in Industrial Education from California State University, Long Beach.   She received a Master's and Secondary Teaching Credential in Industrial and Technology Education from California State University, Long Beach.

b)    Ms. Matulich had an interest in working in STEM early in her career. After beginning her career in technology education, she joined Qualcomm to gain hands-on experience in the technology sector.  There, she quickly rose through the ranks.

c)    Ms. Matulich was hired in September 1998 as an Engineering Aide. In April 1999, she was promoted to Senior Engineering Aide, and in May 2001, she was promoted to Associate Engineer.  In February 2000, her job was transferred to Kyocera Wireless Corporation where she worked as a (Software Release) Engineer.  In 2005, she returned to Qualcomm as a Release Engineer.  In 2008, she was promoted to Senior Release Engineer.  In 2014, Qualcomm demoted her to the position of Business Systems Analyst.

d)    From 2012 to 2014, she worked in QCT in the release (RELEAS) and Business Systems Analyst (BUSSYS) job families, and P30 and P40 rewards groups.

e)    Qualcomm discriminated against Ms. Matulich based on her gender and caregiving responsibilities.

f)    Qualcomm paid Ms. Matulich less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility.  Despite her demotion to Business Analyst, Ms. Matulich continued to perform work that entailed the same skill, effort, and responsibility as a release engineer, but her salary dropped by one third.  Upon information and belief, Ms. Matulich's salary was substantially lower than that of men performing equal work.

g)    Qualcomm promoted Ms. Matulich less frequently than her substantially less qualified male peers.  Her last promotion was in 2008.

h)      As a working mother, Ms. Matulich was also subjected to adverse and disparate terms and conditions of employment.

50.     **Plaintiff Connie Jacobson** ("Ms. Jacobson")

a)      In 2011, Ms. Jacobson joined Qualcomm as a Staff Engineer.   In 2012, she was reclassified as a Staff Support Engineer.

b)      From 2012 to 2015, Ms. Jacobson worked as a Staff Support Engineer in QCT's Support Engineer (SUPENG) job family, and was in the P40 rewards group.

c)      While at Qualcomm, Ms. Jacobson defied negative stereotypes about the skill and ability of women in STEM.  With over 35 years of technical experience in the semiconductor industry, her colleagues frequently acknowledged her subject matter expertise and sought out her advice.

d)      Despite Ms. Jacobson's depth of knowledge and experience in her field, Qualcomm discriminated against her based on her gender and caregiving responsibilities.

e)      Ms. Jacobson's managers consistently pressured her to work harder than her male colleagues, regardless of the quality of her work product.

f)      Qualcomm paid Ms. Jacobson less than similarly situated male employees performing equal or substantially similar work when viewed as a composite of skill, effort, and responsibility and requiring similar levels of skill, effort, and responsibility.  From 2012 through the end of her employment, Ms. Jacobson did not receive a bonus.  At no time during her employment did she receive restricted stock units (RSU).  Her less qualified similarly situated male colleagues regularly received RSUs, bonuses, and higher raises.

g)      Qualcomm promoted Ms. Jacobson less frequently than her substantially less qualified male peers.   She was also deprived of development opportunities by only being given in lower-priority and lower-responsibility assignments than less- or equally-qualified men.  This made it difficult to make a case for promotion.

h)      As a working mother, Ms. Jacobson was also subjected to adverse and

disparate terms and conditions of employment.

## VI.   CLASS ACTION ALLEGATIONS

## A.   QUALCOMM ENGAGED IN A COMMMON POLICY, PATTERN AND PRACTICE OF DISCRIMINATION AGAINST THE NATIONWIDE AND CALIFORNIA CLASS.

51.   Class Representatives re-allege and incorporate by reference each and every allegation above.

52.   The Company has subjected female employees to a pattern and practice of systemic unlawful disparate treatment and unlawful disparate impact discrimination comprised of (a) assigning female employees to lower classifications than similarly situated male employees performing the same job duties; (b) paying female employees less than their male counterparts; and (c) denying female employees development, promotion, and advancement opportunities resulting in their relegation to lower classifications and compensation levels; and (d) discriminating against or impinging upon the  leave protected under California law.

53.   These problems affecting pay, promotion, and assignments are systemic and Company-wide. They stem from the Company's common employment policies, practices, and procedures, including Qualcomm's job assignment, levelling, banding, development, career progression, promotion, evaluations, personnel management, and compensation policies, practices, and procedures. Such policies, practices, and procedures are not valid, job-related, or justified by business necessity and all suffer from: a lack of transparency; inadequate quality standards and controls; insufficient implementation metrics; insufficient review by Human Resources; and inadequate opportunities for redress or challenge.  As a result, employees are assigned, evaluated, compensated, developed and promoted within a system that is insufficiently designed, articulated, explained, or implemented to consistently, reliably, or equitably manage or reward employees.

