1  David Sanford (DC SBN 457933, *Pro Hac Vice to be filed*)
   dsanford@sanfordheisler.com
2  SANFORD HEISLER, LLP
   1666 Connecticut Ave. NW, Suite 300
3  Washington, DC 20009
   Telephone: (202) 499-5200
4  Facsimile: (202) 499-5199

5  Felicia Medina (SBN 255804)
   fmedina@sanfordheisler.com
6  Xinying Valerian (SBN 254890)
   xvalerian@sanfordheisler.com
7  Danielle Fuschetti (SBN 294064)
   dfuschetti@sanfordheisler.com
8  SANFORD HEISLER, LLP
   111 Sutter Street, Suite 975
9  San Francisco, CA 94104
   Telephone: (415) 795-2020
10 Facsimile: (415) 795-2021

11 Ed Chapin (SBN 53287)
   echapin@sanfordheisler.com
12 Jill Sanford (SBN 185757)
   jsanford@sanfordheisler.com
13 SANFORD HEISLER, LLP
   501 West Broadway, Suite 515
14 San Diego, CA 92101
   Telephone: (619) 577-4253
15 Facsimile: (619) 577-4250

16 *Attorneys for the Plaintiffs, Classes, and Collective*

17              UNITED STATES DISTRICT COURT
18            SOUTHERN DISTRICT OF CALIFORNIA

19 | DANDAN PAN, CARRIE | No. 3:16-cv-01885-JLS-DHB |
   HALUZA, CAROLINA DEALY,
20 LAURA PAQUIN, WEI SHI,          CLASS ACTION
   BLANCHE MATULICH and
21 CONNIE JACOBSON on behalf of
   themselves and all others       **PLAINTIFFS' MEMORANDUM OF**
22 similarly situated,             **LAW IN SUPPORT OF UNOPPOSED**
                                   **MOTION FOR PRELIMINARY**
23        PLAINTIFFS,              **APPROVAL OF CLASS**
                                   **SETTLEMENT**
24 v.

25 QUALCOMM  INCORPORATED          Date: TBD by Court
   &                               Time: TBD by Court
26 QUALCOMM  TECHNOLOGIES,         Dept: 4a
   INC.                            Judge: Hon. Janis L. Sammartino
27
          DEFENDANTS.
28

---

## TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………1

II.     BACKGROUND………………………………………………………..3

        A.      Qualcomm Incorporated & Qualcomm Technologies, Inc. ……..3

        B.      Plaintiffs…………………………………………………………3

        C.      Administrative Exhaustion ……………………………………4

        D.      Plaintiffs' and the Classes' Allegations…………………………5

        E.      Pre-Suit Discovery, Negotiations, and Settlement………………6

        F.      Plaintiffs' Services to the Class…………………………………9

III.    KEY TERMS OF THE SETTLEMENT…………………………………12

        A.      The Classes of Employees Affected By the Settlement…………12

        B.      $19.5 Million Non-Reversionary Settlement Fund ………………14

        C.      Comprehensive Programmatic Relief……………………………14

        D.      Attorneys' Fees and Costs………………………………………15

        E.      Service Awards…………………………………………………16

IV.     ARGUMENT ……………………………………………………………17

        A.      The Standard for Review of a Rule 23 Class Action Settlement…17

        B.      The Court Should Certify the Rule 23 Class for Settlement
                Purposes…………………………………………………………19

                1.      The Requirements of Rule 23(a) Are Satisfied……………19

                2.      The Class Is Sufficiently Numerous to Make Joinder
                        Impracticable……………………………………………...19

                3.      Questions of Law or Fact are Common to the Class………19

                4.      The Class Representatives' Claims Are Typical of Those of
                        the Class…………………………………………………...21

                5.      The Plaintiffs and Their Counsel Will Fairly and Adequately
                        Protect the Class' Interests, Satisfying Rule 23(a)(4) and
                        Rule 23(g). ……………………………………………..22

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

C.  The Requirements of 23(b)(2) and 23(b)(3) Are Satisfied………..25

    1.  The Requirements of Rule 23(b)(2) Are Satisfied. ………..25

    2.  Class Certification is Also Appropriate Under Rule
        23(b)(3). ……………………………………………………...26

        a. Common Issues Predominate…………………………….26

        b. A Class Action is Superior to Alternative Methods of
           Adjudication…………………………………………...27

D.  The Court Should Conditionally Certify the EPA Collective
    Action under 29 U.S.C. § 216(b)………………………………28

E.  The Court Should Preliminarily Approve the Proposed Class
    Settlement……………………………………………………...30

    1.  The Proposed Settlement was the Product of Serious, Arm's-
        Length, Informed Negotiations by Experienced Counsel and
        Is Not Collusive……………………………………………31

    2.  The Proposed Settlement Has No Obvious Deficiencies and
        Does Not Improperly Grant Preferential Treatment to
        Segments of the Class…………………………………..33

        a.  Class Counsel's Attorneys' Fee Request is Reasonable
            and Appropriate…………………………………...34

        b.  The Requested Service Awards Are Reasonable and
            Appropriate……………………………………………...36

    3.  The Proposed Settlement Falls Within the Range of
        Reasonableness …………………………………………...38

        a.  The Proposed Settlement Results in Significant
            Benefits for the Classes……………………………….39

        b.  The Proposed Settlement is Reasonable in Light of the
            Risks, Expense, and Delay Inherent in Continued
            Litigation…………………………………………...40

ii

         **c.**      **The Extent of Discovery and the Stage of Proceedings** .............................................................................41

         **d.**      **The Experience and Views of Counsel**……………44

   **F.**      **The Proposed Class Notice is Appropriate and Should be Approved**……………………………………………………45

   **G.**     **The Court Should Also Preliminarily Approve the Settlement Under the EPA** ………………………………...........................46

   **H.**     **The Court Should Schedule a Fairness Hearing**…………………47

**VI.**   **CONCLUSION**……………………………………………………48

## TABLE OF AUTHORITIES

## CASES

*Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530 (N.D. Cal. 2007) ..............................29

*Aho v. Americredit Fin. Servs.*, 277 F.R.D. 609 (S.D. Cal. 2011) ............................25

*Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241; 11-242, 2012 U.S. Dist.
    LEXIS 6391 (E.D. La. Jan. 18, 2012)......................................................47

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ............................................31

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................26, 28

*Arellano v. Kellermeyer Bldg. Servs., LLC*, No. 13-cv-00533-BAS(BGS), 2014 U.S.
    Dist. LEXIS 168986 (S.D. Cal. Dec. 5, 2014) ........................................45

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .........34

*Barrett v. Forest Labs, Inc.*, No. 12 cv. 5224, 2015 U.S. Dist. LEXIS 117203
    (S.D.N.Y. Sept. 2, 2015) .......................................................................29

*Beck v. Boeing Co.*, No. 00-CV-301P (W.D. Wa. Oct. 8, 2004) ...............................37

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 U.S. Dist. LEXIS
    79679 (S.D.N.Y. Aug. 5, 2010) .................................................21, 24, 27

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ...............42

*Birch v. Office Depot, Inc.*, No. 06cv1690 DMS (WMC), Doc. No. 48
    (S.D. Cal. Sept. 28, 2007) .......................................................................34

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....................32

*Bluetooth Headset Prods. Liab. Litig.*, No. 07-MDL-1822 DSF (Ex),
    2012 U.S. Dist. LEXIS 168324 (C.D. Cal. July 31, 2012) .....................32

*Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-01662 OWW MJS,
    2011 U.S. Dist. LEXIS 6976 (E.D. Cal. Jan. 25, 2011) .........................32

*Borcea v. Carnival Corp.*, 238 F.R.D. 664 (S.D. Fla. 2006) .......................................39

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) ...............................................20

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ...................19

*Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780 (JNE/JJG), 2006 U.S.

iv

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

Dist. LEXIS 67108 (D. Minn. 2006) ..................................................35

*California v. eBay, Inc.*, No. 5:12-cv-5874-EJD, 2014 U.S. Dist. LEXIS 121349,

(N.D. Cal. Aug. 29, 2014) ........................................................17

*Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2011 U.S. Dist. LEXIS 93166

(N.D. Cal 2011) ......................................................................47

*Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-0025-VAP (OPx); EDCV

09-0216-VAP (OPx), 2010 U.S. Dist. LEXIS 55581

(N.D. Cal. May 11, 2010) ........................................................31

*Catala v. Resurgent Capital Servs. L.P.*, No. 08cv2401 NLS,

2010 U.S. Dist. LEXIS 63501 (S.D. Cal. June 22, 2010) ...................40

*Ching v. Siemens Indus.,* No. C 11-4838 MEJ, 2013 U.S. Dist. LEXIS 169279

(N.D. Cal. Nov. 26, 2013) ........................................................27

*Chu v. Wells Fargo Invs. LLC*, Nos. C 05-4526 MHP; C 06-7924 MHP,

2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 16, 2011) ..................40

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ..................30

*Clesceri v. Beach City Instruments & Protective Servs.*, No. CV-10-38730JST

(RZx), 2011 U.S. Dist. LEXIS 11676 (C.D. Cal. Jan. 27, 2011)..............17, 42

*Coates v. Farmers Group, Inc.*, No. 15-CV-01913-LHK,

2015 U.S. Dist. LEXIS 165817 (N.D. Cal. Dec. 9, 2015) ...............29

*Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ...........................34

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......................................41

*Diaz v. E. Locating Serv.*, No. 1:10-cv-4082-JCF, 2010 U.S. Dist. LEXIS 139136,

(S.D.N.Y. Nov. 29, 2010) ........................................................42

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) .......................20

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15 (N.D. Cal. 1980)........................31

*Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-cv-3017 KJM EFB, 2014 U.S. Dist.

LEXIS 113084 (E.D. Cal. Aug. 13, 2014) ............................................39

*Gamble v. Boyd Gaming Corp.*, Nos. 2:13-cv-01009-JCM-PAL; 2:13-cv-01043-

v

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

JCM-PAL; 2:13-cv-01801-JCM-PAL, 2015 U.S. Dist. LEXIS 107279
(D. Nev. Aug. 13, 2015) ...................................................................... 47

*Glass v. UBS Fin. Servs., Inc.,* No. 06-4068, 2007 U.S. Dist. LEXIS 8476
(N.D. Cal. Jan. 26, 2007) ..................................................................... 31

*Gould v. Rosetta Stone, Ltd*., No: C 11-01283 SBA, 2013 U.S. Dist. LEXIS 138921
(N.D. Cal. Sept. 26, 2013) ................................................................... 45

*Grayson v. 7-Eleven, Inc.,* No. 09-CV-1353 MMA (WMc), 2011 U.S. Dist.
LEXIS 62211 (S.D. Cal. 2011) ............................................................ 26

*Gripenstraw v. Blazin' Wings, Inc*., No. 1:12-cv-00233-AWI-SMS, 2013 U.S. Dist.
LEXIS 179214 (E.D. Cal. Dec. 19, 2013) ............................................ 41

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................... 17, 19

*Harris v. Vector Marketing Co.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS
48878 (N.D. Cal. Apr. 29, 2011)......................................................... 2, 30

*Hazelwood School Dist. v. U.S.*, 433 U.S. 299, 307-308 (1977) .............................. 20

*Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419-BEN (NLS), 2014 U.S. Dist.
LEXIS 78477 (S.D. Cal. June 6, 2014)................................................. 28

*Heritage Bond Litig*., 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................ 35

*Hernandez et al. v. C&S Wholesale Grocers, Inc.*, No. 7:06-CV-02675
(S.D.N.Y. 2008) ...................................................................................... 24

*High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist.
LEXIS 118052 (N.D. Cal. Sept. 2, 2015) ............................................ 36, 37

*Hofmann v. Dutch LLC*, No.: 3:14-cv-02418-GPC-JLB, 2016 U.S. Dist. LEXIS
55628 (S.D. Cal. Apr. 26, 2016) .......................................................... 21

*Hosier v. Mattress Firm*, No. 3:10-cv-294-J-32JRK, 2012 U.S. Dist. LEXIS 94958
(M.D. Fla. June 8, 2012) ........................................................................ 36

*Illoldi v. Koi NY LLC*, No: 1:15-cv-6838, 2016 U.S. Dist. LEXIS 71057
(S.D.N.Y. May 31, 2016) ...................................................................... 17

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ........................ 37, 39, 40

*Jarvaise v. Rand Corp.*, 212 F.R.D. 1 (D.D.C. 2002) ................................................ 29

*Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 THE, 2008 U.S. Dist. LEXIS 12208
    (N.D. Cal. Feb. 7, 2008) ...................................................................... 39

*Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ...................................... 41

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) .......................... 19

*Kassman v. KPMG, LLP*, No. 11 Civ. 3743, 2014 U.S. Dist. LEXIS 93022
    (S.D.N.Y. July 8, 2014) ...................................................................... 29

*Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST (MLGx),
    2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) ................................ 44

*Koumoulis v. LPL Fin. Corp.*, No. 09cv1973-DMS (BLM),
    2010 U.S. Dist. LEXIS 124117 (S.D. Cal. Nov. 19, 2010) ........................... 42

*La Parne v. Monex Deposit Co.*, No. SACV 08-0302,
    2010 U.S. Dist. LEXIS 131029 (C.D. Cal. Nov. 29, 2010) ........................... 18

*Lee v. Timberland Co.*, No. C 07-2367 JF, 2008 U.S. Dist. LEXIS 108098
    (N.D. Cal. June 18, 2008) .................................................................. 41

*Leonard v. Baumer*, No. MDL 726, 1989 U.S. Dist. LEXIS 19146
    (C.D. Cal. Mar. 9, 1989) .................................................................... 31

*Lemus v. H&R Block Enters. LLC,* No. C 09-3179 SI,
    2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012) ........................... 37

*Leuthold v. Destination Am.*, 224 F.R.D. 462 (N.D. Cal. 2004) ............................. 29

*Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2007 U.S. Dist. LEXIS
    64869 (N.D. Ohio Aug. 29, 2007) ...................................................... 37

*In re LifeLock, Inc.*, MDL No. 08-1977-MHM, 2010 U.S. Dist. LEXIS 102612
    (D. Ariz. Aug. 25, 2010) .................................................................... 40

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ......................... 38

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD),
    2011 U.S. Dist. LEXIS 144490 (S.D. Cal. Dec. 15, 2011) ........................... 41

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) .................................................................. 26

*Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09cv2268-IEG(BGS), 2010 U.S. Dist. LEXIS 95636 (S.D. Cal. Sept. 13, 2010) ......................................... 26

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv795 IEG RBB, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 6. 2008) .................................. 42

*Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................ 42

*Manouchehri v. Styles for Less, Inc.*, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) ................................................................................. 47

*Martin v. AmeriPride Servs.*, No. 08cv440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796 ................................................................................ 40

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................... 19

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ...................................... 41

*Misra v. Decision One Mortgage Co.*, No. CV 07-994 DOC (RCx), 20009 U.S. Dist. LEXIS 119468 (C.D. Cal. Apr. 13, 2009) ........................... 42

*M.L. Stern Overtime Litig.*, No. 07cv118 BTM (JMA), 2009 U.S. Dist. LEXIS 94671 (S.D. Cal. Oct. 9, 2009) ..................................... 40

*Moshogiannis v. Sec. Consultants Group, Inc.*, No. 5:10-cv-05971 EJD2012, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8, 2012) .................................... 40

*Moore v. Publicis Groupe SA*, 2012 U.S. Dist. LEXIS 92675 (S.D.N.Y. June 28, 2012) .................................................................................. 29

*Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) ................................ 40

*Morey v. Louis Vuitton N. Am., Inc.*, 2014 U.S. Dist. LEXIS 3331 (S.D. Cal. Jan. 9, 2014) ...................................................................................... 39

*Muhammad v. Nat'l City Mortgage*, Civ. No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534 (S.D. W.Va. Dec. 19, 2008) ......................... 42

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ........................... 17

*Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443 (S.D. Tex. 1996) ...................... 18

*Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596 (S.D. Cal. 2010) ............... 26

*Officers for Justice v. Civil Service Comm. of the City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ........................................................................ 17, 38

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) .................................. 46

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................ 34, 35

*Palacios v. Newman Grain Inc.*, No. 1:14-cv-1804-DAD-SAB, 2016 U.S. Dist. LEXIS 70050 (E.D. Cal. May 27, 2016) ................................. 44

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......................................... 26

*Patel v. Axesstel, Inc.*, No.: 3:14-CV-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949 (S.D. Cal. Oct. 23, 2015) ............................. 41

*Reade-Alvarez v. Eltman,* 237 F.R.D. 26 (E.D.N.Y. 2006) ........................... 40

*Rehwaldt v. Elec. Data Sys. Corp.*, No.:95-876, 1996 U.S. Dist. LEXIS 22125 (W.D.N.Y. Mar. 28, 1996) ........................................................................ 29

*Rieckborn v. Vielti PLC*, No. 13-cv-3889-WHO, 2015 U.S. Dist. LEXIS 13542 (N.D. Cal. Feb. 3, 2015) ........................................................................... 41

*Riker v. Gibbons*, 3:08-cv-115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841 (D. Nev. Oct. 28, 2010) ............................................................................ 41

*Rippee v. Boston Mkt. Corp.*, Case No. 05-CV-1359 BTM (JMA), Doc. No. 70, (S.D. Cal. Oct. 10, 2006) ......................................................................... 34

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) .......................... 37

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. Cal. 2009) .................. 38, 46

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. Jun. 1, 2010) .................................. 34

*Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 U.S. Dist. LEXIS 6049 (S.D. Cal. Jan. 14, 2013) ................................... 34

*Smith v. Merck & Co., Inc.*, Civ. No. 13-2970, 2016 U.S. Dist. LEXIS 56166 (D.N.J. Apr. 27, 2016) ............................................................................. 29

ix

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

*Stemple v. QC Holdings, Inc.*, 2016 U.S. Dist. LEXIS 55011

    (S.D. Cal. Apr. 25, 2016) ........................................................ 30

*Strang v. JHM Mortgage Secs. Ltd. P'ship*, 890 F.Supp. 499 (E.D.Va. 1995) ...... 42

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067

    (N.D. Cal. Aug. 9, 2010) ...................................................... 34

*Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) .............................. 26

*Talavera v. Sun-Maid Growers of Cal.*, 2016 U.S. Dist. LEXIS 35530

    (E.D. Cal. Mar. 18, 2016) ...................................................... 29

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................... 38

*Tapia v. Zale Del., Inc.,* 2016 U.S. Dist. LEXIS 48046

    (S.D. Cal. Apr. 6, 2016) ........................................................ 21

*Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852

    (N.D. Cal. Apr. 21, 2011) ...................................................... 34

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................ 34

*Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300

    (E.D.N.Y. Aug. 6, 2012) ........................................................ 36

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d. 1114 (E.D. Cal. 2009) ...... 32

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) .............. 34

*Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM),

    2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) ........................ 21, 24

*Watkins v. Hireright, Inc.*, 2016 U.S. Dist. LEXIS 58279

    (S.D. Cal. May 2, 2016) ........................................................ 22

*Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) .... 26

*Wellens v. Daiichi Sanyko, Inc.*, No. 13-cv-581-WHO,

    2014 U.S. Dist. LEXIS 70628 (N.D. Cal. May 22, 2014) ........................ 29, 30

*Williams v. Centerplate, Inc.*, No. 11-CV-2159, 2013 U.S. Dist. LEXIS 121307,

    (S.D. Cal. Aug. 26, 2013) ...................................................... 35

*Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102

(E.D.N.Y. Feb. 18, 2011)..........................................................................47

*Wireless Facilities, Inc. Sec. Litig.,* 253 F.R.D. 630 (S.D. Cal. 2008) ..................17, 48

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .................................37

*Zamora v. Ryder Integrated Logistics, Inc.*, No. 13cv2679-CAB (BGS),

2014 U.S. LEXIS 184096 (S.D. Cal. Dec. 23, 2014) ........................................41

## **STATUTES**

42 U.S.C. §§ 2000e *et seq*............................................................................*passim*

Cal. Lab. Code §1197.5................................................................................*passim*

Cal. Gov. Code §§12900 – 12996................................................................*passim*

29 U.S.C. § 206(d), 216(b), 256..................................................................*passim*

## I.      **INTRODUCTION**

On behalf of themselves and approximately 3,290 similarly situated female Science, Technology, Engineering, and Math ("STEM") and related production or program management employees at Defendant Qualcomm Incorporated ("Qualcomm"), Plaintiffs Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson (collectively "Plaintiffs") respectfully move for preliminary approval of a **$19,500,000** gender discrimination class action settlement (the "Settlement").

This Settlement was realized prior to the formal initiation of this lawsuit and without in-court litigation activity.  Before pursuing material settlement discussions, Plaintiffs and Qualcomm (the "Parties") engaged in extensive investigation and exchange of information about Plaintiffs and the proposed classes.  This voluntary interchange enabled the Parties to conduct meaningful and intense negotiations with a keen eye towards the strengths and weaknesses of their positions and the value of the claims.  In particular, both parties completed expert statistical analyses that informed their views of the case and ultimately helped set the parameters for settlement talks.  All negotiations were conducted at arm's length and were facilitated by a highly-experienced and nationally-esteemed employment mediator, David Rotman of Gregorio, Haldeman & Rotman in San Francisco, California.  The Parties agreed to the Settlement only after months of protracted negotiations and two full days of mediation conducted by Mr. Rotman.

The result is a truly remarkable one.  The Settlement is one of the largest employment discrimination settlements in recent years and represents an excellent value for the Classes. Further, the Settlement provides for comprehensive programmatic relief, valued at an additional **$4,000,000**, which is designed to ensure equal opportunity for women at Qualcomm.  The fact that the parties were able to reach such a favorable settlement without years of risky and costly litigation is literally unparalleled; and, the early resolution of this matter itself

1

presents substantial benefits to the Class Members and promotes judicial economy.

As detailed in these papers, the Settlement is the best possible outcome of this matter given the substantial risks and delays associated with litigation. Even years of litigation would be unlikely to yield a better result. Accordingly, the Settlement demonstrably "falls within the range of possible approval," the lenient standard that governs a preliminary approval motion. *Harris v. Vector Marketing Co.*, 2011 U.S. Dist. LEXIS 48878, at *23 (N.D. Cal. Apr. 29, 2011). The Court should therefore authorize notice to the Class Members and submit the Settlement to them for their feedback and approval.

In order to effectuate the Settlement and the resolution of this action, Plaintiffs respectfully move the Court to:

(i)  Certify the proposed Rule 23 Settlement Class, including

    (a)  A Nationwide subclass for pay, promotion and pregnancy discrimination claims brought under Title VII, and

    (b)  A California subclass for pay, promotion and pregnancy/caregiver discrimination claims and related claims under California law;

(ii)  Appoint the Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel;

(iii)  Conditionally approve the EPA Collective Action under 29 U.S.C. § 216(b);

(iv)  Preliminarily approve the Settlement;

(v)  Approve the Notice of Settlement for mailing to the Class Members; and

(vi)  Schedule a Final Fairness Hearing.

## II.   BACKGROUND

### A.   Qualcomm Incorporated & Qualcomm Technologies, Inc.

Qualcomm was founded in 1985 by leading digital communication scientists.   Over the next few years, the Company commercially developed CDMA (code division multiple access) technology, which ultimately formed the basis of all 3G cellular telephony.   Today, the Company is a leading developer and innovator of advanced wireless technologies, products and services, and its main businesses focus on developing and licensing wireless technologies and selling ASICs (application-specific integrated circuits) that implement those technologies.

Qualcomm Incorporated employs approximately 15,000 employees in the United States, the majority in San Diego.   Its internal organizations currently include, among others: Qualcomm Technologies, Inc., (or CDMA Technologies) ("QCT"), [1] Qualcomm Corporate Services ("QCS"), and Qualcomm Wireless Services ("QWS").

### B.   Plaintiffs

Plaintiffs are long-term, current, and former female employees in STEM and related roles who worked in Qualcomm's San Diego, California and Boulder, Colorado locations.   Docket No. 1 (hereinafter cited as the "Complaint") ¶ 3.   Like the Classes they seek to represent, Plaintiffs worked in technical, engineering, and technical project or program management roles.   *Id*.

As detailed in the Complaint, throughout their employment, and increasingly in recent years, Plaintiffs experienced and witnessed systemic gender discrimination as a result of common employment policies, practices, and procedures concerning pay and promotion.   As a result of these policies and practices, Plaintiffs were paid less and promoted more slowly than similarly-

---

[1] Qualcomm Technologies, Inc. ("QTI") is a wholly-owned subsidiary of Qualcomm, Incorporated.  QTI is headquartered in San Diego, California.

3

situated men who worked beside them.  The discrimination was especially acute for working mothers, who faced additional discrimination on the basis of caregiver responsibilities.

### C.   Administrative Exhaustion

On October 22, 2015, Plaintiff Dandan Pan initiated this action by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and a Complaint of Discrimination with the California Department of Fair Employment and Housing ("DFEH").  *See* Medina Decl. ¶ 12.  Ms. Pan alleged, in part, that the predominately male leadership at Qualcomm systematically discriminated against female employees through common compensation and promotion policies and practices that resulted in lower pay and denial of promotions for women at Qualcomm.  *Id.* ¶ 13.

On November 7, 2015, Class Counsel [2] notified Qualcomm's General Counsel of Ms. Pan's EEOC charge and the fact it also represented Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson.  *Id.* ¶ 14.  On December 30, 2015, Plaintiffs provided Defendants with drafts of the class EEOC charges it planned to file on behalf of each of the new claimants.  *Id.* ¶ 15.  Plaintiffs also provided an amended class charge for Ms. Pan and a draft Labor and Workforce Development Agency letter concerning claims under the California Private Attorneys General Act of 2004 ("PAGA"), stemming from the violations alleged in the class charges.  *Id.* ¶ 16.  Plaintiffs Carrie Haluza and Carolina Dealy became involved in this matter in 2016.  *Id.* ¶ 18.  On March 23, 2016, Plaintiffs provided Defendants Ms. Haluza's draft EEOC charge.  *Id.* ¶ 19.  Plaintiffs delayed filing additional EEOC charges at Defendants' request in anticipation of engaging in substantive settlement negotiations.  *Id.* ¶ 17.

---

[2] The terms "Plaintiffs' Counsel" and "Class Counsel" are used interchangeably in this memorandum to refer to Sanford Heisler, LLP.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.     Plaintiffs' and the Classes' Allegations

As memorialized in the Complaint, Plaintiffs allege violations of Title VII, 42 U.S.C. §§ 2000e *et seq.*; the Federal Equal Pay Act (EPA), 29 U.S.C. §206(d); the California Fair Employment and Housing Act, including the Pregnancy Disability Leave Law and the California Family Rights Act (FEHA), Cal. Gov. Code §§ 12940 *et seq.*, and the California Equal Pay Act and, as of January 1, 2016, the California Fair Pay Act, Cal. Lab. Code § 1197.5. Complaint ¶ 3. They also assert derivative claims for relief under PAGA, Cal. Lab. Code §§ 2698, *et seq*. *Id*. These claims arise from common policies, patterns, and practices that subjected women to disparate treatment and that disparately impact women based on their gender, pregnancy, and need to take protected leaves to care for children. *Id*. ¶ 37.

