David Sanford (DC Bar No. 457933, *Pro Hac Vice pending*)
dsanford@sanfordheisler.com
SANFORD HEISLER, LLP
1666 Connecticut Ave. NW, Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199

Felicia Medina (CA SBN 255804)
fmedina@sanfordheisler.com
Xinying Valerian (CA SBN 254890)
xvalerian@sanfordheisler.com
Danielle Fuschetti (CA SBN 294064)
dfuschetti@sanfordheisler.com
SANFORD HEISLER, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Ed Chapin (CA SBN 53287)
echapin@sanfordheisler.com
Jill Sanford (CA SBN 185757)
jsanford@sanfordheisler.com
SANFORD HEISLER, LLP
501 West Broadway, Suite 515
San Diego, CA 92101
Telephone: (619) 577-4253
Facsimile: (619) 577-4250

*Attorneys for Plaintiffs, the Classes, and Collective*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED & QUALCOMM TECHNOLOGIES INC.,<br><br>Defendants. | Case No.: 3:16-cv-01885-JLS-DHB<br><br>**DECLARATION OF FELICIA M. MEDINA** |

1  I, FELICIA M. MEDINA, hereby declare as follows:

2      1.     I make this Declaration based on personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

    2.     I am an attorney admitted to practice law in the State of California.

    3.     I am the Managing Partner of Sanford Heisler, LLP's ("Sanford Heisler", "SH", or the "firm") San Francisco office.

    4.     I received my law degree from Yale Law School in 2006. Since then, I have amassed vast class action litigation experience. I have been involved in over fifteen state and national class actions.

    5.     Currently, I am Lead or Co-Lead Counsel in the following class pending actions: *Ha, et al. v. Google Inc., et al.*, No. 1:16-cv-290847 (Cal. Super. Ct., Santa Clara, 2016); *Peterson et al. v. Alaska Communications Systems Group Inc.*, No. 3:12-cv-00090-TMB (D. Alaska, 2012); *Sandquist, et al. v. Lebo Automotive, et al.*, No. BC476523 (Cal. Super. Ct., Los Angeles, 2012) and *Dickerson, et al. v. Novartis Corp., et al.*, No. 1:15-cv-01980-GHW, (S.D.N.Y., 2015).

    6.     As Lead Class Counsel, I recently secured final approval of the class settlement in *Wellens, et al. v. Daiichi Sankyo, Inc.*, No. C 13-00581 NC (N.D. Cal., 2013), the first case to be conditionally certified under the Equal Pay Act in the Ninth Circuit.

    7.     I was also a member of the trial team of *Velez, et al. v. Novartis*, No. 1:04-cv-09194-CM (S.D.N.Y., 2006), which secured the largest employment class action verdict in United States history.

    8.     Additionally, in *Armstrong, et al. v. Whirlpool Corporation*, No. 08-6376 (6th Cir., 2010), I successfully argued an appeal before the Sixth Circuit in a race discrimination and hostile work environment case.

    9.     I am a board member of the Bar Association of San Francisco, the National Center for Lesbian Rights, and the Legal Aid Society Employment Law Center.

10. In 2016, I was recognized by the National LGBT Bar Association as "Best LGBT Lawyer Under 40," by Super Lawyers Northern California as a "Rising Star," and by Law360 as "Rising Star." In 2015, I was recognized by the National Diversity Council as "Most Powerful and Influential Woman," by Super Lawyers of Northern California as a "Rising Star," and by Law360 as a "Rising Star." In 2014, I was recognized by Law360 as a "Minority Power Broker."

11. My firm is counsel for the Plaintiffs in the instant matter. I have been intimately involved in all aspects of this dispute and the resulting settlement. A true and correct copy of the Class Settlement Agreement, including the appendices and proposed class notice, that was executed on July 25, 2016, is attached hereto as **Exhibit 1**.

12. On October 22, 2015, my office filed a Charge of Discrimination on behalf of our client, Dandan Pan, with the Equal Employment Opportunity Commission ("EEOC") and a Complaint of Discrimination with the California Department of Fair Employment and Housing ("DFEH").

13. Ms. Pan alleged, in part, that the predominately male leadership at Qualcomm systematically discriminated against female employees through common compensation and promotion policies and practices that resulted in lower pay and denial of promotions for women at Qualcomm.

14. On November 7, 2015, my office notified Qualcomm's General Counsel of Ms. Pan's EEOC charge and the fact Sanford Heisler also represented Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson.

