# EXHIBITS TABLE OF CONTENTS

| **EXHIBIT** | **DESCRIPTION** | **PAGE** |
|---|---|---|
| Ex. 1 | Class Settlement Agreement | 1 |
| Ex. 2 | Declaration of Dandan Pan | 97 |
| Ex. 3 | Declaration of Carrie Haluza | 107 |
| Ex. 4 | Declaration of Carolina Dealy | 117 |
| Ex. 5 | Declaration of Laura Paquin | 125 |
| Ex. 6 | Declaration of Wei Shi | 135 |
| Ex. 7 | Declaration of Blanche Matulich | 144 |
| Ex.8 | Declaration of Connie Jacobson | 153 |

# Exhibit 1

1  David Sanford (DC SBN 457933)
   dsanford@sanfordheisler.com
2  SANFORD HEISLER, LLP
   1666 Connecticut Ave. NW, Suite 300
3  Washington, DC 20009
   Telephone:  (202) 499-5200
4  Facsimile:  (202) 499-5199

5  Felicia Medina (CA SBN 255804)
   fmedina@sanfordheisler.com
6  Xinying Valerian (CA SBN 254890)
   xvalerian@sanfordheisler.com
7  Danielle Fuschetti (CA SBN 294064)
   dfuschetti@sanfordheisler.com
8  SANFORD HEISLER, LLP
   111 Sutter Street, Suite 975
9  San Francisco, CA 94104
   Telephone:  (415) 795-2020
10 Facsimile:  (415) 795-2021

11 Ed Chapin (CA SBN 53287)
   echapin@sanfordheisler.com
12 Jill Sanford (CA SBN 185757)
   jsanford@sanfordheisler.com
13 SANFORD HEISLER, LLP
   501 West Broadway, Suite 515
14 San Diego, CA 92101
   Telephone:  (619) 577-4253
15 Facsimile:  (619) 577-4250

16 *Attorneys for the Plaintiffs and the Class*

Nancy L. Abell (CA SBN 88785)
nancyabell@paulhastings.com
Maria A. Audero (CA SBN 210141)
mariaaudero@paulhastings.com
Jan E. Eakins (CA SBN 100612)
janeakins@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

***Attorneys for Defendants***
Qualcomm Incorporated and Qualcomm
Technologies, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 19  DANDAN PAN, WEI SHI, LAURA PAQUIN, BLANCHE MATULICH, 20  CONNIE JACOBSON, CARRIE HALUZA, CAROLINA DEALY, on 21  behalf of themselves and all others similarly situated, 22 | )  Case No.: )  )  **COLLECTIVE AND CLASS** )  **ACTION SETTLEMENT** )  **AGREEMENT** )  ) |
| 23  **PLAINTIFFS,** | )  ) |
| v. 24 | )  )  ) |
| 25  QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC., 26 | )  )  )  ) |
| 27  **DEFENDANTS.** | )  )  ) |
| 28 | ) |

Subject to approval by the United States District Court for the Southern District of California, this Collective and Class Action Settlement Agreement sets forth the full and final terms by which Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm") and the Named Plaintiffs and Class Representatives, Dandan Pan, Wei Shi, Laura Paquin, Blanche Matulich, Connie Jacobson, Carrie Haluza and Carolina Dealy, on behalf of themselves and the Rule 23 Class and the Collective Action Plaintiffs as defined below, have settled and resolved all claims that have been raised in the Litigation.

## RECITALS

WHEREAS, a collective, class and representative action Complaint shall be filed on July 25, 2016, alleging (i) gender discrimination in compensation, raises, job assignments, job code placement, evaluations and ratings, promotions and demotions; (ii) unequal pay; (iii) discrimination based on pregnancy, childbirth, or related medical conditions; and (iv) violation of Title VII and California laws with respect to leaves for pregnancy, childbirth, or related medical conditions and leaves for care of a newborn child, adopted child, foster child, step-child, or child of a registered domestic partner, in violation of federal and/or state law as set forth in the Complaint;

WHEREAS, Qualcomm denies and continues to deny all of the allegations made and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted. Nonetheless, without admitting or conceding any liability or damages, the Parties have agreed to settle the lawsuit on the terms and conditions set forth herein to avoid the burden and expense of continuing litigation;

WHEREAS, the Parties have engaged in a substantial pre-litigation exchange of documents, data and analyses, have had joint meetings with experts, and have had a series of meetings to explore their respective factual positions and arguments;

WHEREAS, the Parties have engaged in settlement negotiations in April and June 2016 before David Rotman, Esq., an experienced mediator who is skilled in the prosecution of and resolution of complex class actions, including gender discrimination lawsuits;

WHEREAS, the Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including extensive, costly and time consuming discovery, a motion for class certification under Federal Rule of Civil Procedure 23, a motion for decertification of the collective action, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties;

WHEREAS, the Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions set forth herein;

WHEREAS, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might result in no recovery or a recovery that is less favorable to the

Plaintiffs, counsel for Plaintiffs is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs, class members, and the collective action plaintiffs;

WHEREAS, the class representatives believe that the settlement set forth herein serves the best interests of class members based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification, as it provides prompt relief for class members;

WHEREAS, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the litigation which exist between them and between the named Plaintiffs, the class members, the collective action plaintiffs, and the released parties;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the litigation on the following terms and conditions:

**1.      DEFINITIONS**

The following terms shall have the meanings defined in this Section, wherever used in this Agreement, and in all of its exhibits:

1.1      **Agreement.**  "Agreement" means this settlement agreement and all exhibits attached to it.

1.2      **CAFA Notice**.  "CAFA Notice" means the notice required pursuant to 28 U.S.C. § 1715(b).

1.3      **California Class.**  "California Class" means women who were paid for working in California in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities, at any time from December 4, 2011 through the date of the Order Granting Preliminary Approval.

1.4      **Class Administrator.**  "Class Administrator" means an administrator who has been jointly designated by counsel for the Parties, and approved by the Court, to administer the settlement pursued to the terms of this Agreement.  Rust Consulting has been selected as the Class Administrator.

1.5      **Class Counsel.**  "Class Counsel" means the law firm of Sanford Heisler, LLP.

1.6      **Collective Action Plaintiffs.**  "Collective Action Plaintiffs" means all women employed in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities in the United States at any time from December 4, 2012 through the date of the Order Granting Preliminary Approval who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend:  "I have received and read the Class Notice in *Pan et al. v. Qualcomm Incorporated.*  By negotiating this check and accepting payment I (i) consent to join in this lawsuit and the Equal Pay Act collective

action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit. This Release shall become effective on the Effective Date."

1.7 **Court.** "Court" means the Court having jurisdiction over this Litigation, at any stage (presently the United States District Court for the Southern District of California).

1.8 **Covered Position.** A "Covered Position" means either (a) a salaried exempt position in the job codes/job families listed in Appendix 1 below the level of "Vice President" (also referred to as "VP"); or (b) a non-exempt position in the job codes/job families listed in Appendix 2 in the United States. "Covered Position" in (a) and (b) above ***does not include*** (i) individuals currently or formerly employed as interns, temporary workers or contract workers by Qualcomm or by any contractor of Qualcomm; (ii) individuals currently or formerly employed by or at Gimbal after it was no longer a wholly-owned subsidiary of Qualcomm; or (iii) individuals currently or formerly employed in the following job families in any exempt or non-exempt position: ADMSVC, AIRMNT, ANREL, ASSIST, BENFIT, BLDGSV, BUSCMP, CEO, CFO, CMPLNC, COMAFF, COMPEN, COPYWR, CTO, CTRADM, CTRATT, DATANL (QCS), DIVCNS, EECOMM, EMPREL, ENG, ENVHLT, ENVREG, ERSPEC, EVENT, EXEC, EXEMGT, FAC, FACEE, FACENG, FASUPP, FRAUD, GOVPRP, GVTAFF, HR, HRACRD, HRASST, HRIS, HRMS, HRREP, HRSPEC, INCDIV, INTERN, INVREL, IPLIC, LEARN, LGDATA, LGLADM, LGLANL, LGLAST, LGLCNS, LGSUPP, LIBRAR, ORGDEV, PATAGT, PATATT, PATENG, PAYANL, PAYROL, PILOT, PR, PRES, REGAFF, RELEST, SALES, SECY, STAFF, STKADM, SUBCON, TRAVEL, TRM, VPAGMG, and VPGMGR.

1.9 **Defendant or Qualcomm.** "Defendants" or "Qualcomm" means Qualcomm Incorporated and/or Qualcomm Technologies, Inc.

1.10 **Defendants' Counsel.** "Defendants' Counsel" means the law firm of Paul Hastings LLP.

1.11 **Effective Date.** "Effective Date" means the date on which the Court has entered the Order Granting Final Approval, provided that no timely objection has been made or that all timely objections have been resolved or withdrawn, thus triggering the appeal waiver in Section 10.4.7. If an objection to the Settlement is timely filed and has not been resolved or withdrawn by the date on which the Court has entered the Order Granting Final Approval, the Effective Date shall be the date on which the deadline for taking an appeal has passed, or, if there is an appeal of the Court's Order Granting Final Approval, the day after all appeals are fully and finally resolved in favor of final approval of the Agreement.

1.12 **EPA.** "EPA" means the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d).

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing during which the Court shall finally approve the Agreement and make such other rulings as are contemplated by this Agreement or as modified by any subsequent mutual agreement of the Parties in writing and approved by the Court.

1.14    **Litigation.**  "Litigation" means the Class and Collective Action Complaint that will be filed in the United States District Court for the Southern District of California, on behalf of Named Plaintiffs on July 25, 2016, and the allegations and claims made therein.

1.15    **LWDA Payment.**  "LWDA Payment" means the payment of the State of California's share of civil penalties.

1.16    **Named Plaintiffs and Class Representatives.**  "Named Plaintiffs" and "Class Representatives" means Dandan Pan, Wei Shi, Laura Paquin, Blanche Matulich, Connie Jacobson, Carrie Haluza, and Carolina Dealy.

1.17    **Nationwide Class (Excluding California).**  "Nationwide Class (Excluding California)" means women employed in a Covered Position by Qualcomm Incorporated and its current and former subsidiaries and affiliated entities as regular employees in the United States (but not in the state of California) at any time from December 26, 2014 through the date of the Order Granting Preliminary Approval.

1.18    **Notice.**  "Notice" means the Notice of Collective and Class Action Settlement, substantially in the form attached hereto as Exhibit A, and as approved by the Court.

1.19    **Order Granting Final Approval.**  "Order Granting Final Approval" means the final order entered by the Court after the Fairness Hearing.

1.20    **Order Granting Preliminary Approval.**  "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing Notice, and the time period for, and the manner of, opt-outs and objections.

1.21    **Parties.**  "Parties" means the Plaintiffs and Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc.

1.22    **Plaintiffs.**  "Plaintiffs" means, collectively, "Named Plaintiffs," "Rule 23 Class Members," and "Collective Action Plaintiffs."

1.23    **Released Parties.**  "Released Parties" means (i) Qualcomm Incorporated and Qualcomm Technologies, Inc.; (ii) each of the current and former subsidiaries and affiliated entities of the entities listed in (i), specifically including those listed on Appendix 3; and (iii) the respective predecessors and successors, as well as all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, insurers, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities of each entity referenced in (i) and (ii).

1.24    **Rule 23 Class.**  "Rule 23 Class" means, collectively, the "Nationwide Class (Excluding California)" and the "California Class."

1.25    **Rule 23 Class Members.**  "Rule 23 Class Member" or "Class Member" means all individuals in the Rule 23 Class, as approved by the Court, who did not opt out of the monetary relief provisions of the Settlement.

1.26   **Service Award(s).**  "Service Award" means the additional amounts paid to the Named Plaintiffs listed in Section 7, subject to Court approval, for their service in this Litigation.

1.27   **Settlement Fund.**  "Settlement Fund" means the common settlement fund account in the sum of Nineteen Million Five Hundred Thousand Dollars ($19,500,000) that is established by the Class Administrator and includes all settlement payments to the Rule 23 Class and the Collective Action Plaintiffs, all Service Award(s), the LWDA Payment, the costs of administration, and the fees and costs of Class Counsel, all as described more fully herein.  Except as set forth in section 5.3.8 related to employer's share of statutory and other payroll taxes, Qualcomm shall not be responsible for any additional payment not expressly set forth in this Agreement.

1.28   **TRR.**  "TRR" means "Total Rewards Review," which is Qualcomm's employee performance evaluation and rewards process.

## 2.     GENERAL TERMS

2.1   It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Litigation which exist between them, and between the Released Parties and the Rule 23 Class and the Collective Action Plaintiffs.

2.2   It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.3   Qualcomm denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the Litigation.  Qualcomm has agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Qualcomm does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class or collective action treatment on any grounds and to assert any and all other potential defenses or privileges.  The Class Representatives and Class Counsel agree that Qualcomm retains and reserves these rights, and they agree not to take a position to the contrary.  Specifically, and the Class Representatives and Class Counsel agree that, if the Litigation were to proceed, they shall not argue or present any argument, and hereby waive any argument that, based on this settlement or this Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Agreement, Qualcomm should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds, pursuing decertification of the conditionally certified Equal Pay Act collective action, or asserting any and all other potential defenses and privileges.  This Agreement shall not be deemed an admission by, or a basis for estoppel against, Qualcomm that class action treatment pursuant to Federal Rule of Civil Procedure 23 or conditional certification of the Equal Pay Act collective action pursuant to 29 U.S.C. § 216(b) is proper or cannot be contested on any grounds. Additionally, neither the

Agreement nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement:  (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

2.4     Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

2.5     **Mutual Full Cooperation.**  The Parties agree to cooperate fully with each other, and shall aim to effectuate and implement all terms and conditions of this Agreement and to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

2.6     **No Discrimination.**  Qualcomm shall continue to maintain and implement policies and practices for its operations in the 50 United States and the District of Columbia that are designed to prohibit discrimination on the basis of gender against any Class Member with regard to pay and other forms of compensation, raises, job assignments, job code placement, promotions, and demotion, as well as pregnancy, childbirth, or related medical condition and leaves related thereto.

2.7     **Isolated Incidents.**  Isolated incidents or allegations of discrimination based upon gender or retaliation prohibited by federal and state anti-retaliation statutes shall not give rise to a claim for breach of this Agreement, nor shall discrimination or retaliation on which Qualcomm takes prompt corrective action.

2.8     **CAFA Notice.**  Qualcomm, or at its request, the Class Administrator, shall provide notice of the proposed Settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than ten (10) days after Class Counsel files a motion for preliminary approval of this Agreement.

**3.      BUSINESS PRACTICES PROGRAMMATIC RELIEF**

Qualcomm shall implement the business practices described in subsections 3.1 through 3.11 of this Section for its operations in the 50 United States and the District of Columbia.

3.1     **Duration of Changes in Business Practices.**

The actions in this Section shall be implemented immediately upon the Effective Date and shall remain binding on the Parties and their agents and successors for a three (3) year period following the Effective Date, unless a different timeframe is provided for a particular component of the changes in business practices described herein.

3.2     **Internal Compliance Official.**

3.2.1   No later than fourteen (14) days after the Effective Date of this Settlement, the Company shall appoint or hire an internal "Compliance Official," who will be at least at the level of Director and will be charged with overall responsibility for monitoring compliance with the terms of this Agreement.  The role and responsibilities of the Internal Compliance Official will be communicated to Qualcomm's employees who work in the United States.

3.2.2   In the event that the Compliance Official ceases to function in that role, the Company shall appoint or hire a replacement Compliance Official as soon as practicable.

3.2.3   Prior to appointing or hiring any individual as Compliance Official, the Company shall provide Class Counsel and the Special Master with (i) a resume including the identity, background, experience, and qualifications of the individual that the Company intends to appoint or hire; and (ii) a description of the reasons why the individual is appropriate for the role.

3.2.4   Qualcomm shall provide the Compliance Official with such support staff, funds, and other resources as may be reasonably necessary to discharge the obligations under this Agreement.

3.2.5   The Compliance Official shall aim to ensure the Company's implementation of, and compliance with, the provisions of this Agreement.

3.2.6   The Compliance Official, the Chief Executive Officer, and the head of Human Resources shall meet at least twice annually to review the Company's compliance with the terms of the Agreement.

3.2.7   At least once annually, the Compliance Official shall report to all U.S. employees regarding the Company's compliance with the terms of this Agreement in a video-recorded report that will be posted on the Company's portal or other format selected by the Company.  This report may be delivered in combination with a report by executive management on the Company's diversity and inclusion initiatives and results.

3.2.8   No later than ninety (90) days after the Effective Date and annually thereafter during the term of this Agreement, the Compliance Official shall meet with all persons in positions of Senior Director or higher who manage employees in the United States to review the terms of this Agreement, the actions they are expected to take, and actions taken to date to implement the terms of the Agreement.  The first such meeting will last at least two hours.  Meetings in subsequent calendar years will last at least thirty (30) minutes.  Attendance of all of the individuals described above in this subsection in person, by videoconference, or by viewing a recorded rebroadcast shall be mandatory.

3.2.9   No later than one hundred (180) days after, and on each of the three (3) anniversaries of, the Effective Date, the Compliance Official shall report to Class Counsel on compliance with the programmatic relief provisions of this Agreement.

3.2.10   The Compliance Official shall report the results of the bi-annual employee engagement survey inquiries described in Section 3.3.1(3) to all executives, as well as to the managerial and professional personnel in the Employee Relations and Human Resources organizations.  The report will include recommendations, where needed, to remedy as soon as practicable any gender-related problems affecting female employees evidenced in the survey.

3.3   **Independent Consultant.**

3.3.1   No later than ten (10) days after the Effective Date of the Agreement, Qualcomm shall retain Kathleen Lundquist, Ph.D. and Toni Locklear, Ph.D., independent consultants with APT Metrics, who specialize in industrial organizational psychology (collectively, the "Independent Consultant") to consult with Qualcomm in creating, reviewing, evaluating, and modifying, if appropriate, the following, with the assistance of other APT Metrics personnel, for the job families within the engineering discipline and the program manager and product manager job families.  (If neither Dr. Locklear nor Dr. Lundquist is available to serve as Independent Consultant, the Parties shall retain another Independent Consultant by mutual agreement, or in the absence of mutual agreement, with the assistance of the Compliance Special Master.)

(1)   Conduct a job analysis;

(2)   Develop the following, in consultation with subject matter experts at Qualcomm, based on the job analysis:

(a)   A set of job codes (*e.g.*, Engineer, Senior, ASICS; Engineer, Senior Staff, Software);

(b)   Minimum standards for applicants for each job code;

(c)   Preferred qualifications for applicants for each job code (recognizing that additional preferred qualifications may be added for specific openings);

(d)   Core interview questions and documentation forms;

(e)   Leveling guides for each job family and guidance for leveling new hires in the proper job code within the job family;

(f)   A process and standards for setting a new hire's starting compensation within the job code's pay range established by Qualcomm after its consideration of market surveys and market supply and demand;

        (g)    A new-hire compensation offer work-up form to document new hire compensation decisions;

        (h)    Tailored performance evaluations for each job family, including he inclusion of an EEO compliance measurement in the performance evaluation for managers of people and members of the Human Resources organization;

        (i)    A validated promotion readiness process and assessment; and

        (j)    The competencies and the core developmental objectives that align with assessment of the competencies for each job code.

(3)    Review current practices and provide recommendations to Qualcomm on the content and form of a bi-annual employee engagement survey to assess employees' experiences and perceptions of Qualcomm's hiring, pay, promotion, non-discrimination, non-retaliation and family-friendly policies (including maternity and parental leave, accommodations to support breastfeeding, and Flexible Work Arrangements), knowledge of and confidence in Qualcomm's complaint procedures, interactions with their managers, and evaluation of the services provided by Human Resources personnel.

(4)    Review and provide input on the content of the training required by Section 3.5 and its subparts below.

3.3.2    Qualcomm shall  make the materials developed for a given job family in accordance with subsection 3.3.1(2)(a), (b), (c), (h), and (j) available to employees who are employed in the job family or who are applying for employment in the job family, upon their request to a designated office within the human resources organization.

3.3.3    Qualcomm shall make available to Class Counsel the materials developed in accordance with subsection 3.3.1(2) on an Attorneys' Eyes Only basis for review promptly following their completion in final form.  Class Counsel shall return the materials provided within thirty (30) days of their receipt, shall not retain any copy, and may not share any of the materials with anyone else without the express written consent of Qualcomm's executive in charge of Human Resources.

3.3.4    The Independent Consultant will conclude its work in phases and all work prescribed in subsection 3.3.1(2) and (4) will be completed within one (1) year from the Effective Date.

3.3.5    Within ninety (90) days following the conclusion of the consulting process, Qualcomm shall provide Class Counsel with the policies, protocols, forms, and a description of the practices as modified and implemented after review by the Independent Consultant, and Class Counsel shall have the right to assert before the Compliance Special Master (as established in Section 4.1) that the policies are not consistent with the "no discrimination" provision, Section 2.6 of this Agreement.

3.4 **Retention of Records.** Qualcomm shall maintain records necessary to monitor compliance with the terms of this Agreement.

3.5 **EEO Information and Training.**

    3.5.1 Qualcomm shall maintain its policy prohibiting employment discrimination, harassment and retaliation on its employee portal.

    3.5.2 Qualcomm shall internally publicize its policy prohibiting employment discrimination, harassment, and retaliation in an annual message by email to all employees.

    3.5.3 Qualcomm shall add to any managerial job description "Actively supports diversity in the workforce."

    3.5.4 Qualcomm shall include an affirmation of its commitment to equal opportunity employment on all of its job postings for both internal and external candidates.

    3.5.5 Qualcomm shall require attendance at least every eighteen (18) months during the term of this Agreement of all managers of people, including executives, and of all persons with ultimate responsibility for making hiring decisions, at a mandatory two (2)-hour training, presented by a qualified trainer, on the following subjects:

        (1) Equal employment opportunity laws, including laws prohibiting discrimination, sexual harassment, and retaliation;

        (2) Implicit bias;

        (3) Mentoring all employees regardless of gender and tips for developing diverse talent throughout the year;

        (4) How to collect and respond to third-party feedback on employee performance, including spotting bias in third-party feedback;

        (5) Preparation for calibration meetings, and each managers' role in said meetings;

        (6) Actions required to review and document employee performance, readiness for advancement, and developmental needs;

        (7) How to identify and eliminate bias and discrimination in the hiring, promotion, and performance review processes and properly attribute contributions to achievements and responsibility for shortcomings;

        (8) How to deliver job-related performance feedback, constructive praise, and criticism.

        (9) Words of caution about off-work activities in which managers participate;

(10)    Qualcomm's policies on maternity, paternity, and parental leave; accommodation for breastfeeding and the location of lactation rooms; flexible work hours; and rights and expectations of employees on a reduced schedule; and

(11)    Qualcomm's diversity and inclusion initiatives and ways in which managers can become involved in them.

The first session will commence no later than ten (10) months following the Effective Date of this Agreement.

3.5.6    Qualcomm shall require all existing employees as of the Effective Date, new hires in and all transfers to the United States to view a video training within thirty (30) days of commencing work in the United States that will cover at least:

(1)    Qualcomm's expectations that all employees will treat others with respect and support the Company's diversity and inclusion initiatives;

(2)    Qualcomm's policies prohibiting discrimination, harassment, bullying, and retaliation, including examples of the kinds of behaviors and statements that violate the policies;

(3)    Qualcomm's commitment to diversity and inclusion;

(4)    Qualcomm's policies on maternity, paternity, and other leaves; the procedure for requesting flexible work arrangements, and accommodations to support breastfeeding; and

(5)    Qualcomm's complaint procedures for reporting violations of its policies, including the toll-free hotline on which anonymous complaints may be lodged.

3.5.7    Qualcomm shall provide the content of the training it intends to offer pursuant to the commitments in Section 3.5 and its subparts to the Independent Consultant for review and input before its implementation.

3.6    **Employee Complaint Policy, Procedure, Process, and Response.**

3.6.1    Qualcomm shall assign a qualified Employee Relations professional to oversee and monitor the complaint investigation and resolution process, the training of investigators, and the metrics that Qualcomm shall monitor to track the effectiveness of its process for investigating possible violation of the Company's policy prohibiting discrimination, harassment, retaliation, failure to reasonably accommodate pregnancy (including childbirth and related medical conditions), denial of employee rights to leaves provided by law or Qualcomm policy and/or denial of pre-approved flexible work schedule rights.

3.6.2    Qualcomm's complaint procedure will offer employees the option of two complaint mechanisms for reporting complaints: (i) complaints directly to

Employees Relations; or (ii) complaints to a 24-hour toll-free hotline.  Information on the complaint process will make clear that complaints to the toll-free hotline can be lodged anonymously, but anonymity might, in some instances, constrain the ability to investigate, and that the information collected during the investigation is kept confidential to the extent possible.  The complaint procedure will provide:

(1)  Employees may submit a complaint on line through a link available on the employee's portal, by calling the toll-free hotline at 1-800-300-3816, through a writing addressed to ERconcerns@qualcomm.com, or to a specific member of the Employee Relations team.

(2)  Any manager who receives a complaint or becomes aware of information that suggests a possible violation of the Company's policies listed in 3.6.1 must immediately inform a member of the Employee Relations Team by calling 619-890-7179 or by email to ERconcerns@qualcomm.com.

3.6.3  Investigations of complaints listed in Section 3.6.1 will be conducted only by, or under the direct supervision of, either a human resources professional or attorney who has been trained on Qualcomm's investigation procedures.  Refresher training of at least one (1) hour will be conducted annually for everyone who investigates complaints listed in Section 3.6.1.

3.6.4  Qualcomm shall create a centralized complaint database by which Qualcomm can monitor and review the content, investigation and resolution of complaints. The database will include:

(1)  The date of the complaint;

(2)  The type of complaint;

(3)  The complainant (where available);

(4)  The subject matter of the complaint;

(5)  Any individuals responsible for the complained of acts;

(6)  The investigator assigned;

(7)  The date of the initial contact with the complainant; and

(8)  The outcome of the investigation (unsubstantiated, unable to conclude, or substantiated), and the nature of the corrective action, if any.

3.6.5  Qualcomm shall develop and implement a written communications protocol for its investigators to use in processing all internal complaints.  The protocol will be available to employees on Qualcomm's portal and provided to any person who contacts Human Resources, Employee Relations, or the hotline to raise a complaint, regardless of whether a formal complaint is filed.  The protocol will address Qualcomm's investigations process, including projecting for the

complainant a good-faith target date for commencing and completing the investigation, the role that the complainant will play in the process, the fact that the complainant may at all times communicate with Employee Relations either orally or in writing, and the level of information that will be provided to the complainant at the close of an investigation.

3.6.6   Qualcomm shall establish written procedures for investigating the complaints listed in Section 3.6.1 that include:

(1)   Creation of a case investigation plan;

(2)   Identification and investigation of complaints listed in Section 3.6.1;

(3)   Consultation with an appropriate technical professional if an investigation includes disputes over technical issues.  The technical professional will not be an individual involved in the dispute and will not be informed of the identities of the employees involved in the dispute (or their genders, races, ethnicities, or ages);

(4)   The array of possible outcomes where claims are substantiated;

(5)   A requirement that the investigator notify the complainant of the results of the investigation when it is concluded (substantiated, unable to conclude, not substantiated), the complainant's rights upon conclusion of the investigation, and an electronic link and telephone number to promptly report retaliation if the complainant believes that it occurs; and

(6)   A requirement that the investigator notify employees accused of wrongdoing (if still employed) and their managers of the results of the investigation when it is concluded (substantiated, unable to conclude, not substantiated); any follow-up training or other actions required; any disciplinary action; and the fact that they cannot retaliate in any way against the complainant(s) and any witnesses because of the fact or substance of the complaint, participation in the investigation, or the results of the investigation.

3.6.7   Qualcomm shall take appropriate disciplinary action, which may include termination of employment, against any employee who violates the Company's policies listed in Section 3.6.1.  If the offender is not terminated, he or she will be required to attend an anti-bias training and will receive other appropriate discipline, which may include ineligibility for a bonus or stock award in the first review cycle that concludes after the violation is found.

3.6.8   The Company shall maintain confidentiality to the extent appropriate.  However, the Company cannot promise complete confidentiality.  The Company's duty to investigate and take corrective action may require the disclosure of information to individuals with a need to know.  A thorough investigation of such complaints will generally require disclosure to the accused party and possibly to witnesses in order to gather pertinent facts.  In the same way, anyone involved in an investigation of

harassment, discrimination or retaliation has an obligation to keep information about the investigation confidential as required to preserve the integrity of the investigation.  Failure to keep such information about an investigation confidential may result in disciplinary action.

3.7     **Evaluations, Promotions, and Compensation Rewards for Employees Below the Vice President Level.**

3.7.1   At the beginning of a TRR cycle, Qualcomm shall issue and post on its portal written notification of the TRR steps, timeline, rating guides, and deliverables each employee is entitled to receive.

3.7.2   Qualcomm shall use performance evaluation forms and instructions that have been created with input by the Independent Consultant.

3.7.3   Employees will have an opportunity to submit written input in an online tool on their performance, as well as their qualifications for and interest in promotion, by a specified date in each TRR cycle.  An employee's submission of this information is not a prerequisite for rewards or promotion.

3.7.4   Qualcomm's Human Resources team will organize calibration groups that facilitate comparison of individuals who are performing substantially similar work in the same Vice President organization.

3.7.5   Each calibration group will be led by an individual who has received training on leading calibration groups.  The leader will read or have sub-group leaders read the timely submissions of every employee in the calibration group.  The training, which may be online, will include the leader's role in ensuring a review of every employee's performance and readiness for advancement, in looking for bias and discrimination in the review process, and in ensuring that credit and blame are properly attributed.

3.7.6   Managers who participate in the calibration and TRR process must first complete the training provided in Section 3.5.5, which can be online or in person, before participating in the calibration process.

3.7.7   Qualcomm shall require managers to complete specified preparation on each employee they manage before participating in a calibration meeting, including a review of timely employee submissions about their own performance as provided in Section 3.7.3, and to conduct any follow-up prescribed by the calibration team leader before finalizing the employee's written performance evaluation.

3.7.8   Qualcomm shall aim to promote women at the same rate it promotes men, consistent with their relative proportions in the appropriate rewards group from which promotions are made, controlling for job family.  For example, if 8% of male incumbents in a level are promoted out of the level, Qualcomm's goal will be to promote at least approximately 8% of the female incumbents if men and women have equivalent experience.  The promotion rate goals are not quotas; they are designed to provide guidance as to whether Qualcomm is making promotion

decisions over time in such a way as to afford equal employment opportunity. Qualcomm will not be required to select less qualified over more qualified employees for promotion.

3.7.9   All employees who meet the minimum requirements for advancement to a higher level will be considered for advancement annually, regardless of whether they are "sponsored" for promotion.  The Compensation organization will inform the calibration group leader of the names of employees who have not been promoted in the three preceding years before the calibration meetings occur, and that leader will be responsible for ensuring that the readiness of each of those employees for promotion is explored during the calibration session.

3.7.10   Qualcomm shall require managers to complete and issue performance evaluations to employees annually.

3.7.11   Qualcomm shall audit to make certain that employee performance reviews are completed and delivered to employees.

3.7.12   Qualcomm shall discipline managers who do not timely fulfill their responsibilities under this Section 3.7 and its subsections.

3.7.13   Qualcomm shall not prohibit employees from discussing compensation.  This paragraph does not require Qualcomm to disclose the compensation of one employee to another.

3.8   **Statistical Analysis of Compensation, Performance Ratings, and Promotions.**

3.8.1   For each full year during the term of this Agreement Qualcomm shall conduct annual statistical analyses comparing the salaries, bonuses, stock awards, ratings associated with the TRR cycle and promotion rates of female and male employees in positions covered by this Agreement to determine whether or not there were any statistically significant differences (greater than -2.00 standard deviations) adverse to women during the review cycle based upon the regression (or other statistical) models developed by Janet Thornton, Ph.D. after considering input from Class Counsel's expert, Alexander Vekker, Ph.D.

