UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DANDAN PAN, CARRIE HALUZA, CAROLINA DEALY, LAURA PAQUIN, WEI SHI, BLANCHE MATULICH and CONNIE JACOBSON on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUALCOMM INCORPORATED & QUALCOMM TECHNOLOGIES, INC.,

Defendants.

Case No.:  16-cv-01885-JLS-DHB

**ORDER (1) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION / COLLECTIVE ACTION SETTLEMENT; (2) PROVISIONALLY CERTIFYING SETTLEMENT CLASSES AND COLLECTIVE ACTION; (3) APPOINTING CLASS COUNSEL; (4) APPOINTING PLAINTIFFS AS CLASS REPRESENTATIVES; (5) APPOINTING CLAIMS ADMINISTRATOR; (6) APPROVING NOTICE AND DIRECTING DISTRIBUTION OF NOTICE; AND (7) SETTING SCHEDULE FOR FINAL APPROVAL PROCESS**

(ECF No. 4)

Presently before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement ("Prelim. Settlement Mot."). (ECF No. 4.)  The Court held a hearing on December 1, 2016, (ECF No. 16), at which time all parties expressed a strong desire for the settlement to proceed unimpeded.  Having considered the arguments and the law, the Court **GRANTS** Plaintiffs' Preliminary Settlement Motion and, as discussed below, takes all other actions necessary for the preliminary class settlement to move forward.

## GENERAL BACKGROUND

Defendant Qualcomm Inc. employs approximately 15,000 individuals in the United States, the majority in San Diego.  (Prelim. Settlement Mot. 3.)  Plaintiffs in the above-captioned action have alleged, on behalf of themselves, two classes of similarly situated women, and a collective of similarly situated women, that Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc. (together, "Defendants") have discriminated against female employees in the proposed Classes and Collective.  (*Id.* at 3, 5–6.)   Together, the proposed classes encompass 3,290 similarly situated female Qualcomm employees in Science, Technology, Engineering, and Math ("STEM") and related production or program management.  (*Id.* at 1.)  Plaintiffs base their claim to relief on the common factual predicate of "systemic gender discrimination as a result of common employment policies, practices, and procedures concerning pay and promotion." (*Id.* at 3.)

The Complaint asserts claims for unequal pay and gender discrimination against women regarding compensation, salary increases or raises, job assignments, job code placements, evaluations and ratings, and promotions and demotions, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the Equal Pay Act, 29 U.S.C. § 206 *et seq.*; the California Fair Employment and Housing Act, as amended, Cal. Gov. Code § 12940 *et seq.*; the California Equal Pay Act, as amended, Cal. Lab. Code § 1197.5 (amended 2015); the California Business and Professions Code § 17200; and the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, *et seq*.  (Compl. ¶¶ 93–103, 114–133, 146–65.)  In particular, Plaintiffs allege that: (1)

Qualcomm's common job leveling and labeling system is flawed such that it is "common for women assigned to lower-paying . . . groups to perform equal work to that performed by men in higher ranking . . . groups[,]" (*id.* at ¶ 39); (2) Qualcomm's promotion policies "discrimante[] against and disparately impact[] women" due to a flawed system whereby a majority-male manager set must specifically recommend employees for promotion; and such recommendations are often withheld from women,  (*id.* at ¶ 40); (3) Qualcomm's employee rating system encourages ranking primarily based on "qualitative . . . rather than quantitative measures" such that the system "disparately impacts and promotes a pattern and practice of discrimination against women in ratings[,]" (*id.* at ¶ 41); and (4) the combination of (1)–(3) above, in addition to the fact that "women in the same rewards groups and job codes start with lower average salaries than their male counterparts in the same job codes and rewards groups," results in the system "discriminat[ing] against and disparately impact[ing] women[,]"  (*id.* at ¶ 42).

Plaintiffs also allege discrimination based on pregnancy, childbirth, and related medical conditions in violation of Title VII of the Civil Rights Act of 1964, including the Pregnancy Discrimination Act, as amended, 42 U.S.C. § 2000e *et seq.*, and the California Fair Employment and Housing Act, as amended, including the Pregnancy Disability Leave Law and the California Family Rights Act, Cal. Gov. Code § 12940 *et seq.*, and violation of California caregiver laws with respect to leave provisions for care of a child (including newborn biological, adopted, foster, and step children, and any child for whom the woman serves *in loco parentis*) in violation of the California Fair Employment and Housing Act, as amended, including the California Family Rights Act and the California Pregnancy Disability Leave Law, Cal. Gov. Code § 12940 *et seq.*  (Compl. ¶¶ 104–13, 134–145.)  In particular, Plaintiffs allege that "Qualcomm maintains common policies with respect to caregivers and protected leave to care for a newborn, child, adopted child, or foster child" that "stigmatize employees with caregiving responsibilities and disproportionately penalize women."  (*Id.* at ¶ 43.)  These policies include: (1) "an unwritten policy of 24-7 availability[;]" (2) a flawed proration policy for employees on "part-time or flex-time