54.   These problems affecting pay and promotion also stem from centralized

decision-making by the Company's compact and predominately male senior leadership team, which maintains centralized control over employees' terms and conditions of employment and is responsible for formulating, reviewing, and approving the acts, policies, and practices that result in the systemic unlawful disparate treatment and unlawful disparate impact disparate impact of female employees in pay, promotion, and assignments

### B.   CLASS DEFINITIONS

55.   Class Representatives seek to maintain claims on their own behalf and on behalf of Classes of similarly situated female employees

56.   "**Nationwide Class (Excluding California)**" means women employed in a Covered Position by Qualcomm Incorporated and its current and former subsidiaries and affiliated entities as regular employees in the United States (but not in the state of California) at any time on or after December 26, 2014.

57.   "**California Class**" means women who were paid for working in California in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities, at any time on or after December 4, 2011.

58.   "**Covered Position**," as used in the class and collective action definitions, means either (a) a salaried exempt position in the job codes/job families listed in Appendix 1 (Exhibit A hereto) below the level of "Vice President" (also referred to as "VP"); or (b) a non-exempt position in the job codes/job families listed in Appendix 2 (Exhibit B hereto) in the United States.  "Covered Position" does not include in (a) and (b) above (i) individuals currently or formerly employed as interns, temporary workers or contract workers by Qualcomm or by any contractor of Qualcomm; (ii) individuals currently or formerly employed by or at Gimbal after it was no longer a wholly-owned subsidiary of Qualcomm; or (iii) individuals currently or formerly employed in the following job families in any exempt or non-exempt position:  ADMSVC, AIRMNT, ANREL, ASSIST, BENFIT, BLDGSV, BUSCMP, CEO, CFO, CMPLNC, COMAFF,

COMPEN, COPYWR, CTO, CTRADM, CTRATT, DATANL (QCS), DIVCNS, EECOMM, EMPREL, ENG, ENVHLT, ENVREG, ERSPEC, EVENT, EXEC, EXEMGT, FAC, FACEE, FACENG, FASUPP, FRAUD, GOVPRP, GVTAFF, HR, HRACRD, HRASST, HRIS, HRMS, HRREP, HRSPEC, INCDIV, INTERN, INVREL, IPLIC, LEARN, LGDATA, LGLADM, LGLANL, LGLAST, LGLCNS, LGSUPP, LIBRAR, ORGDEV, PATAGT, PATATT, PATENG, PAYANL, PAYROL, PILOT, PR, PRES, REGAFF, RELEST, SALES, SECY, STAFF, STKADM, SUBCON, TRAVEL, TRM, VPAGMG, VPGMGR.

59.     Class Representatives and the Classes of Qualcomm's employees that they seek to represent have been subjected to a systemic pattern and practice of gender discrimination in pay and promotion as well as disparate impact gender discrimination in pay and promotion by Defendants.

60.     Because of the Company's systemic pattern and practice of gender discrimination in pay and promotion, Class Representatives and the Classes of Qualcomm's employees that they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, employment benefits, and promotional opportunities, as well as physical and emotional pain and suffering.

61.     Class Representatives and the Classes of Qualcomm's employees that they seek to represent seek to maintain claims on their own behalf and on behalf of the foregoing Classes of similarly situated female employees.  Each Class Representative seeks to represent all of the female employees described above.  The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

### C.     EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

62.     Certification of the foregoing Classes of female employees is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Class Representatives and the respective Classes.  The individual claims of the respective Class Representatives require resolution of the common questions concerning whether the Company has engaged in a systemic pattern

and/or practice of gender and pregnancy discrimination against female employees in pay and promotion, whether it has impinged upon mothers' leave protected under California law, and/or whether its facially neutral policies have an adverse effect on the Classes' pay and promotion. The respective Classes seek remedies to eliminate the adverse effects of such discrimination in pay and promotion.

63. Each Class Representative has standing to seek such relief because of the adverse effects that such discrimination has had on her individually and on similarly situated female employees generally. The Company caused their injuries through its discriminatory policies, practices, and procedures, as well as its disparate treatment of employees who are female.

64. To gain such relief for themselves, as well as for the respective Class members, the respective Class Representatives will first establish the existence of systemic gender discrimination in Qualcomm as the premise for the relief they seek.

65. Without certifying the aforementioned Classes, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the proposed Classes is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed Classes, and the Defendants.

**D.   NUMEROSITY AND IMPRACTICABILITY OF JOINDER**

66. Each Class that the Class Representatives seek to represent is too numerous to make joinder practicable.

67. Upon information and belief, each Class has thousands of potential members.

**E.   COMMON QUESTIONS OF LAW AND FACT**

68. The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to their claims and those of the Classes that they seek to represent.