Plaintiffs allege pay discrimination under the Equal Pay Act and California Equal Pay Act, including its recent amendments. *Id*. ¶ 3. Plaintiffs allege that Qualcomm's levelling scheme, composed of job families, job codes, and rewards groups, overly disaggregates jobs based on features other than the requisite amount of skill, effort, and responsibility, resulting in pay differences between workers performing equal or substantially similar work. *Id*. ¶ 39. Qualcomm utilized common compensation systems that predicate compensation upon this flawed levelling system, discriminatory market-based valuations of female employees, and a system of performance, stock, and bonus ratings that encouraged reliance upon illegitimate, subjective, and non-quantitative factors. *Id*. ¶ 41. Plaintiffs allege that these systems disparately impact female employees by causing unjustified widespread, uniform, statistically significant disparities in base pay and incentive pay as well as the closely tied metrics of stock and bonus ratings. *Id*. ¶ 54.

Plaintiffs also allege that Qualcomm systemically denied women promotions and promoted women more slowly due to sex-based disparate impact

discrimination and disparate treatment in the promotions process, in violation of Title VII and the FEHA. *Id*. ¶ 40. Plaintiffs allege, *inter alia,* that Qualcomm failed to post open positions that were available for employees in the classes seeking promotion or opportunities for professional development that would facilitate promotion. *Id*. Instead, the Company relied upon a sponsorship model wherein employees could seek promotion, obtain plumb assignments, and, in many cases, attend trainings, only with their male managers' support. *Id*. The effects of this model in the context of Qualcomm's male-dominated culture are apparent in the trend towards reduced proportions of women at each successive level of Qualcomm's hierarchy. *Id*.

Finally, Plaintiffs allege that they were subject to common policies, patterns, and practices with respect to caregiving responsibilities for children. Plaintiffs allege that Qualcomm maintained policies that discouraged taking leave and unduly penalized female caregivers. *Id*. ¶ 43. Qualcomm maintained a policy or practice of 24-7 responsiveness, permitted proration of ratings for employees on flex-time schedules without regard to their productivity, and disparately rewarded employees who were able to work late, regardless of whether they were higher performing or more productive. *Id*. Plaintiffs allege that these and other practices exacerbated the impact of pay and promotion discrimination against working mothers. *Id*.

Qualcomm has consistently denied any wrongdoing and has denied all of Plaintiffs' individual and class allegations; it maintains that Plaintiffs' claims lack factual and legal merit. Qualcomm further maintains that, absent a settlement, Plaintiffs would not be able to certify a class action under Federal Rule of Civil Procedure 23 or a collective action on the EPA claims under 29 U.S.C. § 216(b).

### E.   Pre-Suit Discovery, Negotiations, and Settlement

Following Ms. Pan's EEOC charge, the Parties engaged in intense negotiations that ultimately produced this Settlement. Over the course of nine

6

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

months, the Parties engaged in continuous, arm's length negotiations over a tolling agreement, pre-suit discovery, and the terms of a potential class action settlement. Medina Decl. ¶ 20.

On January 25, 2016, the Parties agreed to mediate their disputes before highly-regarded mediator David Rotman. *Id.* ¶ 21. In advance of the mediation, the Parties exchanged extensive and informal information and discovery to facilitate their settlement discussions. *Id.* ¶ 22. Qualcomm produced each of the Plaintiffs' pay and personnel records, amounting to thousands of pages of documents. *Id.* ¶ 23. Qualcomm also agreed to produce class-wide pay and promotion data concerning all Qualcomm employees at or below the level of Senior Director. *Id.* ¶ 24. This data would enable Plaintiffs to assess and value their claims that women at Qualcomm were systematically disfavored in pay and promotions as compared to their male counterparts.

On March 31, 2016, after substantial negotiations, Defendants produced comprehensive employment and payroll data for all Qualcomm workers employed in the United States between October 2011 and May 2015. *Id.* ¶ 25. The data included, among other things, each employee's job title, performance rating, bonus rating, salary, bonus, and other compensation information. *Id*. Plaintiffs determined that the production was deficient in a number of respects and engaged in vigorous meet-and-confer efforts regarding the scope and detail of the data. *Id.* ¶ 26. As a result, Qualcomm produced a second, replacement set of data on or about April 20, 2016. *Id.* ¶ 27.

Both Parties retained skilled labor economists to analyze the class data. *Id.* ¶ 28. Plaintiffs retained Dr. Alex Vekker, a Professor at University of Pennsylvania who has served as an expert in numerous discrimination class actions. *Id*. Qualcomm retained Dr. Janet Thornton, a Managing Director at the Berkeley Consulting Group and Professor at Florida State University, who has also served as an expert witness in several employment matters. *Id*. Dr. Vekker's

analysis revealed statistically significant gaps in base and incentive pay across QCT, QCS, and QWS, even controlling for factors such as job family and job code. *Id.* ¶ 29. Dr. Thornton disputed Dr. Vekker's analysis – concluding that any disparities were insignificant and that the class had suffered minimal, if any, damages. *Id.* ¶ 30.

The Parties also exchanged lengthy mediation statements outlining their respective positions. *Id.* ¶ 31. Plaintiffs' mediation statement was 42 pages long and also included approximately 180 pages of exhibits. *Id.* Qualcomm submitted a 55-page, single-spaced mediation statement contending that Plaintiffs' claims lacked merit and that Plaintiffs would not be able to certify a class or collective action. *Id.*

On April 27, 2016, the Parties participated in their first full-day mediation before David Rotman. *Id.* ¶ 32. Plaintiffs Pan, Paquin, Haluza, Dealy, Shi, and Matulich flew to San Francisco to take part in the mediation, and Plaintiff Jacobson participated by phone. *Id.* ¶ 33. This mediation was unsuccessful in that it did not result in a settlement that day. *Id.* ¶ 34. However, the mediator was able to assist the Parties in narrowing the issues and the Parties agreed to return for a second mediation in June, pending further exchange of data and information. *Id.* ¶ 35.

After the first mediation, Class Counsel met and conferred with counsel for Qualcomm ("Defense Counsel") to obtain more complete and updated class data. *Id.* ¶ 36. On or about May 17, 2016, Qualcomm produced a third data set, covering all U.S. employees at the Company through April 18, 2016. *Id.* ¶ 37. Dr. Vekker analyzed this data and again found widespread, highly statistically significant base and incentive pay disparities, coupled with statistically significant disparities in promotions. *Id.* Dr. Thornton again performed a competing analysis. *Id.* ¶ 38.

On June 15, 2016, Class Counsel met in person with Defense Counsel and a

corporate representative. *Id.* ¶ 39. Each Party's respective experts appeared by phone to discuss their analyses. *Id.* The Parties also discussed Plaintiffs' programmatic relief proposal at length. *Id.* ¶ 40. On June 21, 2016, the Parties and their clients participated in another full day of mediation before Mr. Rotman. *Id.* ¶ 41. With the benefit of the revised data and the June 15 discussion with experts the Parties were able to make progress in the negotiations. *Id.* ¶ 42. They reached an agreement in principle to settle the case close to midnight on June 22, 2016 and signed a Memorandum of Understanding. *Id.* ¶ 43. Since the mediation, the Parties expended significant time negotiating and finalizing the details of the settlement. *Id.* ¶ 44. [3]

### F.   Plaintiffs' Services to the Classes

Plaintiffs have been heavily involved at every step of this process and have had a large impact on every aspect of the investigation and settlement of the class claims. *Id.* ¶ 46. Cumulatively, they have spent well over 1,700 hours in service to the Classes.[4] *Id.* ¶ 47. Plaintiffs have consulted with Class Counsel on a variety of issues, engaged in discussions on case strategy, reviewed and provided input on the mediation statement, helped formulate the programmatic relief proposal, attended both mediations, and helped craft the final Settlement.[5] *Id.* ¶

---

[3] During a separate mediation following the second day of class mediation, Plaintiffs also reached an aggregate settlement to address individual claims outside the scope of the class action, such as sexual harassment, wrongful termination, and other forms of discrimination. Declaration of Felicia Medina (hereinafter cited as "Medina Decl.") ¶ 45.

[4] *See* Carolina Dealy Decl. ¶ 14; Carrie Haluza Decl. ¶ 13; Connie Jacobson Decl. ¶ 14; Blanche Matulich Decl. ¶ 14; Dandan Pan Decl. ¶ 13; Laura Paquin Decl. ¶ 13; Wei Shi Decl. ¶ 15. (The Pan, Haluza, Dealy, Paquin, Shi, Matulich, and Jacobson Declarations are attached to the Medina Decl. at ¶¶ 48-54, Exhibits 2-8, respectively, and are individually short-cited henceforth by the Plaintiffs' last name and collectively as "Plaintiffs' Declarations").

[5] *See* Dealy Decl. ¶¶ 5, 6, 14, 21; Haluza ¶¶ 5, 6, 13, 21; Jacobson Decl. ¶¶ 5, 6, 14, 21; Matulich ¶¶ 5, 6, 14, 21; Pan Decl. ¶¶ 5-6, 13, 21-22; Paquin ¶¶ 5-6,

55.  In this capacity, they engaged in countless meetings and conversations with Class Counsel to aid in the initial investigation, factual development, and resolution of this case.[6]  *Id*.  Plaintiffs gathered documents and spent several hours speaking with Class Counsel to help Class Counsel understand Qualcomm's practices, analyze Qualcomm's data, and formulate appropriate requests for documents and other information.  *Id.* ¶ 56. Their communications with Class Counsel included hours-long meetings and calls and additional communications by way of frequent and regular email correspondence.[7]  *Id.* ¶ 57.

Plaintiffs also aided in preparing numerous documents.  They participated in drafting and revising their EEOC Charges of Discrimination and DFEH Complaints of Discrimination, the mediation statement and related documents, settlement documents, the programmatic relief proposal, the Complaint, and the preliminary settlement approval papers.[8]  *Id*. ¶ 58.  In working on the class charges and the proposal for programmatic relief, Plaintiffs drew not only from their own experiences but also from their observations of how other women at Qualcomm were treated.  *Id.* ¶ 59.  They employed their intimate knowledge of Qualcomm and its practices to fashion appropriate measures to address the issues at the Company.  *Id*.  Most of the Plaintiffs flew to San Francisco to attend both mediations.[9]  Before both mediations, Plaintiffs met with their Counsel for several

---

12-13, 20; Shi Decl. ¶¶ 5, 6, 15, 21.

[6] *See* Dealy Decl. 5, 14; Haluza ¶¶ 5, 13; Jacobson Decl. ¶¶ 5, 14; Matulich ¶¶ 5, 14; Pan Decl. ¶¶ 5, 13; Paquin Decl. ¶¶ 5, 13; Shi Decl. ¶¶ 5, 15.

[7] *See* Dealy Decl. ¶¶ 5, 14; Haluza ¶¶ 5, 13, 21; Jacobson Decl. ¶¶ 5, 14; Matulich ¶¶ 5, 14, 21; Pan Decl. ¶¶ 5, 13, 22; Paquin Decl. ¶¶ 5, 13, 20; Shi Decl. ¶¶ 5, 15, 21.

[8] *See* Dealy Decl. ¶¶ 6, 14(d)(f)(j)(l), 21; Haluza ¶¶ 6, 13(k)(m)(r)(u), 21; Jacobson Decl. ¶¶ 6, 14(c)(f)(g)(h)(j)(m); Matulich ¶¶ 6, 14(d)(f)(k)(n)(p)(q); Pan Decl. ¶¶ 6, 13(d)(f)(l)(q)(r)(t), 22; Paquin Decl. ¶¶ 6, 13(e)(g)(i)(n)(o)(q)(r)(w); Shi Decl. ¶¶ 6, 15(d)(j)(k)(l)(n)(o).

[9] Plaintiff Jacobson planned to attend the first mediation, but was unable to, because she fell ill at the last minute. Jacobson Decl. ¶ 14(h).  Plaintiff Paquin planned to attend the second mediation but was unable to because of a family

10

hours to prepare.  *Id.* ¶ 60.  Each Plaintiff footed her own travel expenses and other costs to attend the mediations with only minimal assistance to cover some fees associated with last minute flight cancellations.[10]  *Id.* ¶ 61.

From the inception of this action, Plaintiffs have faithfully attended to their duties to act on behalf of other women at Qualcomm.  *Id.* ¶ 62.  They understand their responsibilities as Class Representatives and have been in regular contact with Counsel to monitor the action and provide important input and advice.[11] Plaintiffs have provided active support and guidance to the Class Members and raised numerous issues on their behalf.[12]  Plaintiffs are acutely aware that, by bringing and settling this action on a class basis, they are putting their careers and livelihoods at risk.   Given the close-knit nature of the telecommunications industry,  which  is  dominated  by  several  large  companies,  Plaintiffs  face significant risks of being blacklisted by potential future employers, shunned by their coworkers, and retaliated against by their managers.[13]  These risks will likely continue throughout their careers.[14]  Plaintiffs accepted these risks without any assurance of remuneration for serving as Class Representatives.[15]  Medina Decl. ¶

---

medical emergency.  Paquin Decl. ¶ 13(r).  Plaintiff Dealy was unable to attend the second mediation.

[10] *See* Dealy Decl. ¶ 14(m); Haluza ¶¶ 13(x); Jacobson Decl. ¶ 14(r); Matulich ¶ 14(u)(v); Pan Decl. ¶ 13(y); Paquin Decl. ¶ 13(y); Shi Decl. ¶¶ 15(i).

[11] *See* Dealy Decl. ¶¶ 5-6, 13-14, 21; Haluza ¶¶ 3, 5-6, 12-13, 21; Jacobson Decl. ¶¶ 3, 5, 12-17, 22; Matulich ¶¶ 5-6, 9, 14, 21; Pan Decl. ¶¶ 5-6, 13, 21; Paquin Decl. ¶¶ 3, 5-6, 11-13, 22; Shi Decl. ¶¶ 3, 5-6, 11-15, 21.

[12] *See* Dealy Decl. ¶¶ 3, 5-6, 12-14, 21; Haluza ¶¶ 3, 5-6, 10, 11-13, 21; Jacobson Decl. ¶¶ 3, 5, 12-17, 22; Matulich ¶¶ 3, 5-6, 9, 12-14, 21; Pan Decl. ¶¶ 3, 5-6, 9, 11-13, 22; Paquin Decl. ¶¶ 3, 5-6, 11-13, 20; Shi Decl. ¶¶ 3, 5-6, 11-15, 21.