15. On December 30, 2015, I provided Defendants with drafts of the class EEOC charges I planned to file on behalf of each of the new clients.

16. Also on December 30, 2015, I provided Defendants with an amended class charge for Plaintiff Pan and a draft Labor and Workforce Development Agency letter concerning claims under the California Private Attorneys General Act of 2004 (PAGA), stemming from the violations alleged in the class charges.

17. I delayed filing these documents at Defendants' request in anticipation of engaging in substantive settlement negotiations.

18. Plaintiffs Carrie Haluza and Carolina Dealy became involved in this matter in 2016.

19. On March 23, 2016, I provided Qualcomm Ms. Haluza's draft EEOC. This charge was not filed pursuant to the agreement reached with Defendants to explore settlement.

20. From November 2015 to the date of this filing, the Parties engaged in continuous, arm's length negotiations over a tolling agreement, pre-suit discovery, and the terms of a potential class action settlement.

21. On January 25, 2016, the Parties agreed to mediate their disputes before highly-regarded mediator David Rotman.

22. In advance of the mediation, the Parties exchanged extensive and informal information and discovery to facilitate their settlement discussions.

23. Qualcomm produced each of the Plaintiffs' pay and personnel records, amounting to thousands of pages of documents.

24. Qualcomm also agreed to produce class-wide pay and promotion data concerning all Qualcomm employees at or below the level of Senior Director.

25. On March 31, 2016, after substantial negotiations with Defense Counsel, Defendants produced comprehensive employment and payroll data for all Qualcomm workers employed in the United States between October 2011 and May 2015. The data included, among other things, each employee's job title, performance rating, bonus rating, salary, bonus, and other compensation information.

26. I determined that the data produced was deficient in a number of respects, and then engaged in vigorous meet-and-confer efforts regarding the scope and detail of the data.

27. As a result of these efforts, Qualcomm produced a second replacement set of data on or about April 20, 2016.

28. Both Parties retained skilled labor economists to analyze the class data. Sanford Heisler retained Dr. Alex Vekker, a Professor at University of Pennsylvania who has served as an expert in numerous discrimination class actions. Qualcomm retained Dr. Janet Thornton, a Managing Director at the Berkeley Consulting Group and Professor at Florida State University, who has also served as an expert witness in several employment matters.

29. Dr. Vekker's analysis revealed statistically significant gaps in base and incentive pay across QCT, QCS, and QWS, even controlling for factors such as job family and job code.

30. Dr. Thornton disputed Dr. Vekker's analysis – concluding that any disparities were insignificant and that the Class had suffered minimal, if any, damages.

31. The Parties then exchanged lengthy mediation statements outlining their respective positions. Plaintiffs' mediation brief was 42 pages long and also included approximately 180 pages of exhibits. Qualcomm submitted a 55-page, single-spaced mediation statement contending that Plaintiffs' claims lacked merit and that Plaintiffs would not be able to certify a class or collective action.

32. On April 27, 2016, the Parties participated in their first full-day mediation before David Rotman.

33. Plaintiffs Pan, Paquin, Haluza, Dealy, Shi, and Matulich flew to San Francisco to take part in the mediation, and Plaintiff Jacobson participated by phone.

34. This mediation was unsuccessful in that it did not result in a settlement that day.

35. However, the mediator was able to assist the Parties in narrowing the issues and the Parties agreed to return for a second mediation in June, pending further exchange of data and information.

36. After the first mediation, my team and I met and conferred with Defense Counsel to obtain more complete and updated class data.

37. On or about May 17, 2016, Qualcomm produced a third data set, covering all U.S. employees at the Company through April 18, 2016. Dr. Vekker analyzed this data and again found widespread, highly statistically significant base and incentive pay disparities, coupled with statistically significant disparities in promotions.

38. Dr. Thornton again performed a competing analysis.

39. On June 15, 2016, my legal team and I met in person with counsel for Qualcomm and a corporate representative. Each Parties' respective experts appeared by phone to discuss their analyses.

40. On that day, the Parties also discussed Plaintiffs' programmatic relief proposal at length.

41. On June 21, 2016, the Parties participated in another full day of mediation before Mr. Rotman.

42. With the benefit of the revised data, and the June 15 discussion with experts, the Parties were able to make progress in the negotiations.