3.8.2   Qualcomm shall make available to Class Counsel the final analyses conducted in accordance with subsection 3.8.1 on an Attorneys' Eyes Only basis for review promptly following their completion in final form.  Class Counsel shall return the analyses provided within thirty (30) days of their receipt, shall not retain any copy, and may not share any of the materials with anyone else without the express written consent of Qualcomm's executive in charge of Human Resources. Notwithstanding the foregoing, Class Counsel may retain copies of the analyses if necessary to engage in further proceedings with the Compliance Special Master or the Court in order to enforce this Agreement, per section 4.2.  Any documents retained pursuant to this exception shall be returned to Qualcomm within thirty (30) days of the resolution of the further proceedings.

3.8.3   If the analyses reveal a statistically significant difference (greater than -2.00 standard deviations) adverse to women in one or more category analyzed, then Qualcomm shall eliminate such adverse impact, unless it establishes that such adverse impact is the result of a factor (or combination of factors) other than gender and that such factor (or factors) are job-related for the position in question and consistent with business necessity.

**3.9     Leadership Development Initiatives.**

3.9.1   Qualcomm shall host periodic educational programs or conferences designed to assist women in developing leadership skills.  (These programs will be open to interested women and men.)

3.9.2   Qualcomm shall require each Senior Vice President to identify special project and team assignments that are valuable in developing leadership skills in that Senior Vice President's organization and shall take steps to ensure that women are given equal consideration for those assignments.

3.9.3   All employees will have the opportunity to create a personal learning plan and select courses from the Learning Center Portal.

**3.10    Flexible Work Arrangements, Maternity and Parental Leave, and Other Policies.**

3.10.1   Qualcomm shall appoint one or more Flexible Work Liaison in Human Resources to receive and work with employees and their managers on requests for flexible work schedules, reduced hours for reduced pay, and maternity/parental leaves. The Flexible Work Liaison will work with the employee's manager and technical lead (if any) to determine whether to approve a flexible work schedule or reduced hours for reduced pay as well as the duration of the schedule (with the caveat that employees on flexible work schedules or reduced hours must be available as needed to fulfill business requirements that arise), and will document and communicate to the employee the decision reached and reasons for denying a request, if the request is not granted.

3.10.2   Qualcomm shall publish on its portal its policies on maternity, paternity, and parental leave; accommodation for breastfeeding and the location of lactation rooms; flexible work hours; and the procedure for requesting a reduced schedule with reduced pay through the Flexible Work Liaison.

3.10.3   Employees on reduced schedules should be assigned their ratable share of the team's work, but not more.  If business needs require them to perform more than the ratable share of the work that corresponds to their reduced schedule, their base salary should be adjusted upward accordingly in consultation with the Flexible Work Liaison.

3.10.4   Employees on reduced schedules remain eligible for consideration for Qualstars and promotion (although there is no guarantee that an employee can remain on a reduced schedule if promoted) and should be allocated ratings and rewards that are consistent with their actual comparative performance and contributions.

3.10.5 Qualcomm shall encourage managers to schedule team meetings to accommodate the hours of parents with childcare responsibilities (who may arrive later in the morning or leave earlier in the afternoon) where feasible while recognizing that customer needs take priority.

3.11 **Structure Changes.** If Qualcomm makes changes in its salary structure and/or geographic markets during the term of this Agreement, the provisions of Section 3 shall apply to the Rule 23 class positions' successor salary grades, job classifications, and pay structures.

4. **COMPLIANCE DISPUTE RESOLUTION PROCEDURE FOR BUSINESS PRACTICE CHANGES**

4.1 **Compliance Special Master.** No later than thirty (30) days after the Effective Date, the Parties shall jointly request that the Court appoint, pursuant to Federal Rule of Civil Procedure 53, Barry Goldstein, Esq., as the Compliance Special Master. In the event that the appointee becomes unavailable, the Parties shall jointly request that the Court appoint a replacement.

4.2 **Good Faith Review.** No later than thirty (30) days after service of the Compliance Official's Annual Compliance Report (*see* Section 3.2.9), or, if at any time during the course of this programmatic relief, Class Counsel identifies other grounds that they believe constitute non-compliance with the terms of this Agreement, Defendants' Counsel and Class Counsel shall confer on whether Qualcomm has complied with the obligations under the terms of this Agreement. If the Parties disagree, then Class Counsel shall, within fourteen (14) days, submit to the Compliance Special Master a statement of position contending that Qualcomm failed to comply with the obligations under the terms of this Agreement. Qualcomm may, within fourteen (14) days of receiving that statement of position, submit a response/opposition to the Compliance Special Master.

4.3 **Review by Compliance Special Master.** Upon receiving the Parties' submissions, the Compliance Special Master may request additional written submissions, or require the Parties to appear for a hearing, if appropriate. In any event, within thirty (30) days of receiving the Parties' submission(s), the Compliance Special Master shall issue a written decision regarding whether Qualcomm has met its obligations or is non-compliant with the Agreement in any respect. If Qualcomm has not met its obligations or is non-compliant with the Agreement, it will have thirty (30) days following receipt of the Special Master's decision to meet the obligations or otherwise cure any non-compliance. If Qualcomm fails to cure within this time period, Plaintiffs or their representatives may seek to enforce compliance through the Court.

4.4 **Objections to Compliance Special Master's Decision.** Should either Party disagree with the Compliance Special Master's ruling, such Party may file an objection before the assigned district court judge pursuant to Federal Rule of Civil Procedure 53 after first conferring in good faith with the other Party in an effort to resolve the dispute.

4.5 **Compliance Special Master Fees.** Qualcomm shall pay the Compliance Special Master's fees and expenses, if any, separate and apart from the Settlement Fund.

## 5.    MONETARY RELIEF

5.1    **Monetary Relief.**  No later than ten (10) days after the Effective Date, Qualcomm shall wire Nineteen Million Five Hundred Thousand Dollars ($19,500,000) to the Class Administrator for the Settlement Fund.

5.2    The Settlement Fund shall be deposited into a common fund and allocated as follows, provided the Court finally approves the Settlement:

5.2.1    Nineteen Thousand Five Hundred Dollars ($19,500) to the California Labor and Workforce Development Agency ("LWDA").  Should the Court award less, the remainder shall be added to the Settlement Awards Fund (defined in section 5.2.7 below);

5.2.2    Not to exceed One Hundred Twenty-Five Thousand Dollars ($125,000) for the fees and costs of the Class Administrator, including but not limited to the cost of Notice.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund;

5.2.3    Three Hundred Fifty Thousand Dollars ($350,000) for the payment of Service Awards as described in Section 7.2 and as approved by the Court.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund;

5.2.4    Not to exceed Twenty Thousand Dollars ($20,000) for Future Costs incurred by Class Counsel subsequent to the date of the Order Granting Final Approval, pursuant to their continuing obligations under this Agreement (*e.g.*, including the cost of retaining Dr. Alex Vekker in connection with ongoing programmatic relief).  Should the Court award less, the remainder shall be added to the Settlement Awards Fund.  The Class Administrator shall distribute these funds by placing them in full into an escrow account held by Class Counsel.  At the conclusion of Class Counsel's involvement with Section 3 (Business Practices Programmatic Relief) of this Settlement, Class Counsel shall distribute any unused funds to the *cy pres* recipient, Lesbians Who Tech (http://lesbianswhotech.org);

5.2.5    Not to exceed One Hundred Thirty Thousand Dollars ($130,000) for costs incurred by Class Counsel.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund;

5.2.6    Not to exceed thirty percent (30%) of the Settlement Fund (Five Million Eight Hundred Fifty Thousand Dollars ($5,850,000)) for Class Counsel's attorneys' fees.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund; and

5.2.7    Approximately Thirteen Million Five Thousand Five Hundred Dollars ($13,005,500) to the "Settlement Awards Fund" for individual awards for the Collective Action Plaintiffs, the "Nationwide Class," and the "California Class" as described in more detail in Section 5.3.

5.3     **Allocation of Individual Monetary Awards from the Settlement Awards Fund.**

   5.3.1   **For Each Work Week Paid for Work in California from December 4, 2011 through December 3, 2012 – California Class Members.**  For each week they were paid for work in California  from December 4, 2011 through December 3, 2012, the California Class Members shall receive the number of shares in Table 1 that corresponds to their Job Code Group listed in Appendix 1 or 2, as applicable, in addition to anything to which they are entitled in Tables 2 or 3, provided that they did not previously sign a release encompassing California Business and Professions Code Section 17200 *et seq.* claims for the period from December 4, 2011 through December 3, 2012.

   **Table 1:  California Class Members Who Did Not Previously Sign a Release Encompassing Claims under Business & Professions Code Section 17200 *et seq.***

| Job Code Group | Share in the Job Code Group Listed Below for Each Work Week the California Class Plaintiff Was Paid for Work *in California* from December 4, 2011 Through December 3, 2012: |
|---|---|
| 1 | 0.75 |
| 2 | 1.01 |
| 3 | 1.19 |
| 4 | 1.48 |
| 5 | 1.94 |
| 6 | 2.60 |
| 7 | 3.52 |

   5.3.2   **For Each Work Week Paid for Work in California from December 4, 2012 through Date of Order Granting Preliminary Approval – California Class Members and Collective Action Plaintiffs.**

      (1)     For each week they were paid for work in California from December 4, 2012 through the date of Order Granting Preliminary Approval, the California Class Members and the Collective Action Plaintiffs shall receive the number of shares in Table 2 that corresponds to their Job Code Group listed in Appendix 1 or 2, as applicable, for the following claims: their claims under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) (liability period commences on December 4, 2012), their Title VII Claims (liability period commences on December 26, 2014), and their claims under the California Fair Employment and Housing Act, Cal. Gov't Code §12940, *et seq.* (liability period commences on October 22, 2014), the California Equal Pay Act, Cal. Lab. Code §1197.5 (liability commences on December 4, 2012), the California Fair Pay Act, Cal. Lab. Code §1197.5 (liability commences on January 1, 2016), the California Business & Professions Code §17200, *et seq.,* and the Private Attorneys General Act (PAGA), Cal. Lab. Code §§2698-2699; provided, however, that the California Class Member had not previously released said claims for the work week at issue.

If the California Class Member/Collective Action Plaintiff is not eligible for an award under Table 2 because she previously released the claims listed above for the work week at issue, she shall receive the number of shares in Table 3 that corresponds to her Job Code Group listed in Appendix 1 or 2, as applicable.

**Table 2: California Class Members and Collective Action Plaintiffs Who Did Not Previously Sign a Release Encompassing Title VII and California State Law Claims of Gender Discrimination and Unequal Pay.**

| Job Code Group | Share in the Job Code Group Listed Below for Each Week the California Class Member and Collective Action Plaintiff Was Paid for Work *in California* from December 4, 2012 Through the Date of Order Granting Preliminary Approval: |
|---|---|
| 1 | 1.00 |
| 2 | 1.35 |
| 3 | 1.59 |
| 4 | 1.98 |
| 5 | 2.59 |
| 6 | 3.46 |
| 7 | 4.70 |

**Table 3: California Class Members and Collective Action Plaintiffs Who Previously Signed a Release Encompassing Title VII and California State Law Claims of Gender Discrimination and Unequal Pay.**

| Job Code Group | Share in the Job Code Group Listed Below for Each Week the California Class Member and Collective Action Plaintiff Was Paid for Work *in California* from December 4, 2012 Through the Date of Order Granting Preliminary Approval: |
|---|---|
| 1 | 0.25 |
| 2 | 0.34 |
| 3 | 0.40 |
| 4 | 0.50 |
| 5 | 0.65 |
| 6 | 0.86 |
| 7 | 1.18 |

**5.3.3** **For Weeks Paid for Work in the United States but *Outside of* the State of California from December 4, 2012 Through Date of Order Granting Preliminary Approval – Nationwide (Excluding California) Class Members and Collective Action Plaintiffs.**

(1)     For each week they were paid for work in the United States but *outside of* the State of California  from December 4, 2012 through the date of Order Granting Preliminary Approval, the Nationwide (Excluding California) Class Members and the Collective Action Plaintiffs shall receive the

number of shares in Table 4 that corresponds to their Job Code Group listed in Appendix 1 or 2, as applicable, for the following claims: their claims under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) (liability period commences on December 4, 2012), their Title VII Claims (liability period commences on December 26, 2014), and the other claims they are releasing under this Agreement; provided, however, that the Class Member had not previously released said claims for the work week at issue.

If the Class Member/Collective Action Plaintiff is not eligible for an award under Table 4 because she previously released the claims listed above for the work week at issue, she shall receive the number of shares in Table 5 that corresponds to Job Code Group listed in Appendix 1 or 2, as applicable.

**Table 4: Nationwide (Excluding California) Class Members and Collective Action Plaintiffs Who Did Not Previously Sign a Release Encompassing Title VII and Other State Claims of Gender Discrimination and Unequal Pay.**

| Job Code Group | Share in the Job Code Group Listed Below for Each Work Week the Collective Action and Nationwide Class Plaintiff Was Paid for Work in the United States but *Outside of* California from December 4, 2012 Through the Date of Order Granting Preliminary Approval: |
|---|---|
| 1 | 1.00 |
| 2 | 1.35 |
| 3 | 1.59 |
| 4 | 1.98 |
| 5 | 2.59 |
| 6 | 3.46 |
| 7 | 4.70 |

**Table 5: Nationwide (Excluding California) Class Members and Collective Action Plaintiffs Who Previously Signed a Release Encompassing Title VII and Other State Law Claims of Gender Discrimination and Unequal Pay.**

| Job Code Group | Share in the Job Code Group Listed Below for Each Work Week the Collective Action and Nationwide Class Plaintiff Was Paid to Work in the United States but *Outside of* California from December 4, 2012 Through the Date of Order Granting Preliminary Approval: |
|---|---|
| 1 | 0.25 |
| 2 | 0.34 |
| 3 | 0.40 |
| 4 | 0.50 |
| 5 | 0.65 |
| 6 | 0.86 |
| 7 | 1.18 |

### 5.3.4 **Pregnancy, Childbirth, and Related Medical Conditions and Leave to Care for a Newborn or Newly Adopted Child ("Pregnancy/Child").**

(1) A California Class Member who took a leave (i) for pregnancy, childbirth, or related medical conditions, or (ii) to care for a newborn child within the first year of the child's life will be awarded a share for each of 22 work weeks if (i) she has not waived claims arising from any of those events, and (ii) she took any part of said leave during the period from October 22, 2014 to the date of Order Granting Preliminary Approval.

(2) A Nationwide Class Member who took a leave (i) for pregnancy, childbirth, or related medical conditions, or (ii) to care for a newborn child within the first year of the child's life will be awarded a share for each of 22 work weeks if (i) she is not eligible for an award under Section 5.3.4(1), (ii) she has not waived claims arising from any of those events, and (iii) she took any part of the leave during the period from December 26, 2014 to the date of Order Granting Preliminary Approval.

(3) A child includes a biological, adopted, foster, or stepchild, or child of a registered domestic partner or child for whom the employee is *in loco parentis.*

(4) An award under Section 5.3.4(1) or (2) is a one-time award, regardless of the number of leaves taken.

### **Table 6: Pregnancy/Child Leave Defined in Section 5.3.4(1) or (2).**

| Job Code Group | Share for Pregnancy/Child Leave Taken by a California Class Member at any Time Between October 22, 2014 (or by a Nationwide Class Member at any Time Between December 26, 2014) Through the Date of Order Granting Preliminary Approval in the Job Code Group Listed Below – to be Multiplied by 22 Weeks: |
|---|---|
| 1 | 0.25 |
| 2 | 0.34 |
| 3 | 0.40 |
| 4 | 0.50 |
| 5 | 0.65 |
| 6 | 0.86 |
| 7 | 1.18 |

### 5.3.5 **Part-time Employees.** The share of any Collective Action Plaintiff, Title VII Class Member or California Class Member who works or has worked on a part-time basis shall be pro-rated consistent with her base salary proration for each work week for each share calculation in Sections 5.3.1 through 5.3.4.

//

//

5.3.6   **Calculating the Value of Each Collective Action Plaintiff's and Class Member's Award from the Settlement Awards Fund.**

**Step 1:** The Class Administrator shall sum each individual's total shares from Sections 5.3.1 through 5.3.4, to the extent any section is applicable to the individual. For example, assuming that the individual never signed a release of claims:

- A California Class Member who worked for Qualcomm in California at any time between December 4, 2011 and December 3, 2012 would have shares under Section 5.3.1, Table 1.

- A California Class Member and Collective Action Plaintiff who worked for Qualcomm in California at any time between December 4, 2012 and the date of Order Granting Preliminary Approval would have shares under Section 5.3.2, Table 2. However, any weeks covered by a release of claims signed by the individual would be governed by Table 3.

- A Collective Action Plaintiff and Nationwide (Excluding California) Class Member who worked for Qualcomm in the United States but *outside of* California at any time between December 4, 2012 and the date of Order Granting Preliminary Approval would have shares only under Section 5.3.3, Table 4. However, any weeks covered by a release of claims signed by the individual would be governed by Table 5.

- A California Class Member who took a leave to care for a newborn within one (1) year of the child's birth at any time between October 22, 2014 and the date of Order Granting Preliminary Approval would also have shares under Section 5.3.4, Table 6 for 22 weeks.

**Step 2:** The Class Administrator shall calculate each individual's percentage of the Settlement Awards Fund by dividing the individual's total shares as determined in Step 1 by the total shares of all Collective Action Plaintiffs and Class Members who did not file Opt-Out Statements.

**Step 3:** The Class Administrator shall then multiply the individual's percentage as determined in Step 2 by the amount of the Settlement Awards Fund (approximately $13,005,500) to determine each individual's award.

5.3.7   The Class Administrator shall distribute the individual monetary awards accordingly on the time schedule described herein and pursuant to the orders of the Court.

5.3.8   Separate and apart from the Settlement Fund, the Class Administrator shall calculate and Qualcomm shall pay to the Class Administrator the employer's share of any statutory FICA, FUTA, and other payroll taxes arising from any payments to Collective Action Plaintiffs and Class Members for wages in addition to any other sum of payment Qualcomm agrees to pay under the terms of the Agreement.

The Class Administrator shall be responsible for remitting those taxes to the appropriate state and federal taxing authorities, filing the required tax returns and issuing the required IRS forms to the Class Members.

5.3.9   No later than fifteen (15) business days after the Effective Date, Qualcomm shall provide the Class Administrator with the up-to-date personnel information and with payroll information through the date of the Order Granting Preliminary Approval for all Collective Action Plaintiffs and Class Members.

5.4   **Settlement Fund.**  The Settlement Fund shall be controlled by the Class Administrator subject to the terms of this Agreement and any orders of the Court.  Interest earned on the Settlement Fund, if any, shall derive from interest earned on uncashed checks, if any, and may be retained by the Class Administrator to cover the cost of administering the resolution of those uncashed checks.

5.5   The Settlement Fund shall constitute a "common fund."  Upon opening this account, Qualcomm shall execute an election statement provided by the Class Administrator which shall be affixed to the initial tax return of the Settlement Fund in order to establish the start date of the Settlement Fund.  The Settlement Fund shall be created, managed and disbursed by the Class Administrator under the supervision of Class Counsel and Defendants' Counsel.  The Class Administrator shall be the only entity authorized to make withdrawals or payments from the Settlement Fund.

5.6   The Class Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest generated) to Qualcomm within ten (10) days in the event that this Agreement is rendered null and void.

## 6.   ATTORNEYS' FEES AND COSTS

6.1   At least thirty (30) days in advance of the deadline to object to the Settlement and to opt out of the Settlement, Class Counsel shall petition the Court for an award of attorneys' fees in a sum not to exceed Five Million Eight Hundred Fifty Thousand Dollars ($5,850,000) and costs not to exceed One Hundred Fifty Thousand Dollars ($150,000) that shall fully compensate Class Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Action, including any applicable multiplier.  Should the Court award a lesser amount of fees or costs, the difference between this amount and the amount awarded for fees and costs will be added to the "Settlement Awards Fund."

6.2   Qualcomm agrees that Plaintiffs are entitled to an award of reasonable attorneys' fees and costs in the Action.  The Parties agree that the full amount of the attorneys' fees and costs awarded in this action will be paid from the Settlement Fund.

6.3   The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

**7.     SERVICE AWARDS**

7.1    At least thirty (30) days in advance of the deadline to object to the Settlement and to opt out of the Settlement, Plaintiffs shall apply to the Court to receive Service Awards of Fifty Thousand Dollars ($50,000) each.  Should the Court award a lesser amount for Service Awards, the difference between this amount sought and the amount awarded for Service Awards will be added to the "Settlement Awards Fund."

7.2    Qualcomm agrees to pay the Court-approved Service Awards up to the above-listed amounts.  The Service Awards and the requirements for obtaining such payments are separate and apart from, and in addition to, the Named Plaintiffs' recovery from the Settlement Awards Fund.

7.3    The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

**8.     DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS**

8.1    **Settlement Checks.**  The Class Administrator shall mail all individual monetary awards no later than thirty (30) business days after it receives the personnel and payroll information from Qualcomm pursuant to 5.3.9.  The face of each check shall clearly state that it must be cashed within one hundred eighty (180) days.

8.2    **Reminder Postcards.**  The Class Administrator shall, thirty (30) days prior to the check expiration date, send a reminder postcard to those Named Plaintiffs, Collective Action Plaintiffs, and Class Members who have not yet cashed their settlement award check.  The Administrator shall also attempt to contact those Named Plaintiffs, Collective Action Plaintiffs, and Class Members via telephone (and may also use email if the Class Administrator has an email address for the individual).

8.3    **Returned Settlement Award Checks.**  The Class Administrator shall perform an address trace for any undeliverable checks, and re-send the checks if a different address is found, within three (3) business days of receipt of any undeliverable check.  If after performing an address trace, the check is still undeliverable or a more current address is not identified, the Class Administrator may employ an investigator to find an updated address for any Class Member whose settlement check totals more than Two Hundred Dollars ($200).  The cost of the investigator shall be deducted from the Class Member's individual monetary award.

8.4    **Uncashed Checks and Unused Funds.**  If any Named Plaintiff, Collective Action Plaintiff, or Class Member fails to cash her award check within one hundred eighty (180) days, the funds shall be distributed in equal shares to the *cy pres* recipients, the Association for Women in Science.  ( www.awis.com) and the Center for WorkLife Law (http://worklifelaw.org/).

8.5    **Final Report by Class Administrator.**  No later than ten (10) days after the check void date, the Class Administrator shall provide Class Counsel and Defendants' Counsel with a declaration providing a final report on the disbursements of all funds.

8.6 **Taxability of Settlement Payments.**

8.6.1 For tax purposes, 50% of payments to Collective Action Plaintiffs and Rule 23 Class Members pursuant to Sections 5.3.1 through 5.3.4 shall be treated as W-2 wage payments and 50% of such payments shall be treated as 1099 non-wage income as compensatory or liquidated damages/non-wage damages, interest, and for the California Class only, penalties.

8.6.2 Payments treated as W-2 wages pursuant to Sections 5.3.1 through 5.3.4 shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as compensatory or liquidated damages/non-wage damages and interest pursuant to Section 8.6.1 shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099, as shall penalties for the California Class only. Any Service Awards made pursuant to Section 7.1 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

8.6.3 In the event that it is subsequently determined by a tax authority that any Plaintiff, Collective Action Plaintiff, or Rule 23 Class Member owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the payment recipient and the tax authorities, and that Qualcomm shall not be responsible for the payment of such taxes, including any interest and penalties. Each Plaintiff, Collective Action Plaintiff and Rule 23 Class Member agrees to indemnify Qualcomm for any such taxes, interest, and penalties owed by her.

## 9. FORM OF NOTICE

9.1 All Collective Action Plaintiffs and Rule 23 Class Members shall receive a Notice substantially in the form evidenced by Exhibit A, attached hereto. The Notice shall be tailored for each individual and have pre-printed information regarding that individual's name, contact information, and information pertinent to the estimated allocation for the Named Plaintiff, Collective Action Plaintiff, and/or Class Member. The Notice shall be enclosed in an envelope substantially in the form evidenced by Exhibit B, attached hereto.

## 10. ADMINISTRATION OF SETTLEMENT

10.1 **Class Administrator's Duties.**

10.1.1 The Class Administrator shall (1) mail the Notice to the Collective Action Plaintiffs and Class Members after performing any address checks required by Section 10.2.3; (2) respond to questions from Collective Action Plaintiffs and Class Members; (3) distribute individual monetary awards to Collective Action Plaintiffs and Class Members; (4) maintain a toll-free number for communicating

with Collective Action Plaintiffs and Class Members; (5) no later than 15 days from the Effective Date, distribute Service Awards to Named Plaintiffs; (6) no later than 15 days from the Effective Date, distribute amounts approved by the Court as Attorneys' Fees and Incurred Costs to Class Counsel; (7) no later than 15 days from the Effective Date, place in escrow all amounts approved by the Court as Future Costs; (8) forward payment to the LWDA; (9) determine the employer's share of taxes owed and remit them to the taxing authorities, file required state and federal tax returns, and take all other actions required by Sections 5.3 through 5.6; (10) distribute funds to the *cy pres* recipients; and (11) perform any other duties necessary to carry out its responsibilities described in this Agreement.

10.1.2   The Parties agree to cooperate with the Class Administrator and assist it in any way possible in administering the terms of this Agreement.  The Parties agree to cooperate in the settlement administration process and work with the Class Administrator in making all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

10.1.3   At least five (5) business days prior to the Final Approval Hearing, the Class Administrator shall provide Class Counsel and Defendants' Counsel with a statement detailing its costs of administration, which Class Counsel shall file with the Court.

10.2   **Notice Procedures.**

10.2.1   No later than fifteen (15) business days after the date of entry of the order granting Preliminary Approval, Qualcomm shall provide to the Class Administrator a list of all Collective Action Plaintiffs and Rule 23 Class Members, including full name (maiden and married names, where applicable), last known home address, email (if known), telephone numbers(s), employee identification number, social security number, and number of work weeks worked during each relevant period in each job code/job family/rewards group including whether those work weeks were full-time versus part-time weeks, in a format reasonably acceptable to the Class Administrator.  The Class Administrator shall maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may receive the employee identification number and number of work weeks worked during each relevant period in each job code/job family/rewards group including whether those work weeks were full-time versus part-time weeks, for use only for purposes of administering this Settlement.

10.2.2   No later than fifteen (15) business days after Qualcomm provides the list of all Collective Action Plaintiffs and Rule 23 Class Members, the Class Administrator shall mail the Notice in substantively the form attached hereto as Exhibit A, and as approved by the Court, to the Collective Action Plaintiffs and Rule 23 Class Members, by United States first class mail, postage prepaid.  The Parties intend to provide actual notice to each Collective Action Plaintiff and Rule 23 Class Member, to the extent practicable.

10.2.3  In order to provide the best notice practicable, the Class Administrator shall run the list of Collective Action Plaintiffs and Class Members through the United States Postal Service's National Change of Address database before mailing the Notice.

10.2.4  If Notices are returned with forwarding addresses, the Class Administrator shall re-mail the Notice to the new address within three (3) business days.

10.2.5  In the event that Notices are returned to the Class Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender," the Class Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular individual in question and, if such an address is ascertained, the Class Administrator shall re-send the Notice within three (3) business days of receiving the newly ascertained address.

10.2.6  With respect to envelopes marked "Return to Sender," the Class Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Collective Action Plaintiffs and/or Class Members to obtain current addresses, and may request from Defendants' Counsel updated contact information for those currently employed by Qualcomm.  Defendants' Counsel will provide updated contact information for those currently employed by Qualcomm in response to requests from the Class Administrator.

10.2.7  During the sixty (60) day Notice Period, the Class Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings, including the number of Notices which were re-mailed, the number of successful and unsuccessful mailings, and the number of individuals who have opted-out and/or objected.

10.2.8  The Class Administrator shall provide to Defendants' Counsel and Class Counsel, at least ten (10) business days prior to the close of the Notice Period, a list of persons potentially eligible to be Collective Action Plaintiffs and Class Members to whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

10.2.9  Class Counsel shall provide the Court, at least five (5) days prior to the Final Approval Hearing, a declaration by the Class Administrator of due diligence and proof of mailing with regard to the mailing of the Notice.

10.3   **Opt-Outs**

10.3.1  Individuals in the Rule 23 Class may request exclusion from the monetary relief provisions of the Settlement by "opting out" no later than sixty (60) days after Notice is first mailed.  Any individual who chooses to do so must mail a written, signed statement to the Class Administrator that she is opting out ("Opt-Out Statement").  The Opt-Out Statement must contain the name, address, and telephone number of the individual to be valid.  It must also contain the following

words in order to be valid: "I decline to provide a release of claims and instead elect to exclude myself from the monetary relief provisions in the Settlement in *Pan v. Qualcomm Incorporated*. That means I will not be entitled to any of the monetary proceeds of the Settlement. I will, however, be covered by the injunctive relief provided by the Settlement, by which I am bound and from which I may not exclude myself." To be effective, such Opt-Out Statement must be sent via mail and postmarked by a date certain to be specified on the Notice. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted. The opt-out request must be personally signed in ink by the Rule 23 Class Member who seeks to opt-out. No opt-out request may be made on behalf of a group of Class Members.

10.3.2 The Class Administrator shall stamp on the original of any Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel by email no later than two (2) business days after receipt thereof. The Class Administrator shall, within twenty-four (24) hours after the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by email. The Class Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Class Administrator is relieved of its duties and responsibilities under this Agreement.

10.3.3 The share of any Opt-Out, as calculated pursuant to Section 5, shall remain in the Settlement Awards Fund for distribution to those who did not timely opt out of the Settlement.

## 10.4   Objections

10.4.1 Rule 23 Class Members and Collective Action Plaintiffs who wish to present objections to the Settlement at the Fairness Hearing must first do so in a written, signed statement. To be considered, such objections must be mailed to the Class Administrator no later than sixty (60) days after Notice is first mailed. The postmark date of the objection shall be the exclusive means for determining that an objection is timely. The statement must contain the name, address, and telephone number of the Class Member or Collective Action Plaintiff to be valid. It must also contain the words "I object to the settlement in *Pan v. Qualcomm Incorporated*," and set forth the legal and factual basis for the objection. Class Members and Collective Action Plaintiffs who fail to make objections in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement.

10.4.2 The Class Administrator shall stamp on the original objection the date it was received, and shall send copies of each objection to Class Counsel and Defendants' Counsel by email not later than two (2) business days after receipt thereof. Class Counsel shall file the objections with the Clerk of Court within three (3) days after the end of the Opt-Out Period.

10.4.3  An objector who wishes to appear at the Fairness Hearing must file with the Clerk of the Court and serve upon counsel designated in Section 14.3, a notice of intention to appear at the Fairness Hearing ("Notice of Intention to Appear") no later than sixty (60) days after the first mailing of the Notice.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member or Collective Action Plaintiff (or her counsel) shall present to the Court in connection with the Fairness Hearing.  Any Class Member or Collective Action Plaintiff who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Notice, and who has not filed an Objection in complete accordance with the deadlines and other specifications set forth in this paragraph and the Notice, shall, subject to the Court's final determination in the exercise of its discretion, be barred from speaking or otherwise presenting any views at any Fairness Hearing.

10.4.4  An objector may withdraw her objections at any time.  Any lawyer representing a Class Member or Collective Action Plaintiff for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to counsel for the Parties.

10.4.5  Any individual who has requested exclusion by submitting a valid Opt-Out Statement may not submit objections to the Settlement.

10.4.6  Plaintiffs and/or Qualcomm may file with the Court written responses to any objections at least seven (7) days before the Fairness Hearing.