16-cv-01885-JLS-DHB

schedule" that does not account for quality or quantity of the work the employee produces; and (3) "an unwritten policy of disparately rewarding employees who work late into the night over employees who choose to arrive early and leave at the end of a normal work-day." (*Id.*)  Plaintiffs further allege that together these "policies stigmatize employees with caregiving responsibilities and disproportionately penalize women." (*Id.*)

Plaintiffs and Defendants ("the Parties") entered into extensive pre-suit negotiations for the purpose of settling their disputes, including (1) voluntary exchange of information, including three sets of "class-wide pay and promotion data concerning all Qualcomm employees" relevant to this action; (2) expert statistical analyses by both Parties regarding these data sets; and (3) attending two full days of mediation in San Francisco with David Rotman of Gregorio, Haldeman & Rotman.[1] (Prelim. Settlement Mot. 6–9.)  Despite the initial mediation being unsuccessful and the fact that "Qualcomm has consistently denied any wrongdoing and has denied all of Plaintiffs' individual and class allegations[,]" the second mediation and subsequent negotiations have been successful.  (*Id.* at 6–9.) Although Qualcomm maintains its complete denial of wrongdoing, the parties have agreed to the entry of a proposed Collective and Class Action Settlement Agreement ("Settlement Agreement") as a full settlement of these disputes and this legal action, subject to the Court's final approval.  (*See generally id.*)

Plaintiffs have presented to the Court an unopposed Motion for an Order: (1) preliminarily approving the proposed Settlement Agreement and the class action and collective action settlement it embodies; (2) provisionally certifying the proposed Settlement Classes and Collective Action, defined below, and appointing Dandan Pan,

---

[1] The legal dispute began in October 22, 2015 when Plaintiff Dandan Pan filed an initial Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Complaint of Discrimination with the California Department of Fair Employment and Housing ("DFEH").  (Prelim. Settlement Mot. 4.)  By November 7, 2015 class counsel had discovered new claimants and notified Qualcomm of additional draft EEOC charges they planned to file.  (*Id.*)  Qualcomm and Plaintiffs agreed to delay in filing these additional EEOC charges "in anticipation of engaging in substantive settlement negotiations." (*Id.*)

Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson as Class Representatives; (3) appointing Plaintiffs' Counsel as Class Counsel; (4) appointing Rust Consulting as the Class Administrator; (5) approving the proposed Notice and directing distribution of the Notice and related documents; and (6) setting a schedule for final approval.  (*Id.* at 2.)  As noted above, although Defendants stipulate both to certification of a Settlement Class and the proposed Settlement, Defendants continue to deny all allegations of unlawful conduct alleged in the Complaint, and do not admit or concede that they have, in any manner, violated federal or California laws prohibiting discrimination, or committed any other unlawful action that would entitle Plaintiffs or any class to any recovery.

## SETTLEMENT TERMS

The parties have submitted a comprehensive settlement document with approximately thirty-five pages of substantive terms, a twenty-four-page appendix outlining "Exempt Job Codes in Covered Positions[,]" and a ten-page proposed class notice.  (Collective and Class Action Settlement Agreement ("Settlement Agreement"), ECF No. 6-1.)  The settlement provides two primary forms of relief: (1) monetary and (2) programmatic.  The settlement has the support of each of the seven class representatives. (Prelim. Settlement Mot. 12.)

## I.      Monetary Relief

Qualcomm is required to make a non-reversionary settlement payment of $19.5 million in settlement of all class and collective claims in the case (the "Fund").  (Prelim. Settlement Mot. 14.)  Individualized award payments will be disbursed from the Fund based on a formula applied to each member of the classes based on "each Class Member's individual rate of pay and length of employment within the applicable Class Period, as well as whether she has previously signed a release or whether she took pregnancy related leave to care for a newborn."  (*Id.*)  Assuming the Court does not deviate from proposed settlement or requested attorney fees and service awards, the average pre-tax recovery for class members will be approximately $3,953.04, and the average recovery for class

members who worked full time during the entire class period will be approximately $5,862.53.  (*Id.*)  Finally, pursuant to the Fund's *cy pres* provisions, any balance remaining in the Fund after all recovery is issued and the class period has closed will be donated to Lesbians Who Tech, and any balance remaining due to uncashed checks will be divided evenly between the Association for Women in Science and the Center for WorkLife Law. (*Id.* at 14 n.4.)