69.    The common questions of law include: (a) whether the Company has engaged in unlawful, systemic gender discrimination in its job assignment, levelling, banding, development, career progression, promotion, evaluations, personnel management, protected leave under California law, and compensation policies, practices, and procedures; (b) whether the failure to institute adequate standards, quality controls, implementation metrics, or oversight in job assignment, levelling, banding, development, career progression, promotion, evaluations, personnel management, and compensation policies, practices, and procedures violates Title VII, the FEHA, and the California Equal Pay Act; (c) whether the lack of transparency and of opportunities for redress in those systems violates Title VII, the FEHA, and the California Equal Pay Act; (d) whether the failure of upper management and HR to prevent, investigate, or properly respond to evidence and complaints of discrimination in job assignment, levelling, banding, development, career progression, promotion, evaluations, personnel management, and compensation policies, practices, and procedures violates Title VII, the FEHA, and the California Equal Pay Act; (e) whether Defendants are liable for a continuing systemic violation of Title VII, the FEHA, and the California Equal Pay Act; (f) a determination of the proper standards for proving a pattern or practice of discrimination by the Company against its female employees under the disparate treatment theory of liability; and (g) a determination of the proper standard for proving that facially neutral employment practices in Qualcomm had a disparate impact on each Class.

70.    The common questions of fact include whether the Company has, through its policies, practices, and procedures: (a) used a system of assignments to jobs, compensation grades, and compensation bands that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (b) through the use of that system of assignment placed female employees in jobs, compensation grades, and compensation bands lower than similarly situated male employees; (c) systemically, intentionally, or knowingly placed female employees in jobs, compensation grades, and compensation bands lower than similarly situated male

employees; (d) used a compensation system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (e) through the use of that compensation system compensated female employees less than similarly situated male employees in salary, bonus, equity grants, and/or other perquisites; (f) systemically, intentionally, or knowingly compensated female employees less than similarly situated male employees; (g) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (h) through the use of that promotion system precluded or delayed the promotion of female employees into higher jobs traditionally held by male employees; (i) systematically, intentionally, or knowingly precluded or delayed the selection and promotion of female employees into higher-level jobs traditionally held by male employees; (j) used a system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, or opportunities for redress; (k) through the use of that performance evaluation system inaccurately, unfairly, or disparately measured, classified, and compared female and male employee performance; (l) systematically, intentionally, or knowingly subjected female employees to inaccurate, unfair, or discriminatorily critical or lowered performance evaluations; (m) used Human Resources systems that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency, or opportunities for redress; (n) through relying upon and using these systems minimized or ignored evidence of gender discrimination in pay and promotion in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination in pay and promotion brought to the attention of senior management and the Human Resources department; (o) systematically, intentionally, knowingly, or deliberately sowed an indifference to evidence of discrimination in pay, promotion, and assignments or otherwise minimized, ignored, or mishandled evidence of or complaints of gender discrimination in pay, promotion, and assignment.

71.     The employment policies, practices, and procedures to which the Class

Representatives and the respective Classes are subjected are set at the Company's corporate level.  Each policy applies universally within each Class.  These employment policies, practices, and procedures are not unique or limited to any function or business unit; rather, they apply to all function and business units and thus affect Class Representatives and the respective Classes in the same ways regardless of the function or business unit in which they work.

## F.  THE TYPICALITY OF CLAIMS AND RELIEF SOUGHT

72.  The claims of the Class Representatives are typical of the claims of the respective Classes.

73.  Gender discrimination in pay and promotion, discrimination against women affected by pregnancy, and infringement upon the protections of California leave laws pertaining to mothers affects the Class Representatives and all employee Class members in the same or similar ways corresponding to their level within the Company.  Class Representatives and similarly situated female employees were paid less than similarly situated male employees for equal work, were assigned to lower job classifications than similarly situated male employees, were denied promotion and advancement opportunities in favor of similarly situated male employees, experienced discrimination on the basis of pregnancy, and experienced infringement upon their rights under California leave laws to care for an infant.

74.  The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the Class members in this case.

75.  Class Representatives seek the following relief for their individual claims and for those of the members of the proposed Class: (a) a declaratory judgment that Defendants have engaged in systemic gender discrimination against the Class by (1) assigning female employees to lower job titles and classifications than their male counterparts; (2) paying female employees less than their male counterparts; and (3) denying female employees promotion and advancement opportunities in favor of male

employees; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief that effectuates a restructuring of the Company's promotion, training, performance evaluation, banding, compensation, and discipline policies, practices, and procedures; (d) back pay, front pay, and other equitable remedies necessary to make the employees whole from Defendants' discrimination; (e) punitive and nominal damages to prevent and deter Defendants from engaging in similar discriminatory practices in the future; (f) compensatory damages; and (g) attorneys' fees, costs, and expenses.

### G.    ADEQUACY OF REPRESENTATION

76.    The Class Representatives' interests are co-extensive with those of the respective Classes that they seek to represent in this case.  The Class Representatives seek to remedy the Company's discriminatory employment policies, practices, and procedures so that female employees will no longer be prevented from advancing into higher-paying and higher-ranked positions within Qualcomm.