[13] *See* Dealy Decl. ¶¶ 18-19; Haluza ¶¶ 9, 14(c), 17-19; Jacobson Decl. ¶¶ 10, 18-19; Matulich ¶¶ 9, 18-19; Pan Decl. ¶¶ 9, 17-19; Paquin Decl. ¶¶ 9, 17-18; Shi Decl. ¶¶ 11, 19.

[14] *See* Dealy Decl. ¶ 18; Haluza ¶¶ 17-18; Jacobson Decl. ¶¶ 10, 18-20; Matulich ¶¶ 18-19; Pan Decl. ¶¶ 17-18; Paquin Decl. ¶¶ 9, 17-18; Shi Decl. ¶ 19.

[15] *See* Dealy Decl. ¶¶ 4, 20; Haluza ¶¶ 4, 20; Jacobson Decl. ¶¶ 4, 20; Matulich ¶¶ 4, 20; Pan Decl. ¶¶ 4, 20; Paquin Decl. ¶¶ 4,19; Shi Decl. ¶¶ 4, 20.

---

63.

## III.   <u>KEY TERMS OF THE SETTLEMENT</u>

The Settlement provides for a significant settlement payment to each Class Member.   The Settlement further provides for class-wide programmatic relief tailored to the claims and designed to secure equal opportunity for women at Qualcomm.   Additionally, the Settlement pays for all attorneys' fees and costs incurred on behalf of the Plaintiffs, the Classes, and the Collective.   The Settlement has the support of each of the seven Class Representatives.

### A.   The Classes of Employees Affected By the Settlement

For purposes of facilitating the settlement, the Settlement Agreement provides for certification of two Rule 23 settlement classes and an EPA Collective Action.   *See* Medina Decl. ¶ 11, Exhibit 1 – Class Settlement Agreement (hereinafter cited as the "Settlement") §§ 11.2, 15.1.

The Rule 23 Class consists of the following subclasses:

**Nationwide Class.**   "Nationwide Class" means women employed in a Covered Position[16] by Qualcomm Incorporated and its current and former

---

[16] The term "Covered Positions" refers generally to positions involving STEM functions, production of Qualcomm's products, and program management.  For all Classes and the Collective Action, the term Covered Position refers to:   A "Covered Position" means either (a) a salaried exempt position in the job codes/job families listed in Appendix 1 below the level of "Vice President" (also referred to as "VP"); or (b) a non-exempt position in the job codes/job families listed in Appendix 2 in the United States.  "Covered Position" ***does not include*** in (a) and (b) above (i) individuals currently or formerly employed as interns, temporary workers or contract workers by Qualcomm or by any contractor of Qualcomm; (ii) individuals currently or formerly employed by or at Gimbal after it was no longer a wholly-owned subsidiary of Qualcomm; or (iii) individuals currently or formerly employed in the following job families in any exempt or non-exempt position: ADMSVC, AIRMNT, ANREL, ASSIST, BENFIT, BLDGSV, BUSCMP, CEO, CFO, CMPLNC, COMAFF, COMPEN, COPYWR, CTO, CTRADM, CTRATT, DATANL (QCS), DIVCNS, EECOMM, EMPREL, ENG, ENVHLT, ENVREG, ERSPEC, EVENT, EXEC, EXEMGT, FAC, FACEE, FACENG, FASUPP, FRAUD, GOVPRP, GVTAFF, HR, HRACRD, HRASST, HRIS, HRMS, HRREP,

12

subsidiaries and affiliated entities as regular employees in the United States (but not in the State of California) at any time from December 26, 2014 to the date of the Order Granting Preliminary Approval.   Settlement § 1.7.

**California Class.**   "California Class" means women employed in a Covered Position by Qualcomm Incorporated and its current and former subsidiaries and affiliated entities as regular employees in California at any time from December 4, 2011 to the date of the Order Granting Preliminary Approval.  Settlement § 1.3.

The **Collective Action** is defined as follows:

**Collective Action Plaintiffs.**  [A]ll women employed in a Covered Position by Qualcomm Incorporated and its current and former subsidiaries and affiliated entities as regular employees in the United States at any time from December 4, 2012 to the date of the Order Granting Preliminary Approval who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend: "*I have received and read the Class Notice in Pan et al. v. Qualcomm Incorporated. By negotiating this check and accepting payment I (i) consent to join in this lawsuit and the Equal Pay Act collective action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit.  This Release shall become effective on the Effective Date*."  Collective Action Plaintiffs do not include women who were employed as interns, temporary workers, or contract workers by Qualcomm or by any contractor of Qualcomm, or women who worked for Gimbal after it was no longer a wholly-owned subsidiary of Qualcomm. Settlement § 1.6.

Class Members who participate in the Settlement will receive payment in recognition of their potential claims for gender discrimination in pay and promotions, and pregnancy discrimination – the class claims in this action – and will release any such claims.  Settlement §§ 5.3, 12.1.  Collective Action Plaintiffs

---

HRSPEC, INCDIV, INTERN, INVREL, IPLIC, LEARN, LGDATA, LGLADM, LGLANL, LGLAST, LGLCNS, LGSUPP, LIBRAR, ORGDEV, PATAGT, PATATT, PATENG, PAYANL, PAYROL, PILOT, PR, PRES, REGAFF, RELEST, SALES, SECY, STAFF, STKADM, SUBCON, TRAVEL, TRM, VPAGMG, VPGMGR.  Settlement § 1.8.

will officially join the EPA litigation and release their claims under those statutes by cashing their settlement checks.   Settlement §§ 1.6, 12.2.

**B.     $19.5 Million Non-Reversionary Settlement Fund**

The Settlement provides for Qualcomm to make a non-reversionary settlement payment of $19.5 million in settlement of all class and collective claims in the case (the "Fund").   Settlement §§ 1.27, 5.1.   This Class Settlement Fund is a common fund from which each participating Class Member will receive an individualized award.[17]   The Fund will be allocated based upon a formula that takes into consideration each Class Member's individual rate of pay and length of employment within the applicable Class Period, as well as whether she has previously signed a release or whether she took pregnancy related leave to care for a newborn.[18]   Settlement § 5.3.   If the Court approves the requested attorneys' fees, costs, service awards, and other features of the Settlement, the net amount remaining in the Fund will be approximately $13,005,500 and the average pre-tax recovery for class members is approximately $3,953.04.   Medina Decl. ¶ 64.   The average recovery for those Class Members who worked full-time during the entire class period ("FTEs") is $5,862.53.   *Id.* ¶ 65.

**C.     Comprehensive Programmatic Relief**

Under the Settlement, Qualcomm will also undertake broad programmatic measures to improve its policies and practices that impact the class.   Settlement § 3.   These changes will help eliminate gender disparities and foster equal

---

[17] Under the Settlement's *cy pres* provisions, the funds from any uncashed Settlement Awards checks will be divided evenly between the Association for Women in Science (www.awis.com), and the Center for WorkLife Law (http://worklifelaw.org/), two organizations that work to promote women and fight gender discrimination in the workplace.   Settlement § 8.4.   Any funds remaining in the Future Costs allocation after the conclusion of the class period will be donated to Lesbians Who Tech (http://lesbianswhotech.org).   Settlement § 5.2.4.

[18] Plaintiffs contend that such releases are invalid and unenforceable, an issue that would need to be litigated should the action continue.

employment opportunity going forward; they will have a lasting and reverberating impact on women at Qualcomm.  As detailed in the Agreement, Defendant will (1) appoint an internal "Compliance Official" with overall responsibility for monitoring compliance with the terms of the Settlement Agreement and (2) retain two Independent Consultants specializing in industrial/organizational psychology to assess the Company's policies and practices, implement structural reforms, and develop and maintain an equitable workplace for women.    Additionally, Defendant will undertake concrete initiatives to (3) maintain records relevant to this agreement, (4) reinforce its commitment to EEO compliance and enforcement, (5) strengthen its internal complaint policies, (6) evaluate, promote, and compensate women equitably, (7) perform statistical analyses with regard to evaluation, promotion, and compensation, (8) design and execute leadership development initiatives for women, and (9) bolster its policies regarding flexible work arrangements and maternity and parental leave.  Settlement §§ 3.2-3.10. The Parties estimate that the programmatic relief package carries a monetary value to the class of at least an additional $4,000,000.  Medina Decl. ¶ 66.  These extensive and wide-ranging reforms would be notable enough as part of a settlement or judgment realized after years of litigation victories.

### D.    Attorneys' Fees and Costs

Class Counsel will apply for reasonable attorney's fees and reimbursement of their out-of-pocket costs – in a combined amount totaling $5.85 million, or 30% of the $19.5 million cash Fund (24.9% of the $23.5 million in total relief available through the Settlement).  Settlement § 6.1.  The Court need not rule on Class Counsel's fees and costs now; Plaintiffs will file a formal application prior to the Final Fairness Hearing.  As Plaintiffs will explain in detail in the application, $5.85 million in combined fees and costs is reasonable and well-justified in consideration of the risks Class Counsel has undertaken in pursuing this case on a contingency basis and the outstanding result achieved on behalf of

15

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

the class.  Despite settling this case expeditiously, Class Counsel has expended significant time and resources on this matter.  Medina Decl. ¶ 67.  Sanford Heisler's current estimated attorneys' fees and expenses are over $1,300,000.  *Id.* (This number is subject to change based on final accounting).  Class Counsel will continue to incur substantial expenditures throughout the next three (3) years as they advise Class Members regarding the Settlement and monitor Qualcomm's compliance with the Settlement's robust programmatic relief provisions.  *Id*. ¶ 68.

### E.   Service Awards

Pursuant to the terms of the Settlement, Plaintiffs will seek a service award of $50,000 for each of the seven Plaintiffs.  Settlement § 7.1.  The Court need not rule on the service awards now; Plaintiffs will file a formal application prior to the Final Fairness Hearing.  In the aggregate, the proposed service awards represent 1.8% of the total cash settlement and will not significantly reduce the awards to the Class Members.

Public policy strongly supports service awards to plaintiffs in employment class actions, and they are routinely granted by courts in this Circuit and around the country.  Such awards compensate plaintiffs for the efforts and risks they have undertaken on behalf of the class, without which no settlement would be possible.  And, they provide an incentive for other employees to bring cases that vindicate the public interest in equal employment opportunity.

Here, Plaintiffs have each spent hundreds of hours pursuing this matter and have jeopardized their careers and livelihoods in doing so.  Their efforts and sacrifices have paid off in an exceptional settlement that provides the Class Members cash payments and substantial programmatic relief.  Without Plaintiffs' involvement in this case, Qualcomm's discriminatory practices might have never come to light.[19]

---

[19] Pursuant to the Settlement, $19,500 is allocated for payment of the State of

1

## IV.   ARGUMENT

2

### A.   The Standard for Review of a Rule 23 Class Action Settlement

3

4

5

6

7

8

9

10

11

12

13
It is well-settled in this Circuit and nationwide that "[j]udicial policy favors settlement of class actions, as substantial resources can be saved by avoiding the time, cost, and rigors of formal litigation."[20]  Further: "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  *Illoldi v. Koi NY LLC*, No: 1:15-cv-6838, 2016 U.S. Dist. LEXIS 71057, at *4 (S.D.N.Y. May 31, 2016) (collecting cases).  *See also, e.g., California v. eBay, Inc.*, No. 5:12-cv-5874-EJD, 2014 U.S. Dist. LEXIS 121349, at *17-18 (N.D. Cal. Aug. 29, 2014) (suggesting that where parties are in an adequate position to evaluate a settlement, resolution at an early juncture favors settlement approval).

14

15

16

17

18

19
The procedure for deciding whether to approve a proposed Rule 23 class action settlement is generally a two-step process involving a preliminary approval stage and a final fairness hearing.  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 634 (S.D. Cal. 2008).  At the first stage, the Court makes a preliminary determination as to whether certification of a settlement class is warranted and

20

21

22

23

24
California's share of civil penalties to the California Labor and Workforce Development Agency. Settlement § 5.2.1. Additionally, the Settlement allocates $125,000 for the fees and costs of the Class Administrator. Settlement § 5.2.2. Class Counsel has sought out quotes from three Class Administrators and believes that actual costs of administration will be much lower than $125,000, thus, the Fund amount going to the class members will increase.  Medina Decl. ¶ 69.

25

26

27

28
[20] *Clesceri v. Beach City Instruments & Protective Servs.*, No. CV-10-38730JST (RZx), 2011 U.S. Dist. LEXIS 11676, at *22 (C.D. Cal. Jan. 27, 2011).  *See also, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Officers for Justice v. Civil Service Comm. of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (asserting that "[v]oluntary conciliation and settlement are the preferred means of dispute resolution").

1
2
3

whether the proposed settlement is fair, reasonable, and adequate. *See id*. Then, the court approves the "form and manner of notice and sets a final fairness hearing, where it will make a final determination of the class settlement." *Id.*

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

At the preliminary approval stage, the court need only "determine whether the proposed settlement is within the range of possible approval," *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010), while giving "proper deference to the private consensual decision of the parties," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (in a case that settled shortly after being filed and prior to class certification, noting that "[t]here is an initial presumption of fairness when a proposed settlement was negotiated at arm's length by counsel for the class"). At this juncture, "[t]he court is really only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies. . . . The court is assisted in its inquiry where [. . .] the stipulation and settlement appear to be, for the most part, the result of vigorous, arms-length bargaining." *Murillo*, 266 F.R.D. at 479. "[T]he settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on final approval, after such time as any party has had a chance to object and/or opt out." *La Parne v. Monex Deposit Co.*, No. SACV 08-0302, 2010 U.S. Dist. LEXIS 131029, at *4 (C.D. Cal. Nov. 29, 2010).