43. They reached an agreement in principle to settle the case close to midnight on June 22, 2016 and signed a Memorandum of Understanding ("MOU").

44. Since the mediation, my legal team and I have expended significant time negotiating and finalizing the details of the settlement.

45. During a separate mediation after the class MOU was signed, the Plaintiffs also reached an aggregate settlement to address individual claims outside the scope of the class action, such as sexual harassment, wrongful termination, and other forms of discrimination.

46. The Plaintiffs have been heavily involved at every step of this process and have had a large impact on every aspect of the investigation and settlement of the class claims.

47. Cumulatively, they have spent well over 1,700 hours in service to the Classes.

48. Attached as **Exhibit 2** is a true and correct copy of the Declaration of Dandan Pan in support of this Motion.

49. Attached as **Exhibit 3** is a true and correct copy of the Declaration of Carrie Haluza in support of this Motion.

50. Attached as **Exhibit 4** is a true and correct copy of the Declaration of Carolina Dealy in support of this Motion.

51. Attached as **Exhibit 5** is a true and correct copy of the Declaration of Laura Paquin in support of this Motion.

52. Attached as **Exhibit 6** is a true and correct copy of the Declaration of Wei Shi in support of this Motion.

53. Attached as **Exhibit 7** is a true and correct copy of the Declaration of Blanche Matulich in support of this Motion.

54. Attached as **Exhibit 8** is a true and correct copy of the Declaration of Connie Jacobson in support of this Motion.

55. As detailed in the Plaintiffs' declarations, they consulted with Class Counsel on a variety of issues, engaged in discussions on case strategy, reviewed and provided input on the mediation statement, helped formulate the programmatic relief proposal, attended both mediations, and helped craft the final Settlement. Specifically, they engaged in countless meetings and conversations with Class Counsel to aid in the initial investigation, factual development, and resolution of this case

56. The Plaintiffs gathered many documents and spent several hours speaking with the legal team to help us understand Qualcomm's practices, analyze Qualcomm's data, and formulate appropriate requests for documents and other information.

57. The Plaintiffs' communications with Sanford Heisler included hours-long meetings and calls and additional communications by way of frequent and regular email correspondence.

58. The Plaintiffs also aided in preparing numerous documents. They participated in drafting and revising their EEOC Charges of Discrimination and DFEH

Complaints of Discrimination, the mediation statement and related documents, settlement documents, the programmatic relief proposal, the Complaint, and the preliminary settlement approval papers.

59. In working on the class charges and the proposal for programmatic relief, Plaintiffs drew not only from their own experiences, but also from their observations of how other women at Qualcomm were treated. They employed their intimate knowledge of Qualcomm and its practices to fashion appropriate measures to address the issues at the Company.

60. Most of the Plaintiffs flew to San Francisco to attend both mediations. Before both mediations, the Plaintiffs met with the legal team for several hours to prepare.

61. Each Plaintiff footed her own travel expenses and other costs to attend the mediations with only minimal assistance to cover some fees associated with last minute flight cancellations.

62. The Plaintiffs have faithfully attended to their duties to act on behalf of other women at Qualcomm.

63. The Plaintiffs accepted the risks associated with being involved in this dispute without any assurance of remuneration for serving as Class Representatives.

64. If the Court approves the requested attorneys' fees, costs, service payments, and other features of the Settlement, the net amount remaining in the Fund will be approximately $13,005,500 and the average pre-tax recovery for Class Members is approximately $3,953.04.

65. The average recovery for those Class Members who worked full-time during the entire class period ("FTEs") is $5,862.53.

66. The Parties estimate that the programmatic relief package carries a monetary value to the Class of at least an additional $4,000,000.

67. Despite settling this case expeditiously, Sanford Heisler has expended significant time and resources on this matter. Sanford Heisler's current estimated

8

1  attorneys' fees and expenses are over $1,300,000. This number is subject to change based on final accounting.

68. Counsel will continue to incur substantial expenditures throughout the next three (3) years as they advise Class Members regarding the Settlement and monitor Qualcomm's compliance with the Agreement's robust programmatic relief provisions.

69. The Settlement allocates $125,000 for the fees and costs of the Class Administrator. *See* Settlement § 5.2.2. Class Counsel has sought out quotes from three Class Administrators and believes that actual costs of administration will be much lower than $125,000, thus, the Fund amount going to the Class Members will increase.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 25th day of July, 2016 in San Francisco, California.

_____
Felicia Medina