10.4.7  **Waiver of Right to Appeal.**  Provided that the judgment against Qualcomm is consistent with the terms and conditions of this Agreement, then Named Plaintiffs, Collective Action Plaintiffs, and Class Members who did not timely submit an objection to the Settlement and their counsel, as well as Qualcomm and its counsel, hereby waive any and all rights to appeal from the judgment against Qualcomm, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate judgment, a motion for new trial, a motion under Federal Rule of Civil Procedure 60, and any extraordinary writ, and the judgment therefore shall become final and non-appealable at the time it is entered.  The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

10.5  **No Solicitation of Objection or Request to Opt Out.**  The Parties agree that the decision to opt out should be left to the individual Class Members.  If contacted by a Class Member, Class Counsel may provide any advice or assistance to any Class Member who requests them to do so.  If Defendants' Counsel is contacted by Class Members regarding the Settlement, counsel shall refer the call or communication to Class Counsel.  In addition, at no time shall Plaintiffs, Qualcomm, or their respective counsel seek to solicit or otherwise encourage Class Members or any other persons to submit written objections to the settlement or to encourage Class Members to appeal the Court's final approval order and entry of judgment, or to submit opt-out forms.

## 11.   PRELIMINARY AND FINAL APPROVAL

11.1   **Preliminary Approval by the Court.**  Within twenty-eight (28) days of the execution of this Agreement, Plaintiffs shall submit to the Court a Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion").  The Preliminary Approval Motion shall seek the setting of dates for opt-outs, objections, and a Fairness Hearing and shall present the [Proposed] Order Granting Preliminary Approval attached hereto as Exhibit C.

11.2   **Final Order and Judgment from the Court.**  Plaintiffs shall seek to obtain from the Court an Order Granting Final Approval.  The motion shall, among other things, seek: (a) final certification of the Rule 23 Class for purposes of settlement; (b) final approval of settlement of the Collective Action Plaintiffs' EPA claims; (c) final approval of settlement of the Rule 23 Class Members' claims as fair, adequate, reasonable, and binding on all Class Members who have not opted out; and (d) an entry of judgment in accordance with this Agreement.

11.3   **Fairness Hearing.**  The Fairness Hearing shall be held at the Court's convenience, but not earlier than ninety (90) days after CAFA notices are served.

## 12.   RELEASE

12.1   **Rule 23 Class Members, including Named Plaintiffs.**  Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each member of the Rule 23 Class, who does not timely opt out pursuant to this Agreement, on her behalf and on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all claims asserted in the Complaint under applicable state, local, and federal law that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation.  The rights and claims released ("Released Claims") include:  (i) claims for unequal pay, and (ii) claims for disparate treatment and pattern and practice discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, and performance, bonus and stock ratings, and (iii) claims for disparate impact discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, and performance, bonus and stock ratings, and (iv) claims for discrimination based upon pregnancy, childbirth, or related medical condition, and (v) if the Rule 23 Class Member receives an award under Section 5.3.4, then claims for violation of the California leave laws with respect to leaves to care for a biological, adopted, foster, or stepchild, or child of a registered domestic partner or child for whom the employee is *in loco parentis* are also waived.  The Released Claims arise under the following laws and their implementing regulations:  (i) Title VII of the Civil Rights Act of 1964, including but not limited to the Pregnancy Discrimination Law, 42 U.S.C. §§2000e, *et seq.*, and Executive Order 11246, and (ii) for those who work or worked in California:  the California Fair Employment and Housing Act, including but not limited to the California Family Rights Act and the California Pregnancy Disability Leave Law,

Cal. Gov't Code §12940, *et seq.*, the California Equal Pay Act, Cal. Lab. Code §1197.5, the California Fair Pay Act, Cal. Lab. Code §1197.5 (as of 2016), the California's Business & Professions Code §17200, *et seq.,* and the Private Attorneys General Act (PAGA), Cal. Lab. Code §§2698-2699; and (iii) for those who work or worked in the District of Columbia or in states outside of California, the state and local laws of similar import in their respective jurisdictions.  Only as to the claims released herein, each member of the Rule 23 Class waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, and does so understanding the significance of that waiver.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Those Rule 23 Class members who did not opt into the EPA collective action by cashing their settlement check do not release their potential federal EPA claims, 29 U.S.C. §206(d).

12.2 **Collective Action Plaintiffs, including Named Plaintiffs.**  Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Collective Action Plaintiff, on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all gender-based discrimination claims involving alleged unequal, disparate, or unfair compensation under the Equal Pay Act, 29 U.S.C. §206(d), that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation.  Collective Action Plaintiffs who cash their settlement checks shall be deemed to have accepted this Release.  Only as to the claims released herein, each Collective Action Plaintiff waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California (quoted in Section 12.1), and does so understanding the significance of that waiver.

12.3 Nothing in this Agreement shall be construed to bar any claims of the Named Plaintiffs, Collective Action Plaintiffs, or the Rule 23 Class Members based on or arising out of events occurring after the date of the Order Granting Final Approval by the Court of the Agreement.

## 13.    QUALCOMM'S RIGHT TO WITHDRAW OR MODIFY AGREEMENT

13.1 If two percent (2%) or more of the Class Members validly elect not to participate in the Settlement, Qualcomm shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to either withdraw in writing from and rescind this Agreement in which case all actions taken in its furtherance shall be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Qualcomm is entitled to withdraw from the Agreement and has validly done so, or to modify this Agreement through further negotiations with Class Counsel. Qualcomm must exercise this right within ten (10) calendar days after the Class

Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by email pursuant to Section 10.4.2.  If two percent (2%) or more of the Class Members opt out of the monetary relief provisions of the Settlement, and Qualcomm exercises its right to void the Settlement, Qualcomm shall pay the Class Administrator's reasonable fees and expenses incurred as of the date that Qualcomm exercises its right to void the Settlement.

13.2   If any of the Named Plaintiffs or Class Representatives submit a timely and complete request for exclusion, Qualcomm shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel.  If Qualcomm does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Qualcomm is entitled to withdraw from the Agreement and has validly done so.  Qualcomm shall have ten (10) days after the expiration of all Class Members' deadlines pursuant to the provisions described in the Notice of Class Action Settlement to withdraw from (or modify through negotiation) this Agreement on the basis that a Named Plaintiff or Class Representative has submitted a timely and complete request for exclusion.

**14.   INTERPRETATION AND ENFORCEMENT OF AGREEMENT**

14.1   **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

14.2   **Binding Effect.**  Upon execution of this Agreement by the Parties and their counsel, this Agreement shall be binding upon the Parties unless the Court fails to approve the Agreement as set forth herein.

14.3   **Notices to Counsel.**  All notices to counsel required or desired to be given under this Agreement shall be in writing and by overnight mail and e-mail to lead counsel for the respective Parties.  Specifically, such notices shall be mailed to Felicia Medina of Sanford Heisler, LLP and Maria Audero of Paul Hastings LLP for Qualcomm, their respective addresses set forth below (or to such other address as any such party of counsel may designate in a notice):

Felicia Medina
SANFORD HEISLER, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
fmedina@sanfordheisler.com

Maria Audero
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
mariaaudero@paulhastings.com

Case No. _____                                                     -34-                  COLLECTIVE AND CLASS ACTION

**14.4   Arm's-Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**14.5   Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**14.6   Severability.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement shall remain in full force and effect, subject to the limitations set forth above.

**14.7   Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of California, without regard to its choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**14.8   Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby for three (3) years and seven (7) months following Final Approval.

**14.9   Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by, or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**14.10   Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Qualcomm had signed the same instrument.  The failure of one or more Plaintiffs to sign this Agreement does not affect its enforceability, except as otherwise set forth herein.

**14.11   Facsimile/Electronic Signatures.**  Any Party may execute this Agreement by causing her or its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**15.    DUTIES OF THE PARTIES FOLLOWING COURT APPROVAL**

15.1    In connection with the Final Approval by the Court of this Agreement, Class Counsel, and Counsel for Defendant will submit a proposed final order and judgment:

(a)  Granting final approval to the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(b)  Granting final certification of the Rule 23 Settlement Class;

(c)  Granting final certification for settlement purposes of the conditionally certified EPA Collective Action;

(d)  Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class including the Class Representatives from prosecuting against any Released Parties any of the Released Claims; and

(e)  All materials, including data, provided by Qualcomm or its counsel to Class Counsel or Dr. Vekker shall be returned to Defendants' Counsel or destroyed by Class Counsel and Dr. Vekker within one-hundred eighty (180) days after the Effective Date, with the exception that the Parties may retain copies of their work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); any materials necessary to oversee compliance with this Agreement, except that all data and statistical analyses shall be returned to Defendants' Counsel, who shall retain and maintain that information in the form in which it is returned during the term of this Settlement Agreement.

//

//

DATED:  July 25, 2016          By:_____
                                      FELICIA MEDINA
                                      SANFORD HEISLER, LLP

                               *Attorneys for Plaintiffs, the Rule 23 Class, and the
                               Collective Action Class*

DATED:  July 25, 2016

                               By:_____
                                      DANDAN PAN
                                      *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

                               By:_____
                                      WEI SHI
                                      *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

                               By:_____
                                      LAURA PAQUIN
                                      *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

                               By:_____
                                      BLANCHE MATULICH
                                      *Named Plaintiff and Class Representative*

                               By:_____
                                      CONNIE JACOBSON
                                      *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

                               By:_____
                                      CARRIE HALUZA
                                      *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

                               By:_____
                                      CAROLINA DEALY
                                      *Named Plaintiff and Class Representative*

Case No. _____          -37-          COLLECTIVE AND CLASS
                                          SETTLEMENT AGREEMENT
                                          1-37

DATED: July 25, 2016     By:_____

                        FELICIA MEDINA
                        SANFORD HEISLER, LLP

*Attorneys for Plaintiffs, the Rule 23 Class, and the Collective Action Class*

DATED: July 25, 2016     By:_____

                        DANDAN PAN
                        *Named Plaintiff and Class Representative*

DATED: July 25, 2016     By:_____

                        WEI SHI
                        *Named Plaintiff and Class Representative*

DATED: July 25, 2016     By:_____

                        LAURA PAQUIN
                        *Named Plaintiff and Class Representative*

DATED: July 25, 2016     By:_____

                        BLANCHE MATULICH
                        *Named Plaintiff and Class Representative*

DATED: July 25, 2016     By:_____

                        CONNIE JACOBSON
                        *Named Plaintiff and Class Representative*

DATED: July 25, 2016     By:_____

                        CARRIE HALUZA
                        *Named Plaintiff and Class Representative*

DATED: July 25, 2016     By:_____

                        CAROLINA DEALY
                        *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____

FELICIA MEDINA
SANFORD HEISLER, LLP

*Attorneys for Plaintiffs, the Rule 23 Class, and the Collective Action Class*

DATED:  July 25, 2016

By:_____

DANDAN PAN
*Named Plaintiff and Class Representative*

By:_____

WEI SHI
*Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____

LAURA PAQUIN
*Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____

BLANCHE MATULICH
*Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____

CONNIE JACOBSON
*Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____

CARRIE HALUZA
*Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____

CAROLINA DEALY
*Named Plaintiff and Class Representative*

Case No. _____

-37-

COLLECTIVE AND CLASS
SETTLEMENT AGREEMENT

DATED:  July 25, 2016

By: _____
          FELICIA MEDINA
          SANFORD HEISLER, LLP

*Attorneys for Plaintiffs, the Rule 23 Class, and the Collective Action Class*

DATED:  July 25, 2016

By:_____
          DANDAN PAN
    *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By: _____
          WEI SHI
    *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By: _____
          LAURA PAQUIN

DATED:  July 25, 2016

    *Named Plaintiff and Class Representative*

By: _____
          BLANCHE MATULICH
    *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By: _____
          CONNIE JACOBSON
    *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____
          CARRIE HALUZA
    *Named Plaintiff and Class Representative*

DATED:  July 25, 2016

By:_____
          CAROLINA DEALY
    *Named Plaintiff and Class Representative*

1

DATED:  July 25, 2016                   By:_____

2                                                  FELICIA MEDINA
                                                   SANFORD HEISLER, LLP
3
                                        *Attorneys for Plaintiffs, the Rule 23 Class, and the*
4                                       *Collective Action Class*

5

6       DATED:  July 25, 2016           By:_____
                                                   DANDAN PAN
7                                       *Named Plaintiff and Class Representative*

8

9       DATED:  July 25, 2016           By:_____
                                                   WEI SHI
10                                      *Named Plaintiff and Class Representative*

11

12      DATED:  July 25, 2016           By:_____
                                                   LAURA PAQUIN
13                                      *Named Plaintiff and Class Representative*

14
                                                   *Blanchella Matulich*
15      DATED:  July 25, 2016           By:_____
                                                   BLANCHE MATULICH
16                                      *Named Plaintiff and Class Representative*

17

18      DATED:  July 25, 2016           By:_____
                                                   CONNIE JACOBSON
19                                      *Named Plaintiff and Class Representative*

20

21      DATED:  July 25, 2016           By:_____
                                                   CARRIE HALUZA
22                                      *Named Plaintiff and Class Representative*

23

24      DATED:  July 25, 2016           By:_____
                                                   CAROLINA DEALY
25                                      *Named Plaintiff and Class Representative*

26

27

28

Case No. _____              -37-              COLLECTIVE AND CLASS ACTION
                                                   SETTLEMENT AGREEMENT

1-41

**Appendix 1 – Exempt Job Codes in Covered Positions***

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| ACCPRO | Accounting Processor | 5012 | Supv, Accounts Payable | 2 |
| ACCTG | Accounting | 4673 | Mgr, Accounting | 5 |
| ACCTG | Accounting | 4698 | Supv, Accounting | 3 |
| ACCTG | Accounting | 5024 | Accountant, Staff | 4 |
| ACCTG | Accounting | 5028 | Supv, Accounting | 3 |
| ACCTG | Accounting | 5029 | Accountant | 1 |
| ACCTG | Accounting | 5030 | Accountant, Senior | 3 |
| ACCTG | Accounting | 5031 | Mgr, Accounting | 5 |
| ACCTG | Accounting | 5701 | Accountant | 1 |
| ACCTG | Accounting | 5702 | Accountant, Senior | 3 |
| ACCTG | Accounting | 5703 | Accountant, Staff | 4 |
| ACCTG | Accounting | 7864 | Acct/FA Rotational | 2 |
| ACCTG | Accounting | 9639 | Sr Mgr, Accounting | 5 |
| ARCHT | Architect | 1927 | Director, Architecture | 6 |
| ARCHT | Architect | 9441 | Director, Facilities Design | 6 |
| ASCBAY | ASICS Bay Area | 5275 | Engineer | 3 |
| ASCBAY | ASICS Bay Area | 5276 | Engineer, Senior | 4 |
| ASCBAY | ASICS Bay Area | 5278 | Engineer, Staff | 5 |
| ASCBAY | ASICS Bay Area | 5280 | Engineer, Senior Staff | 6 |
| ASCSYS | ASAICS Systems Engineering | 5647 | Engineer, Senior Staff | 6 |
| ASICS | ASICS Engineering | 5275 | Engineer | 3 |
| ASICS | ASICS Engineering | 5276 | Engineer, Senior | 4 |
| ASICS | ASICS Engineering | 5278 | Engineer, Staff | 5 |
| ASICS | ASICS Engineering | 5279 | Engineer, Staff/Manager | 5 |
| ASICS | ASICS Engineering | 5280 | Engineer, Senior Staff | 6 |
| ASICS | ASICS Engineering | 5281 | Engineer, Sr Staff/Mgr | 6 |
| ASICS | ASICS Engineering | 5282 | Engineer, Principal | 7 |
| ASICS | ASICS Engineering | 5283 | Engineer, Principal/Mgr | 7 |
| ASICS | ASICS Engineering | 5284 | Director, Engineering | 7 |
| ASICS | ASICS Engineering | 5285 | Sr Dir, Engineering | 7 |
| ASICS | ASICS Engineering | 6220 | Director, Engineering | 7 |
| ASICS | ASICS Engineering | 6252 | Engineer | 3 |
| ASICS | ASICS Engineering | 6265 | Engineer, Principal | 7 |
| ASICS | ASICS Engineering | 6284 | Engineer, Principal/Mgr | 7 |
| ASICS | ASICS Engineering | 6288 | Engineer, Senior | 4 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| ASICS | ASICS Engineering | 6292 | Engineer, Senior Staff | 6 |
| ASICS | ASICS Engineering | 6299 | Engineer, Senior/Manager | 4 |
| ASICS | ASICS Engineering | 6307 | Engineer, Sr Staff/Mgr | 6 |
| ASICS | ASICS Engineering | 6314 | Engineer, Staff | 5 |
| AUDIT | Audit | 4712 | Sr Mgr, Internal Audit | 5 |
| AUDIT | Audit | 5485 | Auditor | 2 |
| AUDIT | Audit | 7442 | Auditor, Staff | 4 |
| AUDIT | Audit | 7448 | Auditor, Senior | 3 |
| AUDIT | Audit | 7529 | Sr Dir, Internal Audit | 6 |
| AUDIT | Audit | 7597 | Auditor IT | 2 |
| AUDIT | Audit | 7598 | Auditor IT, Senior | 3 |
| AUDIT | Audit | 7599 | Auditor IT, Staff | 4 |
| AUDIT | Audit | 8447 | Manager, IA Investigations | 4 |
| AVPROD | AV Production | 3400 | Mgr, AV Production | 4 |
| BRDOPS | Broadcast Operations | 1224 | Supv, Broadcast Operations | 2 |
| BUSCON | Business Continuity | 4408 | Business Continuity Spec, Sr | 3 |
| BUSCON | Business Continuity | 4410 | Mgr, Business Continuity | 4 |
| BUSCON | Business Continuity | 8661 | Sr Mgr, Business Continuity | 5 |
| BUSDEV | Business Development | 3503 | Business Development Analyst | 2 |
| BUSDEV | Business Development | 3504 | Business Dev. Analyst, Sr | 2 |
| BUSDEV | Business Development | 3600 | Business Development Mgr, Asso | 3 |
| BUSDEV | Business Development | 3884 | Staff Mgr,Business Development | 6 |
| BUSDEV | Business Development | 4010 | Director, Business Development | 7 |
| BUSDEV | Business Development | 4028 | Staff Mgr,Business Development | 6 |
| BUSDEV | Business Development | 5613 | Sr Dir, Business Development | 7 |
| BUSDEV | Business Development | 5720 | Sr Dir, Business Development | 7 |
| BUSDEV | Business Development | 6490 | Director, Industry Affairs | 6 |
| BUSDEV | Business Development | 8009 | Mgr, Business Development | 4 |
| BUSDEV | Business Development | 8038 | Sr Mgr, Business Development | 5 |
| BUSDEV | Business Development | 8471 | Sr Dir, Corporate Development | 6 |
| BUSOPS | Business Operations | 10282 | Sales Operations Analyst,Staff | 4 |
| BUSOPS | Business Operations | 5153 | Mgr, Business Operations | 4 |
| BUSOPS | Business Operations | 5154 | Sr Mgr, Business Operations | 5 |
| BUSOPS | Business Operations | 5215 | Director, Sales Operations | 6 |
| BUSOPS | Business Operations | 5216 | Sr Mgr, Sales Operations | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| BUSOPS | Business Operations | 5407 | Director, Sales Operations | 7 |
| BUSOPS | Business Operations | 5411 | Director, Business Operations | 7 |
| BUSOPS | Business Operations | 6472 | Sr Dir, Sales Operations | 7 |
| BUSOPS | Business Operations | 7393 | Sr Mgr, Sales Operations | 6 |
| BUSOPS | Business Operations | 7412 | Mgr, Sales Operations | 4 |
| BUSOPS | Business Operations | 8938 | Sales Operations Analyst,Staff | 4 |
| BUSPRO | Business Process | 3088 | Business Process Analyst | 2 |
| BUSPRO | Business Process | 3089 | Business Process Analyst, Sr | 3 |
| BUSPRO | Business Process | 3193 | Business Process Analyst Staff | 4 |
| BUSPRO | Business Process | 3257 | Sr Dir, Business Processes | 7 |
| BUSPRO | Business Process | 4801 | Mgr, Business Solutions | 4 |
| BUSPRO | Business Process | 5066 | Mgr, Business Processes | 5 |
| BUSPRO | Business Process | 5096 | Sr Mgr, Business Processes | 5 |
| BUSPRO | Business Process | 5152 | Sr Mgr, Business Solutions | 6 |
| BUSPRO | Business Process | 8528 | Business Process Analyst Staff | 5 |
| BUSSTR | Business Strategy | 10396 | Sr Mgr, Strategy & Analysis | 5 |
| BUSSTR | Business Strategy | 3323 | Strategic Bus Analyst, Staff | 4 |
| BUSSTR | Business Strategy | 3324 | Mgr, Strategic Bus Analysis | 5 |
| BUSSTR | Business Strategy | 3328 | Sr Dir, Strategy & Analysis | 7 |
| BUSSTR | Business Strategy | 4677 | Mgr, Strategic Bus Analysis | 5 |
| BUSSTR | Business Strategy | 6767 | Sr Mgr, Strategic Bus Analysis | 6 |
| BUSSTR | Business Strategy | 9202 | Sr Dir, IP Business Strategy | 7 |
| BUSSYS | Business Strategy | 3255 | Business Systems Analyst, Stff | 4 |
| BUSSYS | Business Strategy | 5125 | Sr Mgr, Business Systems | 5 |
| BUSSYS | Business Strategy | 5880 | Business Systems Analyst, Stff | 5 |
| BUYER | Buyer | 4643 | Buyer | 1 |
| BUYER | Buyer | 4644 | Buyer, Senior | 3 |
| BUYER | Buyer | 4693 | Sr Mgr, Procurement | 6 |
| BUYER | Buyer | 7107 | Buyer | 1 |
| BUYER | Buyer | 7111 | Director, Procurement | 7 |
| BUYER | Buyer | 7502 | Mgr, Procurement | 5 |
| BUYER | Buyer | 7504 | Sr Mgr, Procurement | 5 |
| BUYER | Buyer | 7544 | Buyer, Staff | 4 |
| BUYER | Buyer | 9482 | Director, Procurement | 6 |
| BUYPLN | Buyer/Planner | 2914 | Buyer/Planner, Staff | 4 |
| BUYPLN | Buyer/Planner | 4645 | Buyer/Planner, Sr | 2 |
| BUYPLN | Buyer/Planner | 7407 | Buyer/Planner | 1 |
| BUYPLN | Buyer/Planner | 7408 | Buyer/Planner, Sr | 2 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| CAD | Computer-aided Design | 5288 | Engineer, Senior | 4 |
| CAD | Computer-aided Design | 5290 | Engineer, Staff | 5 |
| CAD | Computer-aided Design | 5291 | Engineer, Staff/Manager | 5 |
| CAD | Computer-aided Design | 5292 | Engineer, Senior Staff | 6 |
| CAD | Computer-aided Design | 5294 | Engineer, Sr Staff/Mgr | 6 |
| CAD | Computer-aided Design | 5295 | Engineer, Principal/Mgr | 7 |
| CAD | Computer-aided Design | 5296 | Director, Engineering | 7 |
| CAD | Computer-aided Design | 5561 | Engineer | 3 |
| CAD | Computer-aided Design | 5562 | Engineer, Senior | 4 |
| CAD | Computer-aided Design | 5564 | Engineer, Staff | 5 |
| CAD | Computer-aided Design | 5565 | Engineer, Staff/Manager | 5 |
| CAD | Computer-aided Design | 6399 | Engineer, Principal/Mgr | 7 |
| CADBAY | Computer-aided Design Bay Area | 5564 | Engineer, Staff | 5 |
| CADBAY | Computer-aided Design Bay Area | 5566 | Engineer, Senior Staff | 6 |
| CALTEC | Calibration | 2725 | Mgr, Calibration | 4 |
| CARREL | Carrier Relations | 2238 | Sr Mgr, Carrier Relations | 5 |
| CARREL | Carrier Relations | 2293 | Carrier Relations Spec, Sr | 2 |
| CARREL | Carrier Relations | 2294 | Carrier Relations Specialist | 1 |
| CLNPM | Clinical Product Management | 10435 | Clinical Project Manager | 4 |
| CLNPM | Clinical Product Management | 8707 | Clinical Product Manager | 4 |
| CLNPM | Clinical Product Management | 8708 | Clinical Product Manager, Sr | 5 |
| CLNSOL | Clinical Solutions | 10464 | Director, Clinical Solutions | 6 |
| CLNSOL | Clinical Solutions | 10471 | Mgr, Clinical Solutions | 3 |
| CMP | Component Engineers | 6249 | Director, Engineering | 7 |
| CMP | Component Engineers | 6289 | Engineer, Senior | 4 |
| CONFIG | Configuration | 5459 | Sr Director, Conf Mgmt | 6 |
| CONFIG | Configuration | 6016 | Director, Configuration Mgmt | 7 |
| CONFIG | Configuration | 7356 | Mgr, Configuration Mgmt | 4 |
| CONFIG | Configuration | 7357 | Sr Mgr, Configuration Mgmt | 5 |
| CONFIG | Configuration | 9346 | Mgr, Configuration Mgmt | 4 |
| CONILL | Conceptual Illustration | 6300 | Conceptual Illustrator | 2 |
| CONSTR | Construction | 3230 | Construction Project Manager | 4 |
| CONSTR | Construction | 3241 | Construction Project Mgr, Sr | 5 |
| CONSTR | Construction | 3903 | Construction Proj Engineer III | 2 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| CSVCOM | Customer Service Communication | 1973 | Customer Svc Specialist, Staff | 2 |
| CSVCOM | Customer Service Communication | 1985 | Mgr, Customer Service | 3 |
| CSVCOM | Customer Service Communication | 1986 | Customer Svc Specialist, Sr | 2 |
| CSVCOM | Customer Service Communication | 1987 | Customer Svc Specialist | 1 |
| CSVCOM | Customer Service Communication | 2195 | Director, Customer Service | 6 |
| CSVCOM | Customer Service Communication | 4751 | Sr Mgr, Customer Service | 5 |
| CSVCOM | Customer Service Communication | 7574 | Sr Mgr, Customer Service | 5 |
| CUSREL | Customer Relations | 9231 | Sr Mgr, Customer Relations | 5 |
| CUSREL | Customer Relations | 9233 | Director, Customer Relations | 7 |
| CUSTOM | Customs | 5501 | Sr Mgr, Customs & Indirect Tax | 5 |
| CUSTOM | Customs | 5504 | Mgr, Customs & Indirect Tax | 4 |
| CUSTOM | Customs | 5511 | Customs Specialist, Staff | 4 |
| CUSTOM | Customs | 5515 | Customs Specialist, Sr | 2 |
| CUSTOM | Customs | 9329 | Sr Mgr, Customs & Indirect Tax | 5 |
| CUSTSV | Customer Service | 2008 | Customer Svc Specialist | 1 |
| CUSTSV | Customer Service | 2013 | Mgr, Customer Service | 4 |
| CUSTSV | Customer Service | 2020 | Customer Svc Specialist, Sr | 2 |
| CUSTSV | Customer Service | 2062 | Director, Customer Service | 6 |
| CUSTSV | Customer Service | 2175 | Sr Mgr, Customer Service | 5 |
| CUSTSV | Customer Service | 2295 | Customer Svc Specialist, Staff | 4 |
| CUSTSV | Customer Service | 2296 | Sr Dir, Customer Service | 7 |
| CUSTSV | Customer Service | 5217 | Customer Svc Specialist, Staff | 4 |
| CUSTSV | Customer Service | 5218 | Mgr, Customer Service | 5 |
| CUSTSV | Customer Service | 5219 | Sr Mgr, Customer Service | 6 |
| CUSTSV | Customer Service | 6709 | Customer Svc Specialist | 1 |
| DATANL (not QCS) | Data Analyst | 10637 | Sr Dir, Data Analysis | 6 |
| DATANL (not QCS) | Data Analyst | 4716 | Mgr, Data Analysis | 4 |
| DATANL (not QCS) | Data Analyst | 7228 | Data Analyst | 2 |
| DATANL | Data Analyst | 7520 | Data Analyst, Sr | 3 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| (not QCS) | | | | |
| DATANL (not QCS) | Data Analyst | 7521 | Data Analyst, Staff | 4 |
| DATANL (not QCS) | Data Analyst | 9447 | Sr Mgr, Data Analysis | 6 |
| DATANL (not QCS) | Data Analyst | 9511 | Director, Data Analysis | 7 |
| DBA | Database Administrator | 4994 | Database Administrator, Staff | 4 |
| DMDANA | Demand Analyst | 2955 | Demand Analyst, Staff | 4 |
| DMDANA | Demand Analyst | 2966 | Demand Analyst | 1 |
| DMDANA | Demand Analyst | 2967 | Demand Analyst, Senior | 2 |
| DMDANA | Demand Analyst | 9405 | Sr Mgr, Demand Management | 5 |
| DMDANA | Demand Analyst | 9516 | Demand Analyst | 1 |
| ECOSTR | Economic Strategy | 6917 | Dir, Economic Strategy | 7 |
| ECOSTR | Economic Strategy | 9477 | Economic Analyst | 2 |
| ENGOPS | Engineering Operations | 9249 | Engineering Ops Manager, Assoc | 3 |
| ENGOPS | Engineering Operations | 9250 | Engineering Ops Manager | 4 |
| ENGOPS | Engineering Operations | 9251 | Engineering Ops Manager, Sr | 5 |
| ENGOPS | Engineering Operations | 9252 | Engineering Ops Manager, Staff | 6 |
| ENGOPS | Engineering Operations | 9253 | Director, Engineering Ops | 7 |
| ENGOPS | Engineering Operations | 9258 | Engineering Ops Manager | 4 |
| ENGOPS | Engineering Operations | 9260 | Engineering Ops Manager, Staff | 6 |
| ENGOPS | Engineering Operations | 9261 | Director, Engineering Ops | 7 |
| EXCOMP | Export Compliance | 7059 | Director, Export Compliance | 7 |
| EXCOMP | Export Compliance | 7075 | Export Comp Specialist, Staff | 4 |
| EXCOMP | Export Compliance | 7095 | Sr Mgr, Export Compliance | 5 |
| EXCOMP | Export Compliance | 7120 | Mgr, Export Compliance | 4 |
| EXCOMP | Export Compliance | 7182 | Export Comp Specialist | 1 |
| EXCOMP | Export Compliance | 7183 | Export Comp Specialist, Sr | 2 |
| EXCOMP | Export Compliance | 7456 | Sr Dir, Export Compliance | 7 |
| EXCOMP | Export Compliance | 7700 | Supv, Export Compliance | 3 |
| FAECOM | Field Application Engineering | 4933 | Field Applications Engineer,Sr | 3 |
| FAECOM | Field Application Engineering | 4934 | Field Applications Eng, Staff | 3 |
| FAECOM | Field Application Engineering | 4935 | Field Appl Eng, Staff/Mgr | 4 |
| FAECOM | Field Application Engineering | 4936 | Field Appl Eng,Sr Staff | 4 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| FAECOM | Field Application Engineering | 4937 | Director, Field Appl Eng | 5 |
| FAENCM | Field Application Engineering, Non-Commission | 5212 | Field Applications Engineer,Sr | 3 |
| FAESIP | Field Application Engineering, Incentive Plan | 10267 | Field Applications Engineer,Sr | 3 |
| FAILAN | Failure Analysis | 5573 | Engineer, Staff/Manager | 5 |
| FAILAN | Failure Analysis | 5575 | Engineer, Sr Staff/Mgr | 6 |
| FAILAN | Failure Analysis | 5625 | Engineer, Senior | 4 |
| FINANA | Financial Analyst | 5164 | Mgr, Finance | 5 |
| FINANC | Finance | 5083 | Director, Finance | 7 |
| FINANC | Finance | 5084 | Mgr, Finance | 5 |
| FINANC | Finance | 5091 | Sr Mgr, Finance | 5 |
| FINANC | Finance | 5102 | Sr Dir, Finance | 7 |
| FINANC | Finance | 5729 | Director, Finance | 7 |
| FINANC | Finance | 5820 | Sr Mgr, Finance | 5 |
| FINANC | Finance | 5823 | Mgr, Finance | 5 |
| FINANC | Finance | 8430 | Sr Director, Finance | 7 |
| FINANC | Finance | 8489 | Sr Mgr, Corporate Finance | 5 |
| FINANL | Financial Analysis | 5034 | Financial Analyst, Staff | 4 |
| FINANL | Financial Analysis | 5039 | Financial Analyst, Senior | 2 |
| FINANL | Financial Analysis | 5731 | Financial Analyst | 2 |
| FINANL | Financial Analysis | 5733 | Financial Analyst, Staff | 4 |
| FLDENG | Graphics Design | 2240 | Director, Field Engineering | 7 |
| GPHDES | Graphics Design | 1269 | Graphic Designer, Sr Staff | 5 |
| GPHDES | Graphics Design | 6076 | Graphic Designer | 1 |
| GPHDES | Graphics Design | 6080 | Graphic Designer, Senior | 2 |
| GPHDES | Graphics Design | 7252 | Graphic Designer, Staff | 4 |
| HUFENG | Human Factors Engineering | 4485 | Human Factors Eng, Principal | 7 |
| HUFENG | Human Factors Engineering | 4662 | Director, Human Factors Eng | 7 |
| HUFENG | Human Factors Engineering | 6164 | Human Factors Engineer | 3 |
| HUFENG | Human Factors Engineering | 6174 | Human Factors Engineer, Senior | 4 |
| HUFENG | Human Factors Engineering | 6228 | Human Factors Engineer, Staff | 5 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| HUFENG | Human Factors Engineering | 6366 | Human Factors Eng, Sr Staff | 6 |
| HUFENG | Human Factors Engineering | 6434 | Human Factors Eng,Sr Staff/Mgr | 6 |
| HW | Hardware Engineering | 5263 | Engineer | 3 |
| HW | Hardware Engineering | 5264 | Engineer, Senior | 4 |
| HW | Hardware Engineering | 5265 | Engineer, Senior/Manager | 4 |
| HW | Hardware Engineering | 5266 | Engineer, Staff | 5 |
| HW | Hardware Engineering | 5268 | Engineer, Senior Staff | 6 |
| HW | Hardware Engineering | 5271 | Engineer, Principal/Mgr | 7 |
| HW | Hardware Engineering | 6117 | Engineer | 3 |
| HW | Hardware Engineering | 6121 | Engineer, Senior | 4 |
| HW | Hardware Engineering | 6123 | Engineer, Senior/Manager | 4 |
| HW | Hardware Engineering | 6155 | Engineer, Staff | 5 |
| HW | Hardware Engineering | 6159 | Engineer, Staff/Manager | 5 |
| HW | Hardware Engineering | 6245 | Engineer, Senior Staff | 6 |
| HW | Hardware Engineering | 6310 | Engineer, Sr Staff/Mgr | 6 |
| HWAPPB | Hardware Applications Bay Area | 5862 | Engineer | 3 |
| HWAPPB | Hardware Applications Bay Area | 5865 | Engineer, Staff | 5 |
| HWAPPS | Hardware Applications | 5863 | Engineer, Senior | 4 |
| HWAPPS | Hardware Applications | 5865 | Engineer, Staff | 5 |
| HWAPPS | Hardware Applications | 7751 | Engineer | 3 |
| HWAPPS | Hardware Applications | 7752 | Engineer, Senior | 4 |
| HWAPPS | Hardware Applications | 7753 | Engineer, Senior/Manager | 4 |
| HWAPPS | Hardware Applications | 7754 | Engineer, Staff | 5 |
| HWAPPS | Hardware Applications | 7756 | Engineer, Senior Staff | 6 |
| HWAPPS | Hardware Applications | 7757 | Engineer, Sr Staff/Mgr | 6 |
| HWAPPS | Hardware Applications | 7759 | Engineer, Principal/Mgr | 7 |
| HWAPPS | Hardware Applications | 7760 | Director, Engineering | 7 |
| HWAPPS | Hardware Applications | 7761 | Sr Dir, Engineering | 7 |
| HWBAY | Hardware Engineering Bay Area | 5264 | Engineer, Senior | 4 |
| HWBAY | Hardware Engineering Bay Area | 5266 | Engineer, Staff | 5 |
| HWTST | Hardware Test | 5373 | Engineer | 3 |
| HWTST | Hardware Test | 5374 | Engineer, Senior | 4 |
| HWTST | Hardware Test | 5376 | Engineer, Staff | 5 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| HWTST | Hardware Test | 5378 | Engineer, Senior Staff | 6 |
| HWTST | Hardware Test | 5453 | Director, Engineering | 7 |
| HWTST | Hardware Test | 5577 | Engineer | 3 |
| HWTST | Hardware Test | 5581 | Engineer, Staff/Manager | 5 |
| HWTST | Hardware Test | 5583 | Engineer, Sr Staff/Mgr | 6 |
| HWTST | Hardware Test | 5585 | Engineer, Principal/Mgr | 7 |
| HWTSTB | Hardware Test - Bay Area | 5577 | Engineer | 3 |
| HWTSTB | Hardware Test - Bay Area | 5580 | Engineer, Staff | 5 |
| HWTSTB | Hardware Test - Bay Area | 5582 | Engineer, Senior Staff | 6 |
| INDSEC | Industrial Security | 8659 | Sr Mgr, Industrial Security | 5 |
| INDUST | Industrial Engineering | 3926 | Industrial Engineer, Senior | 4 |
| INSSAL | Inside Sales | 7344 | Inside Sales Rep, Sr | 2 |
| INSSAL | Inside Sales | 9183 | Mgr, Inside Sales | 3 |
| INSTAL | Inside Sales | 6561 | Installation & Support Spec | 1 |
| INSTAL | Inside Sales | 6562 | Installation & Support Spec,Sr | 2 |
| IT | Information Technology | 4650 | Director, IT | 7 |
| IT | Information Technology | 5139 | Staff Mgr, IT | 6 |
| IT | Information Technology | 5141 | Mgr, IT | 5 |
| IT | Information Technology | 5143 | Sr Mgr, IT | 6 |
| IT | Information Technology | 6233 | Director, IT | 7 |
| IT | Information Technology | 6234 | Sr Dir, IT | 7 |
| ITARCH | IT Architect | 7527 | IT Architect, Sr | 6 |
| ITIENG | IT Engineering | 5963 | IT Engineer, Sr Staff | 5 |
| ITIENG | IT Engineering | 5964 | IT Engineer, Staff | 4 |
| ITINET | IT Network Engineering | 5960 | Network Engineer, Sr. Staff | 5 |
| ITINET | IT Network Engineering | 5968 | Network Engineer, Staff | 4 |
| ITSEC | IT Security Engineering | 2220 | IT Security Engineer, Staff | 4 |
| KNWLDG | Knowledge | 1345 | Information Architect, Assoc. | 2 |
| KNWLDG | Knowledge | 1918 | Information Architect | 3 |
| LOGIST | Logistics | 4675 | Mgr, Logistics | 4 |
| MANUF | Manufacturing Engineering | 5131 | Engineer | 3 |
| MANUF | Manufacturing Engineering | 5167 | Engineer, Principal | 7 |
| MANUF | Manufacturing Engineering | 5655 | Engineer, Sr Staff/Mgr | 6 |