## II.   Programmatic Relief

The parties outline extensive programmatic relief and estimate that the monetary value of such relief to the class is "at least an additional $4,000,000."  (*Id.* at 15.)  The programmatic relief encompasses, but is not limited to: (1) appointing an independent Compliance Officer to monitor compliance with the terms of the settlement, including (a) meeting for biannual review with the CEO and the head of Human Resources, (b) meeting for annual review with any persons in a position of Senior Director or higher who manage employees in the United States, and (c) reviewing biannual employee reports; (2) within ten days of the settlement taking effect, appointing independent consultants to structure job interviews and work policies to avoid future compliance issues; (3) setting up an anonymous toll-free twenty-four-hour telephone complaint line; (4) creating a complaint database and resolution mechanisms such as investigator and written communications protocols to be used in addressing complaints; (5) collecting and analyzing data regarding promotion rates and potential gender disparities; (6) outlining potential disciplinary actions for employee breach of these updated policies; and (7) understanding and adopting improved practices regarding maternal and parental leave.  (Settlement Agreement 7–18.)

## RULE 23 SETTLEMENT CLASS CERTIFICATION

Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

Class actions are governed by Federal Rule of Civil Procedure 23.  In order to certify a class, each of the four requirements of Rule 23(a) must first be met.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Next, in addition to Rule 23(a)'s requirements, the proposed class must satisfy the requirements of one of the subdivisions of Rule 23(b).  *Zinser*, 253 F.3d at 1186.  Here, Plaintiffs seek to certify the Settlement Class under subdivision Rule 23(b)(3), which permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs further seek to certify a subclass under Rule 23(b)(2) comprised of all current Qualcomm employees within the larger class.  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  The Court addresses each of these requirements in turn.

## I.     Rule 23(a)(1): Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable."  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Here, the proposed Settlement Class consists of approximately 3,290 members. (Prelim. Settlement Mot. 1.)  Further, because the majority of Qualcomm employees are in

San Diego, the California subclass constitutes well over 40 members.  Accordingly, joinder of all members would be impracticable for purposes of Rule 23(a)(1), and the numerosity requirement is therefore satisfied.

## II.    Rule 23(a)(2): Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class."  Commonality requires that "the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, the parties have carefully defined the Settlement Class to encompass all Qualcomm employees adversely affected by the alleged discriminatory policies and practices set forth above.  (Compl. ¶¶ 49–53.)  All common questions thus revolve around whether the alleged discriminatory policies and practices in fact were discriminatory and disparately impacted the class members.  Additionally, the California subclass is merely a geographical subset of Qualcomm employees that had the same potential to be adversely affected by the relevant policies.  Accordingly, it is appropriate for these issues to be adjudicated on a class-wide basis, and Rule 23(a)(2) is satisfied.

## III.    Rule 23(a)(3): Typicality

To satisfy Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims must be typical of the claims of the Class.  The typicality requirement is "permissive" and requires only that Plaintiffs' claims "are reasonably coextensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "[C]lass certification

16-cv-01885-JLS-DHB

should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (citation omitted).

Here, Plaintiffs all were or are Qualcomm employees whose claims allegedly arise out of the same underlying Qualcomm policies and practices as those pertaining to the proposed Settlement Class and the California subclass. (Prelim. Settlement Mot. 21–22; Compl. ¶¶ 4–17.) Accordingly, Plaintiffs' claims are typical of the claims of the members of the proposed Settlement Class and the California subclass, thus satisfying Rule 23(a)(3).

## IV.     Rule 23(a)(4): Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that the named representatives fairly and adequately protect the interests of the class. "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). To determine legal adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Here, there is no reason to believe that the named representatives and Class Counsel have any conflict of interest with the proposed Settlement Class members. There is also no reason to believe that the named representatives and Class Counsel have thus far failed to vigorously investigate and litigate this case. Plaintiffs have retained competent counsel, who has conducted extensive investigation, research, and informal discovery in this case. (Prelim. Settlement Mot. 6–9.) Almost all of the named representatives, at their own expense, attended the mediation sessions in San Francisco, and together have expended "well over 1,700 hours in service to the Classes." (*Id.* at 9–11.) Furthermore, Class Counsel has significant class action litigation experience—especially regarding gender discrimination—in state and federal court. (*Id.* at 24.) Accordingly, the named representatives and Class Counsel adequately represent the proposed Settlement Class members, and Rule 23(a)(4)'s adequacy requirement is met.