77.    The respective Class Representatives are willing and able to represent the respective Classes fairly and vigorously as they pursue their claims in this action.

78.    Class Representatives have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience, and resources of counsel to litigate competently the Class claims at issue in this case satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

### H.    REQUIREMENTS OF RULE 23(B)(3)

79.    The common issues of fact and law affecting the claims of the respective Class Representatives and proposed Class members, including, but not limited to, the common issues previously identified herein, predominate over any issues affecting only individual claims.  These common issues include whether the Company has engaged in gender discrimination against female employees by (a) assigning female employees to lower job titles, rewards groups, job codes, and classifications than their male

counterparts; (b) paying female employees less than their male counterparts; (c) denying female employees promotion and advancement opportunities in favor of male employees; and (d) discriminating against women affected by pregnancy and infringing upon protected leave to care for children under California law.

80. A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the respective Classes.

81. The cost of proving the patterns and practices of discrimination by Defendants makes it impracticable for the Class Representatives and members of the respective Classes to prosecute their claims individually.

82. By virtue of the pattern and practice of discrimination in Qualcomm, the Class Representatives and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including back pay, front pay, compensatory damages, and nominal and punitive damages

## VII. **COLLECTIVE ACTION ALLEGATIONS**

83. The Company has engaged in systemic gender discrimination in pay against its female employees. The Company has caused, contributed to, and perpetuated gender-based pay disparities through common policies, practices, and procedures, including but not limited to common compensation and performance management policies, and centralized decision-making.

84. All of the Plaintiffs in this action seek to be appointed as representatives of the Collective Action.

85. Each Collective Action Representative brings collective claims alleging violations of the Equal Pay Act of 1963 ("EPA") as a collective action pursuant to 29 U.S.C. § 216(b). Each Collective Action Representative seeks to represent all similarly situated employees described above who were paid less than male employees for doing similar work. The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

86.   "**Collective Action Plaintiffs**" means all women employed in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities in the United States at any time on or after December 4, 2012.

87.   Questions of law and fact common to each Collective Action Representative and the respective Collective that she seeks to represent include but are not limited to the following:

a)   Whether members of the Collective were subjected to an unlawful common policy that resulted in unequal pay for equal work;

b)   Whether Defendants unlawfully failed and continue to fail to compensate members of the Collective at a level commensurate with similarly situated male employees;

c)   Whether Defendants' policy, practice, or procedure of failing to compensate members of the Collective at levels commensurate with comparable male employees violates applicable provisions of the EPA;

d)   Whether Defendants' failure to compensate members of the Collective at a level commensurate with comparable male employees was willful within the meaning of the EPA.

88.   Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by the Collective Action Representatives, because their claims are similar to the claims of the Collectives that they seek to represent.

89.   The Collective Action Representatives and the respective Collectives that they seek to represent (a) are similarly situated and (b) are subjected to Defendants' common compensation policies, practices, and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate members of the Collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions.

# VIII.  PAGA ALLEGATIONS

90.     Qualcomm has violated Plaintiffs' rights under the California Labor Code, including the California Equal Pay Act, Section 1197.5.

91.     Plaintiffs seek to represent and to recover civil penalties on behalf of other similarly aggrieved individuals.

92.     "**Other similarly aggrieved individuals**" means women who were paid for working in California in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities, at any time on or after December 4, 2014.

# IX.  COUNTS

## COUNT 1

### GENDER DISCRIMINATION – PAY AND PROMOTIONS

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.)**

**(On Behalf of All Class Representatives, in their Individual and Representative Capacities, and the Nationwide and California Classes Against All Defendants)**

93.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

94.     This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all members of the Nationwide and California Classes.

95.     Defendants have discriminated against the Plaintiffs and the Nationwide Class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*., as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment on the basis of their gender, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

96.     Defendants have engaged in an intentional, company-wide and systemic policy, pattern, and/or practice of discrimination against Plaintiffs and the Nationwide and California Classes by, among other things: maintaining a discriminatory system of

determining salaries, stock awards, bonuses, and other compensation incentives; maintaining discriminatory performance, stock, and bonus ratings systems, including the use of stacked rankings and a policy of permitting and encouraging the use of bonus and stock ratings to vary the compensation for similarly-performing individuals; discrimination in assignments; maintaining a discriminatory system of performance evaluations; maintaining a discriminatory system for promotions, which includes a policy of not posting open positions available to candidates for promotions; maintaining a discriminatory system of compensation levelling based on job codes and rewards groups; systemically discriminating against women in assignment to job codes, rewards groups and titles; and other forms of discrimination.

97.    These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Plaintiffs and the members of the Nationwide and California Classes with respect to the terms and conditions of their employment.

98.    As a result of this disparate treatment and disparate impact discrimination, Defendants have treated Plaintiffs and the Nationwide and California Classes differently from and less preferentially than similarly-situated male employees with respect to compensation, raises, job assignments, job code placement, rewards group placement, demotions, and promotions.