21
22
23
24
25
26
27
28

As courts and commentators have stated, preliminary approval essentially amounts to a determination that there is "probable cause" to believe that the settlement may be fair, sufficient to warrant submitting the agreement to the class members for their input. *See, e.g., Illodi*, 2016 U.S. Dist. LEXIS 71057, at *3 ("The preliminary determination of fairness is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."). The class members then vote on the settlement by deciding whether to opt out or object to its terms.

**B.     The Court Should Certify the Rule 23 Class for Settlement Purposes**

In order to effectuate the Settlement, the Parties have stipulated to the certification of two Rule 23 subclasses: the "Nationwide Class" and "California Class" specified above.

### 1.     The Requirements of Rule 23(a) Are Satisfied

Here, the proposed Classes satisfy all the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy.

### 2.     The Class Is Sufficiently Numerous to Make Joinder Impracticable

The Rule 23 Class totals approximately 3,290 members.  This number is more than sufficient to establish numerosity under Rule 23(a).  *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) (numerosity presumed at 40 members) (citing cases).

### 3.     Questions of Law or Fact are Common to the Class

Commonality has been construed permissively, and just one common question will satisfy Rule 23(a)(2).  *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[C]ommonality only requires a single significant question of law or fact," *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), where that question is capable of "generat[ing] common answers apt to drive the resolution of the litigation," *Dukes*, 131 S.Ct. at 2551.

On behalf of the Classes, Plaintiffs allege that: (1) Qualcomm systemically pays Class Members less than their male colleagues who perform substantially

similar work, in violation of the state and federal Equal Pay Acts, Title VII and FEHA; (2) Class Members have been denied promotions and promoted at a slower rate than equally or less-qualified men in violation of Title VII and FEHA; and (3) Class Members have been subjected to discrimination on the basis of pregnancy or caregiving responsibility related to childcare.  The resolution of these claims present a series of common questions more than capable of satisfying the *Dukes* standard.

These questions include: (1) whether Qualcomm treated women differently than men in the application of its compensation and/or promotion policies and procedures; (2) whether Qualcomm's compensation, and/or promotion policies and procedures have an adverse impact on women; and (3) if an adverse impact is shown, whether Qualcomm is able to establish that these policies and procedures are justified by business necessity and that there is no less discriminatory alternative.

Dr. Vekker's analysis also indicates the existence of common injuries stemming from pay and promotion discrimination.  Controlling for a range of potential non-discriminatory factors, including rewards groups, job family, and tenure, Dr. Vekker found that statistically significant pay disparities exist between class employees and their male counterparts.  The data shows the existence of widespread disparities across all business units analyzed, strongly suggesting that injuries are endemic to the class.  Dr. Vekker also found statistically significant disparities in promotions, resulting in a shortfall of approximately 30 promotions within the class period.  Such pronounced disparities may in themselves be sufficient to establish class-wide liability.  *See, e.g., Hazelwood School Dist. v. U.S.*, 433 U.S. 299, 307-308, 309 n.14 (1977) (holding that gross statistical disparities, typically those "greater than two or three standard deviations," "alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination"); *Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) (finding

that decertification constituted an abuse of discretion when plaintiff's allegations of systematic discrimination were supported by statistical evidence significant to 2 standard deviations).

These questions are likely to generate common answers which are determinative of the litigation at hand. *See Ellis v. Costco Wholesale Corp*., 285 F.R.D. 492, 506-533 (N.D. Cal. 2012) (finding commonality and certifying Rule 23 class where plaintiffs alleged their employer engaged in a pattern or practice of gender discrimination in the promotion of female employees to management positions); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 at *26 (S.D.N.Y. Nov. 30, 2010) (commonality established where "[a]ll Class Members bring the common claim that Novartis discriminated against female sales employees with respect to wages, promotion and pregnancy"); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 U.S. Dist. LEXIS 79679, at *4 (S.D.N.Y. Aug. 5, 2010) ("The commonality requirement is met because the Named Plaintiffs' claims involve allegations of common pay and promotion claims arising from the same alleged policies and practices of the company.").

### 4.   The Class Representatives' Claims Are Typical of Those of the Class

"Courts evaluate the typicality requirement of Rule 23(a)(3) by considering whether the named representative and the class members have similar injuries and whether those injuries arise from the same course of conduct." *Tapia v. Zale Del., Inc.,* 2016 U.S. Dist. LEXIS 48046, *23 (S.D. Cal. Apr. 6, 2016) (citing *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986) ("The test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (Citation omitted). This standard

does not require uniformity.  "The Ninth Circuit interprets typicality permissively," and "representative claims are typical if they are 'reasonably co-extensive with those of absent class members,' though they 'need not be substantially identical.'"  *Hofmann v. Dutch LLC*, 2016 U.S. Dist. LEXIS 55628, at *7 (S.D. Cal. Apr. 26, 2016) (citing *Hanlon*, 150 F.3d at 1020).  *See further Ellis*, 285 F.R.D. at 517 n.16 ("[E]ven post-*Dukes*, class members need not be identical with no distinctions in their personal employment history. . .  Were that the standard, Rule 23 would cease to exist altogether.").

Here, Plaintiffs' claims and those of the Classes all arise from the same course of conduct: Defendants' alleged discriminatory policies and systems resulted in female employees being systematically denied pay and promotions equal to that of comparable male employees and experiencing discrimination based on their responsibilities as caregivers.  Qualcomm's company-wide policies are at the root of their injuries.  Plaintiffs and the Class Members were subjected to the same uniform policies, practices, and procedures concerning levelling and performance evaluations; the same system of stock, bonus, and performance ratings; and the same promotions practices, such as failure to post open positions.  These common elements are responsible for the reduced pay and advancement opportunities that both they and the class members experienced.  There are no defenses to the class-wide pay and promotion claims that are unique to Plaintiffs; therefore, Plaintiffs' claims are typical of the Classes.[21]

**5.    The Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class' Interests, Satisfying Rule 23(a)(4) and Rule 23(g).**

Rule 23(a)(4) requires that the class representatives "fairly and adequately

---

[21] *See Ellis*, 285 F.R.D. at 533-535; *Velez*, 2010 U.S. Dist. LEXIS 125945 at *27 (plaintiffs found to be typical where they alleged that they and all class members were discriminated against on the basis of their gender); *Hnot v. Willis Group Holdings Ltd.*, 228 F.R.D. 476 (S.D.N.Y. 2005) (typicality satisfied where plaintiffs allege suffering from similar discriminatory practices as the other class members).

protect the interests of the class." To determine this, courts undertake a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Manouchehri v. Styles for Less, Inc.*, 2016 U.S. Dist. LEXIS 80038, at *10 (S.D. Cal. June 20, 2016) (citations omitted); *Watkins v. Hireright, Inc*., 2016 U.S. Dist. LEXIS 58279, *12 (S.D. Cal. May 2, 2016). Rule 23(g) requires the Court to consider proposed class counsel's prior experience, knowledge, and ability to properly represent the class.

Plaintiffs easily satisfy Rule 23(a)(4). First, no conflicts of interest exist with the rest of the Class. Plaintiffs and Class Members share the same common goal: rooting out systemic gender discrimination at Qualcomm and equalizing pay and promotional opportunities for women at the company. *Id.* As long-term current and former employees who dedicated their careers to Qualcomm, Plaintiffs are committed to both remedying the impacts of discrimination and preventing future discrimination. Collectively, Plaintiffs are both former and current employees and span a cross section of the class; thus, they are particularly well positioned to represent the Class Members' interests.

Second, Plaintiffs have vigorously prosecuted this case on behalf of the rest of the Class. *See e.g.* Plaintiffs' Declarations. Plaintiffs have invested hundreds of hours in this litigation and risked their career prospects and reputations in doing so. *Id.* Plaintiffs have appreciated and complied with their duties as Class Representatives throughout the investigation and negotiations process. Their efforts have achieved not only a highly favorable monetary result for the Classes but also comprehensive structural reforms that will benefit all female employees at Qualcomm.

Class Counsel has also pursued this case zealously. Class Counsel has invested over an estimated $1,300,000 in attorney and staff time to this matter.

Medina Decl. ¶ 67.  Their efforts include investigating the claims and researching the law, drafting and filing charges with the EEOC and DFEH, conducting informal discovery, analyzing the data with the assistance of their expert, engaging in protracted settlement discussions, preparing for and participating in two full days of formal mediation, traveling to a meeting with Defense Counsel and a corporate representative, and negotiating the terms of a final settlement agreement.

Finally, Class Counsel is a preeminent nationwide plaintiffs' firm specializing in complex class litigation, especially gender discrimination cases. *See* Declaration of David Sanford ("Sanford Decl.") ¶ 7.  Sanford Heisler has served as lead or co-lead counsel in approximately 50 class and collective actions, covering class members in most of the states in the union.  *Id.* ¶ 7.  The Firm has consistently achieved outstanding class results and been repeatedly recognized for its zealous and high-caliber advocacy.[22]  For example, in *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-cv-9194 (S.D.N.Y), Sanford Heisler obtained the largest jury verdict in a Title VII discrimination class action in United States history.  *Id.* ¶ 9.  At the final fairness hearing in *Velez*, the judge commented that the firm had achieved an "extraordinary" result: "This was a well prepared case. It was a brilliantly tried case by plaintiff's counsel. . . and it yielded a one-of-a-kind result, and that has led to a one-of-a-kind settlement."  *Id.* ¶ 10.  At the final

---

[22] Recently, in *Zolkos v. Scriptfleet, Inc.*, 2014 U.S. Dist. LEXIS 172519, at *11 (N.D. Ill. 2014), the court appointed Sanford Heisler Kimpel, among other firms, as Class Counsel and preliminarily approved a class wage and hour settlement. The Court noted that Sanford Heisler was "very experienced in complex class and collective litigation."  *See also Velez*, 2010 U.S. Dist. LEXIS 125945 at *28 ("Here, Class Counsel, Sanford Wittels & Heisler LLP [Sanford Heisler's former name], has just the sort of established record contemplated by the Rules."). *Bellifemine*, 2010 U.S. Dist. LEXIS 79679, at *4 (recognizing Sanford Heisler as having "an established record of competent and successful prosecution of large . . . class actions").  Sanford Decl. ¶ 7.  Among many accolades, Sanford Heisler has also been recognized as a "Best Law Firm National Tier 1 Employment Firm" by U.S. News (2015 and 2016), "Elite Trial Lawyers" by the National Law Journal (2014 and 2015), and among Above the Law's "Top Litigation Firms by Law School Pedigree.  *Id.* ¶ 13.

---

24

fairness hearing in *Hernandez et al. v. C&S Wholesale Grocers, Inc.*, No. 7:06-CV-02675, (S.D.N.Y. 2008), the judge described the firm as "exceptionally able and experienced" and praised "the work that counsel have put in, not just in terms of the quantity, but what it was that counsel did, with obviously the tremendous amount of work . . ." and acknowledged a highly favorable result in "obviously a very complex dispute, both in terms of the law and in terms of the facts."[23] *Id.* ¶ 11.

Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied.

**C.    The Requirements of 23 (b)(2) and 23 (b)(3) Are Satisfied**

**1.    The Requirements of Rule 23(b)(2) Are Satisfied.**

With respect to the programmatic relief afforded by the Settlement, the Court should certify a Rule 23(b)(2) subclass comprised of all current employees within the larger class.  Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Because "the relief requested in a  (b)(2) class is prophylactic, inures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an

---

[23] As detailed in the attached attorney declarations, Sanford Heisler has garnered numerous accolades for their work on behalf of employees.  *See* Medina Decl., Sanford Decl., Declaration of Jill S. Sanford, and Declaration of Edward D. Chapin.  David Sanford received his law degree from Stanford University and his B.A. from Vassar College.  *Id.* ¶ 2.  He was inducted into the National Law Journal's Elite Trial Lawyers Hall of Fame and has been recognized as an American Lawyer "Top Rated Employment Lawyer," a Corporate Counsel "Top Rated Employment Lawyer," and a Law360 "Employment MVP" in both 2014 and 2015.  *Id.* ¶ 5.  Felicia Medina, who received her law degree from Yale Law School in 2006, has been named a Law360 "Rising Star" in 2015 and 2016, a Law360 "Minority Powerbroker," and a San Francisco SuperLawyer Rising Star. Medina Decl. ¶ 10.  In 2016, she was honored as one of the National LGBT Bar Association's "Best LGBT Lawyers under 40."  *Id.*

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

opportunity to opt out of the class is not required." *Aho v. Americredit Fin. Servs.*, 277 F.R.D. 609, 614 (S.D. Cal. 2011) (citing *Dukes*, 131 S.Ct. at 2558).

In this case, Plaintiffs maintain that Qualcomm uses uniform evaluation, pay, and promotion policies and practices, in concert with a discriminatory culture promoted by Qualcomm's senior management. Consequently, the programmatic relief negotiated by the Parties to address those policies and practices will "provide relief to each member of the class." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Thus, the programmatic relief portion of the Settlement qualifies for certification under Rule 23(b)(2). This aspect of the Class is mandatory; Class Members cannot opt out, although they can object to its terms. *Dukes*, 131 S.Ct. at 2558 ("Rule [23] provides no opportunity for (b)(1) or (b)(2) class members to opt out").

## 2. Class Certification is Also Appropriate Under Rule 23(b)(3).

### a. Common Issues Predominate.

"In evaluating whether common issues predominate, the operative question is whether a putative class is 'sufficiently cohesive' to merit representative adjudication." *Grayson v. 7-Eleven, Inc.,* 2011 U.S. Dist. LEXIS 62211, at *12 (S.D. Cal. 2011) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 606-07 (S.D. Cal. 2010) (citing *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).