-47-

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| MARCOM | Marketing Communication | 2258 | Marketing Comm Coord, Staff | 4 |
| MEC | Mechanical Engineer | 6330 | Engineer | 3 |
| MEC | Mechanical Engineer | 6335 | Engineer, Senior Staff | 6 |
| MEC | Mechanical Engineer | 6337 | Engineer, Sr Staff/Mgr | 6 |
| MEC | Mechanical Engineer | 6339 | Engineer, Staff/Manager | 5 |
| MECENG | Mechanical Engineer | 4657 | Fac Mechanical Engineer, Sr | 4 |
| MKTANL | Marketing Analyst | 2114 | Marketing Analyst, Staff | 4 |
| MKTANL | Marketing Analyst | 2993 | Marketing Analyst, Senior | 3 |
| MKTANL | Marketing Analyst | 2999 | Marketing Analyst | 1 |
| MKTG | Marketing | 2910 | Director, Marketing | 7 |
| MKTG | Marketing | 2912 | Sr Mgr, Marketing | 6 |
| MKTG | Marketing | 2959 | Staff Mgr, Marketing | 6 |
| MKTG | Marketing | 3007 | Mgr, Marketing | 4 |
| MKTG | Marketing | 3013 | Director, Marketing | 7 |
| MKTG | Marketing | 3315 | Sr Dir, Marketing | 7 |
| MKTG | Marketing | 5077 | Sr Mgr, Marketing | 5 |
| MKTG | Marketing | 5900 | Mgr, Technology Valuation | 4 |
| MKTG | Marketing | 5911 | Staff Mgr, Tech Valuation | 6 |
| MKTG | Marketing | 5921 | Sr Dir, Technology Valuation | 6 |
| MKTPRG | Marketing Program | 2972 | Marketing Program Spec. | 1 |
| MKTPRG | Marketing Program | 2973 | Marketing Program Spec, Sr | 2 |
| MKTPRG | Marketing Program | 2974 | Marketing Program Spec, Staff | 4 |
| MNFPRD | Manufacturing Production | 7135 | Mgr, Manufacturing | 4 |
| MNFPRD | Manufacturing Production | 7290 | Sr Mgr, Manufacturing | 5 |
| MSKDES | Mask Layout Designer | 6389 | Dir, Mask Layout Design | 7 |
| MTL | Materials | 4699 | Supv, Materials | 2 |
| MTL | Materials | 5829 | Mgr, Materials | 4 |
| MTL | Materials | 7040 | Supv, Materials | 2 |
| MTLHND | Materials Handling | 5805 | Supv, Shipping/Receiving | 2 |
| MTLHND | Materials Handling | 6726 | Mgr, Shipping/Receiving | 4 |
| MTLPRD | Materials Product | 3155 | Materials Product Manager | 4 |
| NETSVC | Network Services | 7396 | Mgr, NOC | 4 |
| NETSVC | Network Services | 7397 | Sr Mgr, NOC | 5 |
| NONCOM | Non-Commissioned Sales | 2146 | Regional Sales Mgr | 6 |
| NONCOM | Non-Commissioned | 2981 | Account Mgr | 3 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| | Sales | | | |
| NONCOM | Non-Commissioned Sales | 2982 | Account Mgr, Sr | 4 |
| NONCOM | Non-Commissioned Sales | 3252 | National Accounts Manager | 5 |
| NONCOM | Non-Commissioned Sales | 7496 | Partner Account Mgr, Sr | 5 |
| NONCOM | Non-Commissioned Sales | 7497 | National Partner Accounts Mgr | 5 |
| NONSIP | Sales-No Sales Incentive Plan | 2147 | Director, Sales | 7 |
| NONSIP | Sales-No Sales Incentive Plan | 5792 | Regional Sales Mgr | 6 |
| OPS | Operations Management | 7157 | Director, Operations | 7 |
| OPS | Operations Management | 7168 | Mgr, Operations | 4 |
| OPSENG | Operations Engineering | 4199 | Operations Engineer, Sr Staff | 6 |
| OPSENG | Operations Engineering | 7876 | Operations Engineer, Staff | 5 |
| OPTBAY | Optical - Bay Area | 5556 | Engineer, Senior Staff | 6 |
| OPTBAY | Optical - Bay Area | 5557 | Engineer, Sr Staff/Mgr | 6 |
| OPTCL | Optical | 5551 | Engineer | 3 |
| OPTCL | Optical | 5552 | Engineer, Senior | 4 |
| OPTCL | Optical | 5554 | Engineer, Staff | 5 |
| OPTCL | Optical | 5555 | Engineer, Staff/Manager | 5 |
| OPTCL | Optical | 5557 | Engineer, Sr Staff/Mgr | 6 |
| OPTCL | Optical | 6782 | Engineer, Senior | 4 |
| OPTCL | Optical | 6784 | Engineer, Staff | 5 |
| OPTCL | Optical | 6785 | Engineer, Staff/Manager | 5 |
| PARREL | Partner Relations | 1308 | Dir, Partner Relations | 7 |
| PGMMGR | Program Management | 2100 | Operations Program Mgr, Sr | 6 |
| PGMMGR | Program Management | 3027 | Program Manager, Associate | 2 |
| PGMMGR | Program Management | 3028 | Program Manager | 4 |
| PGMMGR | Program Management | 3042 | Program Manager, Senior | 5 |
| PGMMGR | Program Management | 3048 | Sr Dir, Program Management | 7 |
| PGMMGR | Program Management | 3206 | Program Manager, Staff | 6 |
| PGMMGR | Program Management | 3219 | Director, Program Management | 7 |
| PGMMGR | Program Management | 5740 | Program Manager, Associate | 2 |
| PGMMGR | Program Management | 5741 | Program Manager | 4 |
| PGMMGR | Program Management | 5744 | Sr Dir, Program Management | 7 |
| PGMMGR | Program Management | 5800 | Program Manager, Staff | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| PKG | Packaging Engineers | 5517 | Engineer | 3 |
| PKG | Packaging Engineers | 5518 | Engineer, Senior | 4 |
| PKG | Packaging Engineers | 5519 | Engineer, Staff | 5 |
| PKG | Packaging Engineers | 5522 | Engineer, Staff/Manager | 5 |
| PKG | Packaging Engineers | 5882 | Engineer, Senior | 4 |
| PKGBAY | Packaging - Bay Area | 5882 | Engineer, Senior | 4 |
| PLNNER | Planner | 4683 | Planner, Staff | 4 |
| PLNNER | Planner | 7030 | Planner | 1 |
| PLNNER | Planner | 7044 | Planner, Senior | 2 |
| PLNNER | Planner | 7358 | Planner, Staff | 4 |
| PRCANA | Pricing Analyst | 7399 | Pricing Analyst | 1 |
| PRCANA | Pricing Analyst | 7400 | Pricing Analyst, Senior | 2 |
| PRCDEV | Process Development | 5595 | Engineer | 3 |
| PRCDEV | Process Development | 5596 | Engineer, Senior | 4 |
| PRCDEV | Process Development | 5598 | Engineer, Staff | 5 |
| PRCDEV | Process Development | 5599 | Engineer, Staff/Manager | 5 |
| PRCDEV | Process Development | 5661 | Engineer, Sr Staff/Mgr | 6 |
| PRCDVB | Process Devel - Bay Area | 5596 | Engineer, Senior | 4 |
| PRCTCH | Process Tech | 5822 | Supv, Fab Operations | 2 |
| PRDCR | Producer | 2903 | Producer | 3 |
| PRDCTL | Production Control | 7940 | Mgr, Production Control | 4 |
| PRDFOR | Product Forecast Analyst | 3185 | Product Forecast Analyst | 1 |
| PRDFOR | Product Forecast Analyst | 3186 | Product Forecast Analyst, Sr | 2 |
| PRDFOR | Product Forecast Analyst | 9427 | Product Forecast Analyst,Staff | 4 |
| PRDMGR | Product Management | 2021 | Product Manager | 4 |
| PRDMGR | Product Management | 2050 | Product Manager, Senior | 5 |
| PRDMGR | Product Management | 2235 | Product Manager, Staff | 6 |
| PRDMGR | Product Management | 3077 | Director, Product Management | 7 |
| PRDMGR | Product Management | 3306 | Sr Dir, Product Mgmt | 7 |
| PRDMGR | Product Management | 5746 | Product Manager | 4 |
| PRDMGR | Product Management | 5747 | Product Manager, Senior | 6 |
| PRDMGR | Product Management | 5794 | Product Manager, Staff | 6 |
| PRDMKT | Product Marketing | 4792 | Product Marketing Mgr, Assoc | 2 |
| PRDMKT | Product Marketing | 5777 | Director, Product Marketing | 7 |
| PRDPLN | Product Planning | 3304 | Director, Product Planning | 7 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| PRDPRT | Product Protection | 3266 | Brand Protection Analyst, Sr | 2 |
| PRDSEC | Product Security Engineering | 8749 | Engineer, Senior | 4 |
| PRDSEC | Product Security Engineering | 8753 | Director, Engineering | 7 |
| PRDSEC | Product Security Engineering | 8755 | Engineer, Sr Staff/Mgr | 6 |
| PRDSEC | Product Security Engineering | 9175 | Engineer, Senior | 4 |
| PRDSPC | Product Support Specialist | 1900 | Product Support Spec, Staff | 4 |
| PRDSPC | Product Support Specialist | 1999 | Product Support Specialist, Sr | 2 |
| PRDSPC | Product Support Specialist | 2023 | Mgr, Product Support | 4 |
| PRDSPC | Product Support Specialist | 2120 | Supv, Product Support | 2 |
| PRDSPC | Product Support Specialist | 9525 | Product Support Specialist, Sr | 2 |
| PRDSPC | Product Support Specialist | 9526 | Sr Mgr, Product Support | 5 |
| PRGACQ | Programming Acquisition | 2906 | Sr Dir, Programming | 7 |
| PRGANL | Program Analyst | 6572 | Program Analyst, Staff | 4 |
| PRJMGR | Project Management | 2244 | Project Manager, Staff | 6 |
| PRJMGR | Project Management | 5086 | Project Manager | 4 |
| PRJMGR | Project Management | 5087 | Project Manager, Senior | 4 |
| PRJMGR | Project Management | 5095 | Project Manager, Associate | 2 |
| PRJMGR | Project Management | 5300 | Director, Project Management | 7 |
| PRJMGR | Project Management | 5305 | Sr Dir, Project Management | 7 |
| PRJMGR | Project Management | 5753 | Project Manager, Associate | 2 |
| PRJMGR | Project Management | 5754 | Project Manager | 4 |
| PRJMGR | Project Management | 5755 | Project Manager, Senior | 4 |
| PRJMGR | Project Management | 5756 | Director, Project Management | 7 |
| PRJMGT | IT Project Management | 6350 | IT Project Manager | 4 |
| PRJMGT | IT Project Management | 6351 | IT Project Manager, Sr | 5 |
| PRJMGT | IT Project Management | 6352 | IT Project Manager, Staff | 6 |
| PROGAN | Programmer Analyst | 4968 | Programmer Analyst, Sr Staff | 5 |
| PROGAN | Programmer Analyst | 4989 | Programmer Analyst, Staff | 4 |
| PROTO | Prototype Assembly Management | 6075 | Supv, Prototype Assembly | 2 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| PROTO | Prototype Assembly Management | 6206 | Sr Mgr, Prototype Assembly | 5 |
| QA | Quality Assurance | 5313 | Engineer | 3 |
| QA | Quality Assurance | 5317 | Engineer, Staff/Manager | 5 |
| QA | Quality Assurance | 5318 | Engineer, Senior Staff | 6 |
| QA | Quality Assurance | 5319 | Engineer, Sr Staff/Mgr | 6 |
| QA | Quality Assurance | 5321 | Engineer, Principal/Mgr | 7 |
| QA | Quality Assurance | 5402 | Engineer, Principal | 7 |
| QA | Quality Assurance | 5403 | Engineer, Principal/Mgr | 7 |
| QA | Quality Assurance Engineering | 5404 | Director, Engineering | 7 |
| QA | Quality Assurance | 6816 | Engineer, Staff | 5 |
| QA | Quality Assurance | 6817 | Engineer, Senior Staff | 6 |
| QA | Quality Assurance | 6819 | Engineer, Staff/Manager | 5 |
| QSWENG | Quality Software Engineering | 3161 | S/W QA Engineer, Senior | 3 |
| QSWENG | Quality Software Engineering | 3164 | Sr Mgr, S/W QA Engineering | 5 |
| QSWENG | Quality Software Engineering | 8738 | Sr Mgr, S/W QA Engineering | 6 |
| QUAENG | Quality Engineering | 7132 | Quality Engineer, Staff | 4 |
| QUAENG | Quality Engineering | 7145 | Quality Engineer, Sr Staff | 6 |
| QUAENG | Quality Engineering | 7146 | Sr Dir, Quality | 7 |
| QUAENG | Quality Engineering | 7464 | Quality Engineer | 2 |
| QUAENG | Quality Engineering | 7466 | Sr Mgr, Quality | 6 |
| QUAENG | Quality Engineering | 9180 | Quality Engineer, Senior | 4 |
| RELDEV | Reliability Development | 2262 | Engineer, Senior | 4 |
| RELDEV | Reliability Development | 2264 | Engineer, Staff | 5 |
| RELDEV | Reliability Development | 2268 | Director, Engineering | 7 |
| RELDEV | Reliability Development | 4488 | Engineer, Principal | 7 |
| RELDEV | Reliability Development | 4653 | Engineer | 3 |
| RELDEV | Reliability Development | 4656 | Engineer, Senior | 4 |
| RELDEV | Reliability Development | 4717 | Engineer, Principal/Mgr | 7 |
| RELDEV | Reliability Development | 5498 | Engineer, Staff | 5 |
| RELDEV | Reliability Development | 5840 | Engineer, Sr Staff/Mgr | 6 |
| SALFOR | Sales Forecasting | 2956 | Sales Forecast Analyst, Staff | 4 |
| SALFOR | Sales Forecasting | 2978 | Sales Forecast Analyst | 1 |
| SCHEDU | Scheduler | 6987 | Scheduler, Staff | 4 |
| SCHEDU | Scheduler | 7225 | Scheduler, Senior | 2 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| SECSPC | Security | 1082 | Supv, Security | 2 |
| SECSPC | Security | 1115 | Mgr, Security | 4 |
| SECSPC | Security | 1180 | Director, Security | 6 |
| SECSPC | Security | 1181 | Sr Dir, Security | 7 |
| SECSPC | Security | 4825 | Mgr, Security | 4 |
| SECSPC | Security | 8534 | Mgr, Industrial Security | 4 |
| SLSCOM | Sales Com. | 1961 | Director, Sales | 6 |
| SLSCOM | Sales Com. | 1966 | Director, Regional Sales | 6 |
| SLSCOM | Sales Com. | 3019 | Director, Sales | 6 |
| SLSCOM | Sales Com. | 3022 | Account Mgr, Sr | 4 |
| SLSCOM | Sales Com. | 3023 | Account Mgr | 3 |
| SLSCOM | Sales Com. | 3047 | Regional Sales Mgr | 4 |
| SLSCOM | Sales Com. | 3208 | National Accounts Manager | 4 |
| SLSCOM | Sales Com. | 4641 | Account Mgr, Sr | 4 |
| SLSCOM | Sales Com. | 4684 | Regional Sales Mgr | 4 |
| SLSCOM | Sales Com. | 4690 | Sr Dir, Sales | 6 |
| SLSCOM | Sales Com. | 4691 | Sr Dir, Sales Operations | 6 |
| SLSCOM | Sales Com. | 4694 | Sr Mgr, Sales Operations | 5 |
| SLSCOM | Sales Com. | 7345 | Sr Dir, Sales | 6 |
| SLSSIP | Sales - Sales Incentive Plan | 10213 | Account Mgr | 3 |
| SLSSIP | Sales - Sales Incentive Plan | 3023 | Account Mgr | 3 |
| SQRE | Supplier Quality & Reliability Engineering | 5632 | Engineer | 3 |
| SQRE | Supplier Quality & Reliability Engineering | 5633 | Engineer, Senior | 4 |
| SQRE | Supplier Quality & Reliability Engineering | 5634 | Engineer, Staff | 5 |
| SQRE | Supplier Quality & Reliability Engineering | 5635 | Engineer, Senior Staff | 6 |
| SQRE | Supplier Quality & Reliability Engineering | 6752 | Engineer, Principal | 7 |
| SQRE | Supplier Quality & Reliability Engineering | 6822 | Engineer, Staff | 5 |
| SRCING | Sourcing | 2248 | Sourcing Specialist, Assoc. | 1 |
| SRCING | Sourcing | 2250 | Sourcing Specialist, Sr | 4 |
| SRCING | Sourcing | 2253 | Sr Mgr, Sourcing | 6 |
| SRCING | Sourcing | 2254 | Director, Sourcing | 7 |
| SRCING | Sourcing | 2285 | Sr Mgr, Strategic Forecasting | 5 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| SRCING | Sourcing | 2292 | Sourcing Specialist, Sr Staff | 5 |
| SRCING | Sourcing | 4940 | Mgr, Sourcing | 5 |
| SRCING | Sourcing | 5429 | Sourcing Specialist, Sr | 3 |
| SRCING | Sourcing | 8464 | Sourcing Specialist | 2 |
| SRCING | Sourcing | 9297 | Sourcing Specialist, Staff | 4 |
| STKADM | Stock Administration | 1103 | Sr Mgr, Stock Administration | 6 |
| STKADM | Stock Administration | 5088 | Stock Plan Admin, Sr | 3 |
| STKADM | Stock Administration | 5090 | Mgr, Stock Administration | 4 |
| STKADM | Stock Administration | 5121 | Director, Stock Administration | 7 |
| STKADM | Stock Administration | 5190 | Stock Plan Admin, Staff | 4 |
| SUPCHN | Supply Chain | 2911 | Mgr, Supply Mgmt | 5 |
| SUPCHN | Supply Chain | 4678 | Mgr, Supply Mgmt | 5 |
| SUPCHN | Supply Chain | 4695 | Sr Mgr, Supply Mgmt | 6 |
| SUPCHN | Supply Chain | 6479 | Supply Chain Analyst, Sr | 2 |
| SUPCHN | Supply Chain | 6480 | Supply Chain Analyst, Staff | 4 |
| SUPCHN | Supply Chain | 7792 | Sr Mgr, Capacity Forecasting | 5 |
| SUPCHN | Supply Chain | 7906 | Director, Supply Mgmt | 7 |
| SUPCHN | Supply Chain | 8238 | Sr Mgr, Supply Mgmt | 6 |
| SUPCHN | Supply Chain | 9872 | Supply Chain Analyst, Sr | 2 |
| SUSTN | Sustainability | 8868 | Sr Mgr, Sustainability | 5 |
| SUSTN | Sustainability | 8869 | Director, Sustainability | 6 |
| SW | Software Engineering | 5251 | Engineer | 3 |
| SW | Software Engineering | 5252 | Engineer, Senior | 4 |
| SW | Software Engineering | 5254 | Engineer, Staff | 5 |
| SW | Software Engineering | 5256 | Engineer, Senior Staff | 6 |
| SW | Software Engineering | 5257 | Engineer, Sr Staff/Mgr | 6 |
| SW | Software Engineering | 5260 | Director, Engineering | 7 |
| SW | Software Engineering | 6127 | Engineer | 3 |
| SW | Software Engineering | 6131 | Engineer, Senior | 4 |
| SW | Software Engineering | 6157 | Engineer, Staff | 5 |
| SW | Software Engineering | 6161 | Engineer, Staff/Manager | 5 |
| SW | Software Engineering | 6169 | Director, Engineering | 7 |
| SW | Software Engineering | 6246 | Engineer, Senior Staff | 6 |
| SW | Software Engineering | 6311 | Engineer, Sr Staff/Mgr | 6 |
| SW | Software Engineering | 6376 | Sr Dir, Engineering | 7 |
| SW | Software Engineering | 7222 | Engineer, Principal | 7 |
| SW | Software Engineering | 7234 | Engineer, Principal/Mgr | 7 |
| SWAPPB | Software Applications | 5850 | Engineer | 3 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| | Engineering Bay Area | | | |
| SWAPPB | Software Applications Engineering Bay Area | 5853 | Engineer, Staff | 5 |
| SWAPPS | Software Applications Engineering | 5851 | Engineer, Senior | 4 |
| SWAPPS | Software Applications Engineering | 5857 | Engineer, Principal | 7 |
| SWAPPS | Software Applications Engineering | 5859 | Director, Engineering | 7 |
| SWAPPS | Software Applications Engineering | 5860 | Sr Dir, Engineering | 7 |
| SWAPPS | Software Applications Engineering | 7766 | Engineer | 3 |
| SWAPPS | Software Applications Engineering | 7767 | Engineer, Senior | 4 |
| SWAPPS | Software Applications Engineering | 7768 | Engineer, Senior/Manager | 4 |
| SWAPPS | Software Applications Engineering | 7769 | Engineer, Staff | 5 |
| SWAPPS | Software Applications Engineering | 7771 | Engineer, Senior Staff | 6 |
| SWAPPS | Software Applications Engineering | 7772 | Engineer, Sr Staff/Mgr | 6 |
| SWAPPS | Software Applications Engineering | 7773 | Engineer, Principal | 7 |
| SWBAY | Software Engineering Bay Area | 5251 | Engineer | 3 |
| SWBAY | Software Engineering Bay Area | 5252 | Engineer, Senior | 4 |
| SWBAY | Software Engineering Bay Area | 5254 | Engineer, Staff | 5 |
| SWBAY | Software Engineering Bay Area | 5255 | Engineer, Staff/Manager | 5 |
| SWBAY | Software Engineering Bay Area | 5256 | Engineer, Senior Staff | 6 |
| SWBAY | Software Engineering Bay Area | 5257 | Engineer, Sr Staff/Mgr | 6 |
| SWBAY | Software Engineering Bay Area | 5259 | Engineer, Principal/Mgr | 7 |
| SWNCOM | Software Applications Engineering, Non-Commission | 3043 | S/W Appl Engineer | 3 |
| SWNCOM | Software Applications | 3174 | Sr Mgr, S/W Appl Eng | 4 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
|  | Engineering, Non-Commission |  |  |  |
| SWNCOM | Software Applications Engineering, Non-Commission | 3261 | Director, S/W Appl Eng | 7 |
| SWNCOM | Software Applications Engineering, Non-Commission | 9274 | Mgr, S/W Appl Eng | 3 |
| SWNCOM | Software Applications Engineering, Non-Commission | 9578 | S/W Appl Engineer, Sr Staff | 6 |
| SWSTD | Software Standards | 8506 | Engineer, Senior | 4 |
| SWSTD | Software Standards | 8508 | Engineer, Staff | 5 |
| SWSTD | Software Standards | 8509 | Engineer, Staff/Manager | 5 |
| SWSTD | Software Standards | 8511 | Engineer, Senior Staff | 6 |
| SWSTD | Software Standards | 8512 | Engineer, Sr Staff/Mgr | 6 |
| SWSTD | Software Standards | 8586 | Engineer, Senior | 4 |
| SWSTD | Software Standards | 8589 | Engineer, Staff/Manager | 5 |
| SWSTD | Software Standards | 8590 | Director, Engineering | 7 |
| SWSTD | Software Standards | 8591 | Engineer, Senior Staff | 6 |
| SWSTD | Software Standards | 8595 | Engineer, Principal/Mgr | 7 |
| SWTST | Software Test Engineering | 2356 | Engineer | 3 |
| SWTST | Software Test Engineering | 2359 | Engineer, Staff | 5 |
| SWTST | Software Test Engineering | 2360 | Engineer, Staff/Manager | 5 |
| SWTST | Software Test Engineering | 2361 | Engineer, Senior Staff | 6 |
| SWTST | Software Test Engineering | 2364 | Engineer, Principal/Mgr | 7 |
| SWTST | Software Test Engineering | 5385 | Engineer | 3 |
| SWTST | Software Test Engineering | 5386 | Engineer, Senior | 4 |
| SWTST | Software Test Engineering | 5387 | Engineer, Senior/Manager | 4 |
| SWTST | Software Test Engineering | 5389 | Engineer, Staff/Manager | 5 |
| SWTST | Software Test Engineering | 5390 | Engineer, Senior Staff | 6 |
| SWTST | Software Test | 5391 | Engineer, Sr Staff/Mgr | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| | Engineering | | | |
| SWTST | Software Test Engineering | 5393 | Engineer, Principal/Mgr | 7 |
| SWTST | Software Test Engineering | 5394 | Director, Engineering | 7 |
| SYS | Systems Engineering | 5325 | Engineer | 3 |
| SYS | Systems Engineering | 5326 | Engineer, Senior | 4 |
| SYS | Systems Engineering | 5328 | Engineer, Staff | 5 |
| SYS | Systems Engineering | 5329 | Engineer, Staff/Manager | 5 |
| SYS | Systems Engineering | 5330 | Engineer, Senior Staff | 6 |
| SYS | Systems Engineering | 5331 | Engineer, Sr Staff/Mgr | 6 |
| SYS | Systems Engineering | 5333 | Engineer, Principal/Mgr | 7 |
| SYS | Systems Engineering | 6166 | Director, Engineering | 7 |
| SYS | Systems Engineering | 6247 | Engineer, Senior Staff | 6 |
| SYS | Systems Engineering | 6312 | Engineer, Sr Staff/Mgr | 6 |
| SYS | Systems Engineering | 6372 | Sr Dir, Engineering | 7 |
| SYS | Systems Engineering | 6379 | Sr Dir, Technology | 7 |
| SYS | Systems Engineering | 7216 | Engineer | 3 |
| SYS | Systems Engineering | 7217 | Engineer, Senior | 4 |
| SYS | Systems Engineering | 7218 | Engineer, Staff | 5 |
| SYS | Systems Engineering | 7219 | Engineer, Senior/Manager | 4 |
| SYS | Systems Engineering | 7233 | Engineer, Principal | 7 |
| SYS | Systems Engineering | 7235 | Engineer, Principal/Mgr | 7 |
| SYSANL | Systems Analysis | 4026 | Systems Analyst, Sr Staff | 5 |
| SYSANL | Systems Analysis | 4944 | Systems Analyst, Staff | 4 |
| SYSANL | Systems Analysis | 4988 | Systems Analyst, Staff | 4 |
| SYSBAY | Systems Engineering Bay Area | 5325 | Engineer | 3 |
| SYSBAY | Systems Engineering Bay Area | 5326 | Engineer, Senior | 4 |
| SYSBAY | Systems Engineering Bay Area | 5328 | Engineer, Staff | 5 |
| SYSBAY | Systems Engineering Bay Area | 5331 | Engineer, Sr Staff/Mgr | 6 |
| SYSSTD | System Standards | 5361 | Engineer | 3 |
| SYSSTD | System Standards | 5362 | Engineer, Senior | 4 |
| SYSSTD | System Standards | 5364 | Engineer, Staff | 5 |
| SYSSTD | System Standards | 5366 | Engineer, Senior Staff | 6 |
| SYSSTD | System Standards | 5367 | Engineer, Sr Staff/Mgr | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| SYSSTD | System Standards | 5371 | Sr Dir, Engineering | 7 |
| SYSSTD | System Standards | 5417 | Engineer, Senior | 4 |
| SYSSTD | System Standards | 7631 | Director, Engineering | 7 |
| SYSSTD | System Standards | 7635 | Engineer, Staff/Manager | 5 |
| SYSSTD | System Standards | 7637 | Engineer, Sr Staff/Mgr | 6 |
| SYSTST | Systems Test Engineering | 5337 | Engineer | 3 |
| SYSTST | Systems Test Engineering | 5338 | Engineer, Senior | 4 |
| SYSTST | Systems Test Engineering | 5340 | Engineer, Staff | 5 |
| SYSTST | Systems Test Engineering | 5342 | Engineer, Senior Staff | 6 |
| SYSTST | Systems Test Engineering | 5343 | Engineer, Sr Staff/Mgr | 6 |
| SYSTST | Systems Test Engineering | 5345 | Engineer, Principal/Mgr | 7 |
| SYSTST | Systems Test Engineering | 6254 | Engineer | 3 |
| SYSTST | Systems Test Engineering | 6298 | Engineer, Senior Staff | 6 |
| SYSTST | Systems Test Engineering | 6309 | Engineer, Sr Staff/Mgr | 6 |
| SYSTST | Systems Test Engineering | 6317 | Engineer, Staff | 5 |
| SYSTST | Systems Test Engineering | 6328 | Engineer, Staff/Manager | 5 |
| SYSTST | Systems Test Engineering | 6340 | Engineer, Senior | 4 |
| SYSTST | Systems Test Engineering | 6373 | Sr Dir, Engineering | 7 |
| SYSTST | Systems Test Engineering | 6380 | Sr Dir, Technology | 7 |
| SYTBAY | Systems Test Engineering Bay Area | 5337 | Engineer | 3 |
| SYTBAY | Systems Test Engineering Bay Area | 5340 | Engineer, Staff | 5 |
| TAX | Tax | 4651 | Director, Tax | 6 |
| TAX | Tax | 4703 | Tax Analyst, Senior | 2 |
| TAX | Tax | 4787 | Sr Dir, Tax | 6 |
| TAX | Tax | 5069 | Mgr, Tax | 5 |
| TAX | Tax | 5099 | Director, Tax | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| TAX | Tax | 5103 | Sr Dir, Tax & Trade | 7 |
| TAX | Tax | 5107 | Tax Analyst | 2 |
| TAX | Tax | 5108 | Tax Analyst, Senior | 3 |
| TAX | Tax | 5109 | Tax Analyst, Staff | 4 |
| TAX | Tax | 5150 | Sr Dir, Domestic Tax | 6 |
| TAX | Tax | 5435 | Tax Analyst, Staff | 4 |
| TAX | Tax | 8488 | Sr Dir, Tax & Trade | 7 |
| TECHA | Technical Accounting | 5156 | Technical Accountant, Senior | 3 |
| TECHA | Technical Accounting | 5157 | Technical Accountant, Staff | 4 |
| TECHA | Technical Accounting | 6603 | Financial Analyst, Senior | 2 |
| TECHA | Technical Accounting | 6801 | Financial Analyst, Staff | 4 |
| TECHA | Technical Accounting | 9345 | Sr Mgr, Accounting | 6 |
| TECHSP | Technical Support Engineer | 2065 | Supv, Technical Support | 2 |
| TECHSP | Technical Support Engineer | 6168 | Director, Technical Support | 6 |
| TECHSP | Technical Support Engineer | 6802 | Staff Mgr, Tech Support | 6 |
| TECHWR | Technical Publications | 2070 | Director, Tech Pubs | 6 |
| TECHWR | Technical Publications | 4680 | Mgr, Technical Publications | 5 |
| TECHWR | Technical Publications | 5992 | Sr Mgr, Technical Publications | 6 |
| TECHWR | Technical Publications | 5998 | Mgr, Technical Publications | 5 |
| TECHWR | Technical Publications | 6770 | Sr Mgr, Technical Publications | 6 |
| TECPLN | Technology Planning | 3750 | Sr Mgr, Technology Planning | 6 |
| TECTRN | Technical Training | 2090 | Technical Trng Spclst, Staff | 4 |
| TECTRN | Technical Training | 2111 | Technical Trng Spclst, Sr | 2 |
| TECTRN | Technical Training | 3239 | Director, Technical Training | 6 |
| TECTRN | Technical Training | 9079 | Mgr, Technical Training | 4 |
| TEST | Test Engineering | 5355 | Engineer, Sr Staff/Mgr | 6 |
| TEST | Test Engineering | 6105 | Engineer | 3 |
| TEST | Test Engineering | 7244 | Engineer, Principal | 7 |
| TEST | Test Engineering | 7245 | Engineer, Principal/Mgr | 7 |
| TREAS | Treasury | 8548 | Treasury Analyst | 2 |
| TREAS | Treasury | 8549 | Treasury Analyst, Sr | 2 |
| TREAS | Treasury | 8552 | Treasury Analyst, Staff | 4 |
| TREAS | Treasury | 8553 | Treasury Investmnt Analyst, Sr | 3 |
| TREAS | Treasury | 8555 | Mgr, Treasury Investments | 5 |
| TREAS | Treasury | 8556 | Sr Mgr, Treasury Investments | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| TREAS | Treasury | 8559 | Sr Mgr, Insurance & Risk Mgmt | 5 |
| TREAS | Treasury | 9434 | Mgr, Treasury | 4 |
| USERX | User Experience | 6662 | User Experience | 2 |
| USERX | User Experience | 6663 | User Experience, Sr | 4 |
| USERX | User Experience | 6665 | User Experience, Staff | 4 |
| USERX | User Experience | 6667 | User Experience, Sr Staff | 6 |
| USERX | User Experience | 6669 | User Experience, Principal | 6 |
| USERX | User Experience | 6685 | User Experience, Sr Staff | 5 |
| USERX | User Experience | 6712 | User Experience, Sr Staff/Mgr | 6 |
| USERX | User Experience | 8792 | User Experience, Staff | 4 |
| VISDSN | Visual Design | 2278 | Visual Designer, Sr | 2 |
| VISDSN | Visual Design | 2279 | Visual Designer, Staff | 4 |
| VISDSN | Visual Design | 2280 | Visual Designer, Sr Staff | 5 |
| WEBDEV | Multimedia Design | 6554 | Web Designer, Staff | 4 |
| WEBDEV | Multimedia Design | 7414 | Multimedia Designer | 2 |
| WEBDEV | Multimedia Design | 7416 | Multimedia Designer, Staff | 4 |
| WIRREG | Wireless Regulatory | 8577 | Wireless Regulatory, Sr | 5 |