## V.     Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A.     Predominance

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Here, the common issue of whether Defendant's policies and practices discriminated against women predominates over the individual issues such as length of employment and particularized childcare or caretaker responsibilities. (*See* Prelim. Settlement Mot. 26–27.) Further, for purposes of settlement, Class Members are not required to prove any evidentiary or factual issues that could arise in litigation. Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

### B.     Superiority

The final requirement for certification pursuant to Federal Rule of Civil Procedure 23(b)(3) is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority inquiry requires the Court to consider the four factors listed in Rule 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

16-cv-01885-JLS-DHB

*See also Zinser*, 253 F.3d at 1190.  A court need not consider the fourth factor, however, when certification is solely for the purpose of settlement.  *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1066 n.12 (C.D. Cal. 2010); *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").  The superiority inquiry focuses "'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'"  *Zinser*, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780, at 562 (2d ed. 1986)).  A district court has "broad discretion" in determining whether class treatment is superior.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Here, Class Members' claims involve the same issues arising from the same factual bases.  If Class Members' claims were considered on an individual basis, almost 3,300 cases would follow a similar trajectory, and each would come to a similar result.  Furthermore, individual cases would consume a significant amount of the Court's and the Class Members' resources.  It is also likely that Class Members would not pursue litigation on an individual basis due to the high costs of pursuing individual claims, nor would Defendants likely be willing to accept programmatic relief on the scale secured in the settlement.  The interests of the Settlement Class Members in individually controlling the litigation are minimal, especially given the same broad-based policy and practices would be at issue.  Additionally, because the majority of Qualcomm's employees are located in San Diego, many of the individual cases would likely be filed in this district, and thus it is desirable to concentrate the litigation in a single forum.  Given all of the above, class treatment is the superior method of adjudicating this controversy, and the superiority requirement of Rule 23(b)(3) is met.

/ / /

/ / /

16-cv-01885-JLS-DHB

## VI.   Rule 23(b)(2)

Unlike Federal Rule of Civil Procedure 23(b)(3) which is appropriate for "individualized monetary claims," "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360–62 (quotation marks omitted).   Additionally, "[b]ecause the relief requested in a (b)(2) class is prophylactic, enures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required." *Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 615 (S.D. Cal. 2011).

In the present case, Plaintiffs seek to certify a (b)(2) subclass comprised of members of the Settlement Class who are still employed by Qualcomm.   Plaintiffs seek to certify this subclass only for the purposes of the programmatic relief portion of the Settlement because the proposed programmatic relief will apply with equal force to all continuing and future employees of Qualcomm.   (Prelim. Settlement Mot. 25–26.)   Defendants have denied and continue to deny any wrongdoing, Plaintiffs' allegations, and that Plaintiffs would be able to certify a class action absent the settlement.   Accordingly, certification of the current-employee subclass under Rule 23(b)(2) is proper for purposes of the programmatic relief portion of the settlement.

## VII.   Conclusion

For the reasons stated above, the Court finds certification of the Settlement Class proper under Rule 23(b)(3) and certification of the Current-Employee subclass proper under Rule 23(b)(2).   Accordingly, the Settlement Class and the Current-Employee Subclass are **CERTIFIED** for settlement purposes only.

## EPA COLLECTIVE ACTION CERTIFICATION

The Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act, 29 U.S.C. § 206 et seq., authorizes workers to sue for gender-pay-based discrimination on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b); *see*

*id.* § 206(d). Unlike class actions brought under Federal Rule of Procedure 23, however, collective actions brought under the FLSA require that individual members "opt in" by filing a written consent. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  Accordingly, collective active certification under the FLSA is subject to a less stringent standard than that imposed by Federal Rule of Civil Procedure 23 regarding class actions.  *See, e.g.*, *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010); *Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419-BEN NLS, 2014 WL 2566144, at *3 (S.D. Cal. June 6, 2014).

Although the Ninth Circuit has not directly addressed the appropriate FLSA certification procedure for whether parties seeking certification are "similarly situated," district courts in this circuit have used an *ad hoc*, two-tiered approach. *See, e.g.*, *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) (noting that the majority of courts prefer this approach). The court first makes an initial "notice stage" determination as to whether plaintiffs are similarly situated, deciding whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *See, e.g.*, *Hill*, 609 F. Supp. 2d at 1009.  A plaintiff must show substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." *Id.*  The standard for certification at this stage is a lenient one that typically results in certification.  *Id.* (citing *Wynn*, 234 F. Supp. 2d at 1082).  The second determination is made after notice is given, *id.*, and therefore is not implicated by the present facts.