99.    Defendants have failed to prevent, to respond to, to investigate adequately, and/or to appropriately resolve this gender discrimination.

100.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and all members of the Nationwide and California Classes, entitling the Class Representatives and all members of the class to punitive damages.

101.    As a result of Defendants' conduct alleged in this Complaint, the Class Representatives and the members of the Nationwide and California Classes have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as non-economic

1    damages.

2        102.   By reason of the continuous nature of Defendants' discriminatory conduct,

3    which persisted throughout the employment of the Class Representatives and the

4    members of the Nationwide and California Classes, the continuing violations doctrine

5    applies to all violations alleged herein.

6        103.   By reason of Defendants' discrimination, the Class Representatives and the

7    members of the class are entitled to all legal and equitable remedies available for

8    violations of Title VII, including reinstatement and an award of compensatory and

9    punitive damages.   Attorneys' fees and costs should be awarded under 42 U.S.C. §

10   2000e-5(k).

11                                    <u>**COUNT 2**</u>

12                          **PREGNANCY DISCRIMINATION**

13         **(Title VII of the Civil Rights Act of 1964, *as amended by* the Pregnancy**

14                 **Discrimination Act, 42 U.S.C. § 2000e(k), *et seq.*)**

15       **(On Behalf of Class Representatives, in their Individual and Representative**

16   **Capacities, and the Nationwide and California Classes Against All Defendants)**

17       104.   Plaintiffs re-allege and incorporate by reference each and every allegation

18   contained in the previous paragraphs of this Complaint as if fully set forth herein.

19       105.   This Count is brought on behalf of all Plaintiffs in their individual and

20   representative capacities, and all members of the Nationwide and California Classes.

21       106.   Defendants have discriminated against workers affected by pregnancy

22   including by engaging in intentional disparate treatment, and by maintaining uniform

23   policies and practices that have an adverse, disparate impact on them.

24       107.   Defendants discriminated against the Class Representatives and the

25   members of the Nationwide and California Classes because of or on the basis of

26   pregnancy, childbirth, or related medical conditions in violation of the Pregnancy

27   Discrimination Act, 42 U.S.C. § 2000e(k).

28       108.   Defendants have engaged in an intentional, company-wide and systemic

policy, pattern, and/or practice of discrimination against Plaintiffs and the Nationwide and California Classes by systemically subjecting pregnant Class Representatives and Members of the Nationwide and California Classes to terms and conditions of employment that were inferior to those experienced by other persons not so affected but similar in their ability or inability to work.

109.   Defendants' foregoing policies, practices, and/or procedures have produced a disparate impact on the Plaintiffs and members of the Nationwide and California Classes with respect to the terms and conditions of their employment.

110.   Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, in bad faith, and conducted in callous disregard of the rights of Class Representatives, members of the Nationwide and California Classes, and Collective Action Plaintiffs.

111.   As a direct and proximate result of Defendants' aforementioned conduct, Class Representatives and all members of the class were damaged and suffered economic losses and non-economic damages.

112.   By reason of the continuous nature of Defendants' discriminatory conduct, persistent throughout the employment of Class Representatives and members of the Nationwide and California Classes, the continuing violation doctrine applies to all of the violations alleged herein.

113.   By reason of the pregnancy discrimination suffered as a result of Defendant's discriminatory conduct, Plaintiffs and members of the class are entitled to legal and equitable remedies available under Title VII, including an award of compensatory and punitive damages.  Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

\\

\\

\\

## COUNT 3

### DENIAL OF EQUAL PAY FOR EQUAL WORK

**(The Fair Labor Standards Act of 1938, *as amended by* The Equal Pay Act, 29 U.S.C. §§ 206, *et seq.*)**

**(On Behalf of All Class Representatives, in their Individual and Representative Capacities and the Collective Action Plaintiffs Against All Defendants)**

114.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

115.    This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all Collective Action Plaintiffs.

116.    Defendants have discriminated against the Class Representatives and Collective Action Plaintiffs in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the Equal Pay Act of 1963 ("EPA").  Defendants have paid Class Representatives and Collective Action Plaintiffs less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

117.    Defendants subjected the Class Representatives and the Collective Action Plaintiffs to common discriminatory pay policies, including: a discriminatory system of determining salaries, stock awards, bonuses, and other compensation incentives; discriminatory performance, stock, and bonus ratings systems, including the use of stacked rankings and a policy of permitting and encouraging the use of bonus and stock ratings to vary the compensation for similarly-performing individuals; a discriminatory system for promotions, which results in workers performing the same tasks receiving different titles, job codes, rewards groups and compensation; a discriminatory system of compensation levelling based on job codes and rewards groups; discriminating against women in assignment to job codes, rewards groups and titles, which results in women receiving lower base and incentive compensation; and other forms of discrimination

affecting pay.

118.   The differential in pay between male and female employees was not due to seniority, merit, quantity, or quality of production, but was due to gender.