Here, "[r]esolution of Plaintiffs' challenge to [alleged discriminatory employment] practices will resolve significant issues with respect to the class as a whole, and this dwarfs individualized issues as to particular employment

decisions." *Ellis*, 285 F.R.D. at 538.[24]

### b. A Class Action is Superior to Alternative Methods of Adjudication.

In considering whether a class action is the superior approach for resolving the controversy:

> [C]ourts will [**first**] look at whether or not the class members have interests in individually controlling the prosecution or defense of separate actions; **second**, the courts consider the extent and nature of any litigation concerning the controversy already begun by or against class members; **third**, the courts assess the desirability or undesirability of concentrating the litigation of the claims in the particular forum; **finally**, the courts consider the likely difficulties in managing a class action.

*Ching v. Siemens Indus.*, No. C 11-4838 MEJ, 2013 U.S. Dist. LEXIS 169279, at *15-16 (N.D. Cal. Nov. 26, 2013) (emphasis added).

Here, class treatment is superior to other methods of adjudication. Plaintiffs have already engaged in extensive investigation to develop the class claims. Requiring each individual Class Member to conduct duplicative discovery and separately litigate her own action would be highly inefficient and an affront to judicial economy. Moreover, given the risks of suing one's employer and the

---

[24] *See also, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("[U]niform corporate policies will often bear heavily on questions of predominance and superiority"); *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 U.S. Dist. LEXIS 95636, at * 22 (S.D. Cal. Sept. 13, 2010) (finding predominance in employment class action where employees' alleged claims "based upon company policies which were consistently applied" to class members); *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 364 (N.D. Cal. 2010) ("[U]niform corporate practices and policies that cumulatively impact the class in a particular manner can satisfy the predominance requirement."); *Bellifemine*, 2010 WL 3119374, at *2 (holding "the Plaintiffs' claims meet [Rule 23(b)(3)] because they are unified by common factual allegations that Sanofi-Aventis allegedly disfavored female sales force employees compared to males in terms of compensation and promotion").

1
2
3
4
5
6
7
8
9
10

relatively low sums involved, it would be impracticable for most class members to pursue individual actions. Nor is there any reason to believe that Class Members have significant interest in controlling the prosecution of their claims. Further, "[g]iven the class's common questions affecting the class as a whole at the liability stages of this matter, and given class members' ability to opt out of the monetary relief class or to pursue their claims for relief in [this action], class members have a diminished interest in individually controlling the common portions of this action." *Ellis*, 285 F.R.D. at 539–40.[25] Finally, this case belongs in the Southern District of California, where Qualcomm and the majority of its U.S. workforce are located.

11
12

**D.    The Court Should Conditionally Certify the EPA Collective Action under 29 U.S.C. § 216(b)**

13
14
15
16
17
18

For settlement purposes, the Parties stipulate to certification of an EPA Collective Action comprised of all women below the level of "VP" who were or are employed by Qualcomm or its subsidiaries or affiliates in the United States between December 4, 2012 and the date of preliminary approval. Plaintiffs allege violations of the Equal Pay Act, 29 U.S.C. § 206(d), and thus seek conditional certification under Section 216(b).

19
20
21
22
23

Claims under the EPA are not subject to Rule 23's certification process. Instead, "[d]etermining whether a suit may be maintained as an FLSA collective action is within the discretion of the district court." *Hensley v. Eppendorf N. Am., Inc.*, 2014 U.S. Dist. LEXIS 78477, at *5 (S.D. Cal. June 6, 2014). The Ninth Circuit has "consistently applied a two-step approach for determining if

24

25
26
27
28

[25] The Court need not reach the issue of whether the case, if tried, would present manageability issues. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 610 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

employees' are 'similarly situated'" under Rule 216(b).  *Id.*  The standard for approval at the first stage is "a lenient one that typically results in certification." *Id.* at *6.  A plaintiff must "provide little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Id.*  This requires merely "some factual basis beyond the mere averments in [his] complaint for the class allegations." *Id.* Importantly, the "showing required here is considerably less stringent than the showing required under Federal Rule of Civil Procedure 23." *Id.*[26]

Here, the EPA Collective Action easily hurdles the low bar for conditional certification; since the considerably more stringent Rule 23 is satisfied, certification of a Section 216(b) collective action follows as a matter of course. The pay and promotional disparities seen across the class were driven by a company-wide evaluations, pay, and promotion system that reinforced systemic gender inequalities at Qualcomm.  Courts have routinely certified similar EPA collective actions.[27]

---

[26] *See also, e.g., Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (describing the initial standard for collective certification as a "fairly lenient" one where the "usual result is conditional class certification"); *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("[T]he [i]nitial determination is usually made under a fairly lenient standard and typically results in conditional class certification."); *Talavera v. Sun-Maid Growers of Cal.*, 2016 U.S. Dist. LEXIS 35530, at *7-8 (E.D. Cal. Mar. 18, 2016) (stating that "[c]ourts in the Ninth Circuit universally recognize" the standard as a "lenient one").

[27] *E.g.*, *Smith v. Merck & Co., Inc.*, Civ. No. 13-2970, 2016 U.S. Dist. LEXIS 56166 (D.N.J. Apr. 27, 2016); *Coates v. Farmers Group, Inc.*, No. 15-CV-01913-LHK, 2015 U.S. Dist. LEXIS 165817 (N.D. Cal. Dec. 9, 2015); *Barrett v. Forest Labs, Inc.*, No. 12 cv. 5224, 2015 U.S. Dist. LEXIS 117203 (S.D.N.Y. Sept. 2, 2015); *Kassman v. KPMG, LLP*, No. 11 Civ. 3743, 2014 U.S. Dist. LEXIS 93022 (S.D.N.Y. July 8, 2014); *Wellens v. Daiichi Sanyko, Inc*., No. 13-cv-581-WHO, 2014 U.S. Dist. LEXIS 70628 (N.D. Cal. May 22, 2014). *See also Moore v. Publicis Groupe SA*, 2012 U.S. Dist. LEXIS 92675 (S.D.N.Y. June 28, 2012)

Plaintiffs seek conditional certification, also referred to as Step One certification.  If the Court grants this request, Collective Action Plaintiffs will receive notice of this Settlement and their options.  The Court will then resolve the issue of Step Two certification at the final fairness hearing, and Collective Action Plaintiffs will opt in to the EPA Collective Action and release their claims under the EPA by cashing their rewards checks, which will bear language explaining this release.  Courts in California have approved this opt-in process in cases under the EPA.  *Wellens et. al. v. Daiichi Sankyo, Inc.*, No. C 13-00581 WHO (DMR) (N.D. Cal. Feb. 11, 2016).

E.     **The Court Should Preliminarily Approve the Proposed Class Settlement.**

A proposed settlement warrants approval if it is "fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.  At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *Stemple v. QC Holdings, Inc.*, 2016 U.S. Dist. LEXIS 55011, *19-20 (S.D. Cal. Apr. 25, 2016) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Harris v. Vector Marketing Co.*,

---

(certifying class of all vice presidents and senior vice presidents based on a common pay scale implemented centrally despite the allegations that they worked in different locations and industries and had different numbers of direct reports and degrees of responsibility); *Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 5 (D.D.C. 2002) (conditionally certifying a class of all female employees in exempt positions at multiple locations in the company who did not have authority to make compensation decisions); *Rehwaldt v. Elec. Data Sys. Corp.*, No.: 95-876, 1996 U.S. Dist. LEXIS 22125, at *13-14 (W.D.N.Y. Mar. 28, 1996) (granting distribution of notice to an EPA class of all female employees in a strategic business unit, which comprised multiple divisions and multiple job codes).

2011 U.S. Dist. LEXIS 48878, at *23 (N.D. Cal. Apr. 29, 2011) (citations omitted). "Closer scrutiny [of a class action settlement] is reserved for the final approval hearing." *Harris*, 2011 U.S. Dist. LEXIS 48878, at *24.  For the reasons set forth below, the Court should preliminarily approve the Settlement.

> **1.      The Proposed Settlement was the Product of Serious, Arm's-Length, Informed Negotiations by Experienced Counsel and Is Not Collusive.**

The process through which the Settlement was reached favors approval.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris*, 2011 U.S. Dist. LEXIS 48878, at *24 (internal quotation omitted).  Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Carter v. Anderson Merchandisers, LP*, 2010 U.S. Dist. LEXIS 55581, at *22 (N.D. Cal. May 11, 2010) (citations omitted).

Here, the Parties reached the proposed Settlement after two full days of formal mediation sessions with David A. Rotman, "a prominent mediator with a specialty in employment discrimination cases." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (citation omitted); *see also Glass v. UBS Fin. Servs., Inc.,* No. 06-4068, 2007 U.S. Dist. LEXIS 8476, at *3, *6 (N.D. Cal. Jan. 26, 2007) (citing Mr. Rotman's reputation as "one of the preeminent mediators of employment law claims in the country" and describing him as "a well-respected mediator with substantial experience in employment litigation").

Both sides are represented by experienced and well-informed counsel.  As discussed above, Class Counsel has substantial experience litigating employment discrimination class actions. *See supra* IV.B.5.  Qualcomm is represented by Paul Hastings, a prominent national law firm with an expertise in employment law. Nancy Abell, Qualcomm's lead Counsel, who holds her undergraduate and law degrees from the University of California, Los Angeles, possesses over 35 years of

1  experience.  She has been recognized repeatedly as an innovative attorney at the top
2  of her field by numerous publications, including the *Daily Journal*, the *National*
3  *Law Journal*, and *Chambers*.    Consequently, Counsel's assessment that the
4  settlement is reasonable and fair should be given "significant weight."  *Leonard v.*
5  *Baumer*, No. MDL 726, 1989 U.S. Dist. LEXIS 19146, at *8 (C.D. Cal. Mar. 9,
6  1989) ("The recommendation of experienced counsel carries significant weight in
7  the court's determination of the reasonableness of the settlement."); *see also Ellis v.*
8  *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

9       Class Counsel vigorously investigated the claims asserted against Defendant
10  by collecting information about Qualcomm's practices from Plaintiffs.    Class
11  Counsel also received information from Defendant concerning the compensation
12  paid to Class Members as well as their male comparators.    Class Counsel and its
13  expert analyzed this data to assess the claims and calculate damages.  As a result of
14  the extensive investigation and in-depth analysis of the Plaintiffs' claims, the Parties
15  negotiated the Settlement with complete knowledge of the strengths, weaknesses,
16  and potential damages in the case.

17       The fact that the proposed Settlement was reached by experienced counsel—
18  informed by discovery and aided by an experienced neutral—favors approval.  *See,*
19  *e.g.*, *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-01662 OWW MJS, 2011 U.S.
20  Dist. LEXIS 6976, at *17 (E.D. Cal. Jan. 25, 2011) (granting preliminary approval
21  where an agreement was reached through mediation after "extensive investigation
22  and discovery allowing [both parties] to assess the strengths and weaknesses of the
23  case"); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d. 1114, 1125 (E.D.
24  Cal. 2009) (granting preliminary approval where the parties "conducted extensive
25  investigation and discovery allowing them to assess the strengths and weaknesses of
26  the case").

27       Moreover, this Settlement lacks any of the features which the Ninth Circuit
28  considers indicative of collusion.  In *re Bluetooth Headset Prods. Liab. Litig.*, 654

F.3d 935 (9th Cir. 2011), the Ninth Circuit instructed courts to consider: (1) whether class counsel will receive a disproportionate distribution of the settlement; (2) whether the parties negotiate a "clear sailing" arrangement with respect to attorneys' fees; and (3) whether fees not awarded to class members revert to defendants. *Id.* at 947. Even where all three of these features exist, a settlement may still be approved. *E.g. In re Bluetooth Headset Prods. Liab. Litig.*, No. 07-MDL-1822 DSF (Ex), 2012 U.S. Dist. LEXIS 168324 (C.D. Cal. July 31, 2012). But none of them is present here: (1) the settlement is completely non-reversionary and all settlement funds will be distributed to the benefit of the class; (2) the attorney's fee/cost and service awards provisions are standard and entirely reasonable; and (3) it remains wholly within the Court's discretion whether to award the requested fee/costs out of the Fund.

## 2.    The Proposed Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Segments of the Class.

The Settlement also has no obvious deficiencies. The Settlement does not grant preferential treatment to Plaintiffs (or any other segment of the Class), who will share in the Class Settlement Fund on the same terms as all other Class Members.[28] Settlement shares are calculated to reflect differences in income and tenure. Each Class Member will be assigned a proportionate share of the Class Settlement Fund based on the number of weeks she worked during the applicable

---

[28] Pursuant to class action law in this Circuit, Plaintiffs' will apply for service awards for their time, efforts, and risks incurred in representing the class. *Harris*, 2011 U.S. Dist. LEXIS 48878, at *28 ("[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable") (citing cases). The proposed service awards are contingent upon the Court's approval and will be determined at the time of final approval. Settlement § 7.1. Any money not awarded as a service awards will go into the Class Settlement Funds. *Id.*

class damages period.  The proposed Settlement distribution is fair, adequate, and objectively reasonable.  Finally, the release is limited to claims of pay, promotion, and caregiver discrimination arising from the operative facts alleged in the class Complaint.  Accordingly, Class Members will retain any claims unrelated to these allegations.  Class Members will only release their EPA claims if they affirmatively opt-in and agree to release these claims by accepting their settlement checks. Settlement § 1.6.

Prior to the Fairness Hearing, Class Counsel will file formal applications for service awards and attorneys' fees and costs along with briefing in support of the applications.  At this initial juncture, Plaintiffs note that the service awards and attorneys' fee and costs requests provided for in the Settlement are fair and reasonable and do not constitute the type of "obvious deficiency" that would prevent preliminary approval and notice to the Classes.