\* The Parties may add to this Appendix any job code that was inadvertently excluded and is substantially similar to those included here.

**Appendix 2 – Non-Exempt Job Codes in Covered Positions\***

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| ACCTG | Accounting | 5025 | Accountant, Associate | 1 |
| BUSPRO | Business Process | 3133 | Business Process Analyst,Assoc | 1 |
| BUSSYS | Business Systems | 3254 | Business Systems Analyst | 1 |
| BUYER | Buyer | 7105 | Buyer, Associate | 1 |
| CONFIG | Configuration | 6607 | Configuration Mgmt Spec, Staff | 5 |
| CONSTR | Construction | 3901 | Construction Proj Engineer I | 1 |
| DATANL | Data Analysis | 7386 | Data Analyst, Associate | 1 |
| DBA | Database Administrator | 4995 | Database Administrator, Senior | 4 |
| ITIENG | IT Engineering | 5967 | IT Engineer, Associate | 1 |
| ITIENG | IT Engineering | 5966 | IT Engineer | 2 |
| ITIENG | IT Engineering | 5965 | IT Engineer, Sr | 3 |
| ITINET | IT Network Engineering | 5970 | Network Engineer | 2 |
| LOGIST | Logistics | 4016 | Logistics Specialist | 1 |
| MARCOM | Marketing Communications | 2215 | Marketing Comm Coord, Assoc | 1 |
| MARCOM | Marketing Communications | 3004 | Marketing Comm Coord | 2 |
| MARCOM | Marketing Communications | 2056 | Marketing Comm Coord, Sr | 3 |
| MSKDES | Mask Layout Design | 6402 | Mask Layout Designer, Assoc | 1 |
| MSKDES | Mask Layout Design | 6134 | Mask Layout Designer | 2 |
| MSKDES | Mask Layout Design | 6129 | Mask Layout Designer, Senior | 4 |
| MSKDES | Mask Layout Design | 5833 | Mask Layout Designer, Senior | 4 |
| MSKDES | Mask Layout Design | 6276 | Mask Layout Designer, Staff | 4 |
| MSKDES | Mask Layout Design | 5834 | Mask Layout Designer, Staff | 4 |
| MSKDES | Mask Layout Design | 6277 | Mask Layout Designer,Staff/Mgr | 5 |
| MSKDES | Mask Layout Design | 5835 | Mask Layout Designer,Staff/Mgr | 5 |
| MSKDES | Mask Layout Design | 6269 | Mask Layout Dsnr, Sr Staff/Mgr | 6 |
| MSKDES | Mask Layout Design | 5837 | Mask Layout Dsnr, Sr Staff/Mgr | 6 |

| Job Family Abbreviation | Job Family Name | Job Code | Job Title | Job Code Group |
|---|---|---|---|---|
| PLNNER | Planner | 7042 | Planner, Associate | 1 |
| PRDSPC | Product Support | 2101 | Product Support Coord, Sr | 1 |
| PRGANL | Program Analyst | 6570 | Program Analyst | 1 |
| PRGANL | Program Analyst | 6571 | Program Analyst, Sr | 1 |
| PRGANL | Program Analyst | 6574 | Program Analyst, Spec | 2 |
| PROGAN | Programmer Analyst | 1911 | Programmer Analyst | 2 |
| PROGAN | Programmer Analyst | 5045 | Programmer Analyst, Sr | 3 |
| RELEAS | Release Engineering | 6385 | Release Engineer, Sr | 4 |
| RELEAS | Release Engineering | 6387 | Release Engineer, Staff | 4 |
| RELEAS | Release Engineering | 6388 | Release Engineer, Staff/Mgr | 5 |
| RELEAS | Release Engineering | 2199 | Release Engineer, Sr Staff/Mgr | 6 |
| STKADM | Stock Administration | 5092 | Stock Plan Admin, Assoc | 1 |
| SUPENG | Support Engineering | 6116 | Support Engineer | 2 |
| SUPENG | Support Engineering | 5769 | Support Engineer | 2 |
| SUPENG | Support Engineering | 6112 | Support Engineer, Sr | 3 |
| SUPENG | Support Engineering | 6122 | Support Engineer, Sr/Mgr | 4 |
| SUPENG | Support Engineering | 6280 | Support Engineer, Staff | 4 |
| SUPENG | Support Engineering | 6281 | Support Engineer, Sr Staff | 5 |
| SWTST | Software Test Engineering | 5384 | Engineer, Associate | 1 |
| SYSADM | Systems Administrator | 5073 | Systems Administrator, Sr | 3 |
| SYSANL | Systems Analyst | 1913 | Systems Analyst | 2 |
| SYSANL | Systems Analyst | 5046 | Systems Analyst, Senior | 3 |
| TECHWR | Technical Writer | 6204 | Technical Writer, Senior Staff | 5 |

\* The Parties may add to this Appendix any job code that was inadvertently excluded and is substantially similar to those included here.

## Appendix 3

### Qualcomm Subsidiaries and Affiliates Employing U.S. Workers Since December 2011

Capsule Tech, Inc.

Pixtronix, Inc.

Qualcomm Atheros, Inc.

Qualcomm Connected Experiences, Inc.

Qualcomm Datacenter Technologies, Inc.

Qualcomm Education, Inc.

Qualcomm Flarion Technologies, Inc.

Qualcomm Incorporated

Qualcomm Innovation Center, Inc.

Qualcomm International, Inc.

Qualcomm Labs, Inc.

Qualcomm Life, Inc.

Qualcomm MEMS Technologies, Inc.

Qualcomm Technologies, Inc.

# Exhibit A

## NOTICE OF SETTLEMENT OF CLASS ACTION AND COLLECTIVE ACTION

**If you are a woman who worked for Qualcomm, Inc., Qualcomm Technologies, Inc., or their parents or subsidiaries in the United States on or since December 4, 2011, this class action and collective action settlement ("Settlement") may affect your rights, and you could receive money.**

*A court authorized this notice. This is not a solicitation from a lawyer. You are not being sued. However, your legal rights are affected by the information contained in this Notice.*

- A Settlement has been reached in a class action and collective action lawsuit ("Lawsuit") against Qualcomm, Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm") that affects your rights.  The Lawsuit alleges (i) gender discrimination in compensation, raises, job assignments, job code placement, promotions and demotions; (ii) unequal pay; (iii) discrimination based on pregnancy, childbirth, or related medical conditions ("pregnancy"); and (iv) violation of rights with respect to leaves for pregnancy and for care of a newborn child.

- The Court has not yet decided whether to finally approve the Settlement.  Payments will be made only after the Court approves the Settlement and any appeals are resolved.  Under the schedule contemplated by the parties, the *earliest* possible date that Settlement checks could be mailed is [**date**], and the date could very well be later than that.  Please be patient.

- You need to decide whether to stay in the case and receive the benefits of the Settlement, object to the Settlement, or opt out of the monetary relief provisions of the Settlement to retain the right to pursue your claims on your own.  *If you wish to remain a Class Member and receive a monetary share of the Settlement, you do not have to do anything in response to this Notice*.

- The decision of whether to participate in, request to be excluded from, and/or object to the Settlement is entirely yours.  Qualcomm will not retaliate against you for participating (or not participating) in the Settlement.  Your decision to participate in, request to be excluded from, and/or object to the Settlement will not in any way affect your eligibility to be hired or employed by Qualcomm.

**PLEASE READ THIS NOTICE CAREFULLY**.  It describes your rights and how to  receive money from  the Settlement or exclude yourself from the Settlement.

| YOUR RIGHTS AND OPTIONS | |
| --- | --- |
| **DO NOTHING AND RECEIVE YOUR SHARE OF THE SETTLEMENT AWARD** | Do nothing.  Automatically receive your Settlement award no earlier than [**date**].  Release your claims against Qualcomm.  See Sections 22-25 below for more information about your Settlement award.  See Section 26 below for more information about the claims you will release. |
| **REQUEST TO BE EXCLUDED FROM THE SETTLEMENT** | Ask to be excluded from the monetary relief provisions of the Settlement by [**date**].  Get no payment.  Retain the right to file your own lawsuit for the same claims.  See Section 11 below. |
| **OBJECT TO THE TERMS OF THE SETTLEMENT** | File an objection that the Settlement is unfair or inadequate by [**date**].  See Section 12 below. |

1-68

**BASIC INFORMATION**

| **1.   Why did I receive this Notice?** |
| --- |

Qualcomm's records show that you have been employed in a position eligible to receive a payment under this Settlement by Qualcomm in <<state>> during the relevant time period.  A Settlement has been reached in a class action and collective action lawsuit against Qualcomm that affects your legal rights.  Judge _____ of the United States District Court for the Southern District of California, who is overseeing this class action, ordered that you be sent this Notice.

| **2.   What is this class action and collective action about?** |
| --- |

This Lawsuit, *Pan, et al. v. Qualcomm Incorporated*, Case No. _____, makes claims for (i) gender discrimination in compensation, raises, job assignments, job code placement, promotions and demotions; (ii) unequal pay; (iii) discrimination based on pregnancy, childbirth, or related medical conditions ("pregnancy"); and (iv) violation of rights with respect to leaves for pregnancy and for care of a newborn child (biological, adopted, foster, or step child, or child of a registered domestic partner or child for whom the employee is *in loco parentis*).  The Lawsuit alleges that these practices violated the following laws:

- Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000, *et seq.* ("Title VII")
- Equal Pay Act of 1963, 29 U.S.C. § 201, *et seq.*
- Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e, *et seq.*
- California Fair Employment and Housing Act, California Government Code § 12940, *et seq.*
- California Equal Pay Act, Cal. Lab Code § 1197.5, as amended
- California Equal Pay Act, Cal. Lab Code § 1197.5 (West 2015) (amended 2015))
- California Business & Professions Code § 17200, *et seq.*
- California Pregnancy Disability Leave Law, Cal. Gov't Code § 12940, *et seq.*
- California Family Rights Act, Cal. Gov't Code § 12945.1, *et seq.*
- California Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.*
- California Code of Civil Procedure § 1021.5

| **3.   How does Qualcomm respond?** |
| --- |

Qualcomm has denied and continues to deny all of the allegations in the Lawsuit.

| **4.   What is a class and collective action and who is involved?** |
| --- |

In a class action lawsuit, one or more people called **Class Representatives** sue on behalf of other people who have similar claims.  The Class Representatives in this case are Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson.  The Class Representatives represent the Class or **Class Members**.

In a collective action lawsuit, people called **Collective Action Plaintiffs** can join ("opt into") a lawsuit brought forward by Class Representatives.  In this case, the Collective Action Plaintiffs who opt in will join a collective action under the Equal Pay Act of 1963, 29 U.S.C. § 201, *et seq.*

The Court will resolve the claims at issue for all Class members who do not request to be excluded and for all Collective Action Plaintiffs who opt in.

See Section 8 below for more information about who is a Class Member and/or a Collective Action Plaintiff.

| **5.   Why is the Lawsuit being settled?** |
| --- |

After settlement negotiations and the exchange of information and documents, the Class Representatives and Qualcomm have agreed to settle the claims against Qualcomm rather than go to trial.  The Settlement represents a compromise of disputed

claims and is not an admission that any of the Defendants or Released Parties violated the law.  The parties and their attorneys believe the Settlement is in the Classes' best interests given the risks and expense of going to trial.

| **6.   Has the Court decided who is right?** |
| --- |

No.  The Court has only decided that you should get a copy of this Notice so that you can review the Settlement and determine whether you want to participate in the Settlement, object to it, or exclude yourself from the Settlement.

| **7.   Who is the Class Administrator?** |
| --- |

The Class Administrator is a third party appointed by the Court to send this Notice, process and issue Settlement checks, and otherwise administer the Settlement.  You may contact the Class Administrator to provide updated contact information, make corrections regarding your employment information, or ask questions regarding the processing of Settlement awards.  You may contact the Class Administrator at:

Pan v. Qualcomm Settlement
c/o Rust Consulting, Inc. – XXXX
P. O. Box XXXX
Faribault, MN 55021-9140
Phone: 1-888-XXX-XXXX
Email: [email address]
Website: [website]

| **8.   Am I a Class Member and/or a Collective Action Plaintiff?** |
| --- |

You have received this Notice, and are therefore affected by this Settlement, because Qualcomm's records indicate that you are a:

☐ California Class Member
☐ Nationwide (Excluding California) Class Member
☐ Collective Action Plaintiff *if you cash your Settlement check*.

**California Class**: "California Class" means women who were paid for working in California in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities, at any time from December 4, 2011 through [the date of the Order Granting Preliminary Approval].

**Nationwide Class (Excluding California)**: "Nationwide Class (Excluding California)" means women who were paid for working in a Covered Position by Qualcomm Incorporated and its current and former subsidiaries and affiliated entities in the United States (but not in the state of California) at any time from December 26, 2014 through [the date of the Order Granting Preliminary Approval].

**Collective Action Plaintiffs**: "Collective Action Plaintiffs" means  women who were paid for working in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities in the United States at any time from December 4, 2012 through [the date of the Order Granting Preliminary Approval] who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend:  "I have received and read the Class Notice in *Pan et al. v. Qualcomm Incorporated.*  By negotiating this check and accepting payment I (i) consent to join in this lawsuit and the Equal Pay Act collective action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit.  This Release shall become effective on the Effective Date."

**Covered Positions**:   A "Covered Position" means either (a) a salaried exempt position in the job codes/job families listed in Appendix 1 to the Settlement Agreement that are below the level of "Vice President" (also referred to as "VP"); or (b) a non-exempt position in the job codes/job families listed in Appendix 2 to the Settlement Agreement.  "Covered Position" in (a) and (b) above *does not include* (i) individuals currently or formerly employed as interns, temporary workers or contract workers by Qualcomm or by any contractor of Qualcomm; (ii) individuals currently or formerly employed by or at Gimbal after it was no longer a wholly-owned subsidiary of Qualcomm; or (iii) individuals currently or formerly employed in the following job families in any exempt or non-exempt position:  ADMSVC, AIRMNT, ANREL, ASSIST, BENFIT, BLDGSV, BUSCMP, CEO, CFO,

CMPLNC, COMAFF, COMPEN, COPYWR, CTO, CTRADM, CTRATT, DATANL (QCS), DIVCNS, EECOMM, EMPREL, ENG, ENVHLT, ENVREG, ERSPEC, EVENT, EXEC, EXEMGT, FAC, FACEE, FACENG, FASUPP, FRAUD, GOVPRP, GVTAFF, HR, HRACRD, HRASST, HRIS, HRMS, HRREP, HRSPEC, INCDIV, INTERN, INVREL, IPLIC, LEARN, LGDATA, LGLADM, LGLANL, LGLAST, LGLCNS, LGSUPP, LIBRAR, ORGDEV, PATAGT, PATATT, PATENG, PAYANL, PAYROL, PILOT, PR, PRES, REGAFF, RELEST, SALES, SECY, STAFF, STKADM, SUBCON, TRAVEL, TRM, VPAGMG, and VPGMGR.

## YOUR RIGHTS AND OPTIONS

### 9.   What does this Settlement provide?

Qualcomm has agreed to pay all Class Members and Collective Action Plaintiffs, as discussed below.  Qualcomm has also agreed to certain business practices, described below in Section 17.  In return, Class Members and Collective Action Plaintiffs who do not timely request to be excluded from the Settlement will release any claims they might have against Qualcomm that were or could have been raised in the Lawsuit based on the allegations in the Lawsuit.  For more information about your estimated payment from the Settlement and the way it was calculated, see Sections 22-25 below.  For more information about the claims you will release if you do not exclude yourself from the Settlement, see Section 26 below.

### 10.   How do I participate in the Settlement?

**You do not need to do anything to participate in the Settlement**.  You will automatically receive payment and you will release your covered claims against Qualcomm and the Released Parties without any further action on your part, unless you request to be excluded from the Settlement. However, you will release your claims under the Equal Pay Act if you do not request to be excluded from this Settlement and you cash the check you receive pursuant to the Settlement.

### 11.   How do I request to be excluded from the Settlement?

If you wish to be excluded from the monetary relief provisions of the Settlement, you must mail a written, personally signed (in ink) statement to the Class Administrator at the address set forth above in Section 7 that you are opting out ("Opt-Out Statement").  The Opt-Out Statement must contain your name, address and telephone number.  It must also contain the words "I decline to provide a release of claims and instead elect to exclude myself from the monetary relief provisions in the Settlement in *Pan v. Qualcomm Incorporated*.  That means I will not be entitled to any of the monetary proceeds of the Settlement.  I will, however, be covered by the injunctive relief provided by the Settlement, by which I am bound and from which I may not exclude myself."  **To be effective, your request must be postmarked no later than «date».**

If you do not complete and timely mail a valid Opt-Out Statement, you will be bound by all terms and conditions of the Settlement, including its release of claims, and you will give up your rights to sue Qualcomm and the Released Parties on your own regarding the legal claims brought in this Lawsuit and the claims released in this Settlement.  If you do not choose to opt out, but fail to cash your individual monetary award check, you will not release any claims under the Equal Pay Act.

Alternatively, if you submit a timely and valid Opt-Out Statement, you will not receive any money from the Settlement, but you will retain the right to bring your own separate lawsuit.

### 12.   May I object to the Settlement?

If you believe the Settlement is unfair or inadequate, you may object, personally or through an attorney, by mailing a copy of your objection to the Class Administrator at the address set forth above in Section 7.  You cannot both object to the Settlement **and** exclude yourself from the Settlement.

If you wish to object to the Settlement, you must mail a written, personally signed (in ink) statement to the Class Administrator that contains your name, address and telephone number.  Your objection must also contain the words "I object to the Settlement in *Pan v. Qualcomm Incorporated*," and set forth the legal and factual basis for the objection.  **To be effective, your objection must be postmarked no later than «date».  Do not telephone the Court or Qualcomm's counsel.**

If you or your lawyer wish to appear in Court at the hearing on final approval of the Settlement, you (and your lawyer, if any) must file with the Clerk of the Court a Notice of Intention to Appear at the Fairness Hearing ("Notice of Intention to Appear") no later

than **«date»**.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that you or your lawyer shall present to the Court in connection with the Fairness Hearing.  You also must serve a copy of the Notice of Intention to Appear and its accompanying papers, exhibits, and other evidence upon Class Counsel at the address and the email set forth in Section 14 and Qualcomm's counsel at the address and the email set forth in Section 27.   If you hire your own lawyer, you are responsible for paying for that lawyer.

If the Court rejects your objection, you will still be bound by the terms of the Settlement.  You will not be able to exclude yourself from the Settlement.

| **13.  When will I receive my payment?** |
| --- |

Payments will be sent after the Court gives the Settlement final approval, if no objections are filed.  If any objections are filed, and/or if any appeal is taken, payments will be delayed until the time to appeal has expired or any appeals are finally resolved in favor of the Settlement.  Under the schedule contemplated by the parties, the *earliest* possible date that Settlement checks could be mailed is [**date**], and the date could very well be later than that. Please be patient.

## THE LAWYERS REPRESENTING YOU

| **14.  Do I have a lawyer in this case?** |
| --- |

In class actions, Class Members are represented by Court-appointed lawyers ("Class Counsel").   In this case, you are represented by **Sanford Heisler, LLP** in connection with implementation and monitoring of this Settlement *at no cost to you*.  The Court has determined that Sanford Heisler, LLP is qualified to represent you and all Class Members and Collective Action Plaintiffs as Class Counsel.  Class Counsel  are experienced in handling similar cases.  You can contact Class Counsel at:

Sanford Heisler, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Phone:  (415) 795-2020
Fax:  (415) 795-2021
Email:  [email]

| **15.  May I get my own lawyer?** |
| --- |

You do not need to hire your own lawyer because Class Counsel is working on your behalf.  Nonetheless, you may hire your own lawyer if you wish.  If you hire your own lawyer, you are responsible for paying for that lawyer.

| **16.  How will Class Counsel be paid?** |
| --- |

You do not have to pay Class Counsel's fees and costs.  The fees and expenses that the Court approves will be paid out of the Settlement. More information about the attorneys' fees and costs is contained in Section 21 below.

## TERMS OF THE SETTLEMENT

| **17.  What has Qualcomm agreed to do?** |
| --- |

Qualcomm has agreed to pay **$19.5 million** to settle the claims in this case. Additional information about how the Settlement will be distributed is located in Sections 18-22 below.  Pending Court approval, the Settlement will be distributed in the following way:

- At least $13,005,500 to the Class Members and the Collective Action Plaintiffs.
- Up to $50,000 to each Class Representative.
- Up to $125,000 to the Class Administrator for the costs of administering the Settlement.
- Up to $130,000 to Class Counsel for costs incurred.
- Up to $20,000 to Class Counsel to cover future costs of programmatic relief.

- Up to $5,850,000 to Class Counsel for attorney' fees.
- $19,500 to the California Labor Workforce and Development Agency.

Qualcomm has also agreed to be bound by the Settlement for a period of three years and has agreed to certain business practices. A comprehensive list of these practices can be found on pages 7-18 of the Settlement Agreement. The practices Qualcomm will undertake include but are not limited to:

- Appointment of an internal Compliance Official to monitor and report on compliance with the Settlement, including an annual report to all U.S. employees and to Class Counsel; meetings with senior managers of people to review the terms of this Agreement, the actions they are expected to take, and actions taken to date to implement the terms of the Agreement; and reporting the results of the bi-annual employee engagement survey inquiries relating to the Settlement to executives and others with recommendations, where needed, to remedy as soon as practicable any gender-related problems affecting female employees evidenced in the survey.

- Retention of Kathleen Lundquist, Ph.D. and Toni Locklear, Ph.D., independent consultants with APT Metrics, who specialize in industrial organizational psychology to consult with Qualcomm in reviewing and providing recommendations on investigations training and the bi-annual employee engagement survey and in creating, reviewing, evaluating, and modifying, if appropriate, various practices related to program manager, product manager and engineering job families, including minimum standards and preferred qualifications for each job, core interview questions, leveling guides for each job family, guidance for leveling new hires in the proper job code, a process and standards for setting a new hire's starting compensation, tailored performance evaluations for each job family, including the inclusion of an EEO compliance measurement in the performance evaluation for managers of people and members of the Human Resources organization, a promotion readiness process and assessment, and competencies and core developmental objectives for each job code.

- Publication of policies prohibiting discrimination, harassment and retaliation; adding to managerial job descriptions the responsibility to actively support diversity in the workplace.

- Expanded training for all managers of people on equal employment opportunity laws, including laws prohibiting discrimination, sexual harassment, and retaliation; implicit bias; mentoring; how to collect and respond to third-party feedback on employee performance, including spotting bias in third-party feedback; preparation for calibration meetings, and each managers' role in said meetings; actions required to review and document employee performance, readiness for advancement, and developmental needs; how to identify and eliminate bias and discrimination in the hiring, promotion, and performance review processes and properly attribute contributions to achievements and responsibility for shortcomings; how to deliver job-related performance feedback, constructive praise, and criticism; policies on maternity, paternity, and parental leave; accommodation for breastfeeding and the location of lactation rooms; flexible work hours; and rights and expectations of employees on a reduced schedule; and Qualcomm's diversity and inclusion initiatives and ways in which managers can become involved in them.

- Video training for all Qualcomm employees on Qualcomm's commitment to diversity and inclusion; the Company's expectations that all employees will treat others with respect and support the Company's diversity and inclusion initiatives; policies prohibiting discrimination, harassment, bullying, and retaliation, including examples of the kinds of behaviors and statements that violate the policies; policies on maternity, paternity, and other leaves; the procedure for requesting flexible work arrangements, and accommodations to support breastfeeding; and Qualcomm's complaint procedures for reporting violations of its policies, including the toll-free hotline on which anonymous complaints may be lodged.