In the present case, Plaintiffs' requested EPA collective action arises from the same factual circumstances underlying the previously discussed Rule 23 classes; i.e., the allegedly discriminatory Qualcomm policies and practices.  Because all putative class members are seeking relief from these same policies and practices, the putative class members are "similarly situated" for purposes of the EPA collective action, and thus certification is appropriate.

Given the foregoing, the EPA collective action is conditionally **CERTIFIED** for settlement purposes.

## RULE 23 PRELIMINARY FAIRNESS DETERMINATION

Having certified the Settlement Class, the Court must next make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(1)(C).   Relevant factors to this determination include:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.   Furthermore, due to the "dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative," any "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Id.*   Additionally, although in the present case the Court has not been presented with formal applications for class counsel's attorney fees or class service awards, the Court nonetheless considers these potential fees because they form part of the settlement agreement.  (Settlement Agreement §§ 5.2.3–.6.)

Here, the Settlement is the result of arm's-length negotiations conducted over several months, including two mediation sessions before an experienced employment law mediator. (Prelim. Settlement Mot. 31–33.)

## I.      Strength of Plaintiffs' Case

In order to succeed on the merits, Plaintiffs would have to prove that Defendant's practices and policies were discriminatory.  (Compl. ¶¶ 93–165.)  Qualcomm steadfastly denies any wrongdoing, that Plaintiffs are entitled to any relief at law or equity, and that Plaintiffs would be able to validly certify a class in the absence of the settlement agreement.

(*See* Defs.' Answer to Class and Collective Action Compl. 44, ECF No. 10.)  Given this juxtaposition, and that the sometimes-nebulous issue of what constitutes legally or equitably cognizable discrimination would likely be hotly contested in litigation, (*see generally, e.g.*, Michael Selmi, *Was the Disparate Impact Theory a Mistake?*, 53 UCLA L. Rev. 701, 738–53 (2006) (discussing results of empirical study of are of success of disparate-impact Plaintiffs in federal court)), the Court thus finds that this factor weighs in favor of the $19.5 million settlement and corresponding programmatic relief being fair, reasonable, and adequate.

## II.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

Were the case to proceed to further litigation rather than settlement, the parties would each bear substantial risk and a strong likelihood of protracted and contentious litigation. Even though the parties have agreed to settle this action, they fundamentally disagree regarding the validity of Plaintiffs claims, and have already produced competing expert testimony allegedly strongly supporting each party's respective position.   (Prelim. Settlement Mot. 7–9.)  Additionally, Plaintiffs alone estimate that they have thus far spent over $1.3 million in pursuing the proposed settlement, (*id.* at 15), and the fact that Defendant disputes all aspects of Plaintiffs claims, including the propriety of class certification in the absence of the settlement agreement, suggests that these issues would be vigorously (and therefore costly) litigated were there to be further litigation.  Given the foregoing, this factor weighs in favor the settlement being fair, reasonable, and adequate.

## III.    Risk of Maintaining Class Action Status Throughout Trial

The Parties dispute whether the classes can be validly certified in the absence of the Settlement Agreement.  (*See id.* at 6.)  Implicit in this disagreement is the likelihood of initial challenges to class certification and the potential for decertification motions even if class status is granted.  Weighed against the fact that Defendants do not object to a finding that the class elements are met for purposes of this settlement, this factor also weighs in favor of the settlement being fair, reasonable, and adequate.

/ / /

## IV.    Amount Offered in Settlement

The crux of Plaintiffs' claims is that Qualcomm's allegedly discriminatory policies and practices led to the class members being less-gainfully employed than their male counterparts.  Thus, proof of damages will in part necessarily turn on certain subjective considerations, such as whether class members would have been promoted but for the allegedly discriminatory policies and practices.  This in turn makes damage calculations uncertain.  Given this uncertainty, that the average pre-tax recovery for class members will be approximately $3,953.04, and that the average recovery for class members who worked full time during the entire class period will be approximately $5,862.53, (*id.* at 14), weighs in favor of the settlement being fair, reasonable, and adequate.