119.   Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA. Moreover, the foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).   Because Defendants have willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

120.   As a result of Defendants' conduct alleged in this Complaint, Class Representatives and all Collective Action Plaintiffs have suffered and will continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

121.   By reason of Defendants' discrimination, Class Representatives and all Collective Action Plaintiffs are entitled to all legal and equitable remedies available for violations of the EPA including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b). Attorneys' fees should be awarded under 29 U.S.C. § 216(b).

## COUNT 4

**GENDER DISCRIMINATION – PAY AND PROMOTIONS**

**(California Fair Employment and Housing Act, Cal. Gov. Code § 12940, *et seq*.)**

**(On Behalf of All Class Representatives, in their Individual and Representative Capacities, and the California Class Against All Defendants)**

122.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

123.   This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all members of the California Class.

124.   Defendants have discriminated against Plaintiffs and the California Class in violation of the California Fair Employment and Housing Act (the "FEHA"), Cal. Gov't

Code § 12940, *et seq*., by subjecting them to different treatment because and on the basis of their gender, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

125.   Defendants have engaged in an intentional, company-wide and systemic policy, pattern, and/or practice of discrimination against Plaintiffs and the Nationwide and California Class by, among other things: maintaining a discriminatory system of determining salaries, stock awards, bonuses, and other compensation incentives; maintaining discriminatory performance, stock, and bonus ratings systems, including the use of stacked rankings and a policy of permitting and encouraging the use of bonus and stock ratings to vary the compensation for similarly-performing individuals; discrimination in assignments; maintaining a discriminatory system of performance evaluations; maintaining a discriminatory system for promotions, which includes a policy of not posting open positions available to candidates for promotions; maintaining a discriminatory system of compensation levelling based on job codes and rewards groups; systemically discriminating against women in assignment to job codes, rewards groups and titles; and other forms of discrimination.

126.   These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Plaintiffs and the members of the California Class with respect to the terms and conditions of their employment.

127.   As a result of this disparate treatment and disparate impact discrimination, Defendants have treated Plaintiffs and California Class differently from and less preferentially than similarly-situated male employees with respect to compensation, raises, job assignments, job code placement, rewards group placement, demotions, and promotions.

128.   Defendants have failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

129.   Defendants' conduct has been intentional, deliberate, willful, malicious,

reckless, and conducted in callous disregard of the rights of the Class Representatives and all members of the Nationwide and California Classes, entitling the Class Representatives and all members of the Nationwide and California Classes to punitive damages.

130.   As a result of Defendants' conduct alleged in this Complaint, the Class Representatives and the members of the California Class have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as non-economic damages.

131.   By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout the employment of the Class Representatives and the members of the California Class, the continuing violations doctrine applies to all violations alleged herein.

132.   By reason of Defendants' discrimination, the Class Representatives and the members of the California Class are entitled to all legal and equitable remedies available for violations of the FEHA, including reinstatement and an award of compensatory and punitive damages.

133.   Attorneys' fees should be awarded under Cal. Gov't Code § 12940.

## COUNT 5

**PREGNANCY AND FAMILY RESPONSIBILITIES DISCRIMINATION**

**(California Fair Employment and Housing Act, Cal. Gov. Code § 12940, *et seq*., including the California Pregnancy Disability Leave Law, Cal. Gov. Code § 12945, *et seq*., and the California Family Rights Act, Cal. Gov. Code § 12940, *et seq*.)**

**(On Behalf of Class Representatives, in their Individual and Representative Capacities, and the California Class Against All Defendants)**

134.   Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

135.   This Count is brought on behalf of Plaintiffs, in their individual and representative capacities, and all members of the California Classes.

136.   Defendants have discriminated against workers affected by pregnancy and

have interfered with the use of protected leave to care for children, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

137. Defendants discriminated against the Class Representatives and the members of the California Class because of or on the basis of pregnancy, childbirth, or related medical conditions in violation of the FEHA, Cal. Gov. Code §12940 *et seq.*, including the California Pregnancy Disability Leave Law, Cal. Gov. Code § 12945.

138. Defendants have engaged in an intentional, company-wide and systemic policy, pattern, and/or practice of discrimination against Plaintiffs and the California Class by systemically subjecting pregnant Class Representatives and Members of the Nationwide and California Classes to terms and conditions of employment that were inferior to those experienced by other persons not so affected but similar in their ability or inability to work.

139. Defendants have also engaged in an intentional, company-wide and systemic policy, pattern, and/or practice of interference with the rights of Plaintiffs and members of the California Classes to take leave to care for a newborn, child, adopted child, or foster child, in violation of the FEHA, Cal. Gov. Code §12940 *et seq.*, including the California Pregnancy Disability Leave Law, Cal. Gov. Code § 12945, *et seq.*, and the California Family Rights Act, Cal. Gov. Code § 12940, *et seq.*, by maintaining a practice of denying, discouraging, or impinging upon these protected leaves.