### a.    Class Counsel's Attorneys' Fee Request is Reasonable and Appropriate

"The Ninth Circuit has established a 25% 'benchmark' for common fund cases." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). "The exact percentage [of fees] awarded [in a class action] . . . depend[s] on the facts of the case, and in most common fund cases, the award exceeds that benchmark percentage." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (citations omitted).  Indeed, while endorsing the 25% benchmark, California courts recognize that most fee awards are approximately 33% of the common fund.  *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 U.S. Dist. LEXIS 6049, at *12-13 (S.D. Cal. Jan. 14, 2013) (citing *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009)).  As a result, fee awards of 33.3% or more are regularly approved in this Circuit.[29]

---

[29] *See, e.g., In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

In this matter, Plaintiffs anticipate seeking combined fees and costs of 30% of the $19.5 million Fund.  While such an award is eminently reasonable, it does not tell the full story.  Counsel has also achieved remarkable programmatic relief which the parties are able to monetize at approximately $4 million or more.  When this relief is considered, the expected $5.85 million fee request would represent 24.9% of the total monetary value of the Settlement.  Moreover, a substantial portion of the requested award will constitute reimbursement for Counsel's out-of-pocket reasonable litigation expenses (tens of thousands of dollars in expert fees, mediation costs, travel, and other necessary layouts), further reducing the percentage fee.

Even assuming a 30% award, the fee provisions of the Settlement do not provide a basis for withholding preliminary approval and denying the Class Members an opportunity to weigh in on the Settlement.  A "request for attorneys'

(affirming award of one-third of $12 million fund); *Birch v. Office Depot, Inc*., Case No. 06cv1690 DMS (WMC), Doc. No. 48, at 13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee in a $16 million wage-and-hour class action); *Rippee v. Boston Mkt. Corp*., Case No. 05-CV-1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage-and-hour class action, taking into account the substantial addition benefit that would be realized by the class as a result of programmatic relief); *Singer v. Becton Dickinson & Co*., No. 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (ruling that an award of 33.33% fees in employment class action "falls within the typical range of 20% to 50% awarded in similar cases"); *Thieriot v. Celtic Ins. Co*., No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852, at *15-20 (N.D. Cal. Apr. 21, 2011) (awarding fees totaling 33% of class fund); *Stuart v. RadioShack Corp*., No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, at *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third fee in employment class action); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (same); *In re Heritage Bond Litig*., 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, 2005 U.S. Dist. LEXIS 13555, at *58-74 (C.D. Cal. June 10, 2005) (awarding fees totaling one-third of $27,783,000 fund); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 U.S. Dist. LEXIS 67108, 19-20 (D. Minn. 2006) (awarding fee of 35.5% of total fund in sex discrimination class action).

fees in the amount of 30% of the common fund falls within the range of acceptable attorneys' fees in the Ninth Circuit." *Williams v. Centerplate, Inc.*, No. 11-CV-2159, 2013 U.S. Dist. LEXIS 121307, at \*19-21 (S.D. Cal. Aug. 26, 2013). *See also In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of one-third of $12 million fund); *Singer*, 2010 U.S. Dist. LEXIS 53416, at \*22 (approving fee amounting to 33.33% of the common fund).[30]  As a result, the attorneys' fee request, at least at the preliminary approval stage, is reasonable and appropriate.

### b.    The Requested Service Awards Are Reasonable and Appropriate.

The requested service awards of $50,000 to each Class Representative are also reasonable and appropriate and do not provide cause to reject the Settlement at the preliminary approval stage. Service awads are an important way to "recognize the risks that the named Plaintiffs and opt-ins faced by participating in a lawsuit against their current or former employer and the efforts they made on behalf of the class." *Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, at \*16 (E.D.N.Y. Aug. 6, 2012).  Such awards acknowledge the "time and effort" expended by plaintiffs in the investigation, litigation, and settlement process and the "inherent risk" undertaken by employees who pursue claims against their employer. *Hosier v. Mattress Firm*, No. 3:10-cv-294-J-32JRK, 2012 U.S. Dist. LEXIS 94958, at \*15 (M.D. Fla. June 8, 2012).  "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 U.S. Dist. LEXIS 48878, at \*28 (citing cases).  Courts evaluate each such award using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the

---

[30] *See supra* footnote 29.

1
2
plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace

retaliation." *In re High-Tech Employee Antitrust Litig.*, 2015 U.S. Dist. LEXIS

3
118052, at *61 (N.D. Cal. Sept. 2, 2015).

4
5
6
7
8
9
10
11
12
13
14
15
        Based on their time, effort and risks incurred in bringing this case on behalf of

the Classes, as well as the substantial benefits the resulting Settlement provides the

Classes, the requested service awards should ultimately be found to be reasonable.

Courts in the Ninth Circuit and elsewhere have awarded similar or higher amounts

in both employment cases and other contexts.  For example, in *In re High-Tech

Employee Antitrust Litig.*, one class representative received a total of $140,000

while four others received $100,000 each.   The court reasoned that class

representatives spent "hundreds of hours" on the case.  2015 U.S. Dist. LEXIS

118052, at *63.  Because these efforts ultimately resulted in a "substantial benefit"

to the class and the class representatives risked "significant workplace retaliation"

in order to secure it, the Court awarded a total of $540,000 to the five class

representatives.[31]

16
17
18
19
        The requested service awards are also in reasonable proportion to the

overall Settlement.  In total, they represent only 1.8% of the cash settlement Fund.

*Cf., e.g., In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052,

at *65-66 (finding that awards of $80,000 and up were acceptable as compared to

20
21
22
23
24
25
26
27
28
---

[31] *See also, e.g., Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008)
($50,000 awards to each of 11 named plaintiffs in employment discrimination
action); *Liberte Capital Group v. Capwill*, 2007 U.S. Dist. LEXIS 64869, at *11,
15 (N.D. Ohio Aug. 29, 2007) (stating that "[i]ncentive awards, where
appropriate, generally range from a few thousand dollars to $85,000," and
awarding $97,134 and $95,172 to two class representatives); *Beck v. Boeing Co.*,
No. 00-CV-301P, at 4 (W.D. Wa. Oct. 8, 2004) (approving award of $100,000
each to twelve named plaintiffs); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694
(N.D. Ga. 2001) (four representative plaintiffs in Title VII case awarded $300,000
each); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 188-89 (S.D.N.Y. 1997)
(approving awards of $85,000 and $50,000).

average class member recovery of approximately $5,800, resulting in a ratio of 14-21 to 1) (collecting cases); *Lemus v. H&R Block Enters. LLC,* No. C 09-3179 SI, 2012 U.S. Dist. LEXIS 119026, at *5-6 (N.D. Cal. Aug. 22, 2012) (approving $15,000 service awards where the average class recovery was about $1,200). As set forth above, Plaintiffs have expended substantial time and resources on this action and have incurred substantial risk by doing so. Their efforts have paid off in an exceptional settlement to the Classes. Under established case law, they are entitled to reasonable recognition for sticking their necks out and pursuing this matter on behalf of absent Class Members.

In sum, the proposed attorneys' fees and service awards are within the typical range of possible approval, and are justified given the facts of this case. They do not constitute "obvious deficiencies" for purposes of preliminary approval. Regardless, both the attorneys' fees/costs and service award payments are subject to the Court's approval and should be assessed at the final approval stage after Plaintiffs formally apply for fees/costs and service awards and the Class Members have an opportunity to respond.

### 3. The Proposed Settlement Falls Within the Range of Reasonableness

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particular sum. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. Cal. 2009). Rather, settlements may fall within a range of possible approval. *Harris,* 2011 U.S. Dist. LEXIS 48878, at *28-29. "To determine whether a settlement falls within the range of possible approval a court must focus on substantive fairness and adequacy, and consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Nevertheless, the Ninth Circuit has advised that "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Service*

38

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS SETTLEMENT – Case No.: 3:16-cv-01885-JLS-DHB

*Com.*, 688 F.2d 615, 625 (9th Cir. 1982).  Moreover, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Id.* (emphasis in original).  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.  *Stemple*, 2016 U.S. Dist. LEXIS 55011, at *21 (citing *U.S. v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted);  *See, e.g., Glass*, 2007 U.S. Dist. LEXIS 8476 at *28-29 (settlement of wage and hour class action for 25 to 35% of total damages was reasonable); *Four in One Co. v. S.K. Foods, L.P.*, 2014 U.S. Dist. LEXIS 113084, at *29-30 (E.D. Cal. Aug. 13, 2014) (approving class settlement worth 2.4% of the total damages); *Morey v. Louis Vuitton N. Am., Inc.*, 2014 U.S. Dist. LEXIS 3331, at *17-18 (S.D. Cal. Jan. 9, 2014) (approving class settlement in which class members received 4.1% of their potential recovery).

### a.   The Proposed Settlement Results in Significant Benefits for the Classes

The Settlement provides for Defendant to make a non-reversionary cash settlement payment to the Class of $19.5 million, which covers distributions to Class Members, attorneys' fees, litigation costs, service awards, and expenses associated with the Settlement.  Further, Qualcomm has committed to significant, lasting programmatic relief valued at $4 million, raising the total value to $23.5 million.

Under the Settlement, over $13,005,500 will be dispensed to Class Members, pursuant to the distribution plan described above.  The average Class Member will receive over $3,953.04.  In addition, Class Members currently employed by Qualcomm will receive benefits from the programmatic relief, which will materially

advance the goal of equal opportunities for female Qualcomm employees. *Cf.*
*Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (approving class
settlement for unpaid wages in part because of the injunctive/corrective benefits
achieved). *Jaffe v. Morgan Stanley & Co.*, 2008 U.S. Dist. LEXIS 12208, *33,
(N.D. Cal. Feb. 7, 2008) (factoring in defendant's estimate of dollar value of
injunctive relief and describing that programmatic relief as "substantive, meaningful,
and valuable to the class" when preliminarily approving class settlement in race
discrimination case); *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D.
Ga. 2001) (granting motion for final approval of class settlement in part due to the
strength of programmatic relief, including an outside audit panel, agreed to by the
parties); *In re LifeLock, Inc.*, 2010 U.S. Dist. LEXIS 102612, *19 (D. Ariz. Aug. 25,
2010) ("Many courts have approved settlements where, as here, the consideration
offered consists of injunctive relief.") (citing *Ingram v. The Coca-Cola Co.*, 200
F.R.D. 685, 688 (N.D. Ga. 2001)).

### b. The Proposed Settlement is Reasonable in Light of the Risks, Expense, and Delay Inherent in Continued Litigation

A finding that the Settlement is reasonable is also warranted in light of the
risks, expense, and delay associated with continued litigation and trial. Qualcomm
strongly disputes that it discriminated against female employees through its pay and
promotion policies and practices and has presented evidence in defense of the
claims. Thus, although Plaintiffs believe their claims have merit, they also
recognize that they would face significant legal, factual, and procedural obstacles to
recovering damages.

Absent this Settlement, Defendant would have contested the propriety of class
treatment both in response to a motion for certification and through any trial.
Substantial disputes remain as to both merits issues and the certifiability of the class.
Disputes pertaining to certification stem from the constant evolution of Rule 23
jurisprudence in light of the Supreme Court's ruling in *Dukes v. Wal-Mart*, as well

as from recent lower-court decisions interpreting it.  Courts have found that this uncertainty weighs in favor of approving a class settlement.[32]  Moreover, "[e]ven if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources, potentially outweighing any additional recovery obtained through successful litigation."  *Bond*, 2011 U.S. Dist. LEXIS 6976, at *19.  The factual and legal issues in this action are complex.  The trial of Plaintiffs' class claims -- which collectively involves the claims of thousands of Class Members -- would require substantial preparation and ultimately the presentation of dozens of witnesses and multiple experts.  *Gripenstraw v. Blazin' Wings, Inc.*, 2013 U.S. Dist. LEXIS 179214, at *31 (E.D. Cal. Dec. 19, 2013) (recognizing the risk and expense of further litigation involving the "examination of numerous witnesses, by both parties, either through depositions or trial testimony, often both").  In contrast to the delay that would result from trial and appeals, the proposed Settlement yields a certain, substantial, and prompt recovery for the Classes.

### c.   The Extent of Discovery and the Stage of Proceedings

Under this factor, courts consider whether the parties have gathered "sufficient information to make an informed decision about the settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Formal discovery is not a prerequisite.  *Id.*[33]

---

[32] *See Chu v. Wells Fargo Invs. LLC*, Nos. C 05-4526 MHP; C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *10 (N.D. Cal. Feb. 16, 2011) ("Firstly, the outcome of plaintiffs' case was far from certain, particularly in light of several recent decertification orders and denials of certification in similar wage and hour class actions."); *Moshogiannis v. Sec. Consultants Group, Inc.*, No. 5:10-cv-05971 EJD2012, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012); *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27-28 (E.D. Cal. Nov. 10, 2011); *See also Martin v. AmeriPride Servs.*, No. 08cv440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796, at *18; *Catala v. Resurgent Capital Servs. L.P.*, No. 08cv2401 NLS, 2010 U.S. Dist. LEXIS 63501, at *8-9 (S.D. Cal. June 22, 2010); *In re M.L. Stern Overtime Litig.*, No. 07cv118 BTM (JMA), 2009 U.S. Dist. LEXIS 94671, at *6 (S.D. Cal. Oct. 9, 2009); *Reade-Alvarez v. Eltman*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).
[33] *Riker v. Gibbons*, 3:08-cv-115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841, at *14 (D. Nev. Oct. 28, 2010) ("absence of extensive formal discovery is immaterial"). Settlements reached at an early interval, without formal discovery, should be

41

1

2    Pursuant to these principles, courts approve settlements reached prior to the

3    formal commencement of a lawsuit. *See, e.g., Nigh v. Humphreys Pharmacal,*

4    *Inc.*, No. 12cv2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215, at *20-21 (S.D.

5    Cal. Oct. 23, 2013)(although mediation preceded filing of complaint, parties

6    conducted sufficient investigation, research, and informal discovery to be

7    "sufficiently informed and prepared for settlement discussions"); *Glass*, 2007 U.S.