- Enhancements to the Company's complaint investigation process and protocols, including investigator training, review of investigations and assessment of their effectiveness, and a communications protocol, available to employees, for its investigators to use in processing all internal complaints.

- Posting for employee reference on the portal, at the beginning of a TRR cycle, notification of the TRR steps, timeline, rating guides, and deliverables each employee is entitled to receive. Employees will have an opportunity to submit written input in an online tool on their performance, as well as their qualifications for and interest in promotion, by a specified date in each TRR cycle.

- Enhancements to the calibration process, including group leadership by trained professionals who will facilitate a review of every employee's performance and readiness for advancement and look for bias, discrimination and proper

1-73

attribution of achievements and shortcomings.  Managers must take training and review timely employee submissions before they participate in the calibration process.

- A goal (not a quota) to promote women at the same rate the Company promotes men, consistent with their relative proportions in the appropriate groups from which promotions are made.  Qualcomm will not be required to select less qualified over more qualified employees for promotion.

- Auditing to ensure that employee performance reviews are completed and delivered to employees each year.

- An annual statistical analyses comparing the salaries, bonuses, stock awards, ratings and promotions associated with the TRR cycle.

- Periodic educational programs or conferences designed to assist women (and also open to men) in developing leadership skills.  (These programs will be open to interested women and men.)

- Equal opportunity for special project and team assignments that are valuable in developing leadership skills.

- All employees will have the opportunity to create a personal learning plan and select courses from the Learning Center Portal.

- Appointment of a Flexible Work Liaison in Human Resources to receive and work with employees and their managers on requests for and handling of flexible work schedules, reduced hours for reduced pay, maternity/parental leaves and other flexible scheduling issues that can accommodate parents with childcare responsibilities where feasible.

### 18.  What is a "Class Representative Service Award"?

In class actions, the Court may provide the Class Representatives a "Service Award" in recognition of the time, effort, and risks the Class Representatives took to prosecute the case.  In this case, Class Counsel will apply for service payments of **$50,000 each** for the Class Representatives.  If the Court awards less than these amounts, the difference will be distributed to Class Members and Collective Action Plaintiffs as part of the Settlement.  Any Court-awarded Service Award will be paid from the Settlement.

### 19.  Why does the California Labor Workforce Development Agency receive any money?

California's Labor Code Private Attorneys General Act of 2004 ("PAGA") allows private citizens to step into the state's shoes and recover civil penalties for violations of California's Labor Code.  Seventy-five percent (75%) of any such recovery must be given to the state.  In the present case, the Settlement provides that **$19,500** be paid to the state as its share of the penalties recovered in this case.  If the Court awards less than this amount, the difference will be distributed to Class Members and Collective Action Plaintiffs as part of the Settlement.

### 20.  How much will it cost to administer the Settlement?

It is estimated that it will cost approximately **$125,000** to fully administer the Settlement.  The amount it costs to administer the Settlement will not reduce the amount of money that will be distributed to the Class.  Any unused funds allocated for administrative expenses will be donated to the Association for Women in Science (www.awis.com) and the Center for WorkLife Law (http://worklifelaw.org/), which work to promote women and to combat gender discrimination in the workplace.  Any unused funds will be divided evenly between these organizations.

### 21.  How much will the attorneys be paid?

***Class Members and Collective Action Plaintiffs are not personally liable for any fees and costs***.  As is routine in class action cases, Class Counsel will request an award of attorneys' fees and expenses already incurred as well as the fees and expenses that will be incurred during the three-year term of the Settlement.  The attorneys' fees and expenses of Class Counsel, as awarded by the Court, will be paid only from the Settlement Fund and only if and after the Settlement has been approved by the Court.

These substantial fees and expenses have been incurred as Class Counsel have pursued these claims on behalf of Plaintiffs and the Class without receiving any compensation for their services or reimbursement of their out-of-pocket expenses. Class Counsel have undertaken significant risks in pursuing this matter. They have done so with the understanding that, if they obtained a recovery for the Class, their expenses would be reimbursed and they would receive fees from the fund recovered. If this Settlement is approved, Class Counsel will spend additional time and resources to monitor and advise upon the programmatic relief elements of the Settlement. Accordingly, Class Counsel will request that the Court award them **$5.85 million** for attorneys' fees, up to **$130,000** for expenses Class Counsel has incurred through the date of final approval, and **$20,000** to cover future costs Class Counsel will incur under the Settlement. Any funds allocated to Future Costs that are not used will be donated to Lesbians Who Tech (http://lesbianswhotech.org/), a non-profit organization.

| **22. How will the Settlement be directly distributed to Class Members and Collective Action Plaintiffs?** |
| --- |

Approximately **$13,005,500** of the Settlement will be distributed to all participating Class Members and Collective Action Plaintiffs according to a distribution formula that apportions Settlement shares among Class Members and Collective Action Plaintiffs. A detailed explanation of the distribution formula can be found within Section 25 of the Settlement Agreement. To summarize, the formula is based on:

- Whether you are/were employed by Qualcomm in California;
- Whether you worked part-time for any period of time during the relevant statutory period(s);
- When you were employed by Qualcomm;
- Whether you took pregnancy-related leave or care for a newborn during the relevant statutory period;
- The number of workweeks you worked during the applicable statutory period(s); and
- The job classification(s) in which you were employed during the relevant statutory period(s).

Based on the distribution formula and Qualcomm's records, the parties estimate that the gross amount you will receive, prior to applicable tax withholdings, is approximately **$<<award>>**. *The amount you receive could be higher or lower than this estimate.*

You do not need to do anything to receive this check. You will only receive this check if the Settlement is approved and any appeals are resolved in favor of the Settlement. Under the schedule contemplated by the parties, the *earliest* possible date that Settlement checks could be mailed is [**date**], and the date could very well be later than that. Please be patient.

| **23. How long do I have to cash my check?** |
| --- |

Any checks not cashed after one-hundred and eighty (180) days from the date of their issuance shall be void. After that, the funds from all uncashed checks shall be donated in equal amounts to the Association for Women in Science (www.awis.com) and the Center for WorkLife Law (http://worklifelaw.org/).

| **24. Will I have to pay taxes on my award?** |
| --- |

Fifty percent (50%) of your award will be reported as wages on an IRS Form W-2 with all appropriate taxes withheld. The remaining fifty percent (50%) of your award will be reported as non-wages on an IRS Form 1099. Class Counsel are not tax advisors and cannot give you advice on any tax matters. You are responsible for your own taxes. You should consult a tax professional for more information about your own specific situation.

| **25. How much money will I receive?** |
| --- |

Your share of the Settlement will be calculated as set out in Section 22.

As a [Nationwide Title VII Class Member/California Class Member/Collective Action Plaintiff], your individual recovery:

- Was determined by [Class Administrator to describe individual criteria/formula]; and

- As such, you should receive approximately _____ dollars and ____ cents ($_____) if the Settlement is approved and any appeals are resolved in favor of the Settlement.

Please note that this amount may change.

1-75

**RELEASE OF CLAIMS**

---

**26.  What claims are being released as part of the Settlement?**

---

Upon final approval of the Settlement by the Court, the Class Representatives, along with each Class Member and Collective Action Plaintiff who does not opt out, will fully release gender-based discrimination claims against Qualcomm set forth in the Lawsuit up to the date of the Court's final approval of the Settlement.  When claims are "released" it means that a person covered by the release cannot sue Qualcomm for these claims.

A brief summary of the claims being released is listed below.  Claims based on or arising out of events occurring <u>after</u> the date of the Order granting final approval of the Settlement will not be released.  The full terms of release are set forth in Section 12 of the Settlement Agreement.  You may obtain a copy of the Settlement Agreement by contacting Class Counsel, as listed in Section 14 of this Notice, or you can view the Settlement Agreement in hard copy in the Office of the Clerk, United States District Court for the Southern District of California, 221 West Broadway, San Diego, CA 92101.

**Nationwide & California Class Members, including Class Representatives,** who do not timely opt out will release all of the following claims upon the Effective Date of the Collective and Class Action Settlement Agreement:  Except as to such rights or claims as may be created by the Collective and Class Action Settlement Agreement, each member of the Rule 23 Class, who does not timely opt out pursuant to this Agreement, on her behalf and on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all claims asserted in the Complaint under applicable state, local, and federal law that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation.  The rights and claims released ("Released Claims") include:  (i) claims for unequal pay, and (ii) claims for disparate treatment and pattern and practice discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, and performance, bonus and stock ratings, and (iii) claims for disparate impact discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, and performance, bonus and stock ratings, and (iv) claims for discrimination based upon pregnancy, childbirth, or related medical condition, and (v) if the Rule 23 Class Member receives an award under Section 5.3.4 of the Collective and Class Action Settlement Agreement, then claims for violation of the California leave laws with respect to leaves to care for a biological, adopted, foster, or stepchild, or child of a registered domestic partner or child for whom the employee is in loco parentis are also waived.  The Released Claims arise under the following laws and their implementing regulations:  (i) Title VII of the Civil Rights Act of 1964, including but not limited to the Pregnancy Discrimination Law, 42 U.S.C. §§ 2000e, *et seq.*, and Executive Order 11246, and (ii) for those who work or worked in California:  the California Fair Employment and Housing Act, including but not limited to the California Family Rights Act and the California Pregnancy Disability Leave Law, Cal. Gov't Code § 12940, et seq., the California Equal Pay Act, Cal. Lab. Code § 1197.5, the California Fair Pay Act, Cal. Lab. Code §1197.5 (as of 2016), the California's Business & Professions Code § 17200, et seq., and the Private Attorneys General Act (PAGA), Cal. Lab. Code §§ 2698-2699; and (iii) for those who work or worked in the District of Columbia or in states outside of California, the state and local laws of similar import in their respective jurisdictions.  Only as to the claims released herein, each member of the Rule 23 Class waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, and does so understanding the significance of that waiver.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Those Rule 23 Class members who did not opt into the EPA collective action by cashing their settlement check do not release their potential federal EPA claims, 29 U.S.C. § 206(d).

**Collective Action Plaintiffs, including Named Class Representatives who cash their settlement checks**.  Upon the Effective Date, and except as to such rights or claims as may be created by the Collective and Class Action Settlement Agreement, each Collective Action Plaintiff, on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all gender-based discrimination claims involving alleged unequal, disparate, or unfair compensation under the Equal Pay Act, 29 U.S.C. § 206(d), that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation.  Collective Action Plaintiffs who cash their settlement checks shall be deemed to have accepted this Release.  Only as to the claims released herein, each Collective Action Plaintiff waives all rights and benefits afforded by

Section 1542 of the Civil Code of the State of California (quoted above), and does so understanding the significance of that waiver.

## THE SETTLEMENT'S FINAL APPROVAL HEARING

**27. When will the Court consider whether to finally approve the Settlement?**

The Court will hold a Fairness Hearing in Courtroom __ of the United States District Court for the Southern District of California located at 221 West Broadway, San Diego, CA 92101,  on **«date»**, 2016 at [time], to decide whether to finally approve the Settlement.  At that time, the Court will also decide whether to approve Class Counsel's request for attorneys' fees and reimbursement of costs, and the Class Representative Service Awards.  Class Counsel's motion for approval of attorneys' fees and reimbursement of costs must be filed by **«date»**.

**It is not necessary for you to appear at this hearing.**  If you have timely submitted an objection to the Settlement and a Notice of Intention to Appear, you may appear at the hearing to argue your objection to the Court.  Any attorney who will represent you must file a Notice of Appearance with the Court by [**date**] and serve the Notice of Appearance on Class Counsel (contact information in Section 14, above) and counsel for Qualcomm (Nancy L. Abell, Maria A. Audero and Jan E. Eakins, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071, and nancyabell@paulhastings.com) by [**date**].  You will be solely responsible for the fees and costs of your own attorney.

The hearing may be postponed without further notice to the Class.  If the Settlement is not approved, the Lawsuit will continue to be prepared for a class certification hearing, trial or other judicial resolution.

## FURTHER INFORMATION

**28. How do I get more information?**

This Notice provides a summary of the basic terms of the Settlement.  For the Settlement's complete terms and conditions, consult the Settlement Agreement and other documents in the case, which can be accessed (1) via the website for the United States District Court for the Southern District of California, (2) by visiting the clerk of the court located at 221 West Broadway, San Diego, CA 92101, or (3) by a written request to Class Counsel at the address listed in Section 14 above.

If you have more questions about this Notice or this Lawsuit, you can contact the Class Administrator (see contact information in Section 7) or Class Counsel (see contact information in Section 14).

**PLEASE DO NOT TELEPHONE OR OTHERWISE WRITE THE COURT, THE OFFICE OF THE CLERK, QUALCOMM, OR COUNSEL FOR QUALCOMM FOR INFORMATION REGARDING THIS SETTLEMENT.**

# Exhibit B

<<return address>>

«Name»
«Address»
«City»,«State»
«Zipcode»

**Court-Ordered Class Action Notice Inside**

**You could receive money and your rights could be affected by a Class Action and Collective Action Settlement in *Pan v. Qualcomm Incorporated***

# Exhibit C

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                      SOUTHERN DISTRICT OF CALIFORNIA
10
11

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA CAROLINA DEALY LAURA PAQUIN WEI SHI, , BLANCHE MATULICH, CONNIE JACOBSON, AND, on behalf of themselves and all others similarly situated and aggrieved, <br><br> Plaintiffs, <br><br> vs. <br><br> QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., <br><br> Defendants. | CASE NO. 3:16-CV-01885-JLS-DHB <br><br> **[PROPOSED] ORDER (1) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION / COLLECTIVE ACTION SETTLEMENT; (2) PROVISIONALLY CERTIFYING SETTLEMENT CLASSES AND COLLECTIVE ACTION; (3) APPOINTING CLASS COUNSEL; (4) APPOINTING PLAINTIFFS AS CLASS REPRESENTATIVES; (5) APPOINTING RUST CONSULTING AS CLAIMS ADMINISTRATOR; (6) APPROVING NOTICE AND DIRECTING DISTRIBUTION OF NOTICE; AND (7) SETTING A SCHEDULE FOR THE FINAL APPROVAL PROCESS** <br><br> Case Filed: <br> Judge:          Hon. Janis L. Sammartino <br> Hearing Date: _____, 2016 <br> Time:           _____ <br> Courtroom:   _____ |

26
27
28

Plaintiffs in the above-captioned action have alleged, on behalf of themselves, two classes of similarly situated women, and a collective of similarly situated women, that Defendants, Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Defendants"), have discriminated against female employees in the proposed Classes and Collective.

The Complaint makes claims for unequal pay and gender discrimination against women in compensation, salary increases or raises, job assignments, job code placements, evaluations and ratings, promotions and demotions, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, Equal Pay Act, 29 U.S.C. §206 *et seq.*, the California Fair Employment and Housing Act, as amended, Cal. Gov. Code §12940 *et seq.*, the California Equal Pay Act, as amended, Cal. Lab. Code §1197.5, the California Equal Pay Act, Cal. Lab § 1197.5 (West 2015) (amended 2015)), the California Business and Professions Code §17200, and the California Private Attorney General Act of 2004, Cal. Lab Code §2698, *et seq.*;

Plaintiffs also allege discrimination based on pregnancy, childbirth and related medical condition in violation of Title VII of the Civil Rights Act of 1964, including the Pregnancy Discrimination Act, as amended, 42 U.S.C. §2000e *et seq.*, and the California Fair Employment and Housing Act, as amended, including the Pregnancy Disability Leave Law and the California Family Rights Act, Cal. Gov. Code §12940 *et seq.*, and violation of California caregiver laws with respect to leaves for care of a child (including newborn biological, adopted, foster, and stepchild, and child for whom the woman serves *in loco parentis* in violation of the California Fair Employment and Housing Act, as amended, including the California Family Rights Act and the California Pregnancy Disability Leave Law, Cal. Gov. Code §12940 *et seq.*

Plaintiffs and Defendants ("the Parties") entered into extensive pre-suit negotiations for the purpose of settling their disputes. Those negotiations have

been successful.  The Parties have agreed to the entry of a proposed Collective and Class Action Settlement Agreement (the "Settlement") as a full settlement of those disputes and this legal action, subject to this Court's final approval.

On July 26, 2016 the parties filed that Settlement, along with this proposed Order.  A copy of the proposed Settlement is attached as Exhibit 1 to this Order. Notwithstanding Defendants' stipulation to certification of a Settlement Classes in this case and to the proposed Settlement, Defendants continue to deny all allegations of unlawful conduct alleged in the Complaint, and do not admit or concede that they have, in any manner, violated federal or California laws prohibiting discrimination, or committed any other unlawful action that would entitle Plaintiffs or any class to any recovery.

Plaintiffs have presented to the Court an unopposed Motion for an Order: (1) preliminarily approving the proposed Settlement Agreement and the class action and collective action settlement it embodies; (2) provisionally certifying the proposed Settlement Classes and Collective Action, defined below, and appointing Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson as Class Representatives; (3) appointing Plaintiffs' Counsel as Class Counsel; (4) appointing Rust Consulting as the Class Administrator; (5) approving the proposed Notice and directing distribution of the Notice and related documents; and (6) setting a schedule for final approval.  The Court has considered this Motion and the arguments of counsel at the hearing regarding the Motion held on <<date>>, 2016; and the pleadings and filings in this action.  Based on this consideration and in the interest of justice, the Court now FINDS, CONCLUDES, and ORDERS as follows:

# I.   **PRELIMINARY CERTIFICATION OF RULE 23 SETTLEMENT CLASSES AND COLLECTIVE ACTION SETTLEMENT**

A.     For settlement purposes only, the Parties have proposed preliminary certification of  the Settlement Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (e), for claims of unequal pay and gender discrimination against women in compensation, salary increases or raises, job assignments, job code placements, evaluations and ratings, promotions and demotions; discrimination based on pregnancy, childbirth and related medical conditions; and violation of California caregiver laws with respect to leaves for care of a newborn, child, adopted child, or foster child, arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended, *et seq.*, the California Fair Employment and Housing Act, as amended, Cal. Gov. Code §12940 *et seq.*, the California Equal Pay Act, as amended, Cal. Lab. Code §1197.5, and the California Business and Professions Code §17200, *et seq*.  The Settlement Classes are as follows:

1.     **California Class.**  "California Class" means women who were paid for working in California in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current or former subsidiaries and affiliated entities, at any time from December 4, 2011 through the date of the Order Granting Preliminary Approval.

2.     **Nationwide Class (Excluding California).**   "Nationwide Class (Excluding California)" means women employed in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current or former subsidiaries and affiliated entities in the United States (but not in the state of California) at any time from December 26, 2014 through the date of the Order Granting Preliminary Approval.

3.     **Covered Position.**  A "Covered Position" means either (a) a salaried exempt position in the job codes/job families listed in Appendix 1 below the level of "Vice President" (also referred to as "VP"); or (b) a

non-exempt position in the job codes/job families listed in Appendix 2 in the United States. "Covered Position" in (a) and (b) above does not include (i) individuals currently or formerly employed as interns, temporary workers or contract workers by Qualcomm or by any contractor of Qualcomm; (ii) individuals currently or formerly employed by or at Gimbal after it was no longer a wholly-owned subsidiary of Qualcomm; or (iii) individuals currently or formerly employed in the following job families in any exempt or non-exempt position: ADMSVC, AIRMNT, ANREL, ASSIST, BENFIT, BLDGSV, BUSCMP, CEO, CFO, CMPLNC, COMAFF, COMPEN, COPYWR, CTO, CTRADM, CTRATT, DATANL (QCS), DIVCNS, EECOMM, EMPREL, ENG, ENVHLT, ENVREG, ERSPEC, EVENT, EXEC, EXEMGT, FAC, FACEE, FACENG, FASUPP, FRAUD, GOVPRP, GVTAFF, HR, HRACRD, HRASST, HRIS, HRMS, HRREP, HRSPEC, INCDIV, INTERN, INVREL, IPLIC, LEARN, LGDATA, LGLADM, LGLANL, LGLAST, LGLCNS, LGSUPP, LIBRAR, ORGDEV, PATAGT, PATATT, PATENG, PAYANL, PAYROL, PILOT, PR, PRES, REGAFF, RELEST, SALES, SECY, STAFF, STKADM, SUBCON, TRAVEL, TRM, VPAGMG, and VPGMGR.

B.     In considering the unopposed Motion, the Court may not "go so far . . . as to judge the validity of [Plaintiffs'] claims. [It may only conduct such] inquiry into the substance of [the] case [as] may be necessary to ascertain satisfaction of" Rule 23. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). Having conducted that inquiry, the Court hereby FINDS and CONCLUDES that the Rule 23 Settlement Classes satisfy all of the requirements for certification under Rule 23(a), (b)(2), (b)(3), and (e):

1.   The Court finds that the Nationwide Class, consisting of nearly 3,320 individuals, is so numerous that joinder of all members is impracticable.  Accordingly, the requirement of Rule 23(a)(1) is satisfied.

2.   Based on the stipulation of the Parties and the materials provided with the unopposed Motion, the Court finds that there are questions of law or fact that are common to the Settlement Classes, and that these common issues predominate over any individualized questions of law or fact.  Such questions include whether Defendants systematically discriminated against Class Members based on their gender in pay, raises, job assignments, job code placements, evaluations and ratings, promotions, and demotions; discriminated against Class Members based on pregnancy, childbirth and related medical conditions; and denied, interfered with, or retaliated against Class Members who sought leaves for care of a child.  The injunctive and monetary relief in the Settlement resolves these common issues on a class-wide basis.  Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

3.   Based on the stipulation of the Parties and the materials provided with the unopposed Motion, the Court finds that the claims of Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson are typical of the claims of the members of the Settlement Classes and that they will fairly and adequately protect the interests of the Settlement Classes.  Their claims arise out of the same policies, practices, and concerns alleged on behalf of all Class Members.  Accordingly, the typicality requirement of Rule

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

1-86

23(a)(3) and the adequate representation requirement of Rule 23(a)(4) are satisfied.

4.   Based on the stipulation of the Parties and the materials provided with the unopposed Motion, the Court finds that Defendants have acted or refused to act on grounds that apply generally to the Settlement Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Settlement Classes, such that the requirements of Rule 23(b)(2) have been met.   Based on the stipulation of the Parties and the materials provided with the unopposed Motion, the central issues raised in Plaintiffs' Complaint are susceptible to common proof.   In addition, if Class Members were to litigate their discrimination claims individually, they would rely on the same proof of centralized compensation, raise, job assignment, job code placement, evaluation and rating, promotion, demotion, pregnancy/childbirth/medical condition, and leave policies, practices and decisions.   They would also seek a common damages remedy.   Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

5.   Based on the stipulation of the Parties and the materials provided with the unopposed Motion, resolving the common liability and damages issues in a single action would be more efficient than litigating approximately 3,320 individual claims in separate actions in separate courts.   In addition, litigation costs would likely exceed potential recovery if each Class Member litigated individually.   Accordingly, the superiority requirement of Rule 23(b)(3) is satisfied.

[PROPOSED] ORDER GRANTING PRELIMINARY
APPROVAL OF CLASS/COLLECTIVE ACTION
SETTLEMENT

1-87

6. The Court need not inquire, and therefore makes no finding regarding, whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the Parties propose that there be no such trial. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

C. Accordingly, and based on these findings and the stipulations that underlie them, the Court hereby CERTIFIES the Settlement Classes under Rule 23(a) and Rule 23(b)(2) and (b)(3) and appoints Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson as Class Representatives. Should this Court or any reviewing court on direct appeal and/or on writ of *certiorari* to the Supreme Court of the United States from a direct appeal to the U.S. Court of Appeals for the Ninth Circuit refuse to approve this Settlement or require modifications to this Settlement, the Settlement and the stipulations on which it is based shall be null and void, inadmissible and unusable in any future proceeding and shall not be considered a binding settlement agreement, unless Plaintiffs and Defendants each expressly and voluntarily approve in writing any such modification by this Court or the reviewing court.

D. For settlement purposes only, the Parties have proposed conditional (Step One) certification of a Collective Action, pursuant to 29 U.S. Code §216(b), for claims of pay discrimination under the Federal Equal Pay Act, 29 U.S.C. §§ 206 *et seq.* The Collective Action consists of:

All women employed in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities, in the United States at any time from December 4, 2012 through the date of the Order Granting Preliminary Approval who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend: "I have received and read the Class Notice in *Pan et al. v. Qualcomm Incorporated*. By

negotiating this check and accepting payment I (i) consent to join in this lawsuit and the Equal Pay Act collective action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit.  This Release shall become effective on the Effective Date."

E.      This Court conditionally certifies a collective action under the federal Equal Pay Act and permits notice to be sent to those who preliminarily appeared to be similarly situated for settlement purposes to the named Plaintiffs, Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and/or Connie Jacobson, so that they might determine whether to opt in to this litigation as Plaintiffs.  These individuals would be bound by any settlement found by the Court to be fair and reasonable and finally approved.  *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946) (district court can authorize stipulated settlement under 29 U.S.C. §216 provided resolution has been "submit[ted] to judicial scrutiny").  Accordingly, the Court hereby provisionally CERTIFIES the Collective Action.  If the Settlement is approved, a collective action comprising all women who cash settlement checks in accordance with the process described in the Settlement shall be granted Step 2 certification.

## II.    **APPOINTMENT OF CLASS COUNSEL**

The Court finds that David Sanford, Felicia Medina, Ed Chapin, Jill Sanford, Xinying Valerian, and Danielle Fuschetti of Sanford Heisler, LLP have extensive experience in prosecuting employment discrimination class actions.    Sanford Heisler submitted court citations and declarations noting its involvement in several class and collective actions.  The Firm has achieved outstanding results and been

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

1  repeatedly recognized for its zealous and high caliber advocacy.[1]   The Court

2  appoints this firm as Class Counsel.

3  **III.    PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

4        A.    The Court has reviewed the terms of the proposed Settlement

5  Agreement attached as Exhibit 1, including specifically the injunctive and monetary

6  relief provisions.  The Court also reviewed the Motion papers and declarations of

7  counsel, which describe Class Counsel's legal and factual investigation, and the

8  settlement process.  Based on review of those papers, the Court concludes that the

9  Settlement is the result of extensive, arm's-length negotiations among the Parties

10  after Class Counsel investigated the class claims and became familiar with the

11  strengths and weaknesses of the case.  The Court finds that the settlement process

12  was non-collusive.  Based on the Court's review of papers submitted in support of

13  preliminary approval, the Court concludes that the Settlement Agreement has no

14  obvious defects and appears to be, preliminarily, within the range of a fair and

15  reasonable settlement of the case such that notice to the Settlement Classes is

16  appropriate.

17        B.    It is therefore ORDERED that:

18              1.    The Settlement Agreement and the class and collective action

19                  settlement  it  embodies  is  hereby  PRELIMINARILY

20                  APPROVED.   Final approval of the Settlement is subject to

21

22

---

23  [1] *See Zolkos v. Scriptfleet, Inc.*, 2014 U.S. Dist. LEXIS 172519, at *11 (N.D. Ill.

24  2014), the court appointed Sanford Heisler, among other firms, as Class Counsel
and preliminarily approved a class wage and hour settlement.  The Court noted that

25  Sanford Heisler was "very experienced in complex class and collective litigation."
*See also Velez*, 2010 U.S. Dist. LEXIS 125945 at *28 ("Here, Class Counsel,

26  Sanford Wittels & Heisler LLP [Sanford Heisler's former name], has just the sort of
established record contemplated by the Rules.");. *Bellifemine*, 2010 U.S. Dist.

27  LEXIS 79679, at *4 (recognizing Sanford Heisler as having "an established record

28  of competent and successful prosecution of large . . . class actions").

consideration of any objections of members of the Settlement Classes to the proposed Settlement.

2.      Pending final determination of the fairness of the Settlement, all further litigation of this action not related to the settlement approval process is hereby STAYED.

3.      Pursuant to CAFA 28 U.S.C. § 1715, Defendants shall cause to be served upon the appropriate State Official(s) a notice of the proposed Settlement in compliance with the requirements of CAFA, 28 U.S.C. §1715.

## IV.    CONFIDENTIALITY AND EFFECT OF TERMINATION

A.      If the Settlement is terminated as provided in the Settlement Agreement, then, in such event, the Settlement Agreement, including any amendment(s) thereof, and this Order, shall be deemed null and void *ab initio*, of no further force or effect, and without prejudice to any party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity, as set forth in the Settlement Agreement, and each party shall be restored to his, her, or its respective position as of the date and time immediately prior to the execution of the Settlement Agreement.

B.      All negotiations and information and materials pertaining in any way to the Settlement Agreement or the settlement of this Lawsuit will be inadmissible and remain confidential to the fullest extent permitted by law, as set forth in the Settlement Agreement.

## V.    OTHER CASES ENJOINED

A.      The Court orders that, pending Final Approval, each member of the Settlement Classes and Collective Action is preliminarily enjoined from commencing, prosecuting or maintaining in any court other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of this Court in connection with this

Settlement Agreement.

## VI.   APPROVAL OF THE NOTICE PLAN AND DISTRIBUTION OF NOTICE

A.   The Parties have submitted for this Court's approval a proposed Notice of Class Action Settlement.   The Court has carefully reviewed that Notice, the related provisions in the proposed Settlement Agreement, and the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval.   The Court FINDS and CONCLUDES as follows:

1.   The proposed Notice allows Class Members a full and fair opportunity to consider the proposed Settlement and Class Counsel's motion for attorneys' fees and costs and service awards, which will be filed within thirty (30) days of the deadline for Class Members to opt out or object to the Settlement.

2.   The proposed plan for distributing the Notice is a reasonable method to inform Class Members of the terms of the Settlement, how to obtain additional information about the Settlement, how to object to or comment on the Settlement or motion for attorney's fees and costs, and how to opt out of the monetary relief provisions of the Settlement by filing an Opt-Out Statement (and how to rescind a decision to opt-out).   Class Members are included in the Rule 23 Class Settlement unless they timely mail a written Out-Opt Statement to the Class Administrator.

3.   The Parties have designated Rust Consulting as the Class Administrator.   Under the proposed Settlement Agreement, after receiving information about the Class Members from Defendants, the Class Administrator will run the list of Class

Case No. 3:16-cv-01885-JLS-DHB                    -11-                [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

1-92

Members and Collective Action Plaintiffs through the United States Postal Service's National Change of Address database before mailing the Notice via first class mail and skip-tracing any returned Notices.

B.     The Court FINDS and CONCLUDES that the proposed plan for distributing the Notice satisfies the notice requirements of Rule 23, and satisfies all other legal and due process requirements.  The Court finds that in the present case, mailed notice via first class mail is the best practicable method of notice that is reasonably calculated to apprise Settlement Class Members of the Settlement Agreement and their rights.  The Court also finds that the proposed Class Notice is sufficient to inform Class Members of the terms of the Settlement, their rights under the Settlement, including, but not limited to, their right to opt out of the Settlement, object to the Settlement and/or participate in the Settlement, and the processes for doing so; and the date and location of the final approval hearing.

C.     Accordingly, the Court hereby ORDERS as follows:

1.     The form and content of the proposed Notice is approved;

2.     The form and content of the Opt-Out Statement is approved;

3.     The manner of distributing the Notice and updating Class Member addresses through the National Change of Address database and skip-tracing any returned notices, is approved;

4.     Rust Consulting is approved as the Class Administrator;

5.     No later than fifteen (15) business days after the date of this Order, Defendants shall provide to the Class Administrator a list of all Collective Action Plaintiffs and Settlement Class Members, including full name (maiden and married names, where applicable), last known home address, email (if known) and telephone numbers(s), in a format reasonably acceptable to the Class Administrator, which shall distribute the Notice to

[PROPOSED] ORDER GRANTING PRELIMINARY
APPROVAL OF CLASS/COLLECTIVE ACTION
SETTLEMENT

1    Class Members within fifteen (15) business days of receipt of

2    the Class Member information, as set forth in the Settlement

3    Agreement attached as Exhibit 1; and

4    6.    The Parties are further directed to carry out and comply with the

5    terms of the Settlement Agreement, particularly with respect to

6    providing the Class Administrator the information and data

7    necessary to carry out its duties.