## V.    Extent of Discovery Completed and Stage of Proceedings

Prior to the agreed-upon settlement, the parties engaged in substantial discovery, including compiling three data sets regarding all relevant class members, performing multiple expert analyses on these data, and engaging for two sessions a neutral third-party mediator who fully examined and discussed with each party the strengths and weakness of each party's case. (*Id.* at 6–9.)  Both Class Counsel and Defense Counsel gained significant knowledge of the relevant facts and law throughout the discovery process and through independent investigation and evaluation.  Accordingly, it appears both parties have entered into the settlement agreement with a strong working knowledge of the relevant facts, law, and strengths and weaknesses of their claims and defenses.  Given all of the above, this factor weighs in favor of the proposed settlement being fair, reasonable, and adequate.

## VI.    Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  And here, Class Counsel believes the Settlement Agreement is fair, reasonable, and adequate and in the best interest of the Settlement Class. (*Id.* at 30–45.)  Furthermore, in the present case the presumption of reasonableness is warranted based on Class Counsel's expertise in

complex litigation, familiarity with the relevant facts and law, and significant experience negotiating other class and collective action settlements.   Given the foregoing, and according the appropriate weight to the judgment of these experienced counsel, this factor weighs in favor the proposed settlement being fair, reasonable, and adequate.

**VII.   Settlement Attorney Fee Provision**

In the Ninth Circuit, a district court has discretion to apply either a lodestar method or a percentage-of-the-fund method in calculating a class fee award in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).   When applying the percentage-of-the-fund method, an attorney fee award of "twenty-five percent is the 'benchmark' that district courts should award . . . ." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Fischel*, 307 F.3d at 1006.   However, a district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311).   "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007.

In the present case, the Settlement Agreement specifies that no greater than "thirty percent (30%) of the Settlement Fund (Five Million Eight Hundred Fifty Thousand Dollars ($5,850,000))" shall be awarded as attorney fees.   (Settlement Agreement § 5.2.6.) Sections 5.2.4 and 5.2.5 of the Settlement Agreement further provide a total of up to $150,000 for past and future "costs incurred by Class Counsel."   In support of this deviation from the Ninth Circuit benchmark, Class Counsel note that (1) including the programmatic relief—"which the parties are able to monetize at approximately $4 million or more"—in the overall calculation renders the maximum attorney fee award "24.9% of the total monetary value of the Settlement[;]" (2) "a substantial portion of the requested award will constitute reimbursement for Counsel's out-of-pocket reasonable litigation expenses[;]" and (3) that a "request for attorneys' fees in the amount of 30% of the common fund falls

within the range of acceptable attorneys' fees in the Ninth Circuit."  (Prelim. Settlement Mot. 34–35; *see also id.* 34–35 n.29 (collecting cases awarding greater than 25% benchmark).)

Although the Court does not conclude that the attorney fee provision is fatal to preliminary approval of the settlement, the Court notes that counsel will likely need to address in their formal attorney fee application Settlement Agreement sections 5.2.4 and 5.2.5, which appear at least partially duplicative of one of Class Counsel's arguments supporting the heightened award.  Additionally, the Court will carefully scrutinize any class member objections to the proposed 30% award before ruling on any such award.

## VIII. Class Representative Service Award Provision

The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The district court must evaluate each incentive award individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In the present case, the Settlement Agreement provides for "Three Hundred Fifty Thousand Dollars ($350,000) for the payment of Service Awards" amounting to $50,000 paid to each Class Representative.  (Prelim. Settlement Mot. 36.)  Class Counsel notes that "Plaintiffs have expended substantial time and resources on this action and have incurred substantial risk by doing so."  (*Id.*)  This includes the class representatives cumulatively spending over 1,700 hours in service to the classes, conferring frequently with Class Counsel, reviewing and providing input on the mediation statement, helping to formulate the programmatic relief proposal, helping to craft the final Settlement Agreement, and—for most representatives—attending both mediation sessions.  (*Id.* at 9–11.)  Class Counsel also note that "[g]iven the close-knit nature of the telecommunications industry . . .

Plaintiffs face significant risks of being blacklisted by potential future employers, shunned by their coworkers, and retaliated against by their managers" likely throughout the remainder of Plaintifffs' careers. (*Id.* at 11.)  Given the foregoing, the Court concludes that the current Settlement Agreement Class Representative Award provision should not bar preliminary approval of the Settlement Agreement.

## IX.    Conclusion

For the reasons stated above, Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement is **GRANTED** regarding the Rule 23 Settlement.