140. Defendants' foregoing policies, practices, and/or procedures have produced a disparate impact on the Plaintiffs and members of the California Class with respect to the terms and conditions of their employment.

141. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and all members of the California Class, entitling the Class Representatives and all members of the California Class to punitive damages.

142. By reason of the continuous nature of Defendants' discriminatory conduct,

which persisted throughout the employment of the Class Representatives and the members of the California Class, the continuing violations doctrine applies to all violations alleged herein.

143. As a result of Defendants' conduct alleged in this Complaint, the Class Representatives and the members of the California Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as non-economic damages.

144. By reason of Defendants' discrimination, the Class Representatives and the members of the California Class are entitled to all legal and equitable remedies available for violations of the FEHA, including an award of compensatory and punitive damages.

145. Attorneys' fees should be awarded under Cal. Gov't Code § 12940 *et seq*.

<u>**COUNT 6**</u>

**DENIAL OF EQUAL PAY FOR EQUAL & SUBSTANTIALLY SIMILAR WORK**

**(California Equal Pay Act, *as amended by* The California Fair Pay Act, Cal. §1197.5, *et seq.*; California Equal Pay Act, Cal. Lab § 1197.5 (West 2015) (amended 2015))**

**(On Behalf of All the Class Representatives, in their Individual and Representative Capacities, and the California Class Against All Defendants)**

146. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

147. This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all members of the California Class.

148. Defendants have discriminated against the Plaintiffs and all members of the California Class in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 (West 2015) (amended 2015), *et seq*. Defendants have paid Class Representatives and members of the California Class less than similarly-situated male colleagues in the same establishment performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working

1  conditions.

2  149.   Defendants have discriminated against the Plaintiffs and all members of the

3  California Class in violation of the California Equal Pay Act, as amended by the

4  California Fair Pay Act, Cal. Lab. Code § 1197.5 *et seq*.  Defendants have paid Class

5  Representatives and members of the California Class less than similarly-situated male

6  colleagues performing substantially similar work, when viewed as a composite of skill,

7  effort, and responsibility, and performed under similar working conditions.

8  150.   Defendants subjected the Class Representatives and the members of the

9  California Class to common discriminatory pay policies, including: a discriminatory

10  system of determining salaries, stock awards, bonuses, and other compensation

11  incentives; discriminatory performance, stock, and bonus ratings systems, including the

12  use of stacked rankings and a policy of permitting and encouraging the use of bonus and

13  stock ratings to vary the compensation for similarly-performing individuals; a

14  discriminatory system for promotions, which results in workers performing the same

15  tasks receiving different titles, job codes, rewards groups and compensation; a

16  discriminatory system of compensation levelling based on job codes and rewards groups;

17  discriminating against women in assignment to job codes, rewards groups and titles,

18  which results in women receiving lower base and incentive compensation; and other

19  forms of discrimination affecting pay.

20  151.   The differential in pay between male and female employees was not due to

21  seniority, merit, or the quantity or quality of production, a bona fide factor other than sex,

22  such as education, training, or experience, but was due to gender.  In the alternative, to

23  the extent that Defendants' relied upon one or more of these factors, said factor(s) were

24  not reasonably applied and did/do not account for the entire wage differential.

25  152.  Defendants caused, attempted to cause, contributed to, or caused the

26  continuation of, the wage rate discrimination based on sex.  Moreover, the foregoing

27  conduct constitutes a willful violation of the California Equal Pay Act, Cal. Lab. Code §

28  1197.5 (West 2015) (amended 2015), *et seq*., and California Equal Pay Act, as amended

by the California Fair Pay Act, Cal. Lab. Code § 1197.5 *et seq*.  Therefore, a three-year statute of limitations applies to such violations, pursuant to California Equal Pay Act, Cal. Lab. Code § 1197.5(h) (West 2015) (amended 2015), *et seq*., and California Equal Pay Act, as amended by the California Fair Pay Act, Cal. Lab. Code § 1197.5(h).

153.   As a result of Defendants' conduct alleged in this Complaint and/or Defendants' willful, knowing, and intentional discrimination, the Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

154.   The Plaintiffs and the California Collective Action Class are therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

155.   Attorneys' fees should be awarded under California Labor Code § 1197.5(g).

## COUNT 7

## UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE

### California Business and Professions Code § 17200 *et seq*.

### (On Behalf of All Class Representatives, in their Individual and Representative, Capacities, and the California Class Against All Defendants)

156.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

157.   This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all members of the California Class.

158.   Defendants are "persons" as defined under California Business & Professions Code § 17021.

159.   Defendants' willful failure to pay women equally and otherwise to offer women equal employment opportunities as alleged above, constitutes unlawful and/or unfair and/or fraudulent activity prohibited by California Business and Professions Code

§17200.  As a result of their unlawful and/or unfair and/or fraudulent acts, Defendants reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and the California Class.  Defendants should be enjoined from this activity.