8

9    approved where factors such as an informal exchange of information enable a
     sufficient evaluation of the merits of a case prior to settlement. *See, e.g., In re*

10   *Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *Cotton v. Hinton*, 559
     F.2d 1326, 1332 (5th Cir. 1977)(approving settlement over objection that not

11   enough discovery was done, finding that the Plaintiff was adequately informed
     despite the fact that "very little formal discovery was conducted and that there is

12   no voluminous record in the case."); *Patel v. Axesstel, Inc.*, No.: 3:14-CV-1037-
     CAB-BGS, 2015 U.S. Dist. LEXIS 146949, at *15 (S.D. Cal. Oct. 23,

13   2015)(plaintiff acquired sufficient information to make informed judgment about
     settlement despite lack of formal discovery); *Rieckborn v. Vielti PLC*, No. 13-cv-

14   3889-WHO, 2015 U.S. Dist. LEXIS 13542, at *22-24 (N.D. Cal. Feb. 3, 2015)
     (approving early settlement reached before formal discovery or significant motion

15   practice; plaintiffs' counsel had conducted extensive factual and legal
     investigation, prepared complaint and mediation statement, and consulted with

16   economic experts); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13cv2679-
     CAB (BGS), 2014 U.S. LEXIS 184096, at *27 (S.D. Cal. Dec. 23, 2014)(parties

17   stayed lawsuit for purposes of mediation before completing any formal
     discovery); *See further Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS

18   (MDD), 2011 U.S. Dist. LEXIS 144490, at *17-18 (S.D. Cal. Dec. 15, 2011)(case
     settled after single Early Neutral Evaluation conference and limited confirmatory

19   discovery); *Clesceri*, 2011 U.S. Dist. LEXIS 11676, at *27-28 ("significant
     informal discovery"); *Koumoulis v. LPL Fin. Corp.*, No. 09cv1973-DMS (BLM),

20   2010 U.S. Dist. LEXIS 124117, at *7-8 (S.D. Cal. Nov. 19, 2010)("prior to
     reaching a settlement, 'the Parties exchanged substantial information and

21   conducted informal investigation,' such that 'Class Counsel fully understood
     LPL's wage-paying practices and the composition of the Class.'"); *Misra v.*

22   *Decision One Mortgage Co.*, No. CV 07-994 DOC (RCx), 20009 U.S. Dist.
     LEXIS 119468, at *23 (C.D. Cal. Apr. 13, 2009)(early settlement reached prior to

23   full discovery may be fair and adequate "where there has been sufficient
     information sharing and cooperation in providing access to necessary data");

24   *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv795 IEG RBB, 2008 U.S. Dist.
     LEXIS 78314 at *16 (S.D. Cal. Oct. 6. 2008)(extensive investigation and informal

25   discovery, including use of damages expert); *Muhammad v. Nat'l City Mortgage*,
     Civ. No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *8-9 (S.D. W.Va. Dec. 19,

26   2008) (question is whether parties can "appreciate the merits of the claims"; there
     is "no minimum or definitive amount of discovery that must be undertaken")

27   (citations omitted); *Strang v. JHM Mortgage Secs. Ltd. P'ship*, 890 F.Supp. 499,
     501 (E.D.Va. 1995) ("Although the settlement comes at an early stage in the

28   litigation, even prior to the initiation of formal discovery, the Court finds that
     Plaintiffs have conducted sufficient informal discovery and investigation to fairly
     evaluate the merits of Defendants' positions during settlement negotiations.").

42

Dist. LEXIS 8476, at *13-14 (case settled at mediation in January 2006, complaint filed in June 2006; informal discovery prior to mediation was sufficient to enable the parties to make an informed decision regarding settlement); *Long v. HSBC USA, Inc.*, No. 14 Civ. 6233 (HBP), 2015 U.S. Dist. LEXIS 122655, at *9-10 (S.D.N.Y. Sept. 11, 2015) (granting preliminary approval of a pre-litigation settlement); *Diaz v. E. Locating Serv*., No. 1:10-cv-4082-JCF, 2010 U.S. Dist. LEXIS 139136, at *12-13 (S.D.N.Y. Nov. 29, 2010)(final approval of pre-suit settlement). The critical question is not *when* the case is resolved but "whether the parties carefully investigated the claims before reaching a resolution." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 257 (N.D. Cal. 2015) (citation omitted).

The Parties here engaged in a pre-filing investigation and exchange of information that resembles full-fledged class discovery. Plaintiffs prepared seven detailed EEOC charges delineating both their individual and class allegations. Early in negotiations, Qualcomm produced thousands of pages of information concerning the individual Plaintiffs. Qualcomm then made three comprehensive productions of class-wide data. The final production contained over four years of compensation and other employment information pertaining to every U.S.-based Qualcomm employee below the level of Vice President. The Parties' counsel spent many hours conferring and corresponding in person, on the phone, and in writing until Class Counsel was confident that it had reached a clear understanding of the data and all of its implications. Based on this data, Dr. Vekker was able to run a sophisticated multiple regression analysis of the type Plaintiffs would use to support their claims both at class certification and on the merits. In addition to relying on Dr. Vekker's analysis, Class Counsel also analyzed the data internally, deriving valuable insights into the composition of the class as well as liability and damages issues. This extensive process permitted Class Counsel to make a comprehensive assessment of liability and damages. Counsel's determination that the settlement is fair and

reasonable is well-grounded.

Furthermore, the degree to which the Parties understood this matter and the risks and rewards involved is underscored by the fact that the case settled only after multiple ADR sessions overseen by Mr. Rotman.  The Parties fleshed out their respective positions through their fulsome written submissions as well as two mediations conducted almost two months apart.  Mediator assistance in achieving a resolution supports approval under this factor.  *See, e.g., Morales*, 2011 U.S. Dist. LEXIS 130604, at *30; *see also Chu*, 2011 U.S. Dist. LEXIS 15821, at *10 (in addition to substantial discovery, "the respective factual and legal strengths of the parties' arguments are likely to have been sufficiently fleshed out" in the settlement process).

As in *Palacios v. Newman Grain Inc*., No. 1:14-cv-1804-DAD-SAB, 2016 U.S. Dist. LEXIS 70050 (E.D. Cal. May 27, 2016), the parties engaged in informal investigations and discovery that "enabled them to reach a meaningful settlement agreement."  They made repeated attempts to resolve the case under the guidance of a renowned employment mediator; and, their lengthy mediations "included extensive discussion and examination of the parties' respective positions on the legal and factual issues raised by the class action."  *Id*. at *21-22.  Requiring any more would elevate form over substance and penalize the Parties and Classes for the expeditious resolution of the case.  *Cf. Kearney v. Hyundai Motor Am*., No. SACV 09-1298-JST (MLGx), 2013 U.S. Dist. LEXIS 91636, at *19-20 (C.D. Cal. June 28, 2013) (timeliness of settlement supported approval under this factor: "the parties have shown that they have spent significant time investigating this action to allow for an informed decision, but not so much time that the settlement amount will be unnecessarily depleted by extensive costs and fees.").

### d.    The Experience and Views of Counsel

As discussed above, counsel for both sides are experienced in employment class actions and share a reputation for zealous and high-caliber advocacy.  Courts

greatly value the opinion of participating counsel in such circumstances. *See, e.g.*, *Arellano v. Kellermeyer Bldg. Servs., LLC*, 2014 U.S. Dist. LEXIS 168986, at \*24-25 (S.D. Cal. Dec. 5, 2014) (stating that where, as here, class counsel had served as lead or co-lead in previous class actions, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness"); *Gould v. Rosetta Stone, Ltd.*, 2013 U.S. Dist. LEXIS 138921, at \*14 (N.D. Cal. Sept. 26, 2013) ("Given the collective experience of the attorneys involved in this litigation, the Court credits counsels' view that the settlement is worthy of approval."). Both Parties agree this settlement merits approval, providing further evidence in favor of preliminary approval.

Based on a provisional assessment of the relevant factors, the Settlement falls within the range of possible approval, and therefore meets the "probable cause" standard for preliminary approval. Accordingly, the Court should grant preliminary settlement approval and authorize notice to Class Members so they may consider the proposed agreement.

### F. The Proposed Class Notice is Appropriate and Should be Approved

Pursuant to Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice provided members of a class certified under Rule 23(b)(3) must be "the best notice practicable under the circumstances" and must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, a general statement of the class claims and issues, that a class member may enter an appearance through counsel if desired, the right and manner of exclusion or objection, and the binding effect of class judgment. Fed. R. Civ. P. 23(c)(2)(B). A notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

962 (9th Cir. 2009) (citation omitted); *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (notice sufficient where it identified "the options available to putative class members—do nothing, object, or opt out—and comprehensively explained the nature and mechanics of the settlement in a separate document").

Here, the proposed Notice of Class Action Lawsuit (the "Notice") for distribution to Class Members meets that bar. Settlement, Ex. A. The Notice explains in plain and concise language (i) the nature of the lawsuit; (ii) the Class definition and claims; (iii) the settlement amount; (iv) the attorneys' fees and costs and service awards requested by Plaintiffs and Class Counsel; (v) the rights of Class Members to opt-out or object to the Settlement's terms and the process by which they can do so; (vi) the binding effect of the Settlement on Class Members who do not request exclusion; (vii) and the particulars of the final fairness hearing. *See* Rule 23(c)(2)(B). *See also Rodriguez*, 563 F.3d at 962.

The Parties' proposed plan for directing notice to the Classes is also reasonable and sufficient. Using last-known addresses provided by Defendant, the third-party Claims Administrator will send the Notice by First Class United States Mail to all Class Members. Settlement § 10.2.2. The Claims Administrator will perform address searches (skip traces) to obtain the correct address of any Class Member whose Notice is returned as undeliverable and will attempt re-mailings where new addresses are secured. *Id.*at 10.2.3.

## G.   The Court Should Also Preliminarily Approve the Settlement Under the EPA

The EPA is part of the Federal Fair Labor Standards Act ("FLSA"), and incorporates its enforcement mechanisms. An opt-in collective action settlement under the FLSA/EPA does not involve the rights of absent class members and is not subject to Rule 23(e). Nonetheless, courts review the settlement to ensure that it is fair and reasonable. *See, e.g.*, 29 U.S.C. §§ 216(b), 256; *Lee v. Timberland Co*., 2008 U.S. Dist. LEXIS 108098 (N.D. Cal. June 18, 2008); *Willix v. Healthfirst, Inc*.,

1   2011 U.S. Dist. LEXIS 21102, at *13-14 (E.D.N.Y. Feb. 18, 2011); *Gamble v. Boyd*
2   *Gaming Corp.*, 2015 U.S. Dist. LEXIS 107279, at *13-16 (D. Nev. Aug. 13, 2015).

3   "The standard for approval of an FLSA settlement is lower than for a Rule 23
4   settlement because an FLSA settlement does not implicate the same due process
5   concerns as does a Rule 23 settlement." *Willix*, 2011 U.S. Dist. LEXIS 21102, at
6   *13. *See also Gamble v. Boyd Gaming Corp.*, *supra*, at *13 n.2 ("District courts are
7   not constrained by the mandates for the proposed settlement of Rule 23 class
8   actions"). As set forth in cases such as these, an FLSA settlement need only reflect
9   a reasonable compromise of disputed issues. *See also Lynn's Food Store, Inc. v.*
10  *United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

11  In this case, as the Settlement meets the stricter Rule 23(e) standard, it also
12  passes muster under the EPA. First, the Parties have *bona fide* disputes over
13  Plaintiffs' EPA collective action claims covering both liability and damages, and,
14  absent settlement, whether certification of a collective action is appropriate. *See,*
15  *e.g.*, *Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241; 11-242, 2012 U.S.
16  Dist. LEXIS 6391 (E.D. La. Jan. 18, 2012), at *46-47; *Lee*, 2008 U.S. Dist. LEXIS
17  108098, at *5-6. Second, under the circumstances, Plaintiffs maintain that there is
18  little question that the Settlement represents a fair and reasonable compromise of
19  contested claims. *See, e.g.*, *Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2011
20  U.S. Dist. LEXIS 93166, at *3 (N.D. Cal 2011) ("substantial" payments achieved
21  through arm's length negotiations); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *9;
22  *Willix*, 2011 U.S. Dist. LEXIS 21102, at *13-14. Moreover, unlike many cases,
23  since each Collective Action Plaintiff is also a Rule 23 Class Member, each
24  employee will receive (i) a notice which meets the more stringent requirements of
25  Rule 23 and due process and (ii) an opportunity to weigh in on the Settlement by
26  appearing at the final fairness hearing.

27  ## H.   The Court Should Schedule a Fairness Hearing
28  Because the Settlement meets the requirements for preliminary approval, the

47

Court should set a final fairness hearing to decide whether to grant final approval of the Settlement, as well as whether to grant Plaintiffs' application for service awards and Class Counsel's motion for attorney's fees and costs. *See In re Wireless Facilities, Inc. Sec. Litig.,* 253 F.R.D. 630, 634 (S.D. Cal. 2008); Fed. R. Civ. P. 23(e)(2).  The Settlement directs that Qualcomm provide a comprehensive class and collective action list to the Class Administrator no later than 15 days after the preliminary approval, and notice will go out no later than 20 business days after the provision of these lists.  Class Members will then have 60 days to opt out or object.  Accordingly, Plaintiffs request that a final fairness hearing be set for a mutually convenient date after the notice period.

## VI.   **CONCLUSION**

The Parties have achieved an exceptional settlement that provides substantial and immediate relief to the Classes without the burdens and risks of litigation.  For the reasons set forth above and in the accompanying papers, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of the Class Settlement.


Dated: July 26, 2016                    Respectfully submitted,

                                        /s/ Felicia Medina
                                        David Sanford (*Pro Hac Vice to be filed*)
                                        Felicia Medina (SBN 255804)
                                        Ed Chapin (SBN 53287)
                                        Jill Sanford (SBN 185757)
                                        Xinying Valerian (SBN 254890)
                                        Danielle Fuschetti (SBN 294064)
                                        SANFORD HEISLER, LLP

                                        *Attorneys for the Plaintiffs, Classes,*
                                        *and Collective*