## VII.   PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A.    Motion for Final Approval and Final Approval Hearing

The Court hereby schedules a hearing ("the Final Approval Hearing") for <<month/day>>, 2016, at <<time>> to determine whether to grant final certification of the Settlement Classes, to consider any objections that may be filed and to determine whether the Settlement is fair, reasonable and adequate and should be finally approved, and to determine the amount of attorneys' fees, costs, and expenses to be paid to Class Counsel.  Class Counsel shall file a Motion for Final Approval of the Settlement Agreement no later than thirty (30) days prior to the deadline to opt out of or object to the Class Settlement.  Class Counsel may file a reply to any objection no later than five (5) days prior to the Final Fairness Hearing.

Any Class Member may appear at the final approval hearing in person, or by his or her own attorney, and show cause why the Court should not approve the Settlement, or to object to the motion for the award of the Class Representative Service Awards and Class Counsel's Fees and Costs, but the Class Member, and any attorney representing the Class Member, must file a Notice of Intention to Appear with the Court and serve the same on Class Counsel and counsel for Defendants, no later than sixty (60) days after the mailing of the Class Notice.

The Court reserves the right to continue the date of the final approval hearing without further notice to Class Members.

### B.    Deadline for Motion for Attorneys' Fees and Costs and Service

**Awards**

All memoranda, affidavits, declarations and other evidence in support of the request for Class Counsel's costs and attorneys' fees and the Class Representatives' request for service awards shall be filed at least thirty (30) days in advance of the deadline to opt out or object to the Settlement.   Class Counsel may file a supplemental memorandum in support of the motion no later than five (5) days before the Final Approval Hearing.

## C.   Deadline for Class Member to Opt Out or File Objections

Any opt-outs from the damages portion of the Settlement ("Opt-Out Statements"), rescissions of exclusion statements, or objections to the Settlement, proposed Settlement Agreement, and/or motion for attorneys' fees and costs and for service awards must be postmarked no later than sixty (60) from the date the Notice is mailed, pursuant to the procedures set forth in the Settlement Agreement and Class Notice.  Class Counsel shall file the objections with the Clerk of Court within three (3) days after the end of the Opt-Out Period.

IT IS SO ORDERED.

DATED: _____          HON. JANIS L. SAMMARTINO
                                     _____
                                     U.S. DISTRICT COURT JUDGE

# Exhibit 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC. ,<br><br>Defendants. | Case No.:  3:16-cv-01885-JLS-DHB<br>CLASS ACTION<br><br>**DECLARATION OF DANDAN PAN** |

I, DANDAN PAN, hereby declare as follows:

1.     I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.     I am a Class Representative in this lawsuit. I worked as a Director of Engineering Operations, Director of Project Management, Director of Program Management, and Program Director in the San Diego, California Office of Qualcomm Incorporated.  ("Qualcomm" or the "Company), a major worldwide technology company during the applicable class period.

3.     I understand the responsibilities of a Class Representative and I have fulfilled, and continued to fulfill, my duties to the Classes.  I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.     I was not promised any amount of money to serve as a Class Representative, or in connection with my approval of this settlement.

5.     Since I became involved, I assisted Sanford Heisler ("SH" or "Class Counsel") with their investigation of the class claims of gender discrimination by sharing

with Class Counsel my experiences at Qualcomm and the experiences of other women at the Company. SH consulted with me throughout the case on a variety of issues, including but not limited to, Qualcomm's common employment policies and practices and Plaintiffs' and Defendant's statistical analyses.  I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since January 2016.

6.      I reviewed and, when necessary, verified drafts of key documents, including without limitation, my EEOC charge, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, and the settlement documents.

7.      My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Class, are detailed below.

**Decision to Participate As a Class Representative in this Lawsuit**

8.      In 1995, I joined Qualcomm as a Market Analyst. I was promoted to Program Director in 2003, demoted in title to Staff Program Manager in 2004, and reinstated to the Director level in 2006 with the title Director of Program Management. I was laid off on November 20, 2015.

9.      The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation. My female colleagues and I often discussed how depressed we felt about not being promoted while seeing our male colleagues promoted over us, and I noticed that many women were leaving Qualcomm as a result of the discrimination. I wanted to make Qualcomm a better place for women in the Science Technology Engineering and Mathematics fields ("STEM"). I was offered large severance package that I had to reject if I were to pursue litigation. I had to weigh economic stability against my desire to fight what I believed to be a systemic wrong against women at Qualcomm. I worried that participating in this lawsuit would damage my prospects of finding employment in the future after being terminated by Qualcomm. I

2-2

supported my husband, my sons, and my mother with my salary and did not know whether I would be able to find a similar source of income if this lawsuit damaged my chances of finding future employment.

10.     I decided to join the lawsuit and serve as a Class Representative because I wanted to improve the terms and conditions of employment for women at Qualcomm. After several meetings and many phone calls with my lawyers, and much personal deliberation, I determined that a class action case was the best way to achieve equal treatment for women all at the Company.

<u>**Services in Support of the Class**</u>

11.     I understood that, as a Class Representative, I had a duty to ensure that the interests of all Class Members were protected and that all were treated fairly. I understood I could not put my own interest before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

12.     I believe I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with Sanford Heisler to monitor and contribute to this case throughout.

13.     I have spent approximately **<u>412</u>** hours performing actions that benefitted the Classes at large, including participating in the mediations and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.   A summary of my activities is as follows:

   a.  Shortly after Qualcomm gave me notice of my layoff, I emailed, called, and met with representatives of the Company's Human Resources department in order to understand how I was selected to be laid off and why I had not been promoted in the previous 12 years. (10 hours).

   b.  On September 22, 2015, I carried out a full intake interview with Class Counsel. During this interview, I provided Class Counsel with details about Qualcomm's structure and the discrimination I had experienced and

observed. I had several follow-up calls with SH after my initial interview, and exchanged many emails with my attorneys. (10 hours).

c. On September 31, 2015 and in October 2015, I met with Class Counsel in San Diego, California. At these meetings, we discussed my experience at Qualcomm and explored options for potential claims. I described the discrimination I had experienced over the last few years and explained that I knew other women who seemed to have had similar experiences. (6 hours).

d. Starting in September 2015, I spent a considerable amount of time throughout the entirety of the case writing detailed notes of what I experienced during my last 20 years at Qualcomm. (50+ hours).

e. On October 6, 2015, I retained SH.  Around that time, I spent a substantial amount of time requesting information from Qualcomm regarding my tasks and performance at the Company. This required calling, emailing, and meeting with Qualcomm's Human Resources and Legal Services departments in order to receive the appropriate documents. (20 hours).

f. Throughout the month of October 2015, I spent considerable amounts of time reviewing and contributing to my EEOC charge. In order to do so, I meticulously reviewed approximately 150 pages of documents relating to my performance in order to ensure that the content of my EEOC charge was accurate. I also spent substantial amounts of time reviewing documents relating to my experience prior to working at Qualcomm in order to provide Class Counsel with information relating to my employment qualifications. This process involved numerous phone calls and email exchanges with Class Counsel. (40 hours).

g. From September to November 2015, I spent several hours investigating the quantitative measures of systemic gender issues at the Company.  I also spent significant amounts of time reviewing Qualcomm's company policies. (60 hours).

2-4

h. Between November 2015 and June 2016, I met with approximately 20 individual female Qualcomm employees to discuss their experiences with discrimination in the Company and as women in STEM fields. Each of these meetings lasted from two to three hours. For several of these meetings, I also wrote summaries to assist with Class Counsel's ongoing investigation. (50 hours).

i. On November 23, 2015, I travelled to San Francisco from San Diego for a meeting with my attorneys, during which we discussed the Company's pay and promotion policies. (14 hours).

j. On February 1, 2016, I participated in a conference call with Class Counsel and the other Class Representatives. During the call, we reviewed the timeline of the case in significant detail and prepared for the upcoming mediation. (1 hour).

k. In mid-April 2016, after Class Council received employment data from Qualcomm, I participated in a series of phone calls with my attorneys, during which I helped them decode the data. (6 hours).

l. On April 24, 2016, I reviewed the Mediation Statement produced by Class Counsel in order to ensure that it accurately reflected both the structure of the Company and the class claims. (3 hours).

m. On April 26, 2016, I met with Class Counsel to prepare for the upcoming mediation. I met with Class Counsel and the other Class Representatives in San Francisco to prepare for mediation. (2 hours).

n. On April 27, 2016, I attended a class mediation in San Francisco. (8 hours).

o. In April 2016, I spent approximately 10 hours traveling between San Diego and San Francisco for mediation. (10 hours).

p. I spent a substantial amount of time preparing for this mediation. This involved planning my travel from San Diego to San Francisco and reviewing

2-5

Plaintiffs' Mediation Statement, my EEOC charge, and documents produced by Defendants that related to me and the Classes' claims. (40 hours).

q. I reviewed Defendants' Mediation Statement and my performance reviews to identify any discrepancies. I communicated my analysis to Class Counsel. (15 hours).

r. Throughout May 2016, I reviewed multiple drafts of Plaintiffs' programmatic relief proposal in order to ensure that the proposed agreement addressed the aspects of discrimination that the class experienced. This required me to meticulously read and provide written comments on many drafts of the proposal. (6 hours).

s. On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analysis conducted by Defendants and Class Counsel respectively. (4 hours).

t. On June 14, 2016, I received a copy of Qualcomm's proposal for programmatic relief and was asked to review it by Class Counsel. This required me to meticulously review the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems in what Qualcomm proposed. (6 hours).

u. On June 20, 2016, I flew from San Diego to San Francisco to participate in a pre-mediation meeting with Class Counsel and the other Class Representatives. In this meeting we discussed our expectations for mediation and planned our negotiation strategies. (15 hours).

v. On June 21, 2016, I participated in an all-day mediation that began at 9:30 a.m. and lasted until around midnight. The mediation involved a substantial amount of dialogue between me, Class Counsel, and the Mediator. (14 hours).

2-6

w. In June 2016, I spent approximately 10 hours travelling between San Diego and San Francisco for mediation. (10 hours).

x. Since the mediation, I had several phone calls with Class Counsel regarding the status of the settlement, terms of the agreement, the press release, and summarizing time spent on the case. (12 hours).

y. Throughout this entire process, I have incurred significant out of pocket expenses, including approximately $1,000 in travel expenses.

### Duties to the Class Going Forward

14.    If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

15.    The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping to resolve any disputes regarding the implementation of the programmatic relief.

16.    I will be spending several hours going forward during the settlement approval process. I will likely spend a significant amount of time discussing the settlement with class members during the claims process.

### Risks of Participating in This Settlement

17.    I was terminated from Qualcomm in November, 2015. Given the close-knit nature of many technology companies, I took substantial risks in my own career by stepping forward in this lawsuit. I took the risk that other companies would not hire me or that clients might not want to work with me because I participated in this action.

18.    I am still in the process of seeking employment at other companies for Director and Senior Director positions. There are very few, if any, positions that pay anything close to my compensation at Qualcomm. The positions I have found are highly competitive and are mainly outside of the telecommunications discipline. I believe that my involvement in this lawsuit will make it even more difficult to compete for this small pool of jobs. In order to find a similar job with similar pay, I would likely have to leave San Diego, which would be a significant burden on my family.

2-7

19.     These risks affect not only me, but also my family and dependents. My parents-in-law live in San Diego and are disabled and depend on our care and assistance.

### Approval of the Settlement

20.     As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendant. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the Classes.

21.     I believe that the proposed programmatic relief is in the best interest of women working at Qualcomm now and in the future. A feature of the agreement I find particularly encouraging is that women will no longer need to be "sponsored" for promotion. Instead, all minimally eligible employees will be automatically considered for promotion annually. Additionally, group leaders will be informed of any employee who has not been promoted in over three years. These terms give me hope that women at Qualcomm will have a fair shot at being promoted.

22.     My attorneys at SH consulted me about the settlement negotiations with Defendant as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with the Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable.

23.     I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

2-8

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 25th day of July, 2016 in San Diego, CA.

_____
Dandan Pan

2-9

# Exhibit 3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED & its subsidiaries, & QUALCOMM TECHNOLOGIES & its subsidiaries,<br><br>Defendants. | Case No.:  3:16-cv-01885-JLS-DHB<br><br>**DECLARATION OF CARRIE HALUZA** |

I, CARRIE HALUZA, hereby declare as follows:

1.     I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.     I am a Class Representative in this lawsuit.  I worked as a Director of Engineering in the San Diego, California Office of Qualcomm Inc.  ("Qualcomm" or the "Company"), a major worldwide technology company, during the applicable class period.

3.     I understand the responsibilities of a Class Representative, and I have fulfilled, and continue to fulfill, my duties to the Classes.  I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.     I was not promised any amount of money to serve as a Class Representative or in connection with my approval of this settlement.

5.     Since I became involved, I assisted Sanford Heisler, LLP ("SH" or "Class Counsel") with their investigation of the class claims of gender discrimination by sharing with Class Counsel my experiences at Qualcomm and the experiences of other women at

the Company.   SH consulted with me throughout the case on a variety of issues, including but not limited to, Qualcomm's common employment policies and practices, and Plaintiffs' and Defendants' statistical analyses.   I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since January 2016.

6.     I reviewed and, when necessary, verified drafts of key documents, including, without limitation, my EEOC charge, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, supplemental submissions to the mediations, and the settlement documents.

7.     My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Classes are detailed below.

### Decision to Participate As a Class Representative in this Lawsuit

8.     I was initially hired at Qualcomm's San Diego office in July 1998 as a Senior Engineer in the Corporate System Engineering department.   I was then promoted to Senior Engineer in February 1999, Staff Engineer in October 2000, Senior Staff in October 2002, and Director of Engineering in October 2007.

9.     The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation.   Given my current employment at the Company, I was extremely worried that my participation in the case would result in my termination. I am currently the only source of income for my family, and I was worried that my involvement as a Class Representative would put the financial stability of my family at risk.

10.     I decided to join the lawsuit and serve as a Class Representative because I wanted to improve the terms and conditions of employment for women at Qualcomm. In my nine years as a director, I have become highly aware of the disparate treatment women experience throughout the Company. Through my time working with individuals

at all levels of the Company, I noticed that other women, like me, were being denied promotions as well as increases in stocks and bonuses, despite their exemplary performance. After several meetings and many phone calls with my lawyers and much personal deliberation, I determined that a class action case was the best way to achieve equal treatment for women at the Company.

### Services in Support of the Classes

11.    I understood that, as a Class Representative, I had a duty to ensure that the interests of all Class Members were protected, and that all were treated fairly. I understood I could not put my own interests before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

12.    I believe I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with Sanford Heisler to monitor and contribute to this case throughout.

13.    Since I first retained SH, I have spent well over **489** hours performing actions that benefitted the Classes, including participating in mediations and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.  A summary of my activities is as follows:

   a.  Since July 2015, when many of the layoffs began at Qualcomm, numerous women have come to me for advice and mentorship. Many of our discussions focused on issues they were facing as women in engineering careers, as well as how I could help them navigate what I believed to be a biased environment. To this day, I continue to meet with women throughout the Company every month and serve as a resource when they experience gender-based discrimination. (87 hours).

   b.  In early November 2015, I carried out a full initial investigative interview with Class Counsel and shared my knowledge of Qualcomm's policies and practices, which was of particular use at this stage of the lawsuit. I had several follow-up calls with SH after my initial interview and exchanged

many emails with my attorneys. Overall, at this stage of the lawsuit, I spent hours assisting with the investigation of the class action and exchanged multiple phone calls and emails with SH. Throughout these communications, I provided SH with detailed information on the discrimination I and others were experiencing, and on Qualcomm's structure, practices, and procedures that were implicated in the discrimination. (93 hours).

c.  I spent a significant amount of time deciding whether or not I should participate as a Class Representative, given the substantial risk I would be taking as a current employee. This involved extensive contemplation and conversations. (56 hours).

d.  On January 22, 2016, I visited the San Diego Office of SH in order to discuss joining the case. Because I was working at Qualcomm at the time, this required me to take a vacation day and to make accommodations with Qualcomm. (8 hours).

e.  On January 23, 2016, I retained SH.  Around that time, I spent several days collecting 18 years' worth of documents relating to the tasks I performed at Qualcomm, as well as my overall performance at the Company. I reviewed and communicated with Class Counsel regarding these documents and other company policies related to this case. (16 hours).

f.  I took notes on my ongoing interactions with Qualcomm management to provide summaries of the discrimination I experienced and observed to Class Counsel. (12 hours).

g.  On February 1, 2016, I participated in a conference call with Class Counsel and the Class Representatives that lasted many hours. During the call, we reviewed the timeline of the case in significant detail and prepared for the upcoming mediation. (4 hours).

h.  On February 6, 2016, I visited the SH San Diego office in order to discuss my claims, my involvement with the case going forward, and my current

experiences as a Qualcomm employee. I also provided clarification on a number of documents I sent to Class Counsel. (5 hours).

i.  On February 20, 2016, I visited the San Diego office once again in order to provide additional documents and to discuss the current status of the case at that point. (5 hours).

j.  Throughout February 2016, I had almost weekly phone calls with Class Counsel, during which I answered questions regarding Qualcomm's structure and discussed my responsibilities as a Class Representative. (43 hours).

k.  In the month of March 2016, I spent considerable amounts of time reviewing and contributing to my EEOC charge. In order to do so, I reviewed Qualcomm's documents relating to my performance in order to ensure that the content of my EEOC charge was accurate. I also spent substantial amounts of time reviewing documents relating to my experience prior to working at Qualcomm in order to provide Class Counsel with information relating to my employment qualifications. This process involved numerous phone calls and email exchanges with Class Counsel. To make up for this time, I routinely worked through lunches and after hours in order to ensure that I made up for lost time. (42 hours).

l.  In mid-April 2016, after Class Council received employment data from Qualcomm, I participated in a series of phone calls with my attorneys. During these calls, I explained the organizational structure of Qualcomm, as well as its job codes and job responsibilities, and provided Class Counsel with information to help them analyze the class. (5 hours).

m. On April 24, 2016, I spent considerable amounts of time reviewing Plaintiffs' Mediation Statement in order to ensure that it accurately reflected both the structure of the Company and the class claims. (2 hours).

n. Around April 27, 2016, I spent hours preparing for the mediation. This involved reviewing Plaintiffs' Mediation Statement, my EEOC charge, and documents produced by Defendants that related to me and the Classes. Additionally, I spent time planning my travel from San Diego to San Francisco. In order to make the trip, I was required to use an additional three days of my vacation time at Qualcomm and spend considerable amounts of time making up for the days I missed at work. This also involved significant out of pocket expenses on my behalf. (36 hours).

o. On April 26, 2016, I met with Class Counsel and the Class Representatives in San Francisco, California in order to prepare for the upcoming mediation. (4 hours).

p. On April 27, 2016, I participated in a full day of mediation with Class Counsel, the Class Representatives, Defendants, and our Mediator in San Francisco, California. (8 hours).

q. After the mediation, I reviewed Defendants' Mediation Statement and my performance reviews again to identify any discrepancies. I communicated my analysis to Class Counsel. (10 hours).

r. In May 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. I provided detailed feedback based on my and other women's experience and proposed solutions to these issues. (6 hours).

s. On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analyses conducted by Defendants and Class Counsel respectively. On the call and through follow-up communications, I provided Class Counsel with additional information and clarifications concerning Qualcomm's organizational structure. (4 hours).

t. In June 2016, I reviewed and provided feedback on Defendants' proposal for programmatic relief. This required me to analyze the proposal in order to

identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. I then communicated my comments on Qualcomm's proposal for programmatic relief to Class Counsel. (24 hours).

u.  On June 20, 2016, I participated in a pre-mediation meeting with Class Counsel and the Class Representatives. During this meeting, we discussed the class settlement in extensive detail, as well as how we should prepare for the following mediation. (3 hours).

v.  On June 21, 2016, I participated in an all-day mediation with Class Counsel, the Class Representatives, and Defendants. The mediation itself involved a substantial amount of dialogue between me, Class Counsel, and the Mediator. Because the mediation was during the week, I was forced to use three vacation days and spend additional time making up for the days I was away from work. (14 hours).

w.  Since the mediation, I had several phone calls with Class Counsel regarding the current status of the settlement. (2 hours).

x.  Throughout this entire process, I have incurred significant out of pocket expenses, including approximately $4,360 in travel expenses and used $5,350 worth of vacation days.

**Duties to the Classes Going Forward**

14.     If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

15.     The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping to resolve any disputes regarding the implementation of the programmatic relief.

16.     I anticipate spending many hours going forward during the settlement approval process and programmatic relief process.

**Risks of Participating in This Settlement**

17.     Given the close-knit nature of many technology companies, I took substantial risks in my own career by stepping forward in this lawsuit.  I took the risk that other companies would not hire me or that clients might not want to work with me because I participated in this action.

18.     As a current employee, I took substantial risks by participating in the lawsuit. Because the outcome of the case was unclear at its initial stages, I was extremely concerned that the case itself would put my career at risk.

19.     As the sole income earner for my family, participating in this case put my, as well as my dependents', financial stability at risk.

**Approval of the Settlement**

20.     As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendants. My approval of this settlement is based on my view, in light of the record and the risks, that it is in the best interest of the Classes.

21.     My attorneys at SH consulted me about the settlement negotiations with Defendants as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable.  I was particularly pleased with the programmatic relief portion of the settlement. These changes will result in significant benefits for women throughout Qualcomm.  For example, Qualcomm's willingness to analyze the pay, stock, and bonus given to each employee compared to their performance ratings is particularly encouraging, given the fact that I and many other women have been denied appropriate compensation despite our excellent performance.

22.     I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

3-8

1    I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.

3

4

5    Executed on this 24th day of July, 2016 in _Poway_ , _CA_

6

7                                      _Carrie Haluza_

8                                      Carrie Haluza

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated, | Case No.:  3:16-cv-01885-JLS-DHB **DECLARATION OF CAROLINA DEALY** |

Plaintiffs,

v.

QUALCOMM INCORPORATED & QUALCOMM TECHNOLOGIES INC.,

Defendants.

I, CAROLINA DEALY, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.      I am a Class Representative in this lawsuit. I worked as a Principal Engineer in the San Diego, California Office of Qualcomm Inc. ("Qualcomm" or the "Company"), a major worldwide technology company during the applicable class period.

3.      I understand the responsibilities of a Class Representative, and I have fulfilled, and continued to fulfill, my duties to the Classes.  I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.      I was not promised any amount of money to serve as a Class Representative or in connection with my approval of this settlement.

5.      Since I became involved, I assisted Sanford Heisler, LLP ("SH" or "Class Counsel") with their investigation of the class claims of gender discrimination by sharing with Class Counsel my experiences at Qualcomm and the experiences of other women at

the Company. SH consulted with me throughout the case on a variety of issues, including but not limited to, Qualcomm's common employment policies and practices and Plaintiffs' and Defendants' statistical analyses.  I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since March 2016.

6.     I reviewed and, when necessary, verified drafts of key documents, including without limitation, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, and the settlement documents and briefing after the mediation was successful.

7.     My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Classes are detailed below.

## Decision to Participate As a Class Representative in this Lawsuit

8.     In May 1997, I started working as an engineer with the Global Star Systems Test Organization.  Shortly thereafter, in 1998, I was promoted to Staff Engineer, and later, I switched divisions and went to Qualcomm CDMA Technologies (QCT), where I remained for the rest of my time at Qualcomm.  I was promoted to Principal Engineer in the fall of 2013.

9.     While at Qualcomm, I experienced and observed substantial discrimination against women and particularly mothers. As a hard working mother, I felt I was mommy-tracked for years.

10.     The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation.  I worried that participating in this lawsuit would damage my prospects of finding employment in the future.  Furthermore, I knew that participating would require a substantial investment of time and energy on my part, all with an uncertain outcome.

11.     Despite these concerns, I decided to join the lawsuit and serve as a Class Representative because I wanted to improve the terms and conditions of employment at Qualcomm that I believed we faced.  When I joined, I considered not only myself but also the fate of the next generation of women who would join Qualcomm and the tech industry.  I knew I would not be doing this for my own compensation but for my daughter, my niece, and other young women with the drive to succeed in Science, Technology, Engineering and Mathematics ("STEM").  A class action case was the best way to achieve equal treatment for all women at the Company and in the industry more broadly.

<u>**Services in Support of the Classes**</u>

12.     I understood that, as a Class Representative, I had a duty to ensure that the interests of all Class Members were protected and that all were treated fairly. I understood I could not put my own interest before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

13.     I believe I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with SH to monitor and contribute to this case throughout.

14.     Since I first retained SH, I have spent approximately **68** hours performing actions that benefitted the class at large, including participating in mediation and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.  A summary of my activities is as follows:

> a. In early March 2016, I carried out a full initial investigative interview with Class Counsel and shared my knowledge of Qualcomm's policies and practices, which was of particular use at this stage of the lawsuit. I had several follow-up calls throughout April 2016 with SH after my initial interview and exchanged many emails with my attorneys. Overall, at this stage of the lawsuit, I spent several hours assisting with the investigation of

the class action and exchanged multiple phone calls and emails with SH. (6 hours).

b. On April 16, 2016, I retained SH.  Around that time, I spent several days gathering 18 years' worth of documents relating to the tasks I performed at Qualcomm and my overall performance at the Company.  Additionally, I spent several hours reviewing these documents and communicating their contents to Class Counsel. (24 hours).

c. In mid-April 2016, after Class Counsel received employment data from Qualcomm, I participated in a series of phone calls with my attorneys, during which I explained the organizational structure of Qualcomm and its job codes and job responsibilities. (2 hours).

d. On April 24, 2016, I spent considerable amounts of time reviewing Plaintiffs' Mediation Statement in order to ensure that it accurately reflected both the structure of the Company and the class claims. (4 hours).

e. I spent hours preparing for the April 27, 2016 mediation.  This involved planning my travel from San Diego to San Francisco, which required my husband to modify his work schedule to take care of my daughter before and after school hours.  Additionally, I reviewed Plaintiffs' Mediation Statement and documents produced by Defendants that related to me, my claims, and the claims of the Classes. (8 hours).

f. On April 26, 2016, I met with Class Counsel and the Class Representatives in San Francisco, California to prepare for the mediation. We reviewed what we could expect from the upcoming mediation in extensive detail and talked specifically about the data produced by Defendants. (4 hours).

g. On April 27, 2016, I participated in a full day of mediation with Class Counsel, the Class Representatives, Defendants, and our Mediator.  After approximately 8 hours of thorough negotiations, the parties did not arrive at a resolution and agreed to continue the mediation in June 2016. (8 hours).

h. After the mediation, I reviewed Defendants' Mediation Statement in order to identify any discrepancies. (2 hours).

i. In May 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. I provided detailed feedback based on my and other women's experience and proposed solutions to these issues. (4 hours).

j. On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analysis conducted by Defendants and Class Counsel respectively. This call required further clarification on my part with regards to Qualcomm's organizational structure. (1 hour).

k. In June 2016, I reviewed and provided feedback on Defendants' proposal for programmatic relief. This required me to review the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. (3 hours).

l. Since the mediation, I have exchanged numerous emails and phone calls with Class Counsel regarding the current status of the settlement. (2 hours).

m. In order to be able to attend these mediations and meetings with Class Counsel, I incurred costs for flights, hotel rooms, and meals, for which I have not been reimbursed. I estimate these costs to amount to $850.

**<u>Duties to the Classes Going Forward</u>**

15. If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

16. The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping to resolve any disputes regarding the implementation of the programmatic relief.

17. I anticipate spending many hours going forward during the settlement approval process and programmatic relief process.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Risks of Participating in This Settlement**

18.    After years of unequal treatment at Qualcomm, I resigned from my position in January 2015. Given the close-knit nature of many technology companies, I took substantial risks in my own career by stepping forward in this lawsuit. I took the risk that other companies would not hire me or that clients might not want to work with me because I participated in this action.

19.    These risks affect not only me, but also my family and dependents.

**Approval of the Settlement**

20.    As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendants. My approval of this settlement is based on my view, in light of the record and the risks, that it is in the best interests of the Classes.

21.    My attorneys at SH consulted me about the settlement negotiations with Defendants as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with the Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable.  In particular, I am excited about the portions of the programmatic relief that will reform Qualcomm's review process and ensure that the company better tracks the compensation and promotion of women with high performance ratings.  With the substantial changes to Qualcomm's review and compensation processes, including the changes made to performance write-ups, automatic consideration for promotions, and the ability of employees to submit online input, I have faith that the programmatic relief will create a more equitable and rewarding experience for women at Qualcomm in the future.

22.    I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

1

2   Executed on this ___24th___ day of July, 2016 in _San Diego_ , _California_

3

4

5   _Carolina Dealy_

6   Carolina Dealy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED, & QUALCOMM TECHNOLOGIES, INC.,<br><br>                              Defendants. | Case No.:  3:16-cv-01885-JLS-DHB<br><br>**DECLARATION OF LAURA PAQUIN** |

I, LAURA PAQUIN, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.      I am a Class Representative in this lawsuit. I worked as a Director of Program Management in the Boulder, Colorado Office of Qualcomm Inc. ("Qualcomm" or the "Company"), a major worldwide technology company, during the applicable class period.

3.      I understand the responsibilities of a Class Representative and I have fulfilled, and continue to fulfill, my duties to the Classes.  I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.      I was not promised any amount of money to serve as a Class Representative, or in connection with my approval of this settlement.

5.      Since I became involved, I assisted Sanford Heisler, LLP ("SH" or "Class Counsel") with their investigation of the class claims of gender discrimination by sharing

with Class Counsel my experiences at Qualcomm and the experiences of other women at the Company. SH consulted with me throughout the case on a variety of issues, including but not limited to, Qualcomm's common employment policies and practices, and Plaintiffs' and Defendants' statistical analyses.  I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since January 2016.

6.     I reviewed and verified drafts of key documents, including, without limitation, my EEOC charge, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, supplemental submissions to the mediations, and the settlement documents and briefing after the mediations.

7.     My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Classes are detailed below.

### Decision to Participate As a Class Representative in this Lawsuit

8.     I was initially hired at Qualcomm in November 1997 in Boulder, Colorado as a Senior Program Manager, bringing with me over a decade of engineering and leadership experience in the telecommunications and computer industries. I was promoted to Program Director in October 2000, and in May 2005, my title was changed to Director of Program Management.

9.     The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation. I have always wanted to make a difference in the world for women, and I saw other women going through the same discrimination as I.  I was offered a large severance package when I was terminated and had to weigh economic stability against my desire to fight what I believed to be a systemic wrong against women at Qualcomm.   I worried that participating in this lawsuit would damage my prospects of finding employment in the future after being terminated by Qualcomm. I supported my family with my salary and did not know whether I would

2

be able to find a similar source of income if this lawsuit damaged my chances of finding future employment.

10.     I decided to join the lawsuit and serve as a Class Representative because I wanted to improve the terms and conditions of employment at Qualcomm. I was particularly interested in changing conditions for other women in technology companies throughout the country. After my daughter mentioned her interest in becoming an engineer one day, I was tempted to discourage her from the field. Having seen little change in the ways women were treated throughout my time in the industry, I did not want to see her subjected to the same gender discrimination I and many other women have faced. After several meetings, many phone calls with my lawyers, and much personal deliberation, I determined that a class action case was the best way to achieve equal treatment for all women at the Company.

## Services in Support of the Classes

11.     As a Class Representative, I had a duty to ensure that the interests of all Class Members were protected, and that all were treated fairly. I understood I could not put my own interests before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

12.     I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with Sanford Heisler to monitor and contribute to this case throughout.

13.     Since I first retained SH, I have spent well over approximately **293** hours performing actions that benefitted the Classes, including participating in mediations and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.  A summary of my activities is as follows:

    a.  In mid-2012, when I began to suspect that gender based discrimination was taking place at Qualcomm, I spent days creating charts showing the percentages of women in each job category at Qualcomm. (50+ hours).