### EPA COLLECTIVE PRELIMINARY FAIRNESS DETERMINATION

Given the FLSA's underlying policy to ensure that an employee's right to fair payment cannot be waived nor diminished by contract, any settlement of an FLSA collective action requires the supervision of either the Secretary of Labor or the district court.  *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945)).  However, unlike analysis concerning whether a proposed settlement is fair, reasonable, and adequate under Rule 23, the Ninth Circuit has not provided explicit direction for assessing the fairness of a proposed EPA settlement.  *See, e.g.*, *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-01009-JCM, 2015 WL 4874276, at *4 (D. Nev. Aug. 13, 2015).  Most district courts in the Ninth Circuit assess whether "the settlement reflects 'a reasonable compromise' over issues that are 'actually in dispute.'"  *Id.* (quoting *Lynn's*, 679 F.2d at 1354).  As with class certification, the FLSA standard has a lower threshold than the corresponding Rule 23 requirements.  *See id.* at *13.

In the present case, because the Settlement Agreement passes muster under Rule 23 analysis, it also passes the "reasonable compromise" standard governing EPA collective actions.  As set forth above in the Court's Rule 23 analysis, this case reflects careful legal and factual analysis by the parties of issues actually in dispute and a correspondingly carefully crafted Settlement Agreement that takes into account those same analyses.

Accordingly, Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement is **GRANTED** regarding the EPA Collective Action Settlement.

### NOTICE OF CLASS CERTIFICATION AND SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Because the Court has determined that certification is appropriate under Rule 23(b)(3), the mandatory notice procedures required by Rule 23(c)(2)(B) must be followed.

Where there is a class settlement, Federal Rule of Procedure 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.").

The parties have agreed to notify the Class in writing by mailing all class members a notice of class certification. (Prelim. Settlement Mot. 45–46.) The parties will use the "last-known addresses provided by Defendant," and "[t]he Claims Administrator will perform address searches (skip traces) to obtain the correct address of any Class Member whose Notice is returned as undeliverable and will attempt re-mailings where new addresses are secured." (*Id.* at 46.) The proposed notice explains:

> (i) the nature of the lawsuit; (ii) the Class definition and claims; (iii) the settlement amount; (iv) the attorneys' fees and costs and service awards requested by Plaintiffs and Class Counsel; (v) the rights of Class Members to opt-out or object to the Settlement's terms and the process by which they can

do so; (vi) the binding effect of the Settlement on Class Members who do not request exclusion; (vii) and the particulars of the final fairness hearing.

(*Id.*; Settlement Agreement Ex. A, ECF No 6-1.)  Having thoroughly reviewed the jointly drafted Notice of Class Action Settlement, the Court finds that the method and content of the Notice comply with Rule 23.  Accordingly, the Court approves the parties' proposed notification plan.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The Court hereby **ORDERS** as follows:

**I.     PRELIMINARY     APPROVAL     OF     PROPOSED     SETTLEMENT AGREEMENT:** The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

**II.     PRELIMINARY CLASS CERTIFICATION:** Pursuant to Federal Rule of Civil Procedure 23(b)(3) for all classes, and 23(b)(2) for the purposes of the programmatic relief portion of the Settlement Agreement, the action is preliminarily certified, for settlement purposes only, as a class action on behalf of the following Settlement Class Members with respect to the claims asserted in this Action:

• **Settlement Class:**  All individuals in the Nationwide Class and California Class as defined below.

• **Nationwide Class (Excluding California):**  All women employed in a Covered Position[2] by Qualcomm Incorporated and its current and former subsidiaries and affiliated entities as regular employees in the United States (but not in the state of California) at any time from December 26, 2014 through the date of this Order Granting Preliminary Approval.

---

[2] The term "Covered Position" refers to the definition set forth both in pages 3–4 of the proposed Class Notice, (ECF No. 6-1, 72–73), and pages 4 and 39–62 of the Settlement Agreement, (*id.* at 6, 44–67).

• **California Class:**  All women who were paid for working in California in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities, at any time from December 4, 2011 through the date of this Order Granting Preliminary Approval.

**III.     CONDITIONAL APPROVAL OF EPA COLLECTIVE ACTION:** Pursuant to 29 U.S.C. § 216(b), the action is preliminarily certified, for settlement purposes only, as an EPA Collective Action on behalf of the following Collective Action Members with respect to the claims asserted in this action:

• **Collective Action Members:**  All women employed in a Covered Position by Qualcomm Incorporated or Qualcomm Technologies, Inc., or any of their current and former subsidiaries and affiliated entities in the United States at any time from December 4, 2012 through the date of this Order Granting Preliminary Approval who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend: "I have received and read the Class Notice in *Pan et al. v. Qualcomm Incorporated*.  By negotiating this check and accepting payment I (i) consent to join in this lawsuit and the Equal Pay Act collective action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit. This Release shall become effective on the Effective Date."