160.  Accordingly, Plaintiffs and the California Class members are entitled to restitution with interest and other equitable relief, pursuant to Cal. Bus. & Prof. Code §17203.

**COUNT 8**

**CLAIMS UNDER THE PRIVATE ATTORNEYS GENERAL ACT OF 2004**
**(Cal. Lab. Code §2698 *et seq.*)**

**(On Behalf of All Class Representatives, in their Individual and**
**Representative Capacities, and the PAGA Class Against All Defendants)**

161.  Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

162.  Plaintiffs bring this claim in their individual and representative capacities as aggrieved employees on behalf of similarly aggrieved employees in the PAGA Class who are subjected to the violations alleged herein.

163.  The California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §2698, *et seq.*, gives any employee aggrieved by an employer's violation of the Labor Code the right to file an action on behalf of all aggrieved employees for the civil penalties established by Section 2698 and/or other Labor Code sections.

164.  Plaintiffs are aggrieved employees who have been deprived of equal pay, in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 (West 2015) (amended 2015), *et seq.*, and California Equal Pay Act, as amended by the California Fair Pay Act, Cal. Lab. Code § 1197.5 *et seq.*

165.  Accordingly, Plaintiffs are entitled to collect civil penalties on behalf of themselves and others similarly aggrieved against all Defendants as allowed under Cal. Lab. Code §2699(a) and (f) and costs and attorneys' fees under Cal. Lab. Code. §2699(g).
\\

1
2

## X.   PRAYER FOR RELIEF ON INDIVIDUAL, CLASS ACTION, AND COLLECTIVE ACTION CLAIMS

3
4
5

WHEREFORE, the Plaintiffs, Class Representatives and Collective Action Representatives, on their own behalf and on behalf of the respective Classes and Collective Action Plaintiffs, pray that this Court:

6
7
8
9

A.   Certify this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Nationwide Class; designate the proposed Class Representatives as representatives; and designate Plaintiffs' counsel of record as Class Counsel for each Class;

10
11
12
13

B.   Certify this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed California Class; designate the proposed Class Representatives as representatives; and designate Plaintiffs' counsel of record as Class Counsel for each Class;

14
15
16
17
18
19
20
21
22
23

C.   Certify this action as a collective action under the EPA on behalf of the Collective Action Representatives and the Collective; designate the proposed Collective Action Representatives as representatives of the Collective; promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective, which (1) apprises them of the pendency of this action and (2) permits them to assert timely EPA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and toll the statute of limitations on the claims of all members of the Collectives from the date the original Complaint was filed until the Collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Collective Action Plaintiffs;

24
25
26
27

D.   Declare and adjudge that Defendants' employment policies, practices, and/or procedures challenged herein are illegal and in violation of the rights of the respective Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, and Collective Action Plaintiffs;

28

E.   Issue a permanent injunction against Defendants and their partners, officers,

trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, Collective Action Plaintiffs, and those similarly situated as secured by Title VII, and the Equal Pay Act, the FEHA, and the California Equal Pay Act and order such injunctive relief as will prevent Defendants from continuing their discriminatory practices and from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination as set forth herein;

F.     Order Defendants to adjust the wage rates and benefits for the respective Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide Class, and Collective Action Plaintiffs to the level that they would be enjoying but for the Defendants' discriminatory policies, practices, and/or procedures;

G.     Award back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by the Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, and Collective Action Plaintiffs.

H.     Award nominal, compensatory, and punitive damages to Plaintiffs, Class Representatives, and members of the Nationwide Classes;

I.     Award nominal and liquidated damages to Plaintiffs, the Collective Action Representatives, and the Collective Action Plaintiffs in the maximum amount available under the Equal Pay Act;

J.     Order Defendants to make whole the Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, and Collective Action Plaintiffs by providing them with any other monetary and affirmative

K.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to the Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, and Collective

Action Plaintiffs;

L.      Award Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, and Collective Action Plaintiffs, all pre-judgment interest and post-judgment interest available under law;

M.      Award Plaintiffs, Class Representatives, Collective Action Representatives, members of the Nationwide and California Classes, and Collective Action Plaintiffs any other appropriate equitable relief, including reinstatement;

N.      Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law; and

O.      Award additional and further relief as this Court may deem just and proper.

## XI.    JURY DEMANDED

Plaintiffs demand a trial by jury on all issues triable of right by jury.


Dated: July 25, 2016                                Respectfully submitted,


                                                    /s/ Felicia Medina
                                                    David Sanford (*Pro Hac Vice to be filed*)
                                                    Felicia Medina (SBN 255804)
                                                    Ed Chapin (SBN 53287)
                                                    Jill Sanford (SBN 185757)
                                                    Xinying Valerian (SBN 254890)
                                                    Danielle Fuschetti (SBN 294064)
                                                    SANFORD HEISLER, LLP

                                                    *Attorneys for Plaintiffs the Classes,
                                                    and the Collective*