3

b.  In early October 2015, I carried out a full initial investigative interview with Class Counsel and shared my knowledge of Qualcomm's policies and practices which was of particular use at this stage of the lawsuit. I had several follow-up calls with SH after my initial interview and exchanged many emails with my attorneys.  Overall, at this stage of the lawsuit, I spent several hours assisting with the investigation of the class action and exchanged multiple phone calls and emails with SH. (15 hours).

c.  Shortly after this interview, I repeated the same analysis I conducted in mid-2012, in which I analyzed the representation of women throughout Qualcomm and other fields to compare numbers from 2012 to numbers in 2015. At this time, I focused largely on the higher level positions such as Directors and above. (50 hours).

d.  On October 29, 2015, I retained SH.  Around that time, I spent days analyzing 18 years' worth of documents relating to the tasks I performed at Qualcomm and my overall performance at the Company. Additionally, I spent numerous hours reviewing the documents and communicating the content of these documents to Class Counsel. (20 hours).

e.  In the month of December 2015, I spent considerable amounts of time reviewing and contributing to my EEOC charge.  In order to do so, I meticulously reviewed Qualcomm's documents relating to my performance in order to ensure that the content of my EEOC charge was accurate. I also spent substantial amounts of time reviewing documents relating to my experience prior to working at Qualcomm in order to provide Class Counsel with information relating to my employment qualifications.  This process involved numerous phone calls and email exchanges with Class Counsel. (40 hours).

f.  On February 1, 2016, I participated in a conference call with Class Counsel and the Class Representatives that lasted many hours. During the call, we

4

5-4

reviewed the timeline of the case in significant detail and prepared for the upcoming mediation. (4 hours).

g. Throughout February 2016, I spent significant amounts time creating spreadsheets that compared my qualifications to men in different positions, of both higher and lower levels, throughout Qualcomm. (30 hours).

h. In mid-April 2016, after Class Council received employment data from Qualcomm, I participated in a series of phone calls with my attorneys. During these calls, I explained the organizational structure of Qualcomm as well as its job codes and job responsibilities. (5 hours).

i. On April 24, 2016, I spent considerable amounts of time reviewing Plaintiffs' Mediation Statement in order to ensure that it accurately reflected both the structure of the Company as well as the class claims. (2 hours).

j. I spent hours preparing for meetings with Class Counsel on April 26, 2016 and April 27, 2016 in San Francisco. This involved planning my travel from Colorado to San Francisco, which required me to make accommodations for the care of my son and daughter while I was away. This resulted in my spending significant amounts of money out of pocket. Additionally, I reviewed Plaintiffs' Mediation Statement, my EEOC charge, and documents produced by Defendants that related to me and the Classes. (20 hours).

k. On April 26, 2016, I met with Class Counsel and the Class Representatives in San Francisco to prepare for the upcoming mediation. (4 hours).

l. On April 27, 2016, I participated in a full day of mediation with Class Counsel, the Class Representatives, Defendants and our Mediator in San Francisco. (8 hours).

m. After the mediation, I reviewed Defendants' Mediation Statement and my performance reviews to identify any discrepancies. I communicated my analysis to Class Counsel. (11 hours).

n. In May, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. I provided detailed feedback based on my and other women's experience and proposed solutions to these issues (3 hours).

o. On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analysis conducted by Defendants and Class Counsel respectively. (6 hours).

p. In June 2016, I reviewed and provided feedback on Defendants' proposal for programmatic relief. This required me to review the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. (3 hours).

q. On June 16, 2016, I communicated my comments on Qualcomm's proposal for programmatic relief to Class Counsel. (1 hour).

r. On June 20, 2016, I participated in a pre-mediation meeting with Class Counsel and the Class Representatives over the phone. Initially, I intended on attending this meeting and the following mediation in person, and spent significant amounts of time preparing for my travel from Colorado to San Francisco. Unfortunately, I was forced to rush my daughter to a specialist because of a last minute illness and had to cancel my travel plans as a result. This required additional planning and rearrangement on my behalf. (5 hours).

s. On June 21, 2016, I participated, over the phone, in an all-day mediation with Class Counsel, the Class Representatives and Defendants. The mediation involved a substantial amount of dialogue between myself, Class Counsel, and the Mediator. (14 hours).

t. After the mediation, I had many phone calls with Class Counsel regarding the current status of the settlement. (2 hours).

6

5-6

u.  Throughout the settlement approval process, I will continue spending significant amounts of time coordinating with Class Counsel in order to review and verify the documents being submitted.

v.  Throughout this entire process, I have incurred significant out of pocket expenses, including approximately $1500 for travel, lodging, and food costs.

**Duties to the Classes Going Forward**

14.  If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

15.  The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping to resolve any disputes regarding the implementation of the programmatic relief.

16.  I anticipate spending many hours going forward assisting Class Counsel during the settlement approval process and programmatic relief process.

**Risks of Participating in This Settlement**

17.  I was terminated from Qualcomm in November 20, 2015.  Given the close-knit nature of many technology companies, I took substantial risks in my own career by stepping forward in this lawsuit.  I took the risk that other companies would not hire me, or that clients might not want to work with me because I participated in this action.

18.  I am still in the process of seeking employment at other companies for Director and Senior Director positions, and spend approximately two hours a day researching new opportunities.  There are very few, if any, positions that pay anything close to my compensation at Qualcomm. The positions I have found are highly competitive and are mainly outside of the telecommunications discipline. I believe that my involvement in this lawsuit will make it even more difficult to compete for this small pool of jobs.

**Approval of the Settlement**

19.  As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendants. My approval

of this settlement is based on my view, in light of the record and the risks that it is in the best interests of the Classes.

20.     My attorneys at SH consulted me about the settlement negotiations with Defendants as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with the Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable. I was particularly pleased with the programmatic relief portion of the settlement. Not only does it provide substantial changes for the women in the Company, but it also includes important accountability measures that will ensure that these changes will be long lasting.

21.     I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

5-8

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3

4

5

6    Executed on this  25  day of July, 2016 in  Louisville, CO .

7

8                                   Laura Paquin
                                    Laura Paquin
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9                                                                    5-9

# Exhibit 6

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated, | Case No.: 3:16-cv-01885-JLS-DHB **DECLARATION OF WEI SHI** |
| Plaintiffs, | |
| v. | |
| QUALCOMM INCORPORATED & QUALCOMM TECHNOLOGIES INC., | |
| Defendants. | |

I, WEI SHI, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.      I am a Class Representative in this lawsuit. I worked as a Staff Engineer in the San Diego, California Office of Qualcomm Inc. ("Qualcomm" or the "Company), a major worldwide technology company during the applicable class period.

3.      I understand the responsibilities of a Class Representative and I have fulfilled, and continued to fulfill, my duties to the Classes. I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.      I was not promised any amount of money to serve as a Class Representative or in connection with my approval of this settlement.

5.      Since I became involved, I assisted Sanford Heisler, LLP ("Sanford Heisler," "SH" or "Class Counsel") with their investigation of the class claims of gender discrimination by sharing with Class Counsel my experiences at Qualcomm and the

experiences of other women at the Company. SH consulted with me throughout the case on a variety of issues, including but not limited to, Qualcomm's common employment policies and practices and Plaintiffs' and Defendants' statistical analyses.  I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since November 2015.

6.     I reviewed and, when necessary, verified drafts of key documents, including without limitation, my EEOC charge, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, and the settlement documents and briefing after the mediations.

7.     My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Classes are detailed below.

### Decision to Participate As a Class Representative in this Lawsuit

8.     I was hired at Qualcomm in November 2001 as a Senior Engineer in Qualcomm's General Research and Development Department. In October 2006, I was promoted to Staff Engineer. I was laid off on November 20, 2016.

9.     During my time at the Company, I witnessed sex-based discrimination in promotions and pay.

10.     The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation.  I worried that participating in this lawsuit would damage my prospects of finding employment in the future after being terminated by Qualcomm. I supported my family of four, including my 18-year-old son and 12-year-old daughter, with my salary and did not know whether I would be able to find a similar source of income if this lawsuit damaged my chances of finding future employment.

11.     I was offered a severance in the amount of $91,899. Initially, I decided to accept the severance. However, I learned if I did not revoke my severance, I would not

6-2

have been able to participate in this lawsuit. This was an extremely difficult decision, as I had to consider the risk in which I put myself and my family by sacrificing my severance for the good of the Classes. However, meetings with Class Counsel encouraged me that we had a chance to do something meaningful and make a change at Qualcomm.

12.    Despite these concerns, I decided to join the lawsuit and serve as a Class Representative because I wanted to improve women's terms and conditions of employment at Qualcomm. A class action case was the best way to achieve equal treatment for all women at the Company.

### Services in Support of the Classes

13.    I understood that, as a Class Representative, I had a duty to ensure that the interests of all Class Members were protected and that all were treated fairly. I understood I could not put my own interest before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

14.    I believe I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with the attorneys representing the Classes to monitor and contribute to this case throughout.

15.    Since I first retained SH, I have spent approximately **257** hours performing actions that benefitted the Classes, including participating in mediations and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.  A summary of my activities is as follows:

      a.   In October 2015, I carried out a full initial investigative interview with Class Counsel and shared my knowledge of Qualcomm's policies and practices, which was of particular use at this stage of the lawsuit. I had several follow-up calls with SH after my initial interview, and exchanged many emails with my attorneys. Overall, at this stage of the lawsuit, I spent 18 hours assisting with the investigation of the class action and exchanged multiple phone calls and emails with SH. (18 hours).

b. On November 3, 2015, I officially retained SH.  Around that time, I spent several days analyzing 15 years' worth of documents relating to the tasks I performed at Qualcomm and my overall performance at the Company. Additionally, I spent several hours reviewing the documents I collected and communicating the content of these documents to Class Counsel. (30 hours).

c. In October and November 2015, I spoke at length with Class Counsel about my employment history, personal treatment, and pay discrimination based on gender and age, and the general culture at Qualcomm. I also spent significant time reviewing Qualcomm's company policies that were related to the case and speaking directly to Qualcomm's human resources department. (10 hours).

d. Throughout the month of December 2015, I spent considerable amounts of time reviewing and contributing to an EEOC charge produced by Class Counsel. In order to do so, I meticulously reviewed Qualcomm's documents relating to my performance in order to ensure that the content of my EEOC charge was accurate. I also exchanged emails with Class Counsel. (80 hours).

e. On January 27, 2016, I participated in a call regarding case status updates and communications to the Class Representatives. (2 hours).

f. Throughout July and June 2016, I have been on numerous calls and teleconferences with Class Counsel and the Class Representatives to coordinate and strengthen our efforts in support of the Classes. (8 hours).

g. On April 14, 2016, I spoke to Class Counsel by phone regarding the upcoming mediation, all the preparations we would need to make, the documents to review, and the process to come. (2 hours).

h. On April 26, 2016, I met with Class Counsel in San Francisco to prepare for mediation. We reviewed what we could expect from the upcoming

4

6-4

mediation in extensive detail, and talked specifically about the data produced by Defendants. (4 hours).

i. In late April 2016, I spent hours preparing for the April 27, 2016 mediation. This involved reviewing Plaintiffs' Mediation Statement, my EEOC charge, and documents produced by Defendants that related to me and the Classes. Additionally, I spent time planning my travel from San Diego to San Francisco. This is also involved significant out of pocket expenses on my behalf. I incurred $800 for my airplane ticket, taxi, hotel and meals. (60 hours).

j. After the mediation, I reviewed Defendants' Mediation Statement in order to identify portions I had issues with and communicate my analysis to Class Counsel. In order to do so, I read through my Qualcomm performance reviews in order to accurately identify any discrepancies. (6 hours)

k. In May 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. I provided detailed feedback based on my and other women's experience and proposed solutions to these issues. (7 hours).

l. On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analyses conducted by Defendants and Class Counsel respectively. This call required further clarification on my part with regards to the Qualcomm's organizational structure. (1 hour).

m. In June 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. This required me to analyze the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. I then communicated my comments on Qualcomm's proposal for programmatic relief to Class Counsel. (4 hours).

n. On June 14, 2016, I received a copy of Qualcomm's proposal for

programmatic relief and was asked to review it by Class Counsel. This required me to review the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. (1 hour.)

o.  On June 16, 2016, I communicated my comments on Qualcomm's proposal for programmatic relief to Class Counsel. (2 hours.)

p.  On June 20 2016, I participated in a pre-mediation meeting with Class Counsel and the Class Representatives. The meeting took several hours as we discussed what we could expect during the upcoming mediation in detail. (6 hours).

q.  On June 21, 2016, I participated, in person, in an all-day mediation with Class Counsel, the Class Representatives and Defendants. The mediation itself involved a substantial amount of dialogue between me, Class Counsel, and the Mediator. (12 hours).

r.  After the mediation, I had extensive phone calls with Class Counsel regarding the current status of the settlement. (4 hours).

s.  Throughout the settlement approval process, I will continue spending significant amounts of time coordinating with Class Counsel in order to review and verify the documents being submitted.

**Duties to the Classes Going Forward**

16.    If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

17.    The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping to resolve any disputes regarding the implementation of the programmatic relief.

18.    I anticipate spending many hours going forward during the settlement approval process and programmatic relief process.

\ \ \

**Risks of Participating in This Settlement**

19.   I was terminated from Qualcomm on November 20, 2015. Given the close-knit nature of many technology companies, I took substantial risks in my own career by stepping forward in this lawsuit. I took the risk that other companies would not hire me or that clients might not want to work with me because I participated in this action.

**Approval of the Settlement**

20.   As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendants. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the Classes.

21.   My attorneys at SH consulted me about the settlement negotiations with Defendants as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with the Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable.

22.   I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

6-7

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 25th day of July, 2016 in ___San Diego, CA___.

___Wei Shi___
Wei Shi

# Exhibit 7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES INC.,<br><br>               Defendants. | Case No.:  3:16-cv-01885-JLS-DHB<br><br>**DECLARATION OF BLANCHE MATULICH** |

I, BLANCHE MATULICH, hereby declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.    I am a Class Representative in this lawsuit. I worked as a Senior Release Engineer in the San Diego, California Office of Qualcomm Inc. ("Qualcomm" or the "Company), a major worldwide technology company during the applicable class period.

3.    I understand the responsibilities of a Class Representative and I have fulfilled, and continued to fulfill, my duties to the Classes.  I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.    I was not promised any amount of money to serve as a Class Representative or in connection with my approval of this settlement.

5.    Since I became involved, I assisted Sanford Heisler, LLP ("SH" or "Class Counsel") with their investigation of class claims of gender discrimination by sharing with Class Counsel my experiences at Qualcomm and the experiences of other women at the Company. SH consulted with me throughout the case on a variety of issues, including

but not limited to, Qualcomm's common employment policies and practices and Plaintiffs' and Defendants' statistical analyses. I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since October 2015.

6.      I reviewed and, when necessary, verified drafts of key documents, including without limitation, my EEOC charge, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, and settlement documents.

7.      My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Classes are detailed below.

**Decision to Participate As a Class Representative in this Lawsuit**

8.      I was hired at Qualcomm in 1998 as an Engineering Aide. I was promoted to a Senior Engineering Aide in 1999 and to an Associate Engineer in 2001. In 2005, I was reassigned as a Release Engineer and I was promoted to a Senior Release Engineer in 2008. In 2014, I was reassigned as a Business Systems Analyst.

9.      The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation.  I worried that participating in this lawsuit would damage my prospects of finding employment in the future after being terminated by Qualcomm. I supported my family with my Qualcomm salary. I used to buy clothes, shoes, educational software, and other learning tools for my grandson. I used to fly to Columbia, California to take care of my grandson on weekends. I did not know whether I would be able to find a similar source of income with which to support my family if this lawsuit damaged my chances of finding future employment.

10.     I was offered a severance in the amount of approximately $33,000. If I decided to accept the severance, I would not have been able to participate in this lawsuit.

11.     Despite these concerns, I decided to join the lawsuit and serve as a Class Representative because I wanted to improve the terms and conditions of employment at

7-2

Qualcomm for women. A class action case was the best way to achieve equal treatment for women at the Company.

<u>**Services in Support of the Classes**</u>

12.    I understood that, as a Class Representative, I had a duty to ensure that the interests of all Class Members were protected and that all were treated fairly. I understood I could not put my own interest before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

13.    I believe I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with the attorneys representing the Classes to monitor and contribute to this case throughout.

14.    Since I first retained SH, I have spent approximately **<u>147</u>** hours performing actions that benefitted the class at large, including participating in mediation and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.  A summary of my activities is as follows:

    a.  In October 2015, I carried out a full initial investigative interview with Class Counsel and shared my knowledge of Qualcomm's policies and practices. I had several follow-up calls with SH after my initial interview, and exchanged many emails with my attorneys. Overall, at this stage of the lawsuit, I spent over 10 hours assisting with the investigation of the class action and exchanged multiple phone calls and emails with SH. (10 hours).

    b.  On October 30, 2015, I officially retained SH. Around that time, I spent several days collecting 15 years' worth of documents relating to the tasks I performed at Qualcomm and my overall performance at the Company. (50 hours).

    c.  On November 11, 2015, I spoke with Class Counsel regarding my treatment at Qualcomm and its culture. (2 hours).

\ \ \

3

7-3

d. On December 8 and 9, 2015, I spoke with Class Counsel to provide detailed information for my EEOC Charge regarding my team at Qualcomm and our demotions and pay cuts. (2 hours).

e. I also spent significant amounts of time reviewing Qualcomm's company policies that were related to the case. (8 hours).

f. Throughout the month of December 2015, I spent considerable amounts of time reviewing and contributing to an EEOC charge produced by Class Counsel. In order to do so, I reviewed Qualcomm's documents related to my performance in order to ensure that the content of my EEOC charge was accurate. This process involved numerous phone calls and email exchanges with Class Counsel. (5 hours).

g. On March 14, 2016, I spoke to Class Counsel about Plaintiffs' Mediation Statement. I provided extensive explanations of my claims and experiences. (2 hours).

h. On April 15, 2016, I provided detailed information on my comparators to Class Counsel. (2 hours).

i. On April 27, 2016, I attended a class mediation in San Francisco. (8 hours).

j. At around this time, I spent hours preparing for meetings with Class Counsel on April 26, 2016 and April 27, 2016 in San Francisco. This involved planning my travel from San Diego to San Francisco, which required me to reschedule my own plans for a trip during that time. (3 hours).

k. Prior to the April 27, 2016 mediation, I reviewed Plaintiffs' Mediation Statement, my EEOC charge, and documents produced by Defendants that related to me, my claims, and the claims of the Classes. (3 hours).

l. On April 26, 2016, I met with Class Counsel and the other Class Representatives in San Francisco, California to prepare for the upcoming mediation. We reviewed what we could expect from the upcoming mediation in extensive detail, and talked specifically about the data produced

by Defendants. (4 hours).

m. In April 2016, I spent 10 hours traveling between San Diego and San Francisco for mediation and related meetings. (10 hours).

n. After the mediation, I reviewed Defendants' Mediation Statement in order to identify portions with which I took issue and to communicate my analysis to Class Counsel. (1 hour).

o. On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analyses conducted by Defendants and Class Counsel respectively. On the call and through follow-up communications, I provided Class Counsel with additional information and clarifications concerning Qualcomm's organizational structure. (1 hour).

p. In June 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. This required me to analyze the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. I then communicated my comments on Qualcomm's proposal for programmatic relief to Class Counsel. (1 hour).

q. On June 16, 2016, I communicated my comments on Qualcomm's proposal for programmatic relief. (1 hour).

r. In June 2016, I re-reviewed Defendants' Mediation Statement and spoke with Class Counsel regarding my comments. In preparation for this discussion, I read through my Qualcomm performance reviews in order to accurately identify any discrepancies. (4 hours).

s. On June 20, 2016, I participated in a pre-mediation meeting with Class Counsel and the Class Representatives. The meeting took several hours as we discussed what we could expect during the upcoming mediation in detail. (6 hours).

7-5

t.    On June 21, 2016, I participated in an all-day mediation with Class Counsel, the Class Representatives, and Defendants. The mediation involved a substantial amount of dialogue between me, Class Counsel, and the Mediator. (14 hours).

u.    In June 2016, I spent 10 hours traveling between San Diego and San Francisco for mediation and related meetings.  (10 hours).

v.    In hotel, meals, and transportation, these trips cost me a total of $995.83 in out of pocket expenses.

## Duties to the Classes Going Forward

15.    If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

16.    The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping resolve with any disputes regarding the implementation of the programmatic relief.

17.    I anticipate spending many hours going forward during the settlement approval process and programmatic relief process.

## Risks of Participating in This Settlement

18.    I was terminated from Qualcomm on November 20, 2015. Given the close-knit nature of the technology sector, I took substantial risks in my own career by stepping forward in this lawsuit. I took the risk that other companies would not hire me or that clients might not want to work with me because I participated in this action.

19.     I am still in the process of seeking employment at another company. Despite a long job search in San Diego, where I have built a life, I have yet to find any position available at this time that offers anything close to my compensation at Qualcomm. I believe that my involvement with this lawsuit will make it even more difficult for me to compete in my small pool of jobs.  In order to find a similar job with similar pay, I would likely have to leave San Diego, which would be a significant burden

6

on me.

## Approval of the Settlement

20.     As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendants. My approval of this settlement is based on my view that, in light of the record and the risks, that it is in the best interests of the Classes.

21.     My attorneys at SH consulted me about the settlement negotiations with Defendants as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable.

22.     I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this __25__ day of July, 2016 in __La Jolla, CA__ .

Blanche Matulich
Blanche Matulich

7-8

# Exhibit 8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH, and CONNIE JACOBSON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> QUALCOMM INCORPORATED & QUALCOMM TECHNOLOGIES INC., <br><br> Defendants. | Case No.:  3:16-cv-01885-JLS-DHB <br><br> **DECLARATION OF CONNIE JACOBSON** |

I, CONNIE JACOBSON, hereby declare as follows:

1.     I have personal knowledge of the facts set forth below and, if called and sworn as a witness, would testify competently thereto.

2.     I am a Class Representative in this lawsuit. I worked as a Support Engineer, Staff in the San Diego, California Office of Qualcomm Inc. ("Qualcomm" or the "Company), a major worldwide technology company during the applicable class period.

3.     I understand the responsibilities of a Class Representative, and I have fulfilled, and continued to fulfill, my duties to the Classes.  I have vigorously represented the Classes' interests pursuant to my fiduciary duties to the Classes I seek to represent.

4.     I was not promised any amount of money to serve as a Class Representative, or in connection with my approval of this settlement.

5.     Since I became involved, I assisted Sanford Heisler, LLP ("SH" or "Class Counsel") with their investigation of the class claims of gender discrimination by sharing with Class Counsel my experiences at Qualcomm and the experiences of other women at the Company. SH consulted with me throughout the case on a variety of issues, including

8-1

but not limited to Qualcomm's common employment policies and practices and Plaintiffs' and Defendants' statistical analyses.  I stayed updated on case developments throughout the process and was actively involved in intense pre-suit class settlement discussions since January 2016.

6.     I reviewed and, when necessary, verified drafts of key documents, including without limitation my EEOC charge, Plaintiffs' Mediation Statement, Defendants' Mediation Statement, the programmatic relief proposal, and the settlement documents and briefing after the mediation was successful.

7.     My decision to participate in this class action, my contributions to it, which resulted in a class action settlement with significant programmatic and monetary relief for women at Qualcomm, and the sacrifices I made for the good of the Classes are detailed below.

### Decision to Participate As a Class Representative in this Lawsuit

8.     I possess over 35 years of technical experience in the semiconductor industry and am a member in good standing of the Institute of Electrical and Electronics Engineers (IEEE), the largest professional association for technology.  In 2003, I started working as a Staff Engineer. From 2012 to 2015, I worked as a Staff Support Engineer.

9.     As a woman working in Science, Technology, Engineering, and Mathematics ("STEM") at Qualcomm, I was subjected to discriminatory and hostile treatment by my coworkers and supervisors on a daily basis.  With all my accumulated years of experience in the industry, many of them in management roles, I immediately recognized how troubling the environment at Qualcomm was.  Regardless of our ratings and creative problem solving, my work, as well as other women's work, was increasingly dismissed at Qualcomm.

10.     The decision to participate in the case as a Class Representative was a difficult one for me and required much deliberation. I thought long and hard before committing my time and my energy to this lawsuit. I worried that participating would damage my prospects of finding employment in the future. Understanding that it would

8-2

be well known in my area of work that I was involved in the case, I risked damaging my chances to obtain a similar source of income at a time in my career when finding new employment would be very difficult.

11.   Despite these concerns, I decided to join the lawsuit and serve as a Class Representative because I wanted to improve the terms and conditions of employment at Qualcomm that I believed we faced.

### Services in Support of the Classes

12.   I understood that, as a Class Representative, I had a duty to ensure that the interests of all Class Members were protected and that all were treated fairly. I understood I could not put my own interest before theirs. I also understood that I would be required to engage in certain actions throughout the duration of this case.

13.   I believe I have fulfilled, and I continue to fulfill, my duties to the Classes. I have been actively involved in this case, as described more fully below, and have been in close contact with the attorneys representing the Classes to monitor and contribute to this case throughout.

14.   Since I first retained SH, I have spent well over **132** hours performing actions that benefitted the Classes, including participating in mediation and helping to craft a plan for equitable relief that I am confident will effect meaningful change at Qualcomm.  A summary of my activities is as follows:

    a.   In early November 2015, I carried out a full initial investigative interview with Class Counsel and shared my knowledge of Qualcomm's policies and practices, which was of particular use at this stage of the lawsuit. I had several follow-up calls with SH after my initial interview and exchanged many emails with my attorneys. Overall, at this stage of the lawsuit, I spent hours assisting with the investigation of the class action and exchanged multiple phone calls and emails with SH. (30 hours).

    b.   On November 4, 2015, I retained SH.  Around that time, I spent time over the span of many days reviewing 4 years' worth of documents relating to the

8-3

tasks I performed at Qualcomm and my overall performance at the Company. I reviewed and communicated with Class Counsel regarding these documents and other company policies related to this case. (20 hours).

c. Throughout the month of December 2015, I spent considerable amounts of time reviewing and contributing to my EEOC charge. In order to do so, I reviewed Qualcomm's documents relating to my performance in order to ensure that the content of my EEOC charge was accurate. I also spent substantial amounts of time reviewing documents relating to my experience prior to working at Qualcomm in order to provide Class Counsel with information relating to my employment qualifications. This process involved numerous phone calls and email exchanges with Class Counsel. (20 hours).

d. On February 1, 2016, I participated in a conference call with Class Counsel and the other Class Representatives that lasted many hours. During the call, we reviewed the timeline of the case in significant detail, and prepared for the upcoming mediation. (5 hours).

e. In mid-April 2016, after Class Council received employment data from Qualcomm, I participated in a series of phone calls with my attorneys, during which I helped explain the organizational structure of Qualcomm and its job codes and job responsibilities. (5 hours).

f. On April 24, 2016, I spent considerable amounts of time reviewing the Mediation Statement produced by Class Counsel in order to ensure that it accurately reflected both the structure of the Company and the class claims. (2 hours).

g. Around April 27, 2016, I reviewed Plaintiffs' Mediation Statement, my EEOC charge, and documents produced by Defendants that related to me, my claims and the claims of the Classes. (5 hours).

h. On April 26, 2016, I participated, over the phone, in a pre-mediation meeting and spent much of the day preparing for the upcoming mediation

8-4

with Class Counsel and the Class Representatives. We reviewed what we could expect from the upcoming mediation in extensive detail and talked specifically about the data produced by Defendants.  Initially, I intended to attend this meeting in person and spent significant amounts of time preparing for my travel from San Diego to San Francisco. Unfortunately, due to a last minute case of pneumonia, I was forced to cancel my travel plans for which I had booked non-refundable plane tickets and a hotel room, requiring additional costs, planning, and arrangements on my behalf. (4 hours).

i.   On April 27, 2016, I participated, over the phone, in a full day of mediation with Class Counsel, the Class Representatives, Defendants, and our Mediator. (6 hours).

j.   In May 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. I provided detailed feedback based on my and other women's experience and proposed solutions to these issues. (5 hours).

k.   On May 23, 2016, I participated in a conference call with the Class Representatives and Class Counsel. The call involved a detailed explanation of the data analysis conducted by Defendants and Class Counsel respectively. On the call and throughout follow up communications, I provided Class Counsel with additional information and clarification concerning Qualcomm's organizational structure. (4 hours).

l.   In June 2016, I reviewed and provided feedback on Plaintiffs' proposal for programmatic relief. This required me to review the proposal in order to identify any components that I thought were missing, as well as to identify any possible problems with what Qualcomm proposed. (3 hours).

m.   On June 16, 2016, I communicated my comments on Qualcomm's proposal for programmatic relief to Class Counsel. (1 hour).

8-5

n. On June 20, 2016, I participated in a pre-mediation meeting with Class Counsel and the Class Representatives in San Francisco. I spent significant amounts of time preparing for my travel and traveling from San Diego to San Francisco. The meeting itself took several hours as we discussed what we could expect during the upcoming mediation in detail. (4 hours).

o. On June 21, 2016, I participated in an all-day mediation with Class Counsel, the Class Representatives, and Defendants in San Francisco. The mediation itself lasted approximately 14 hours and involved a substantial amount of dialogue between myself, Class Counsel, and the Mediator. (14 hours).

p. Since the mediation, I have had numerous phone calls and email exchanges with Class Counsel regarding the current status of the settlement and approval process. (4 hours).

q. Throughout the settlement approval process, I will continue spending significant amounts of time coordinating with Class Counsel in order to review and verify the documents being submitted.

r. In order to be able to attend these mediations and meetings with Class Counsel, I incurred costs for flights, hotel rooms, and meals, for which I have not been reimbursed. I estimate these costs to amount to $4,000.

**Duties to the Classes Going Forward**

15.     If the settlement is approved, the Class Representatives will have an ongoing duty to monitor the programmatic relief with Class Counsel for the next three years.

16.     The Class Representatives and I will receive and review six semi-annual updates from Class Counsel. The Class Representatives and I will also be responsible for helping to resolve any disputes regarding the implementation of the programmatic relief.

17.     I anticipate spending many hours going forward during the settlement approval process and programmatic relief process.

\ \ \

\ \ \

8-6

**Risks of Participating in This Settlement**

18.     I was terminated from Qualcomm on November 20, 2015. Given the close-knit nature of many technology companies, I took substantial risks in my own career by stepping forward in this lawsuit. I took the risk that other companies would not hire me or that clients might not want to work with me because I participated in this action.

19.     I am still in the process of seeking employment at another company. Despite a long job search in San Diego, where I have built a life, I have yet to find any position available at this time that offers anything close to my compensation at Qualcomm. I believe that my involvement with this lawsuit will make it even more difficult for me to compete in my small pool of jobs.  In order to find a similar job with similar pay, I would likely have to leave San Diego, which would be a significant burden on me.

**Approval of the Settlement**

20.     As stated above, I was not promised any amount of money in connection with my approval of this settlement or any prior settlement with Defendants. My approval of this settlement is based on my view, in light of the record and the risks, that it is in the best interests of the Classes.

21.     My attorneys at SH consulted me about the settlement negotiations with Defendants as they occurred, and I authorized my attorneys in these negotiations. I authorized this proposed settlement with the Defendants for $19.5 million, and I believe that the proposed settlement is fair, adequate, and reasonable.  I have especially high hopes for the portions of programmatic relief that require current employees and new hires to learn about Qualcomm's commitment to diversity and equal treatment in the workplace.

22.     I believe that these changes can help change the negative culture toward women at Qualcomm by making clear to new employees from the start that harassment and discrimination will not be tolerated. I believe that my attorneys at SH worked diligently to secure this settlement in the best interests of the Classes.

\ \ \

8-7

1   I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.

3

4

5

6   Executed on this ___24___ day of July, 2016 in ___SD___, ___Ca___.

7

8   _Connie L Jacobson_

9   Connie Jacobson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28