**IV.     CLASS REPRESENTATIVE, CLASS COUNSEL, AND CLAIMS ADMINISTRATOR:** Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, Plaintiffs Dandan Pan, Carrie Haluza, Carolina Dealy, Laura Paquin, Wei Shi, Blanche Matulich, and Connie Jacobson as the Class Representatives, and Sanford Heisler, LLP as Class Counsel.  Additionally, the Court approves and appoints Rust Consulting, Inc. as the Claims Administrator.

**V.     NOTICE:** The Court preliminarily approves the form and substance of the proposed notice set forth in the Settlement Agreement and the Class Notice attached as Exhibit A to the Settlement Agreement.  (Settlement Agreement Ex. A.)  The form and method for

notifying the Class Members of the Settlement and its terms and conditions satisfies the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e).  The Court finds that the Notice Procedure submitted by the parties constitutes the best notice practicable under the circumstances.   As provided in the Settlement Agreement, the Claims Administrator shall provide notice to the Class by First Class U.S. Mail and respond to Class Member inquiries.

Within thirty (30) days of the date on which this Order is electronically docketed, the parties **SHALL** disseminate the Notice in the form attached as Exhibit A to the Settlement Agreement and in the manner and form provided in the Settlement Agreement.

**VI.    FINAL APPROVAL HEARING:**  Judge Sammartino **SHALL** conduct a Final Approval Hearing on April 13, 2017 at 221 W. Broadway, Courtroom 4D, 4th Floor, San Diego, CA 92101, to consider:

a. the fairness, reasonableness, and adequacy of the proposed settlement;
b. Plaintiffs' request for the award of attorneys' fees and costs;
c. the Class Representative enhancement;
d. dismissal with prejudice of the class action with respect to Defendants; and
e. the entry of final judgment in this action.

At the Final Approval Hearing, the parties shall also be prepared to update the Court on any new developments since the filing of the motion, including any untimely submitted opt-outs, objections, and claims, or any other issues as the Court deems appropriate.

The date and time of the Final Approval Hearing shall be included in the Notice to be mailed to all class members.

**VII.   MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT:** No later than twenty-one (21) days before the Final Approval Hearing, the parties shall file a Motion for Final Approval of Class Action Settlement.  The Motion shall include and address any objections received as of the filing date.  In addition to the class certification and settlement fairness factors, the motion shall address the number of putative Settlement Class members who have opted out and the corresponding number of claims.

23

**VIII. APPLICATION FOR ATTORNEY FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS:** No later than twenty-one (21) days before the Final Approval Hearing, Class Counsel shall file an application for attorney fees, costs, and class representative service awards. Class Counsel shall provide documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled. Class Counsel should address the appropriateness of any upward or downward departure in the lodestar calculation, as well as reasons why a percentage-of-the-fund approach to awarding attorney fees may be more preferable in this case. Class Counsel should be prepared to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

**IX.    MISCELLANEOUS PROVISIONS:** In the event the proposed settlement is not consummated for any reason, the conditional class certification shall be of no further force or effect. Should the settlement not become final, the fact that the parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, nor be admissible in connection with, the issue of whether a class should be certified in a non-settlement context.

**X.    SCHEDULE:** The Court orders the following schedule for further proceedings:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

16-cv-01885-JLS-DHB

| Event | Date |
|---|---|
| Defendants to Deliver Class List to Claims Administrator | Within 7 days of the date on which this Order is electronically docketed |
| Claims Administrator to Send Notice to Class Members | Within 30 days of the date on which this Order is electronically docketed |
| Last Day for Class Members to File Request for Exclusion from Settlement | No later than 60 days from the date of mailing the Notice |
| Last Day for Class Members to File Objections to the Settlement | No later than 60 days from the date of mailing the Notice |
| Last Day for Class Members to File Notice of Intention to Appear at Final Approval Hearing | No later than 60 days from the date of mailing the Notice |
| Parties to File Motion for Final Approval | No later than 21 days before the Final Approval Hearing |
| Class Counsel to File Motion for Attorneys' Fees and Costs and Incentive Fees | No later than 21 days before the Final Approval Hearing |
| Final Approval Hearing | April 13, 2017 |

**IT IS SO ORDERED.**

Dated:  December 5, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

16-cv-01885-JLS-DHB